PAUL ANDRE (State Bar No. 196585)
pandre@kramerlevin.com
LISA KOBIALKA (State Bar No. 191404)
lkobialka@kramerlevin.com
JAMES HANNAH (State Bar No. 237978)
jhannah@kramerlevin.com
KRAMER LEVIN NAFTALIS & FRANKEL LLP
990 Marsh Road
Menlo Park, CA  94025
Telephone:  (650) 752-1700
Facsimile:   (650) 752-1800

*Attorneys for Plaintiff*
FINJAN, INC.

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| FINJAN, INC., a Delaware Corporation,<br><br>Plaintiff,<br><br>v.<br><br>CISCO SYSTEMS, INC., a California Corporation,<br><br>Defendant. | Case No.: 5:17-cv-00072-BLF<br><br>**PLAINTIFF FINJAN, INC.'S OPPOSITION TO DEFENDANT CISCO SYSTEMS, INC.'S MOTION TO DISMISS**<br><br>Date:     June 8, 2017<br>Time:    9:00 a.m.<br>Dept.:   Courtroom 3, 5th Floor<br>Judge:   Honorable Beth Labson Freeman |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION .................................................................................................................... 1

II. STATEMENT OF ISSUE TO BE DECIDED ........................................................................ 1

III. STATEMENT OF FACTS AND PROCEDURAL BACKGROUND ..................................... 1

    A. Finjan's FAC Provides Detailed Allegations of Cisco's Continued Infringement Despite Knowledge of the Patents in Suit ........................................ 1

    B. Finjan Amended Its Original Complaint After It Met and Conferred with Cisco Regarding The Allegations In Its Original Complaint ........................................ 3

IV. ARGUMENT ........................................................................................................................... 3

    A. Finjan Pleads More Than Sufficient Facts to Allege a Claim for Willful Infringement of the Patents-in-Suit, Particularly Under Halo's Lowered Bar ................. 3

        1. The FAC Sufficiently Alleges That Cisco Knew of the Patents-in-Suit. ............ 6

        2. The FAC Sufficiently Alleges Additional Facts Beyond Knowledge to Support a Finding That Cisco's Infringement Was Willful or Egregious. ...... 9

        3. Cisco's Arguments Regarding the 2014 NDA Are Irrelevant and Unfounded. ............................................................................................. 11

    B. In the Alternative, Finjan Should Be Allowed to Amend the Complaint ....................... 12

V. CONCLUSION ...................................................................................................................... 12

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Avocet Sports Tech., Inc. v. Garmin Int'l, Inc.*,
No. C 11-04049 JW, 2012 WL 2343163 (N.D. Cal. June 5, 2012) ............................................ 5, 6, 7

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ....................................................................................................... 3, 4, 9, 10

*Blitzsafe Texas LLC v. Volkswagen Group of Am., Inc.*,
Nos. 2:15-cv-1274-JRG-RSP, 2:15-cv-1278-JRG-RSP,
2016 WL 4778699 (E.D. Tex. Aug. 19, 2016) ............................................................................ 5, 6, 8

*Elm 3DS Innovations, LLC v. Samsung Elecs. Co.*,
No. 14-1430-LPS-CJB, 2015 WL 5725768 (D. Del. Sept. 29, 2015) ............................................ 5, 7

*Finjan, Inc. v. ESET, LLC*,
No. 3:17-CV-0183-CAB-(BGS), 2017 WL 1063475 (S.D. Cal. Mar. 21, 2017) .......................... 4, 5

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
136 S. Ct. 1923, 1933-35 (2016) ................................................................................................. *passim*

*Irori Techs., Inc. v. Luminex Corp.*,
No. 13-CV-2647-BEN (NLS), 2014 WL 769435 (S.D. Cal. Feb. 25, 2014) ................................... 5

*Longitude Licensing v. Apple Inc*,
No. C-14-04275-EDL, 2015 WL 1143071 (N.D. Cal. Mar. 13, 2015) ............................................. 9

*Malibu Boats, LLC v. Mastercraft Boat Co.*,
No. 3:16-cv-82-TAV-HBG, 2016 U.S. Dist. LEXIS 183202
(E.D. Tenn. Oct. 28, 2016) ................................................................................................................. 8

*McMahon v. Take-Two Interactive Software, Inc.*,
640 F. App'x 669 (9th Cir. 2016) ................................................................................................. 4, 6

*McZeal v. Sprint Nextel Corp.*,
501 F.3d 1354 (Fed. Cir. 2007) ........................................................................................................ 4

