UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FINJAN, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>CISCO SYSTEMS INC.,<br><br>    Defendant. | Case No. 17-cv-00072-BLF<br><br>**ORDER GRANTING DEFENDANT CISCO SYSTEMS, INC.'S MOTION TO DISMISS WITH LEAVE TO AMEND** |

Defendant Cisco Systems, Inc. ("Cisco") moves to dismiss the claims of willful infringement in the First Amended Complaint ("FAC") filed by Plaintiff Finjan, Inc. ("Finjan"). Pursuant to Civil Local Rule 7-1(b), the Court finds the instant motion suitable for decision without oral argument and hereby VACATES the hearing set for July 20, 2017. For the reasons discussed below, the Court GRANTS Cisco's motion with leave to amend.

## I. BACKGROUND

Finjan initiated the present lawsuit on January 6, 2017, alleging that Cisco infringed five of its patents: U.S. Patent No. 6,154,844 ("the '844 patent"), U.S. Patent No. 6,804,780 ("the '780 patent"), U.S. Patent No. 7,647,633 ("the '633 patent"), U.S. Patent No. 8,141,154 ("the '154 patent"); and U.S. Patent No. 8,677,494 ("the '494 patent") (collectively, the "Asserted Patents"). ECF 1. For each of these patents, Finjan alleged willful infringement, premised on the theory that

> Defendant is well aware of Finjan's patents, including the [Asserted Patents], and have [sic] continued its infringing activity despite this knowledge. Finjan informed Defendant of its patent portfolio and infringement on or about March 2014, and have provided representative claim charts specifically identifying how Defendant's products and services infringe Finjan's patents. Finjan attempted unsuccessfully to actively engage in good faith negotiations for over two years with Defendant regarding Finjan's patent portfolio, including having a number of in-person and telephonic meetings explaining claim element by element of Defendant's infringement.

> Despite knowledge of Finjan's patent portfolio, being provided representative claim charts of several Finjan patents, including the [Asserted Patents], and engaging in technical meetings regarding infringement of Defendant's products and services, Defendant has sold and continues to sell the accused products and services in complete disregard of Finjan's patent rights. As such, Defendant has acted recklessly and continues to willfully, wantonly, and deliberately engage in acts of infringement of the [Asserted Patents], justifying an award to Finjan of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

*Id.* ¶¶ 57, 58, 72, 73, 88, 89, 103, 104, 114, 115. Another part of the complaint elaborated that, in March 2014, "Finjan entered into licensing discussions with Cisco under a mutual non-disclosure and standstill agreement ('Agreement') dated March 21, 2014." *Id.* ¶ 9. However, "[t]he Agreement for these discussions had been extended five times for a period of over two years, and has now expired." *Id.*

Cisco answered on March 6, 2017. ECF 24. In addition, it counterclaimed for breach of contract of the Agreement, which provided that

> [t]he parties agree that neither disclosing party's disclosure to receiving party of any Property [sic] Information during the Discussion Period, nor receiving party's possession of such Proprietary Information pursuant to this Agreement and resulting from a disclosure during the Discussion Period, shall constitute, or be used by disclosing party or any third party as evidence in any legal action either to prove or disprove the validity, notice, or an accusation of infringement of any intellectual property rights for any purpose, including without limitation for the purpose of . . . pursuing . . . enhanced damages due to alleged willful infringement.

*Id.* ¶ 8. Cisco alleged that, by using the using the information exchanged under the Agreement in March 2014 to support its willfulness claims, Finjan breached the Agreement. *Id.* ¶ 9.

