**DUANE MORRIS LLP**
Patrick S. Salceda (CA SBN 247978)
psalceda@duanemorris.com
One Market Plaza
Spear Tower, Suite 2200
San Francisco, CA  94105
Telephone: 415.957.3000
Facsimile: 650.618.2713

**DUANE MORRIS LLP**
Joseph A. Powers (PA SBN 84590)
Admitted *Pro Hac Vice*
japowers@duanemorris.com
Jarrad M. Gunther (PA SBN 207038)
jmgunther@duanemorris.com
Admitted *Pro Hac Vice*
30 South 17th Street
Philadelphia, PA  19103
Telephone: 215.979.1000
Facsimile: 215.979.1020

**DUANE MORRIS LLP**
L. Norwood Jameson (GA SBN 003970)
Admitted *Pro Hac Vice*
wjameson@duanemorris.com
Matthew C. Gaudet (GA SBN 287759)
Admitted *Pro Hac Vice*
mcgaudet@duanemorris.com
David C. Dotson (GA SBN 138040)
Admitted *Pro Hac Vice*
dcdotson@duanemorris.com
Jennifer H. Forte (GA SBN 940650)
Admitted *Pro Hac Vice*
jhforte@duanemorris.com
1075 Peachtree Street, Ste. 2000
Atlanta, GA  30309
Telephone: 404.253.6901
Facsimile: 404.253.6901

Attorneys for Defendant
CISCO SYSTEMS, INC.

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FINJAN, INC., a Delaware Corporation,<br><br>                              Plaintiff,<br><br>        vs.<br><br>CISCO SYSTEMS, INC., a California Corporation<br><br>                              Defendant. | Case No. 5:17-cv-00072-BLF<br><br>**DEFENDANT CISCO SYSTEMS, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM FOR WILLFUL INFRINGEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**[Fed. R. Civ. P. 12(b)(6)]**<br><br>Hearing Date: December 14, 2017<br>Hearing Time: 9:00 a.m.<br>Courtroom: 3, 5th Floor<br>Judge:  Hon. Beth Labson Freeman |

## REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

## <u>TABLE OF CONTENTS</u>

**Page**

I.     INTRODUCTION .............................................................................................1

II.    FACTUAL BACKGROUND ...........................................................................3

    A.     Finjan's Original Complaint ................................................................ 3

    B.     The First Amended Complaint.............................................................. 3

    C.     The Timeline Set Forth in the SAC ..................................................... 4

III.   LEGAL STANDARDS .....................................................................................8

    A.     The Legal Standard for Rule 12(b)(6) Motions ................................... 8

    B.     The Legal Standard for Pleading Willfulness ...................................... 9

        1.     Knowledge .................................................................................. 9

        2.     Egregiousness ............................................................................. 9

IV.    FINJAN'S WILLFUL INFRINGEMENT CLAIMS SHOULD BE
      DISMISSED ...................................................................................................10

    A.     The SAC Does Not Sufficiently Plead Egregiousness for any
          Patent-in-Suit ..................................................................................... 10

        1.     The New Allegations Are Immaterial To Egregiousness ......................... 11

            a.     Finjan's Allegations Concerning 20-Year Old Events .................11

            b.     Finjan's Allegations Concerning Cisco's Investments .................11

        2.     The Combination of Allegations Cannot Support
            "Egregiousness" .......................................................................... 14

    B.     The SAC Cannot Plead the Element of Knowledge for Willful Infringement ..... 15

V.     CONCLUSION................................................................................................16

i

DEFENDANT CISCO SYSTEMS, INC.'S MOTION TO DISMISS SECOND AMENDED COMPLAINT FOR FAILURE TO STATE A
CLAIM FOR WILLFUL INFRINGEMENT; CASE NO. 5:17-CV-00072-BLF

## <u>TABLE OF AUTHORITIES</u>

<u>**Cases**</u>

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..................................................................................... 8

*CG Tech. Dev., LLC v. FanDuel, Inc.*, No. 2:16-cv-801-RCJ-VCF, 2017 WL 58572
    (D. Nev. Jan. 4, 2017) ............................................................................................................ 10

*CG Tech. Dev., LLC v. Zynga, Inc.*, No. 2:16-CV-859-RCJ-VCF, 2017 WL 662489
    (D. Nev. Feb. 17, 2017) .......................................................................................................... 10

*Cont'l Circuits LLC v. Intel Corp.*, No. CV16-2026 PHX DGC, 2017 WL 2651709
    (D. Ariz. June 19, 2017).................................................................................................10, 14-15

*Cont'l Circuits LLC v. Intel Corp.*, No. CV16-2026 PHX DGC, 2017 WL 679116
    (D. Ariz. Feb. 21, 2017) .......................................................................................................... 10

*Grecia v. VUDU, Inc.*, No. C-14-0775-EMC, 2015 WL 538486
    (N.D. Cal. Feb. 9, 2015).......................................................................................................... 6, 9

*Halo Electronics Inc. v. Pulse Electronics, Inc.*, 136 S.Ct. 1923 (2016)................................ 2-3, 9-10

*InterMetro Indus. Corp. v. Capsa Sols., LLC*, 50 F. Supp. 3d 657 (M.D. Pa. 2014)........................ 14

*Johnstech International Corp. v. JF Technology Berhad*, No. 14-CV-02864-JD,
    2015 WL 2062223 (N.D. Cal. May 1, 2015) ........................................................................ 12

*Lamont v. Time Warner, Inc.*, No. CV 12-8030-CAS VBKX,
    2012 WL 5248061 (C.D. Cal. Oct. 19, 2012)...................................................................... 6

*McRO, Inc. v. Namco Bandai Games Am., Inc.*, 23 F. Supp. 3d 1113 (C.D. Cal. 2013).................... 8

*Nanosys, Inc. v. QD Vision, Inc.*, No. 16-cv-01957-YGR, 2017 WL 35511
    (N.D. Cal. Jan. 4, 2017) .......................................................................................................... 10

*OpenTV, Inc. v. Apple, Inc.*, No. 14-CV-01622-HSG, 2015 WL 1535328
    (N.D. Cal. Apr. 6, 2015) ................................................................................................9, 13, 16

*Princeton Digital Image Corp. v. Ubisoft Entm't SA*, No. CV 13-335-LPS-CJB,
    2016 WL 6594076 (D. Del. Nov. 4, 2016) ........................................................................... 10