*Mentor Graphics Corp. v. EVE-USA, Inc.*,
851 F.3d 1275 (Fed. Cir. 2017) ....................................................................................................... 11

*Nanosys, Inc. v. QD Vision, Inc.*,
No. 16-CV-01957-YGR, 2017 WL 35511 (N.D. Cal. Jan. 4, 2017) ....................................... 4, 9, 10

*Nanosys, Inc. v. QD Vision, Inc.*,
No. 16-cv-01957-YGR, 2016 WL 4943006 (N.D. Cal. Sept. 16, 2016) ........................................ 12

*Potter Voice Techs., LLC v. Apple Inc.*,
 24 F. Supp. 3d 882 (N.D. Cal. 2014) ............................................................................... 7, 8

*Raytheon Co. v. Cray, Inc.*,
 No. 2:16-CV-00423-JRG-RSP, 2017 WL 1362700 (E.D. Tex. Mar. 13, 2017) ........................ 5, 11

*Seoul LaserDieboard Sys. Co. v. Serviform, S.R.L.*,
 957 F. Supp. 2d 1189 (S.D. Cal. 2013) ................................................................................ 5

*Spherix Inc. v. Juniper Networks, Inc.*,
 Civ. No. 14-578-SLR, 2015 WL 1517508 (D. Del. Mar. 31, 2015) ....................................... 9

*St. Clair Intellectual Prop. Consultants, Inc. v. Hewlett–Packard Co.*,
 C.A. No. 10-425-LPS, 2012 WL 1134318 (D. Del. 2012) ................................................... 7

*Traffic Info., LLC v. Yahoo! Inc.*,
 No. 2:09-CV-246-TJW-CE, 2010 WL 2545500 (E.D. Tex. Apr. 13, 2010) .......................... 4

*Walker Digital, LLC v. Facebook, Inc.*,
 852 F. Supp. 2d 559 (D. Del. 2012) ..................................................................................... 7

*Windy City Innovations, LLC v. Microsoft Corp.*,
 193 F. Supp. 3d 1109 (N.D. Cal. 2016) ............................................................................. 12

## I. INTRODUCTION

Finjan has more than adequately pled its willfulness claim in its First Amended Complaint (Dkt. No. 26) ("FAC"). Finjan's FAC provides specific factual allegations detailing the longstanding collaborative relationship that Finjan and Cisco have had since the 1990's and the multiple substantial investments that Cisco has made in Finjan over the years. It further explains that during the course of that extensive relationship, Cisco gained knowledge of Finjan's proprietary technology and patents, which includes the patents asserted here. Finjan's FAC even specifies the manner of how and when Cisco gained this information, including when it invested in Finjan, through presentations that Finjan gave to Cisco, as well as by virtue of Cisco having a representative attend Finjan's Board of Directors meetings. Despite this knowledge, as alleged in the FAC, Cisco proceeded with its infringement, including acquiring and incorporating into its products technology that infringes the asserted patents.

These allegations in the FAC are more than adequate to plead willfulness, particularly under the flexible standard recently adopted by the Supreme Court in *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1933-35 (2016), which considers the totality of the circumstances as opposed to rigid criteria for proving willfulness and enhanced damages. Cisco's motion mischaracterizes the allegations in Finjan's FAC, ignores reasonable inferences to be drawn from those allegations and misstates the law that this Court should apply under Halo. For these reasons, as explained further below, Cisco's motion should be denied.

## II. STATEMENT OF ISSUE TO BE DECIDED

Whether Finjan's FAC alleges facts sufficient to state a claim for willful infringement.

## III. STATEMENT OF FACTS AND PROCEDURAL BACKGROUND

### A. Finjan's FAC Provides Detailed Allegations of Cisco's Continued Infringement Despite Knowledge of the Patents in Suit

Finjan filed its FAC on March 27, 2017, setting forth detailed allegations in support of Finjan's infringement and willfulness claims. The FAC explains that Finjan was a pioneer in developing proactive technologies capable of detecting previously unknown online security threats or "malware," and that Finjan has been awarded various patents covering these innovations. FAC at ¶¶ 7-8. The

1

FAC alleges that certain Cisco products infringe the following five of these patents: U.S. Patent Nos. 6,154,844 ("the '844 Patent"), 6,804,780 ("the '780 Patent"), 7,647,633 ("the '633 Patent"), 8,141,154 ("the '154 Patent") and 8,677,494 ("the '494 Patent") (collectively the "Patents-in-Suit").[1] FAC at ¶ 45. The FAC provides the following further factual allegations supporting Finjan's claims that Cisco willfully infringes each of the Patents-in-Suit:

- "In the late 1990's, the parties entered into an original equipment manufacturer agreement that allowed Cisco to incorporate Finjan's technology into Cisco's products." FAC at ¶¶ 9, 57, 72, 88, 103, 114.