On March 27, 2017, Finjan filed its FAC, which removed all references to the parties' 2013 licensing discussions or the Agreement. Instead, Finjan alleged that

> Finjan and Cisco's relationship dates back over two decades. In the late 1990's, the parties entered into an original equipment manufacturer agreement that allowed Cisco to incorporate Finjan's technology into Cisco's product. Seeing the value of Finjan's technology, Cisco made multiple substantial financial investments in Finjan beginning as early as 2004. At the time of these investments, Cisco knew of Finjan's patent portfolio and patented technology. Cisco continued to gain knowledge about Finjan and its patents and patented technology after investing in Finjan. For example, pursuant to the parties' agreement, Cisco had an observer attend Finjan's board of director meetings. Cisco also attended presentations by Finjan in which Finjan discussed its issued and pending patents and its patented technology. As of June 2013, when Finjan became a publicly traded company, Cisco was the beneficial owner of shares of Finjan, and currently maintains ownership of shares of Finjan. Throughout the years Cisco and Finjan maintained an amicable relationship and consistently collaborated together on cybersecurity.

> However, in the second half of 2013, Cisco acquired the company Sourcefire, Inc. ("SourceFire") and integrated that company's appliances and technology into Cisco's own product lines. Finjan patents cover technology acquired in the SourceFire deal, along with other unlicensed technologies that Cisco has implemented over the years.

FAC ¶ 9, ECF 26. It modified its willfulness allegations as follows:

> Defendant is well aware of Finjan's patents, including the [Asserted Patents], and has continued its infringing activity despite this knowledge. Finjan and Cisco's relationship dates back over two decades. In the late 1990's, the parties entered into an original equipment manufacturer agreement that allowed Cisco to incorporate Finjan's technology into Cisco's product. Seeing the value of Finjan's technology, Cisco made multiple substantial financial investments in Finjan beginning as early as 2004. At the time of these investments, Cisco knew of Finjan's patent portfolio and patented technology. Cisco continued to gain knowledge about Finjan and its patents and patented technology after investing in Finjan. For example, pursuant to the parties' agreement, Cisco had an observer attend Finjan's board of director meetings. Cisco also attended presentations by Finjan in which Finjan discussed its issued and pending patents and its patented technology. As of June 2013, when Finjan became a publicly traded company, Cisco was the beneficial owner of shares of Finjan, and currently maintains ownership of shares of Finjan. Since at least 2004, and during its extensive relationship with Finjan over the years, Cisco knew of and possessed information regarding Finjan's patent portfolio.
>
> Despite knowledge of Finjan's patent portfolio, Defendant has sold and continues to sell the accused products and services in complete disregard of Finjan's patent rights. As such, Defendant has acted recklessly and continues to willfully, wantonly, and deliberately engage in acts of infringement of the [Asserted Patents], justifying an award to Finjan of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

FAC ¶¶ 57, 58, 72, 73, 88, 89, 103, 104, 114, 115, ECF 26.

On April 26, 2017, Cisco responded by filing the instant motion to dismiss.

## II. LEGAL STANDARDS

### A. Motion to Dismiss

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). When determining whether a claim has been stated, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff. *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011). However, the Court need not "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or

unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citations omitted). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

### B. Enhanced Damages Pursuant to 35 U.S.C. § 284 and Willful Infringement

Under 35 U.S.C. § 284, in a case of infringement, courts "may increase the damages up to three times the amount found or assessed." In *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1935, 195 L. Ed. 2d 278 (2016), the Supreme Court held that § 284 "contains no explicit limit or condition" on when a district court may award enhanced damages, but instead allows courts to "punish the full range of culpable behavior." *Id*. at 1931, 1933. This "sort of conduct warranting enhanced damages has been variously described in our cases as willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate." *Id*. at 1932. Thus, under *Halo*, willfulness is not a prerequisite to awarding enhanced damages, nor are enhanced damages required upon a finding of willfulness. *See id*.; *id*. at 1933 ("none of this is to say that enhanced damages must follow a finding of egregious misconduct"). Instead, "courts should continue to take into account the particular circumstances of each case." *Id*. at 1934. However, enhanced damages are generally reserved for "egregious cases of misconduct beyond typical infringement," such as those "typified by willful misconduct." *Id*. at 1933, 1935. *Halo* also established that enhanced damages are governed by a preponderance of the evidence standard. *Id*. at 1933.