*Radware, Ltd. v. F5 Networks, Inc.*, Case No. 5:13-cv-02024-RMW,
    2016 WL 4427490 (N.D. Cal. August 22, 2016)................................................................. 13

*Sealant Systems Intern., Inc. v. TEK Global*, No. 11-CV-1649 PSG, 2012 WL 13662
    (N.D. Cal. Jan. 4, 2012) .......................................................................................................9, 16

*Varian Med. Sys., Inc. v. Elekta AB*, No. 15–871, 2016 WL 3748772
    (D. Del. July 12, 2016)............................................................................................................ 10

ii

<small>Defendant Cisco Systems, Inc.'s Motion to Dismiss Second Amended Complaint For Failure to State a
Claim for Willful Infringement; Case No. 5:17-cv-00072-BLF</small>

*Vasudevan Software, Inc. v. TIBCO Software Inc.*, No. C 11-06638 RS,
2012 WL 1831543 (N.D. Cal. May 18, 2012) ............................................................... 15

*VIA Techs., Inc. v. ASUS Computer Int'l*, No. 14-CV-03586-BLF, 2015 WL 3809382
(N.D. Cal. June 18, 2015) ............................................................... 16

*Windy City Innovations, LLC v. Microsoft Corp.*, 193 F. Supp. 3d 1109
(N.D. Cal. 2016)............................................................... 8

## Statutes

35 U.S.C. §§ 101, *et seq*............................................................... 1

## Other Authorities

Fed. R. Civ. P. 8 ............................................................... 1

Fed. R. Civ. P. 12(b)(6)............................................................... 1-2, 8, 10

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on December 14, 2017 at 9:00 a.m., in Courtroom 3, 5th Floor, United States District Court for the Northern District of California, San Jose Courthouse, 280 South 1st Street, San Jose, CA 95113, Defendant Cisco Systems, Inc. ("Cisco") shall and hereby does move for an order dismissing with prejudice the claims of willful infringement in the Second Amended Complaint ("SAC") filed by Plaintiff Finjan, Inc. ("Finjan").  This motion is supported by the following Memorandum of Points and Authorities, the Declaration of Patrick S. Salceda, Cisco's Request for Judicial Notice filed concurrently herewith, and such other written or oral argument as may be presented at or before the time this motion is heard by the Court.

**STATEMENT OF RELIEF REQUESTED**

Defendant Cisco Systems, Inc. ("Cisco") seeks an order dismissing with prejudice Finjan's willful infringement allegations in the SAC pursuant to Rules 8 and 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim for willful infringement.

**STATEMENT OF ISSUES TO BE DECIDED**

Whether Finjan has again failed to state a claim under the Patent Laws of the United States, 35 U.S.C. §§ 101, *et seq.*, for willful infringement because the SAC fails to allege facts sufficient to show Cisco's willful infringement of U.S. Patent Nos. 6,154,844 ("the '844 Patent"), 6,804,780 ("the '780 Patent"), 7,647,633 ("the '633 Patent"), 8,141,154 ("the '154 Patent"), and 8,677,494 ("the '494 Patent") (collectively "Patents-in-Suit").

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

In the Court's Order dated June 6, 2017 ("Order"), the Court granted Cisco's motion to dismiss the willfulness claims in Finjan's First Amended Complaint ("FAC").  The Order identified the following two deficiencies in the FAC:

- "First, the FAC does not contain factual allegations that would enable the Court to plausibly conclude that Cisco had pre-suit knowledge of any of the Asserted Patents. . . .  Further, even if the Court were to try to circumstantially infer that Cisco had knowledge of the Asserted Patents from it alleged awareness of Finjan's 'patent portfolio and patented technology,' there are not enough factual allegations to make this plausible."  (Order at 6).

1

- "Second, even if Finjan had adequately alleged that Cisco had pre-suit knowledge of the Asserted Patents, dismissal would also be warranted because the FAC does not contain sufficient factual allegations to make it plausible that Cisco engaged in 'egregious' conduct that would warrant enhanced damages under *Halo*. . . . Finjan makes no specific factual allegations about Cisco's subjective intent, or any other aspects of Cisco's behavior that would suggest its behavior was 'egregious.'" (Order at 7).

As to the first deficiency regarding lack of pre-suit knowledge, Finjan's SAC again relies on the same interactions between Cisco and Finjan that the Court previously deemed insufficient, bolstered by citations to SEC disclosures where the all of Cisco's patents are referenced as part of a general identification of its patent portfolio and enforcement activity.   Simply put, these new allegations fare no better than Finjan's prior attempt.

As to the second deficiency regarding Finjan's lack of plausible allegations of "'egregious' conduct," the SAC again fails to allege that Cisco has acted egregiously with respect to Finjan and any of the Patents-in-Suit.  Instead, Finjan's allegations regarding egregiousness rest upon the implausible characterization that Finjan and Cisco had a "relationship of trust and confidence" arising from Cisco's passive stock investment in Finjan years earlier.  Other than being dressed up with more verbiage, the allegations about Cisco's interactions with Finjan are no different than what Finjan alleged in its First Amended Complaint.  Finjan's generalized characterizations are thus irrelevant; determination of a Rule 12(b)(6) motion turns on the specific facts alleged in a complaint, not on characterizations, and Finjan is essentially repeating the same factual interactions that it previously alleged (and that the Court previously rejected).  In that regard, the best Finjan can do is to allege that: (i) as a result of Cisco's investment in Finjan in 2004 and 2008, Cisco was provided with documents listing Finjan's patent portfolio, which  included reference two of the Patents-in-Suit more than 9 years before Finjan sued Cisco; and (ii) in 2014, Finjan published its Annual (10-K) and Quarterly (10-Q) Reports that made reference to the other three Patents-in-Suit as part of its discussion of its patent portfolio and enforcement activities.  These allegations might have marginal relevance to the "pre-suit knowledge" hurdle (though they remain deficient even there), but are not the type of allegation from which the Court could plausibly conclude that Cisco's behavior was "egregious."

2

DEFENDANT CISCO SYSTEMS, INC.'S MOTION TO DISMISS SECOND AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM FOR WILLFUL INFRINGEMENT; CASE NO. 5:17-CV-00072-BLF

Finjan has now been given three opportunities to allege specific facts that, if true, could plausibly satisfy the *Halo* test for "egregious" conduct required as an element of willfulness. Its failure to do so should therefore result in a dismissal of its willfulness allegations without leave to amend.