- "Cisco made multiple substantial financial investments in Finjan as early as 2004. At the time of these investments, Cisco knew of Finjan's patent portfolio and patented technology." FAC at ¶¶ 9, 57, 72, 88, 103, 114.

- "Cisco continued to gain knowledge about Finjan and its patents and patented technology after investing in Finjan. For example, pursuant to the parties' agreement, Cisco had an observer attend Finjan's board of director meetings." FAC at ¶¶ 9, 57, 72, 88, 103, 114.

- "Cisco also attended presentations by Finjan in which Finjan discussed its issued and pending patents and its patented technology." FAC at ¶¶ 9, 57, 72, 88, 103, 114.

- "As of June 2013, when Finjan became a publicly traded company, Cisco was the beneficial owner of shares of Finjan, and currently maintains ownership of shares of Finjan." FAC at ¶¶ 9, 57, 72, 88, 103, 114.

- "Throughout the years Cisco and Finjan maintained an amicable relationship and consistently collaborated together on cybersecurity." FAC at ¶ 9.

- "[I]n the second half of 2013, Cisco acquired the company Sourcefire, Inc. ("SourceFire") and integrated that company's appliances and technology into Cisco's own product lines. Finjan patents cover technology acquired in the SourceFire deal, along with other unlicensed technologies that Cisco has implemented over the years." FAC at ¶ 9.

The FAC further states that despite this extensive relationship and knowledge of the Patents-in-Suit, Cisco "has sold and continues to sell the accused products and services in complete disregard of Finjan's patent rights." FAC at ¶¶ 58, 73, 89, 104, 115.

---

[1] In December 1997, Finjan filed the patent application for the '844 Patent, which issued in November 2000. FAC at ¶ 10; Dkt. No. 26-1 at 4 (Ex. 1 to FAC). In March 2000, Finjan filed the patent application for the '780 Patent, which issued in October 2004. FAC at ¶ 13; Dkt. No. 26-2 at 2 (Ex. 2 to FAC). In June 2005, Finjan filed the patent application for the '633 Patent, which issued in January 2010. FAC at ¶ 16; Dkt. No. 26-3 at 6 (Ex. 3 to FAC). In June 2010, Finjan filed the patent application for the '154 Patent, which issued in March 2012. FAC at ¶ 19; Dkt. No. 26-4 at 2 (Ex. 4 to FAC). In November 2011, Finjan filed the patent application for the '494 Patent, which issued in March 2014. FAC at ¶ 22; Dkt. No. 26-5 at 2 (Ex. 5 to FAC).

### B.     Finjan Amended Its Original Complaint After It Met and Conferred with Cisco Regarding The Allegations In Its Original Complaint

Finjan's FAC reflects amendments to Finjan's factual allegations in support of its willfulness claim.  In its original complaint, Finjan included allegations in part on certain discussions between Finjan and Cisco that occurred after the parties entered into a Non-Disclosure Agreement in 2014 (the "NDA").  Dkt. No. 1 at ¶ 9.  On March 6, 2017, Cisco filed its Answer and Counterclaims against Finjan, alleging, *inter alia*, a counterclaim for "breach of contract," claiming that Finjan's reliance on these discussions violated the NDA.  Dkt. No. 24 at 19-21.  However, this counterclaim did not state a plausible claim for relief because the NDA only restricted use of "Proprietary Information," and Finjan did not include any "Proprietary Information" in its complaint.  For this reason, Finjan intended to seek to dismiss Cisco's breach of contract counterclaim under Rule 12(b)(6).  Declaration of B. Wells in Support of Finjan's Opposition to Cisco's Motion to Dismiss ("Wells Decl.") filed herewith, ¶ 2.

During the parties' meet and confer in advance of Finjan's anticipated motion to dismiss, it became apparent that the parties' dispute regarding the counterclaim could be resolved if Finjan provided different instances of notice to Cisco of Finjan's patents, as opposed to those based on discussions following the NDA.  *Id.*  Thus, while Finjan disputed Cisco's breach of contract claim, Finjan had various bases for its willfulness claim not limited to these discussions, and thus Finjan was willing to amend its complaint to reflect these other bases and avoid burdening the Court with a dispute over Cisco's counterclaim.  *Id.*  Accordingly, on March 27, 2017, Finjan filed the FAC removing all references to the NDA.