In assessing the egregiousness of an actor's behavior, "culpability is generally measured against the knowledge of the actor at the time of the challenged conduct." *Id*. at 1933 (citation omitted). In other words, what matters is the actor's subjective state of mind at the time of the challenged conduct, not his objective reasonableness. *See id*. For this reason, "[t]he subjective willfulness of a patent infringer, intentional or knowing, may warrant enhanced damages, without regard to whether his infringement was objectively reckless." *Id*. at 1933.

4

In addition, in *Read Corp. v. Portec, Inc.*, 970 F.3d 816, 826-27 (Fed. Cir. 1992), the Federal Circuit's enumerated eight factors that may guide an analysis of "the egregiousness of the defendant's conduct based on all the facts and circumstances." The *Read* factors include:

> (1) whether the infringer deliberately copied the ideas or design of another; (2) whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed; (3) the infringer's behavior as a party to the litigation; (4) defendant's size and financial condition; (5) closeness of the case; (6) duration of defendant's misconduct; (7) remedial action by the defendant; (8) defendant's motivation for harm.

*Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1225 (Fed. Cir. 2006). In light of *Halo*, which clearly stated that district courts are not bound by any rigid formula or set of factors, the *Read* factors are now one set of guidelines courts can use to evaluate alleged misconduct, but are no longer the sole set of criteria.

Finally, to the extent that enhanced damages are based at least in part on willfulness, "[k]nowledge of the patent alleged to be willfully infringed continues to be a prerequisite to enhanced damages." *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1341 (Fed. Cir. 2016) (citing *Halo*, 136 S. Ct. at 1932-33). District courts have continued to enforce this requirement in evaluating the sufficiency of willfulness claims. *See, e.g.*, *Cont'l Circuits LLC v. Intel Corp.*, No. CV16-2026 PHX DGC, 2017 WL 679116, at *11 (D. Ariz. Feb. 21, 2017) ("Plaintiff's failure to plead sufficient facts to show Intel's knowledge of the patents is fatal to its willfulness claim."); *Scripps Research Inst. v. Illumina, Inc.*, No. 16-CV-661 JLS (BGS), 2016 WL 6834024, at *7 (S.D. Cal. Nov. 21, 2016) (dismissing willfulness claims "because Plaintiff fails to plausibly allege that Defendant had knowledge of the '596 patent during the relevant period"); *see also, e.g.*, *Radware, Ltd. v. F5 Networks, Inc.*, No. 5:13-CV-02024-RMW, 2016 WL 4427490, at *4-5 (N.D. Cal. Aug. 22, 2016) (granting judgment as a matter of law of no willfulness because there was inadequate evidence of knowledge).

### III. DISCUSSION

In its motion to dismiss, Cisco argues that Finjan has failed to state a claim for willful infringement because it has failed to allege facts from which a plausible conclusion could be reached that (1) Cisco had pre-suit knowledge of the Asserted Patents; and (2) Cisco's behavior

1   rises to the level of "egregious" misconduct which warrants enhanced damages under *Halo*. Mot.

2   9-13, ECF 33. Finjan disagrees, arguing that the FAC contains "specific factual allegations

3   detailing the longstanding collaborative relationship that Finjan and Cisco have had," which

4   plausibly allege pre-suit knowledge. Opp. 6-9, ECF 35. Finjan also argues that it has plausibly

5   alleged egregiousness, pointing to its allegations "regarding Cisco's extensive relationship and

6   collaboration with Finjan, Cisco's knowledge of Finjan's patents and covered products including

7   specific patents asserted here, and Cisco's continued infringement . . . ." Opp. 10-11, ECF 35.

8       The Court agrees with Cisco that Finjan has failed to state a claim for willful infringement.

9   First, the FAC does not contain factual allegations that would enable the Court to plausibly

10  conclude that Cisco had pre-suit knowledge of any of the Asserted Patents. The FAC generally

11  alleges that, through "multiple substantial investments . . . beginning as early as 2004," Cisco

12  gained knowledge of Finjan's "patent portfolio and patented technology," FAC ¶ 9, ECF 26, but

13  the FAC never ties this general knowledge of Finjan's patent portfolio to the Asserted Patents, nor

14  makes any factual allegations that Cisco specifically learned of the Asserted Patents. Knowledge

15  of a patent portfolio generally is not the same thing as knowledge of a specific patent. *See*

16  *Longitude Licensing v. Apple Inc.*, No. C-14-04275-EDL, 2015 WL 1143071, at *2 (N.D. Cal.