## II.   FACTUAL BACKGROUND

### A.   Finjan's Original Complaint

Like Finjan's original Complaint (filed January 6, 2017), Finjan's SAC accuses Cisco of willful infringement of the five Patents-in-Suit. As recounted in the Court's Order, the original Complaint (unlike the FAC and the instant SAC) based Finjan's claim of willfulness exclusively on communications that occurred directly between Cisco and Finjan that occurred in 2014 and later. (*See* Order at 1-2; *see also* Dkt. No. 1 ("Original Complaint"), at ¶¶ 57, 58, 72, 73, 88, 89, 103, 104, 114, 115). However, these communications occurred pursuant to an NDA that expressly prohibited exactly what Finjan later did in its original Complaint: relying on these confidential communications to assert a willfulness claim. (*See* Order, at 2; *see also* Dkt. Nos. 1, 26). This resulted in Cisco counterclaiming for breach of the NDA. (*See* Dkt. No. 24).

### B.   The First Amended Complaint

On March 27, 2017, Finjan filed its FAC, which removed references to the parties' 2014 licensing discussions and the parties' NDA. (Dkt. No. 26). On April 26, 2017, Cisco responded by filing a motion to dismiss the willfulness allegations. (Dkt. No. 33).

On June 7, 2017, the Court granted Cisco's motion, finding that "because Finjan has failed to make sufficient factual allegations that it [Cisco] had pre-suit knowledge of the Asserted Patents or that Cisco's behavior was 'egregious . . . beyond typical infringement,' it [Finjan] has failed to state a claim for willful infringement." (Order at 7). The Court summarized the allegations from the FAC as follows:

> The FAC alleges four major touchpoints between the companies since 2000, the year that the earliest of the Asserted Patents issued: (1) Cisco's "multiple substantial investments . . . beginning as early as 2004;" (2) "Cisco ha[ving] an observer attend Finjan's board of director meetings;" (3) "Cisco . . . attend[ing] presentations by Finjan in which Finjan discussed its issued and pending patents and its patented technology;" and (4) Cisco's owning Finjan stock since it became a publicly traded company in 2013.

3

DEFENDANT CISCO SYSTEMS, INC.'S MOTION TO DISMISS SECOND AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM FOR WILLFUL INFRINGEMENT; CASE NO. 5:17-CV-00072-BLF

1   (Order at 6).  The Court noted that the FAC's allegations failed, in part because "it is hard to imagine

2   (even construing these allegations in the light most favorable to Finjan) that any of these events would

3   lend themselves to detailed discussions about individual patents, such that Cisco could have gained

4   knowledge of the specific Asserted Patents."  (*Id.* at 6-7).  Beyond this, the Court further found that

5   these "touchpoints" failed to provide the factual foundation to make any allegations regarding

6   egregious conduct by Cisco rise to the level of plausibility, particularly considering that (according to

7   the FAC) the allegedly infringing products were independently developed by a company (Sourcefire)

8   that Cisco acquired.  (Order at 6).

9   **C.     The Timeline Set Forth in the SAC**

10          The allegations in the SAC primarily rely on the same "four major touchpoints" summarized

11  by the Court in the Order.  The SAC attempts to re-characterize those same touchpoints by implausibly

12  pleading that this amounts to a 20-year relationship of "trust and collaboration" that somehow

13  translates into notice of the patents and egregious misconduct by Cisco.  (*See* SAC at ¶¶ 122, 136).

14  Finjan's re-characterization (and added verbiage) of these same touchpoints does not make the SAC

15  materially different from the FAC.  As before, the SAC fails to allege facts regarding any "detailed

16  discussion about individual patents" between Cisco and Finjan, nor does the SAC allege that there

17  were any communications relating to the Cisco accused products, let alone any conduct by Cisco that

18  would be egregious.  In what is largely a repeat of the FAC, the timeline below demonstrates that the

19  allegations in the SAC occur in the same sequence as before and without material change.

20          <u>Late 1990s</u>:  Finjan and Cisco entered into an "original equipment manufacturing agreement

21  that allowed Cisco to incorporate Finjan software into Cisco's products."  (SAC at ¶¶ 47, 64, 82, 101,

22  119, 133).  At that time, none of the five Patents-in-Suit had issued.  (*Id.* at ¶¶ 9, 12, 15, 18, 21).  The

23  SAC does not allege that this OEM agreement has any connection whatsoever to the Cisco products

24  now being accused of infringement.  Instead, as pled in the SAC, Finjan alleges that the Patents-in-

25  Suit are infringed by product lines that Cisco acquired many years later.  (*Id.* at ¶¶ 51, 66, 84, 103,

26  121, 135).  This allegation is a repeat of same allegation in the FAC.  (*See id*; *compare* with FAC at

27  ¶¶ 9, 57, 72, 88, 103, 114).

28

4

Defendant Cisco Systems, Inc.'s Motion to Dismiss Second Amended Complaint For Failure to State a
Claim for Willful Infringement; Case No. 5:17-cv-00072-BLF

1    1997:  In a 1997 Fortune Magazine article, before any of the Patent-in-Suit had issued, Cisco

2    acknowledged that "discussions with Finjan brought it to the 'watershed decision' to include content

3    inspection in its security products," and that Cisco had "very high regard for Finjan and its

4    technology." (*Id*. at ¶¶ 47, 64, 81, 102, 119, 133).

5    November 2000:  The '844 Patent (the first Patent-in-Suit) issued.  (*Id*. at ¶ 9).

6    2004:  Cisco made an investment in Finjan, which was then an operating entity.  (*Id*. at ¶ 48).

7    Finjan and Cisco entered into a Series D Preferred Stock Purchase Agreement which allegedly listed

8    all of the patents in Finjan's patent portfolio (i.e., the dozens of patents and applications that were then

9    part of Finjan's worldwide portfolio), which included at that time the '844 Patent and the application

10   that resulted in the '780 Patent.  (SAC at ¶¶ 48, 65, 83).  The SAC makes two background points clear:

11   (1) at the time of Cisco's investment, Finjan was still an operating company (*id*. at ¶ 8); and (2) at the

12   time of the investment, only one of the Patents-in-Suit (the '844 Patent) had issued (*id*. at ¶ 9).  In

13   substance, this allegation is a repeat (using different verbiage) of the allegation in the FAC.  (*See id*;

14   *compare* with FAC at ¶¶ 57, 72, 88, 103, 114).