## IV.   ARGUMENT

### A.     Finjan Pleads More Than Sufficient Facts to Allege a Claim for Willful Infringement of the Patents-in-Suit, Particularly Under Halo's Lowered Bar

Finjan's detailed FAC easily passes muster under the standard for pleading willfulness. "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 546 (2007) (citation omitted).  It "does not require 'detailed factual allegations,'" but need only contain "enough fact to raise a reasonable expectation that

1  discovery will reveal evidence." *See Traffic Info., LLC v. Yahoo! Inc.*, No. 2:09-CV-246-TJW-CE,
2  2010 WL 2545500, at *3 (E.D. Tex. Apr. 13, 2010) (quoting *Twombly*, 550 U.S. at 555-56); *see also*
3  *Finjan, Inc. v. ESET, LLC*, No. 3:17-CV-0183-CAB-(BGS), 2017 WL 1063475, at *7 (S.D. Cal. Mar.
4  21, 2017) ("The complaint states sufficient facts to allege ESET's continued sales are willful.  ESET
5  may introduce evidence of its response to Finjan's notice of infringement and the steps it took to
6  address those contentions").  "[A] patentee need only plead facts sufficient to place the alleged
7  infringer on notice as to what he must defend." *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1375
8  (Fed. Cir. 2007) (citing *Twombly*, 550 U.S. at 565 n.10).  In resolving Cisco's motion to dismiss under
9  Rule 12(b)(6), the court must accept Finjan's allegations of material fact as true and construe them in a
10 light most favorable to Finjan.  *See McMahon v. Take-Two Interactive Software, Inc.*, 640 F. App'x
11 669, 671 (9th Cir. 2016) (reversing the district court's decision for erring by failing to construe
12 plaintiff's allegations in the light most favorable to plaintiffs).

13         Here, Finjan's allegations of willful infringement are more than sufficient to put Cisco on
14 notice of Finjan's willfulness claims.  In 2016, the Supreme Court lowered the bar to prove willfulness,
15 eliminating the requirement that the infringer must have acted despite an objectively high likelihood
16 that its actions constituted infringement of a valid patent.  *Halo*, 136 S. Ct. at 1933-35.  Thus, it is
17 sufficient to show that the risk of infringement was either known to the accused infringer or so obvious
18 that it should have been known.  *Id*.  The Supreme Court in *Halo* adopted a flexible approach to
19 determining whether a court should award enhanced damages: "As with any exercise of discretion,
20 courts should continue to take into account the particular circumstances of each case in deciding
21 whether to award damages, and in what amount. . . . [S]uch punishment should generally be reserved
22 for egregious cases typified by willful misconduct." *Id*. at 1933-34; *see also Nanosys, Inc. v. QD*
23 *Vision, Inc.,* No. 16-CV-01957-YGR, 2017 WL 35511, at *1 (N.D. Cal. Jan. 4, 2017) (applying *Halo'*s
24 totality of circumstance approach and finding patentee's allegations of willfulness sufficient).  Thus,
25 there is no "heightened standard for willfulness" requiring egregiousness to be plead as an *additional*

element under *Halo*, as Cisco misrepresents. Motion at 7. Rather, willful infringement *typifies* egregious conduct that would justify an award of enhanced damages.[2]