17  Mar. 13, 2015) (granting motion to dismiss where complaint alleged that defendant "had

18  knowledge of the Patents-in-Suit as part of the SanDisk patent portfolio"). Further, even if the

19  Court were to try to circumstantially infer that Cisco had knowledge of the Asserted Patents from

20  it alleged awareness of Finjan's "patent portfolio and patented technology," there are not enough

21  factual allegations to make this plausible. The FAC alleges four major touchpoints between the

22  companies since 2000, the year that the earliest of the Asserted Patents issued: (1) Cisco's

23  "multiple substantial investments . . . beginning as early as 2004;" (2) "Cisco ha[ving] an observer

24  attend Finjan's board of director meetings;" (3) "Cisco . . . attend[ing] presentations by Finjan in

25  which Finjan discussed its issued and pending patents and its patented technology;" and (4)

26  Cisco's owning Finjan stock since it became a publicly traded company in 2013. FAC ¶ 9, ECF

27  26. With possibly the exception of attending Finjan presentations, it is hard to imagine (even

28  construing these allegations in the light most favorable to Finjan) that any of these events would

lend themselves to detailed discussions about individual patents, such that Cisco could have gained knowledge of the specific Asserted Patents. Moreover, Finjan alleges no facts that would make this more likely, such as the content of information exchanged at these events or the dates at which some of these events occurred. Further, given that some of these events could have occurred as early as 2004, it is possible that the alleged "board of director meetings" and "presentations" could have occurred before some of the Asserted Patents issued. Indeed, the '633, '154, and '494 patents all issued in 2010 and later. Accordingly, even on a circumstantial basis, Finjan has failed to allege facts that support a plausible inference that Cisco had pre-suit knowledge of the Asserted Patents.

Second, even if Finjan had adequately alleged that Cisco had pre-suit knowledge of the Asserted Patents, dismissal would also be warranted because the FAC does not contain sufficient factual allegations to make it plausible that Cisco engaged in "egregious" conduct that would warrant enhanced damages under *Halo*. The FAC simply makes the conclusory allegation that "[d]espite knowledge of Finjan's patent portfolio, Defendant has sold and continues to sell the accused products and services . . . ." FAC ¶¶ 58, 73, 89, 104, 115, ECF 26. However, Finjan makes no specific factual allegations about Cisco's subjective intent, or any other aspects of Cisco's behavior that would suggest its behavior was "egregious." Instead, Finjan has simply made conclusory allegations of knowledge and infringement, which, considered in the totality of circumstances here, is not enough to plausibly allege "egregious[ness]." *Cf. Halo*, 136 S. Ct. at 1936 ("[T]he Court's references to 'willful misconduct' do not mean that a court may award enhanced damages simply because the evidence shows that the infringer knew about the patent and nothing more.") (Breyer, J., concurring). Thus, the Court finds that Finjan has failed to allege facts that that support a plausible inference that Cisco engaged in "egregious" conduct that would warrant enhanced damages under *Halo*.

In sum, because Finjan has failed to make sufficient factual allegations that it had pre-suit knowledge of the Asserted Patents or that Cisco's behavior was "egregious . . . beyond typical infringement," it has failed to state a claim for willful infringement. Accordingly, Cisco's motion to dismiss is GRANTED with leave to amend. Although Finjan has already once amended its

complaint, the Court finds that leave to amend is appropriate here because Finjan has not yet sought leave to amend from this Court and is not clear, at this early stage in the case, that amendment would be futile.

## IV. CONCLUSION

Cisco's motion to dismiss is GRANTED with leave to amend. Finjan must amend its pleadings, if at all, within 30 days of the entry of this order.

**IT IS SO ORDERED.**

Dated: June 7, 2017

_____
BETH LABSON FREEMAN
United States District Judge