15   October 2004:  The '780 Patent (the second Patent-in-Suit) issued.  (*Id*. at ¶ 12).

16   2005:  The SAC alleges that "in or around 2005, Cisco had an observer, Cisco's then-Vice

17   President of Corporate Development, Yoav Samet, attend Finjan's board of director meeting during

18   which Finjan's patents, technology and business were discussed."  (*Id*. at ¶ 49, 65, 83).  As of that

19   time, only two of the five Patents-in-Suit had issued (the '844 and '780 Patents).  Other than

20   generalized references to Finjan's "patents," "technology," and "business," the SAC alleges no facts

21   concerning Finjan's board of director meetings.  Noticeably absent in the SAC is any allegation that

22   these meetings had anything to do with any connection between Cisco products and Finjan patents.

23   Again, this allegation is consistent with the same touchpoint alleged in the FAC and already addressed

24   by the Court in its previous Order.  (*See* FAC at ¶¶ 9, 57, 72, 88, 103, 114; *see also* Order at 6-7)).

25   December 2006:  Finjan gave a presentation to Cisco entitled "Introducing Finjan Vital

26   Security."  (*Id*. at ¶¶ 49, 65, 83).  The SAC alleges this presentation "discussed Finjan's patents and

27   described in detail the technology covered by the '844 and '780 Patents and Finjan's products that

28   practiced that technology."  (*Id*.)  Even in the context of a 12(b)(6) motion, the Court is allowed to

5

DEFENDANT CISCO SYSTEMS, INC.'S MOTION TO DISMISS SECOND AMENDED COMPLAINT FOR FAILURE TO STATE A
CLAIM FOR WILLFUL INFRINGEMENT; CASE NO. 5:17-CV-00072-BLF

take judicial notice of this document and review its content in assessing the sufficiency of the Complaint.[1]  Review of this material reveals that it is a 74-side presentation that has *two* slides that reference Finjan's patents, but neither of which even identify any patent by number.  Instead, these slides reference only that Finjan had "███████████████████████."  (*See* Declaration of Patrick S. Salceda in Support of Motion to Dismiss Plaintiff's Second Amended Complaint for Failure to State a Claim for Willful Infringement ("Salceda Decl."), Ex. E).  Again, this allegation is the same touchpoint (albeit with different verbiage) alleged in the FAC and addressed by the Court in its previous Order.  (*See* FAC at ¶¶ 9, 57, 72, 88, 103, 114; *see also* Order at 6-7)).

November 2008:  Cisco made another investment in Finjan (which, at the time of the investment, was still an operating company).  (SAC at ¶ 48).  Finjan alleges that Finjan and Cisco entered into a Series E Preferred Stock Purchase Agreement which also listed all of the patents in Finjan's patent portfolio, which included at that time the '844 Patent, the '780 Patent, and the application that resulted in the '633 Patent.  (SAC at ¶ 48, 65, 83, 102).  As of this date, only the '844 and '780 Patents had issued.  (*Id.* at ¶¶ 9, 12).  Again, this allegation is the same touchpoint (albeit with different verbiage) alleged in the FAC and addressed by the Court in its previous Order.  (*See* FAC at ¶¶ 9, 57, 72, 88, 103, 114; *see also* Order at 6-7)).

2009:  According to the SAC, Finjan sold off all of its operating assets and stopped competing in the marketplace.  (*Id.* at ¶ 8).  As of that point, only two of the five Patents-in-Suit had issued (the '844 and '780 Patents).  (*Id.* at ¶¶ 9, 12).  The SAC has no allegations regarding any interactions between Finjan and Cisco that post-date 2009.[2]  The lack of interactions over this 7 year period in the SAC is materially the same as before in the FAC.  (*See generally* FAC).

---

[1] More specifically, Cisco requests, in the concurrently filed Request for Judicial Notice, that the Court take judicial notice of the materials attached to the Salceda Declaration when considering Cisco's Motion to Dismiss.  Each of the items is a document referenced by Finjan in its SAC and relied upon in support of Finjan's willfulness allegations.  *See Grecia v. VUDU, Inc*., No. C-14-0775-EMC, 2015 WL 538486, at n.2 (N.D. Cal. Feb. 9, 2015).  Moreover, these materials, with the exception of Finjan's SEC 10-Q filing, were produced by Finjan in this litigation.  With respect to Finjan's 10-Q filing, that document is a public record of which the Court may take judicial notice.  *See Lamont v. Time Warner, Inc.*, No. CV 12-8030-CAS VBKX, 2012 WL 5248061, at *2 (C.D. Cal. Oct. 19, 2012) (granting judicial notice of Time Warner, Inc.'s Annual Report (Form 10–K)).

[2] The SAC, like the FAC before it, alleges that Finjan had to disappear from the marketplace because it "was bound to a non-compete and confidentiality agreement, under which it could not make or sell a competing product or disclose the existence of the non-compete clause."  (SAC at ¶ 8).  The SAC

6

DEFENDANT CISCO SYSTEMS, INC.'S MOTION TO DISMISS SECOND AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM FOR WILLFUL INFRINGEMENT; CASE NO. 5:17-CV-00072-BLF

1    January 2010:  The '633 Patent (the third Patent-in-Suit) issued.  (*Id.* at ¶ 15).

2    March 2012:  The '154 Patent (the fourth Patent-in-Suit) issued.  (*Id.* at ¶ 18).

3    2013:  Cisco acquired a company named Sourcefire, which is the source of the only products

4    accused by the SAC of infringing the two Patents-in-Suit that existed before Finjan ended its

5    interactions with Cisco by 2009.  (*Id.* at ¶ 8).[3]

6    March 14, 2014:  Finjan published its Annual Report for investors (Form 10-K).  (*Id*. at ¶ 50).

7    Of course, annual reports are published to the world at large via filing with the Securities and Exchange

8    Commission, as reflected on the first page of the document.  (Salceda Decl., Ex. A, at FINJAN-CISCO

9    123635).  The SAC alleges this Annual Report "described the '844 Patent, '780 Patent, '633 Patent

10   and '154 Patent" as well as the pending lawsuits Finjan filed against third parties for infringement.