Numerous cases, including post-Halo cases, recognize that all that is required to adequately plead a claim for willfulness is an allegation of direct infringement coupled with "the barest factual assertion of knowledge." *Seoul Laser Dieboard Sys. Co. v. Serviform, S.r.l.*, 957 F. Supp. 2d 1189, 1196-97 (S.D. Cal. 2013) (internal quotation and citation omitted); *see also ESET*, 2017 WL 1063475, at *7 (denying to dismiss willful infringement claims based solely on the defendant's knowledge of the asserted patent because "[w]illfulness is measured by reference to the knowledge of the accused infringer at the time of the challenged conduct"), quoting *Halo,* 136 S. Ct. at 1933; *Raytheon Co. v. Cray, Inc.,* No. 2:16-CV-00423-JRG-RSP, 2017 WL 1362700, at *9 (E.D. Tex. Mar. 13, 2017) ("Because [the plaintiff's] allegations concerning knowledge of the patents-in-suit are sufficient, a proper claim for willfulness has been made") (citation omitted)[3]; *Avocet Sports Tech., Inc. v. Garmin Int'l, Inc*., No. C 11-04049 JW, 2012 WL 2343163, at *3 (N.D. Cal. June 5, 2012) (finding "allegations make out the 'barest factual assertion' that [defendant] had knowledge of the patent at issue, which is sufficient to plead a claim for willful infringement") (citation omitted); *Elm 3DS Innovations, LLC v. Samsung Elecs. Co*., No. 14-1430-LPS-CJB, 2015 WL 5725768, at *2 (D. Del. Sept. 29, 2015) (holding that it was plausible that defendant had pre-suit knowledge based on a presentation made to defendant regarding related patents and the fact that the patent-in-suit was well known in the semiconductor industry); *Irori Techs., Inc. v. Luminex Corp*., No. 13-CV-2647-BEN (NLS), 2014 WL 769435, at *2 (S.D. Cal. Feb. 25, 2014) ("courts have denied motions to dismiss where the [plaintiff] couples an allegation of direct infringement with 'the barest factual assertion' of knowledge") (citation omitted); *Blitzsafe Texas, LLC v. Volkswagen Group of Am., Inc.*, Nos. 2:15-cv-1274-JRG-RSP, 2:15-cv-1278-JRG-RSP, 2016 WL 4778699, at *6 (E.D. Tex. Aug. 19, 2016)

---

[2] Also, willful infringement is not necessary to an award of enhanced damages. *Halo*, 136 S. Ct. at 1933-34.

[3] Notably, *Raytheon Co.* found that even "[p]ost-complaint knowledge is sufficient under *Halo*" to state the claims of willful infringement. *Raytheon*, 2017 WL 1362700, at *5 (citation omitted).

(denying motion to dismiss willful infringement claims and finding that accused infringer's knowledge of a patent application was all that was required).

### 1. The FAC Sufficiently Alleges That Cisco Knew of the Patents-in-Suit.

The FAC goes far beyond alleging the "barest factual assertions" that Cisco had knowledge of the Patents-in-Suit, which is all it must do to state a claim for willfulness. It alleges that Cisco knew of Finjan and its technology since the late 1990's when Cisco entered into an original equipment manufacturer agreement with Finjan. FAC at ¶¶ 9, 57, 72, 88, 103, 114. The FAC also alleges multiple factual bases for Cisco's knowledge of the Patents-in-Suit, including that Cisco knew of Finjan's patents based on multiple substantial financial investments that Cisco made in Finjan as early as 2004. *Id.* The FAC also alleges that Cisco knew of Finjan's patents based on attendance by a Cisco representative at Finjan board meetings and Cisco's attendance at presentations where Finjan's pending and issued patents and its patented technology were discussed. *Id.*

It can be readily inferred from these allegations that Cisco knew of Finjan's patents that had issued during this period, which specifically includes the '844 and '780 Patents, as well as the pending application for the '633 Patent. The FAC alleges the particular manner in which Cisco gained knowledge of these patents, and it need not and should not include specific evidence to support these allegations. *See Avocet*, 2012 WL 2343163, at *3 (finding "allegations make out the 'barest factual assertion' that [defendant] had knowledge of the patent at issue, which is sufficient to plead a claim for willful infringement") (citation omitted). Rather, Finjan properly alleged these facts based on its good faith investigation in preparing its FAC, and these allegations should be accepted as true for the purposes of this Motion. *See McMahon*, 640 F. App'x at 671.

Finjan further alleges that Cisco has been a beneficial owner of shares of Finjan as of June 2013 when Finjan became a publicly-traded company. FAC at ¶¶ 9, 57, 72, 88, 103, 114. Thus, Cisco's claim that Finjan has not alleged any "interactions between Finjan and Cisco that post-date 2009" (Motion at 4) is entirely untrue. There is also no basis for Cisco's arbitrary distinction throughout its Motion between Finjan's patents that issued before 2009 (i.e., the '844 and '780 Patents) and those that issued later (i.e., the '633, '154 and '494 Patents) when Finjan sold its assets but

1  retained its patents.  As set forth in the FAC, Finjan and Cisco's relationship has been continuous since
2  the 1990's.  It is reasonable to infer that after 2009, Cisco—as an owner of shares of Finjan with a long
3  history of investment in Finjan and knowledge of Finjan's patents, including pending patent
4  applications, and proprietary technology—would continue to remain apprised of Finjan's patents and
5  would have known of the '633, '154 and '494 Patents.