11   (*Id.* at ¶50).  A review of the Annual Report shows that Finjan simply included a table with the

12   publication numbers, application filing date, issue date, expiration date and title of each of Finjan's 21

13   then-issued U.S. patents.  (Salceda Decl., Ex. A, at FINJAN-CISCO 123643).  With respect to the

14   description of Finjan's five then-pending lawsuits, the Annual Report provides only the name of the

15   defendant, the venue, the date the action was filed, and the patents asserted in each litigation – totaling

16   13 patents across five cases.  (*Id*. at FINJAN-CISCO 123661-62).  The Annual Report's only reference

17   to Cisco is in a separate section of the report identifying stock owners, noting that Cisco had a 7.5%

18   ownership interest in Finjan.  (*Id*. at FINJAN-CISCO 123694).  This Annual Report simply confirms

19   Cisco was a shareholder and that Finjan had a patent portfolio, which Finjan also pled in the FAC.

20   (*See* FAC at ¶¶ 9, 57, 72, 88, 103, 114).

21   March 18, 2014:  The '494 Patent (the fifth Patent-in-Suit) issued.  (SAC at ¶ 22).

22   May 8, 2014:  Finjan published its Quarterly Report (Form 10-Q).  (SAC at ¶¶ 50, 134).

23   Finjan's Quarterly Report describes Finjan's pending litigation by listing the name of the defendant,

24   the venue, the date the action was filed, and the patents asserted in the litigation.  (*See* Salceda Decl.,

25

26   again does not allege that Cisco had any knowledge of this "non-compete and confidentiality agreement" or of the reasons for Finjan's disappearance from the marketplace.  (*Id.*)

27   [3] Indeed, the only infringement allegations for four of the five Patents-in-Suit (all Patents-in-Suit except the '154 Patent) are against products that Sourcefire developed under the "AMP" rubric (which

28   also includes the TALOS allegations).  (SAC, Ex. 29; *see also* SAC at ¶¶ 58, 72, 78, 90, 96, 109, 128, 141).

7

Defendant Cisco Systems, Inc.'s Motion to Dismiss Second Amended Complaint For Failure to State a
Claim for Willful Infringement; Case No. 5:17-cv-00072-BLF

Ex. B).  The Quarterly Report updates the 21-patent chart from the Annual Report by providing a short description of the then newly-issued '494 Patent.  (*See id* at p. 15).  The Quarterly Report contains no reference to Cisco or Cisco's products.  This Quarterly Report is consistent with the facts previously alleged in the FAC that noted Cisco was a shareholder.  (*See* FAC at ¶¶ 9, 57, 72, 88, 103, 114).

## III.   LEGAL STANDARDS

### A.   The Legal Standard for Rule 12(b)(6) Motions

Pursuant to Rule 12(b)(6), a complaint may be dismissed for failure to state a claim upon which relief may be granted.  Such a dismissal is proper where, as here, there is a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  *Windy City Innovations, LLC v. Microsoft Corp.*, 193 F. Supp. 3d 1109, 1113 (N.D. Cal. 2016); *see also* Order, at 3:20-22 ("A motion to dismiss under Federal Rules of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted tests the legal sufficiency of a claim.") (internal quotations and citations omitted).  The complaint must plead "enough facts to state a claim [for] relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A Court will not assume facts not alleged, nor will it draw unwarranted inferences.  *Id.* at 679.  ("Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.").  "A claim is facially plausible when it allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  (Order at 4) (internal citation and quotation omitted).[4]

As described above, a Court can review a document referenced in the Complaint if the document is central to the claims and there is no dispute as to the authenticity of the document.  *See Grecia v. VUDU, Inc.*, 2015 WL 538486, at n.2. ("Generally, the scope of review on a motion to

---

[4] Given the burden that this election necessarily entails, claims of willfulness are particularly appropriate for early judicial management via Rule 12(b)(6) rather than waiting until a summary judgment procedure that occurs after such privilege waiver elections must typically be made.  *See, e.g., McRO, Inc. v. Namco Bandai Games Am., Inc.,* 23 F. Supp. 3d 1113, 1125 (C.D. Cal. 2013) (dismissing claim for willful infringement at the pleading stage recognizing "*Seagate* solved a knotty privilege waiver problem in part by drastically limiting the availability of willfulness claims when notice is delivered via lawsuit.").

8

DEFENDANT CISCO SYSTEMS, INC.'S MOTION TO DISMISS SECOND AMENDED COMPLAINT FOR FAILURE TO STATE A
CLAIM FOR WILLFUL INFRINGEMENT; CASE NO. 5:17-CV-00072-BLF

dismiss for failure to state a claim is limited to the complaint, however, a court may consider evidence on which the complaint necessarily relies if: '(1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion.'") (internal citation omitted).

### B.    The Legal Standard for Pleading Willfulness

As the Court described in its Order, there are two relevant requirements for Finjan to state a claim for willfulness: (1) knowledge; and (2) egregiousness.   The standards for each are set forth below.

#### 1.    Knowledge

For purposes of this motion, there are two important points about the knowledge requirement.

<u>First</u>, there can be no knowledge of a patent that does not exist yet: "To willfully infringe a patent, a patent must exist and one must have knowledge of it."  *Sealant Systems Intern., Inc. v. TEK Global*, No. 11-CV-1649 PSG, 2012 WL 13662, at *2 (N.D. Cal. Jan. 4, 2012) (quoting *State Industries, Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 1236 (Fed. Cir. 1985)).

<u>Second</u>, as the Court found previously in its Order, allegations relating to knowledge of a patent *portfolio* are not sufficient to satisfy the pleading requirement for the knowledge element of a claim for willful infringement of a specific patent-in-suit.  (*See* Order, at 6; *see also OpenTV, Inc. v. Apple, Inc.*, No. 14-CV-01622-HSG, 2015 WL 1535328, at *7 (N.D. Cal. Apr. 6, 2015) (granting in part motion to dismiss willfulness claim explaining "[t]he Court cannot infer knowledge of particular patents from knowledge of the existence of a company's entire portfolio of patents.") (emphasis in original).

#### 2.    Egregiousness

In *Halo*, the Supreme Court emphasized that the specific facts of a given case will determine whether the alleged infringement was an "egregious case[] of misconduct beyond typical infringement."  *Halo Electronics Inc. v. Pulse Electronics, Inc.*, 136 S.Ct. 1923, 1935 (2016).  For example, enhanced damages may be appropriate where the defendant acted as a "'wanton and malicious pirate' who intentionally infringes another's patent—with no doubts about its validity or any notion of a defense—for no purpose other than to steal the patentee's business." *Id*. at 1926.