6  These allegations in Finjan's FAC are more than sufficient to plead Cisco's pre-suit knowledge
7  of the Patents-in-Suit.  *See, e.g.*, *Avocet*, 2012 WL 2343163, at *3 (willfulness adequately pled by
8  allegation that defendant "discussed" plaintiff's patented devices at certain "trade shows"); *Elm 3DS*, 2015
9  WL 5725768, at *2 (holding that it was plausible that defendant had pre-suit knowledge based on a
10 presentation made to defendant regarding related patents and the fact that the patent-in-suit was well
11 known in the semiconductor industry); *Walker Digital, LLC v. Facebook, Inc.*, 852 F. Supp. 2d 559,
12 564-68 (D. Del. 2012) (finding the patentee met the pre-suit knowledge requirement for willfulness
13 claims based on the following allegation: "It is believed that Zappos was on notice of the '056 patent
14 and Walker Digital's claims prior to April 11, 2011 through Zappos' interactions with representatives
15 of Walker Digital.") (citation omitted); *St. Clair Intellectual Prop. Consultants, Inc. v. Hewlett–*
16 *Packard Co.*, C.A. No. 10-425-LPS, 2012 WL 1134318, at *3 (D. Del. 2012) (ruling that the plaintiff
17 properly pled willful infringement by alleging the patents-in-suit were often called to the attention of
18 HP personnel and representatives); *Potter Voice Techs., LLC v. Apple Inc.*, 24 F. Supp. 3d 882, 887
19 (N.D. Cal. 2014) (inferring the accused infringer's pre-suit knowledge of the asserted patent based on
20 statements of circumstantial evidence).

21 *Potter Voice Techs* is particularly instructive here.  In *Potter Voice Techs*, the plaintiff alleged
22 the defendant's knowledge of the asserted patent based on the fact that the defendant acquired a
23 company and its employees, including an inventor of a patent that listed the asserted patent as one of
24 many prior art references in its prosecution history.  The Court rejected the defendant's argument that
25 these facts do not satisfy the willfulness claims' knowledge requirement because the asserted patent
26 was only one of many references that were alleged prior art.  In so doing, the Court stated that such
27 argument of the defendant "go[es] to the weight of the evidence rather than the sufficiency of [the
28

7

plaintiff's] allegations. At the motion to dismiss stage, the Court does not undertake a full evaluation of 'probability,' but simply asks for 'more than a sheer possibility that a defendant has acted unlawfully.'" *Potter Voice Techs.*, 24 F. Supp. 3d at 887. Here, Finjan's allegations of Cisco's knowledge of the Patents-in-Suit are more specific than those in *Potter Voice Techs* and provides the grounds for "more than a sheer possibility" of Cisco's willful infringement. For example, the FAC's allegations that Cisco's representative attended Finjan's Board of Director meetings and learned about the patent portfolio which included the Patents-in-Suit and applications is a more direct allegation of Cisco's knowledge than that in *Potter Voice Techs.*

Cisco does not (and cannot) dispute that Finjan has adequately pled that Cisco had knowledge of the '844 and '790 Patents. Moreover, there is no merit to Cisco's claim that Finjan cannot allege knowledge of the '633, '154 or '494 Patents because at the time of notice they were still pending or only identified as part of a larger patent portfolio. Contrary to Cisco's statement of the law, there are no bright line rules regarding what constitutes knowledge for willful infringement, particularly in view of *Halo*'s flexible approach. *See, e.g., Blitzsafe*, 2016 WL 4778699, at *6 (denying to dismiss willful infringement claims and finding that accused infringer's knowledge of a patent application was all that was required); *see also Malibu Boats, LLC v. Mastercraft Boat Co.*, No. 3:16-cv-82-TAV-HBG, 2016 U.S. Dist. LEXIS 183202, at *8 (E.D. Tenn. Oct. 28, 2016) (denying motion to dismiss willful infringement claims and holding that "pre-patent conduct may also be used to support a finding of willfulness") (citations omitted).