9

DEFENDANT CISCO SYSTEMS, INC.'S MOTION TO DISMISS SECOND AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM FOR WILLFUL INFRINGEMENT; CASE NO. 5:17-CV-00072-BLF

1    As this Court noted, the element of egregiousness must be pled through specific facts which

2  can plausibly support a conclusion of egregiousness.  (Order at 7).[5]  Moreover, a plaintiff must allege

3  facts beyond an allegation that a defendant was aware of the patents but nonetheless continued to sell

4  an allegedly infringing product.  (*See id*; *see also Nanosys, Inc. v. QD Vision, Inc.*, No. 16-cv-01957-

5  YGR, 2017 WL 35511, at *1 (N.D. Cal. Jan. 4, 2017); *Cont'l Circuits LLC v. Intel Corp.*, No. CV16-

6  2026 PHX DGC, 2017 WL 679116, at *11 (D. Ariz. Feb. 21, 2017) (granting motion to dismiss

7  willfulness allegations noting that "Plaintiff has alleged sufficient facts to show knowledge, but not to

8  show the additional element of egregiousness").

9  **IV.    FINJAN'S WILLFUL INFRINGEMENT CLAIMS SHOULD BE DISMISSED**

10    **A.    The SAC Does Not Sufficiently Plead Egregiousness for any Patent-in-Suit**

11    The SAC's most glaring deficiency is that Finjan has not alleged any additional facts from

12  which egregiousness could be supported.  The SAC still does not allege any form of pre-suit accusation

13  of infringement relating to any Cisco product, nor any form of copying or "piracy", or anything at all

14  exceptional.  Instead, Finjan relies on the same touchpoints from its FAC but adorns them with

15  rhetoric.  Finjan's latest effort fails for the same reasons previously found by the Court, as Finjan does

16  not allege any facts from which a plausible conclusion could be reached that Cisco has engaged in

17  "egregious" conduct under the Supreme Court's standard in *Halo*.

18

19

20

---

[5] Likewise, other courts in the Ninth Circuit and beyond share the view that *Halo*'s "egregiousness"
standard must be applied to the facts and reasonable inferences set forth in the complaint and have
dismissed cases under Rule 12(b)(6) that fail to plead the requisite details.  *See, e.g., Cont'l Circuits
LLC v. Intel Corp.*, No. CV16-2026 PHX DGC, 2017 WL 2651709, at *8 (D. Ariz. June 19, 2017)
("[t]he Court continued to conclude that willfulness must be pled, and that allegations of knowledge
alone are insufficient."); *Varian Med. Sys., Inc. v. Elekta AB*, No. 15–871, 2016 WL 3748772, at *8
(D. Del. July 12, 2016) (dismissing willfulness allegation for failing to state facts showing that the
defendants' actions "actually amounted to an egregious case of infringement of the patent"); *CG Tech.
Dev., LLC v. Zynga, Inc.*, No. 2:16-CV-859-RCJ-VCF, 2017 WL 662489, at *4 (D. Nev. Feb. 17,
2017) ("Under *Halo*, Plaintiffs have failed to state a claim for willful infringement because they have
failed to allege any facts suggesting that Defendant's conduct is 'egregious . . . beyond typical
infringement.'" (quoting *Halo*, 136 S. Ct. at 1935 (alteration in original))).  *See also CG Tech. Dev.,
LLC v. FanDuel, Inc.*, No. 2:16-cv-801-RCJ-VCF, 2017 WL 58572, at *6 (D. Nev. Jan. 4, 2017)
(plaintiff must "allege some 'egregious . . . misconduct'"); *Princeton Digital Image Corp. v. Ubisoft
Entm't SA*, No. CV 13-335-LPS-CJB, 2016 WL 6594076, at *11 (D. Del. Nov. 4, 2016) ("the TAC
does not sufficiently articulate how Ubisoft SA's actions during a short, three-month period of time
amount to an 'egregious' case of infringement of the patent.").

1.      **The New Allegations Are Immaterial To Egregiousness**

Finjan largely repeats the same four "major touchpoints" that the Court previously found insufficient. (Order at 6-7.) Yet none of the new allegations remedy the deficiency noted by the Court – none suggest any "detailed discussions about individual patents," and thus none could plausibly support a conclusion of egregiousness. (*Id.*). The discussion below focuses on the new allegations in the SAC, each of which is addressed in turn.

a.      **Finjan's Allegations Concerning 20-Year Old Events**

The allegation in the SAC from this time period is a 1997 Fortune Magazine article wherein Cisco stated that "discussions with Finjan brought it to the watershed decision to include content inspection in its security products and that Cisco has very high regard for Finjan and its technology." (SAC at ¶ 47). This allegation again, however, does not pertain to any specific patents, and certainly not any of the Patents-in-Suit – none of which had even issued at the time of the publication of this article. (*Id.* at ¶¶ 9, 12, 15, 18). Nor could this article relate to any accused product, as they were (according to the SAC) acquired by Cisco from Sourcefire over a decade later. (*Id.* at ¶¶ 51, 66, 84, 103, 121, 135). Nor does Finjan allege that the inclusion of "content inspection" in any product is patented (indeed, mere content inspection was already a long-known idea). In sum, Cisco's generalized statement about Finjan, twenty years ago when the latter was an operating company in its infancy, has no bearing on whether Cisco has engaged in willful infringement of patents that had not issued at the time of the article based on products that Cisco would not acquire until 2013.

b.      **Finjan's Allegations Concerning Cisco's Investments**

Cisco's status as an investor was the driving theme of the four major touchpoints identified in the Court's Order as being insufficient. Finjan's effort to supply additional background allegations about those same touchpoints does not change the conclusion that Finjan has not pled egregiousness. The SAC's new allegations are addressed in turn below.

<u>2004 and 2008 Investment Agreements</u>. Finjan alleges that because Cisco owned stock in Finjan, it necessarily "gained knowledge of Finjan's patents as a Beneficial Owner." (SAC at ¶ 50). In particular, Finjan alleges that in 2004, Finjan and Cisco entered into a Series D Preferred Stock Purchase Agreement, which "specifically identified and described the '844 Patent and the application

11

that resulted in the '780 Patent." (SAC at ¶¶ 48, 65, 83).  Additionally, Finjan alleges that in November

2008, Finjan and Cisco entered into a Series E Preferred Stock Purchase Agreement, which

"specifically identified and described the '844 Patent, the '780 Patent, and the application that resulted

in the '633 Patent."  (*Id*. at ¶¶ 48, 65, 83, 102)

Review of those two documents makes clear that neither put Cisco on notice concerning the

scope of Finjan's patented technology, and none contained any sort of a detailed discussion (or any

discussion, for that matter) of any patent.  They do not, as Finjan suggests, provide a "description" of

Finjan's patents, but rather only ████████████████████████████████████████████████

████████████████████████████████████████████████████████████.  (*See* Salceda

Decl., Ex. D at FINJAN-CISCO 121138-50).  There is nothing materially new in these allegations to

warrant leave to amend.