Rather, post-*Halo* courts apply broad discretion to assess the claims of willfulness by considering the totality of allegations. *See Halo*, 136 S. Ct. at 1934 ("[W]e eschew any rigid formula for awarding enhanced damages under § 284."). As Cisco itself acknowledges, "the specific facts of a given case will determine whether the alleged infringement was an 'egregious case[] of misconduct beyond typical infringement.'" Motion at 7. Here, Cisco was intimately aware of Finjan's patent portfolio—which has consisted of at most 30 U.S. patents during the relevant time frame (between the late 1990s to the present)—over years of collaborating with and investing in Finjan. The cases that Cisco relies upon are clearly distinguishable, where such a relationship did not exist and far larger

patent portfolios were involved, such as SanDisk's hundreds of patents as well as more than 6,000 patents that were at issue in *Spherix Inc. See Spherix Inc. v. Juniper Networks, Inc.*, Civ. No. 14-578-SLR, 2015 WL 1517508, at *2 (D. Del. Mar. 31, 2015) ("The court declines to infer knowledge of four specific patents from defendant's participation in a bidding process on a portfolio containing over 6,000 patents") (citation omitted); *Longitude Licensing v. Apple Inc*, No. C-14-04275-EDL, 2015 WL 1143071, at *3 (N.D. Cal. Mar. 13, 2015) ("[N]either the breadth of SanDisk's patent portfolio nor its licensing revenue show that Apple had knowledge of the specific patents-in-suit before this lawsuit was filed.").

Thus, the FAC sets forth ample factual allegations to support Cisco's knowledge of the Patents-in-Suit.

### 2. The FAC Sufficiently Alleges Additional Facts Beyond Knowledge to Support a Finding That Cisco's Infringement Was Willful or Egregious.

The FAC provides further allegations beyond just knowledge to support its claim that Cisco's infringement is willful or egregious. In particular, the FAC explains that despite the extensive relationship and knowledge of the Patents-in-Suit, Cisco "has sold and continues to sell the accused products and services in complete disregard of Finjan's patent rights." FAC at ¶¶ 58, 73, 89, 104, 115. And the FAC specifically provides as a further support of this allegation that in late 2013, Cisco acquired SourceFire and integrated that company's appliances and technology that are covered by Finjan's patents, including the Patents-in-Suit, into Cisco's own product lines. FAC at ¶ 9. These factual allegations are specific and more than enough to raise a reasonable expectation that discovery will reveal evidence to support an egregious case warranting enhanced damages. *Twombly*, 550 U.S. at 556; *see also Nanosys*, 2017 WL 35511, at *1 (applying *Halo*'s totality of circumstance approach and finding that the patentee's allegations of willfulness constituted "more than mere knowledge and are, at this [motion to dismiss] stage, sufficient to support a claim for willful infringement.") (internal quotations omitted).

Cisco misses the mark by relying upon cases decided prior to the Supreme Court's *Halo* case that apply a rigid approach to determining willfulness. Indeed, the only post-*Halo* case Cisco relies

upon, *Nanosys, Inc. v. QD Vision, Inc*. supports that Finjan's FAC meets *Halo*'s lowered bar for alleging willful infringement claims.  *See* Motion at 8 (citing *Nanosys*, 2017 WL 35511, at *1).  In *Nanosys,* the Court found "egregiousness" of the infringement based on the allegations that the accused infringer's founder was also one of the co-founders of Nanosys and that the accused infringer "availed itself of [the co-founder]'s knowledge of the claimed inventions and Nanosys's technology to develop and market its infringing products." *Id.*  Here, Finjan pled far more than mere "interactions" between Finjan and Cisco, as Cisco baselessly claims.  Motion at 2.  Finjan's FAC alleges that Cisco and Finjan had been in a longstanding relationship since the late 1990's when the parties collaborated on cybersecurity together, and Cisco was allowed to implement Finjan's technology and sit in Finjan's board meetings where Cisco gained knowledge of Finjan's patents and proprietary business and technical information.  FAC at ¶¶ 9, 57, 72, 88, 103, 114.  And yet, Cisco went ahead and incorporated SourceFire's infringing technology into its own products.  *Id.* at ¶ 9.  This is the kind of betrayal of confidence that the Court in *Nanosys* based its decision in finding "egregiousness" there.

Instead of addressing Finjan's specific factual allegations, Cisco asserts various red herrings in its Motion that the Court need not consider.  For instance, Cisco claims that Finjan's FAC does not allege that Finjan notified Cisco that its products infringe, related the patents to Cisco's products, proposed a license or accused Cisco of copying.  However, none of this is necessary to plead or prove willfulness.  Also, contrary to Cisco's claims, Finjan is not required at the pleading stage to set forth the "details" of evidence such as the presentations referred to in the FAC (Motion at 3).  *See Twombly*, 550 U.S. at 555-56 (complaint "does not need detailed factual allegations) (citation omitted).  Also, Cisco's argument that Finjan cannot allege willfulness of the '844 and '780 Patents because Cisco did not purchase the infringing Sourcefire technology until 2013 is nonsensical.  The fact that Cisco knew of these patents and proceeded to purchase and sell products with the infringing Sourcefire technology is more than sufficient to establish willfulness.