<u>2005 Board Meeting</u>.  Finjan also alleges that pursuant to the Sales D Preferred Stock purchase

agreement entered into by the parties in 2004, Cisco was "authorized" to "send one non-voting

representative to all of Finjan's Board of Directors meetings" and that "in or around 2005, Cisco had

an observer, Cisco's then-Vice President of Corporate Development, Yoav Samet, attend Finjan's

board of director meetings during which Finjan's patents, technology and business were discussed."

(SAC at ¶¶ 48-49).

This allegation is materially the same as the corresponding allegation in the FAC.  (*See e.g.*,

SAC at ¶¶ 48-49; *compare with* FAC at ¶ 57).  The SAC's addition of the name of the Cisco person

who attended a 2005 Finjan board of directors meeting as an observer does not evidence egregiousness.

Again, this refers to the much earlier time frame of pre-2009 and the investment context.  The

allegation is again at the IP portfolio level at best, and is devoid of any relevant factual specificity.

Finjan does not allege that any Cisco products were referenced or that there was ever even a suggestion

that Cisco might need a license to Finjan's portfolio.[6]  Finjan's willfulness allegations remain deficient

because they amount to a generalized allegation about Finjan's patent portfolio and technology; the

---

[6] Again, these allegations pale in comparison to those found sufficient to state a claim for willful infringement.  *See e.g.*, *Johnstech International Corp. v. JF Technology Berhad*, No. 14-CV-02864-JD, 2015 WL 2062223 at *2 (N.D. Cal. May 1, 2015).

allegations do not identify any specific Finjan patent, and Finjan certainly does not tie any patent to any Cisco product or any suggestion that Cisco should license that portfolio. Such generalized, portfolio-level allegations are not sufficient to support an allegation of willful infringement. *Longitude Licensing*, 2015 WL 1143071, at *2; *OpenTV*, 2015 WL 1535328, at *7.

December 2006 Presentation. Finjan alleges that "in or around December 2006, Finjan gave a presentation to Cisco titled 'Introducing Finjan Vital Security' that discussed Finjan's patents and described in detail the technology covered by the '844 and '780 Patents and Finjan's products that practiced that technology." (SAC at ¶¶ 49, 65, 83). Again, the Court is permitted to review the document, and then determine whether the statements in that document could form a basis for a willfulness claim. The presentation is a 74-slide presentation that has just two slides related in any way to patents, and those two slides merely reference that Finjan had "█████████████████ ███████" (*See* Salceda Decl., Ex. E, at FINJAN CISCO 031359; 031361). This presentation does not identify any specific patents, and certainly does not contain a discussion of any patents. (*See generally* Salceda Decl., Ex. E). And while Finjan's product offerings are discussed, there is no reference in the presentation as to which products are Finjan's patented technology. (*See id*).

2014 SEC Filings. Finjan further cites to the fact that on March 14, 2014, Finjan Holdings, Inc. (the parent to plaintiff Finjan, Inc.), "published its Annual Report for investors, which included Cisco." (SAC at ¶ 50). As described above, that report included a chart listing Finjan's 21 then-issued U.S. patents, and a separate section on pending litigation stating the venue, defendants and the various subsets of patents that Finjan asserted, totaling 13 of Finjan's patents. (Salceda Decl., Ex. A, at FINJAN-CISCO 123643; FINJAN-CISCO 123661-62).

The filing of a public document listing patents (which are themselves listed on the Patent Office's website) and summaries of ongoing litigation (which is likewise publicly available via PACER) has never been a basis to establish notice, much less egregiousness. Indeed, the "publication" of an Annual Report should yield no more weight than a press release advising that a patent had issued. *See Radware, Ltd. v. F5 Networks, Inc.*, Case No. 5:13-cv-02024-RMW, 2016 WL 4427490, at *4 (N.D. Cal. August 22, 2016) (finding allegation that plaintiff distributed press release indicating that patent-in-suit was issued, was insufficient to support inference that defendant was aware of the patent-

13

DEFENDANT CISCO SYSTEMS, INC.'S MOTION TO DISMISS SECOND AMENDED COMPLAINT FOR FAILURE TO STATE A
CLAIM FOR WILLFUL INFRINGEMENT; CASE NO. 5:17-CV-00072-BLF

in-suit before plaintiff filed suit); *see also InterMetro Indus. Corp. v. Capsa Sols., LLC*, 50 F. Supp. 3d 657, 666 (M.D. Pa. 2014) (granting motion to dismiss willfulness allegation finding allegation that litigation was discussed in press releases and in an Atlanta Business Chronicle article, "represent[ed] a classic example of pleading 'mere possibility, not the required 'plausibility.'"). And again, even if this were enough to establish mere notice, nothing about those facts could amount to the type of behavior necessary to establish egregiousness.

Finally, Finjan alleges that "Cisco has also had knowledge of the '494 Patent since at least on or about May 8, 2014 when Finjan Holdings, Inc. published its Quarterly Report." (SAC at ¶ 50). As described above, that Quarterly Report merely updates the Annual Report. Again, Finjan alleges only broad publication of its Quarterly Report. (*See* e.g., SAC at ¶ 50). Of course, there is no discussion of any Cisco products. These allegations do not add anything material to the previous allegation that Cisco was a shareholder and Finjan has a patent portfolio, as previously alleged in the FAC. (*See* FAC at ¶¶ 9, 57, 72, 88, 103, 114).

### 2.    The Combination of Allegations Cannot Support "Egregiousness"

Based on these same sporadic interactions that were already inadequate in the FAC, Finjan now contends there was "relationship of trust and collaboration," such that Cisco's decision to acquire a company years later whose products are the source of Finjan's infringement allegations, amounts to egregious conduct. (*See* SAC at ¶¶ 52, 57, 85, 104, 122, 136). Nothing in these touchpoint facts gives rise to a plausible inference that Cisco acted egregiously with regard to any Finjan patent. Indeed, none of these touchpoints are (1) tied to any Cisco accused product, (2) make a plausible allegation that Cisco developed a product by copying Finjan, (3) that Finjan told Cisco it was infringing a patent, or (4) any other allegation from which this Court could plausibly conclude Cisco acted egregiously.