Thus, Finjan has more than adequately plead allegations from which egregiousness of Cisco's actions can be found, including allegations regarding Cisco's extensive relationship and collaboration with Finjan, Cisco's knowledge of Finjan's patents and covered products including specific patents

asserted here, and Cisco's continued infringement, including by the purchase of SourceFire technology and sale of infringing products (to this day[4]) despite knowledge of Finjan's patents.

### 3. Cisco's Arguments Regarding the 2014 NDA Are Irrelevant and Unfounded.

In its Motion, Cisco argues that Finjan's decision to amend its complaint after a meet and confer with Cisco somehow bears on the adequacy of Finjan's willfulness claims in the FAC.  As an initial matter, this argument incorrectly characterizes the NDA and provides a disingenuous account of the parties' communications leading up to this motion.  As Finjan previously explained to Cisco during the parties' meet and confers, Finjan disputed Cisco's counterclaim that Finjan breached the NDA because Finjan never disclosed "Proprietary Information" under the NDA.  For this reason, Finjan planned to file a motion to dismiss Cisco's counterclaim claim under Rule 12(b)(6) as not stating a plausible claim for relief.  However, because Finjan had additional bases to establish Cisco's pre-suit knowledge of the Patents-in-Suit, Finjan offered instead to amend its complaint to avoid burdening the Court and the parties with a dispute over Cisco's counterclaim.  Cisco has no basis to infer that the factual allegations set forth in the FAC for Cisco's knowledge of the Patents-in-Suit are somehow weaker than those based on the NDA discussions set forth in Finjan's original complaint.  Rather, the parties' positions regarding the NDA are irrelevant to the issue here – the sufficiency Finjan's factual allegations in the FAC that are entirely independent from any discussions pursuant to the NDA.  For the reasons set forth above, Finjan's allegations in the FAC are more than adequate to state a claim for willfulness.

---

[4] The filing of Finjan's original complaint may also be sufficient to establish Cisco's knowledge of the Patents-in-Suit.  As the Supreme Court recently held, the patent laws "allow[ ] district courts to punish the full range of culpable behavior . . . free from the inelastic constraints of the *Seagate* test."  *Halo*, 136 S. Ct. at 1933-35.  The Federal Circuit Court's recent decision in *Mentor Graphics Corp. v. EVE-USA, Inc.*, further confirms that courts no longer apply a bright-line rule that patentees must seek a preliminary injunction before seeking to present evidence of post-filing willful infringement.  851 F.3d 1275, 1296 (Fed. Cir. 2017) (applying *Halo* and finding that there is no rigid rule that a patentee must seek a preliminary injunction in order to seek enhanced damages.) (internal quotations and citations omitted); *see also Raytheon*, 2017 WL 1362700, at *9 ("[p]ost-complaint knowledge is sufficient under *Halo*" to state the claims of willful infringement.) (citation omitted).

### B. In the Alternative, Finjan Should Be Allowed to Amend the Complaint

In the event that the Court determines that Finjan did not adequately plead willful infringement, Finjan requests leave to amend its Complaint to include additional allegations. *See Nanosys, Inc. v. QD Vision, Inc.*, No. 16-cv-01957-YGR, 2016 WL 4943006, at *7-8 (N.D. Cal. Sept. 16, 2016) (granting leave to amend willfulness claim); *see also Windy City Innovations, LLC v. Microsoft Corp.*, 193 F. Supp. 3d 1109, 1117 (N.D. Cal. 2016) (same). Amendment is appropriate here because, as demonstrated above, Finjan established the plausibility of its claims.

## V. CONCLUSION

For the reasons stated above, Finjan respectfully requests that the Court denies Cisco's motion to dismiss Finjan's Willful Infringement Claims.

Respectfully submitted,

DATED: May 10, 2017         By: */s/ Lisa Kobialka*
Paul J. Andre (State Bar. No. 196585)
Lisa Kobialka (State Bar No. 191404)
James Hannah (State Bar No. 237978)
KRAMER LEVIN NAFTALIS
 & FRANKEL LLP
990 Marsh Road
Menlo Park, CA  94025
Telephone: (650) 752-1700
Facsimile: (650) 752-1800
pandre@kramerlevin.com
lkobialka@kramerlevin.com
jhannah@kramerlevin.com

*Attorneys for Plaintiff*
FINJAN, INC.