In *Cont'l. Circuits LLC v. Intel Corp.*, 2017 WL 2651709, at \*5, \*9, the Court rejected a similar attempt by the patentee to argue that "the pre-suit relationship between the parties" warranted an inference that the defendant's actions went beyond those in a typical infringement case. In *Cont.'l Circuits*, the plaintiff alleged far more than Finjan does here citing: (1) multiple meetings between Intel and Continental Circuits regarding circuit board design and reliability; (2) Intel's coordination with Continental Circuits on the Photolink product that ultimately came to embody the technology at

14

DEFENDANT CISCO SYSTEMS, INC.'S MOTION TO DISMISS SECOND AMENDED COMPLAINT FOR FAILURE TO STATE A
CLAIM FOR WILLFUL INFRINGEMENT; CASE NO. 5:17-CV-00072-BLF

issue; (3) Intel's growing relationship with co-defendant Ibiden in the late 1990s—after Ibiden acquired the technology from a former Continental Circuits employee; (4) that in 2005, a representative from Continental Circuits contacted Intel's Chief Legal Counsel informing him of several patents and the continuation patent application that led to the issuance of the patents-in-suit, enclosing a copy of the patents and application, and expressing an interest in licensing the portfolio to Intel; and (5) having been made aware of the continuation patent application that led to the issuance of the patents in suit, took steps to learn whether the continuation application led to the issued patents. *Id.* at *6.  Nonetheless, the Court found these allegations "did not create a reasonable inference that 'Defendants' actions go beyond those in a typical infringement case.'"  As such, because the plaintiff had three opportunities to plead its claims, as Finjan has had here, the Court granted the defendants' motion to dismiss without leave to amend.  *Id.* at *9.  The willfulness allegations of Finjan's SAC should suffer a similar fate.

**B.     The SAC Cannot Plead the Element of Knowledge for Willful Infringement**

For the same reasons that the Court previously found in rejecting willfulness as pled in the FAC, Finjan's allegations regarding "pre-suit knowledge" remain deficient because they remain premised on the notion that Cisco received notice of a particular patent because of its purported knowledge that Finjan had a patent portfolio.  That is simply not sufficient under the law.  *See e.g.*, *Vasudevan Software, Inc. v. TIBCO Software Inc.*, No. C 11-06638 RS, 2012 WL 1831543, at *3 (N.D. Cal. May 18, 2012) (rejecting plaintiff's suggestion that knowledge of a patent in suit may be inferred from "defendant's alleged awareness of the ′006 patent, or, more generally, 'patent portfolio' explaining "[t]he requisite knowledge of the patent allegedly infringed simply cannot be inferred from mere knowledge of other patents, even if somewhat similar.") (internal citation omitted).

And, as to the three Post-2009 Patents (*i.e.*, the three patents that did not issue until after the interactions between Finjan and Cisco ended in 2009), Finjan's allegations are even thinner for at least two reasons.

First, the Post-2009 Patents-in-Suit did not issue until *after* the occurrence of all of the Cisco/Finjan interactions that Finjan pled in the SAC as the basis to infer knowledge.  Allegations relating to communications before a patent existed cannot state a claim for willful infringement as to

15

that patent.  *Sealant Sys.,* 2012 WL 13662, at *2.  Thus, Finjan cannot state a claim for willfulness on the three Post-2009 Patents-in-Suit based on the allegations in its SAC.  Similarly, an allegation that Finjan gave notice of a pending application would be insufficient.  *See id* ("Merely providing notice that applications are pending is not sufficient because [f]iling an application is no guarantee any patent will issue and a very substantial percentage of applications never result in patents.") (alteration in original) (internal quotation marks omitted); *see also VIA Techs., Inc. v. ASUS Computer Int'l*, No. 14-CV-03586-BLF, 2015 WL 3809382, at *3 (N.D. Cal. June 18, 2015) (holding same).

Second, the SAC's allegations regarding Finjan's 2014 public statements (via filings with the SEC) show that Finjan simply identified for the public every patent in its portfolio and every pending litigation it had.[7]  Those generalized allegations are insufficient to plead knowledge of specific patents for purposes of willfulness, particularly ones that had not yet even issued.  *Longitude Licensing*, 2015 WL 1143071, at *2; *OpenTV*, 2015 WL 1535328, at *7.  Indeed, the public could just as easily search the Patent Office's website for patents or search PACER for litigation reports.  The mere fact that there are lengthy public filings disclosing an entire portfolio or an entire litigation campaign is not sufficient to constitute notice of any specific patent.

## V.    CONCLUSION

For the foregoing reasons, Cisco respectfully requests that the Court dismiss Finjan's claims for willful infringement without leave to amend.

---

[7] For example, the SAC introduces Finjan with a sweeping allegation about the broad scope of its patent portfolio: "Finjan has been awarded, and continues to prosecute, numerous patents covering innovations in the United States and around the world resulting directly from Finjan's more than decades-long research and development efforts, supported by a dozen inventors, and over $65 million in R&D investments."  (SAC at ¶ 7).

Dated:  July 21, 2017                          Respectfully submitted,


                                               */s/ Patrick S. Salceda*
                                               Patrick S. Salceda
                                               **DUANE MORRIS LLP**
                                               One Market Plaza
                                               Spear Tower, Suite 2200
                                               San Francisco, CA  94105
                                               Telephone: 415.957.3000
                                               Facsimile: 650.618.2713
                                               Email:  psalceda@duanemorris.com

                                               L. Norwood Jameson (admitted *pro hac vice*)
                                               Email:  wjameson@duanemorris.com
                                               Matthew C. Gaudet (admitted *pro hac vice*)
                                               Email:  mcgaudet@duanemorris.com
                                               David C. Dotson (admitted *pro hac vice*)
                                               Email:  dcdotson@duanemorris.com
                                               Jennifer H. Forte (admitted *pro hac vice*)
                                               Email:  jhforte@duanemorris.com
                                               1075 Peachtree Street, Ste. 2000
                                               Atlanta, GA  30309
                                               Telephone: 404.253.6901
                                               Facsimile: 404.253.6901

                                               Joseph A. Powers (admitted *pro hac vice*)
                                               Email:  japowers@duanemorris.com
                                               Jarrad M. Gunther (admitted *pro hac vice*)
                                               jmgunther@duanemorris.com
                                               30 South 17th Street
                                               Philadelphia, PA  19103
                                               Telephone: 215.979.1000
                                               Facsimile: 215.979.1020

                                               *Counsel for Defendant*
                                               *Cisco Systems, Inc.*