PAUL ANDRE (State Bar No. 196585)
pandre@kramerlevin.com
LISA KOBIALKA (State Bar No. 191404)
lkobialka@kramerlevin.com
JAMES HANNAH (State Bar No. 237978)
jhannah@kramerlevin.com
KRAMER LEVIN NAFTALIS & FRANKEL LLP
990 Marsh Road
Menlo Park, CA  94025
Telephone:  (650) 752-1700
Facsimile:   (650) 752-1800

*Attorneys for Plaintiff*
FINJAN, INC.

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| FINJAN, INC., a Delaware Corporation,<br><br>               Plaintiff,<br><br>     v.<br><br>CISCO SYSTEMS, INC., a California Corporation,<br><br>               Defendant. | Case No.: 5:17-cv-00072-BLF<br><br>**PLAINTIFF FINJAN, INC.'S OPPOSITION TO DEFENDANT CISCO SYSTEMS, INC.'S MOTION TO DISMISS FINJAN'S SECOND AMENDED COMPLAINT REGARDING WILLFULNESS**<br><br>Date:     December 14, 2017<br>Time:    9:00 a.m.<br>Dept.:   Courtroom 3, 5th Floor<br>Judge:  Honorable Beth Labson Freeman |

1
2

# TABLE OF CONTENTS

3

**Page**

4

I.   INTRODUCTION ..................................................................................................... 1

5

II.  STATEMENT OF ISSUE TO BE DECIDED............................................................ 2

6

III. FACTUAL BACKGROUND .................................................................................... 2

7

    A.   Finjan Alleged in its SAC Cisco's Pre-Suit Knowledge of Each Asserted Patent ...........2

8

    B.   Finjan Alleged in its SAC Detailed Allegations of Cisco's Egregious Conduct.............6

9

IV. ARGUMENT ............................................................................................................. 8

10

    A.   The Court May Not Weigh Documents Subject to Judicial Notice To Determine

11

        Willfulness At This Early Pleading Stage .......................................................8

12

    B.   The Detailed Allegations of Cisco's Pre-Suit Knowledge of the Asserted Patents
        in Finjan's SAC Are Sufficient to Plead Willfulness .....................................11

13
14

    C.   The Detailed Allegations of Cisco's Egregious Conduct in Finjsn's SAC Are
        Sufficient to Plead Willfulness ......................................................................15

15

    D.   In the Alternative, Finjan Should Be Allowed to Amend the Complaint.......................19

16

V.   CONCLUSION......................................................................................................... 19

17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Avocet Sports Tech., Inc. v. Garmin Int'l, Inc.*,
No. C 11-04049 JW, 2012 WL 2343163 (N.D. Cal. June 5, 2012)................13

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)................................................................................9

*Blitzsafe Texas, LLC v. Volkswagen Group of Am., Inc.*,
Nos. 2:15-cv-1274-JRG-RSP, 2:15-cv-1278-JRG-RSP,
2016 WL 4778699 (E.D. Tex. Aug. 19, 2016) ......................................13

*Brodsky v. Yahoo! Inc.*,
630 F. Supp. 2d 1104 (N.D. Cal. 2009) ................................................10

*CG Tech. Dev., LLC v. FanDuel, Inc.*,
No. 2:16-CV-00801-RCJ-VCF, 2017 WL 58572 (D. Nev. Jan. 4, 2017) .......................16

*CG Tech. Dev., LLC v. Zynga, Inc.*,
No. 2:16-CV-00859-RCJ-VCF, 2017 WL 662489 (D. Nev. Feb. 17, 2017)..................16

*Conservation Force v. Salazar*,
646 F.3d 1240 (9th Cir. 2011) ............................................................8

*Cont'l Circuits LLC v. Intel Corp.*,
No. CV16-2026 PHX DGC, 2017 WL 2651709 (D. Ariz. June 19, 2017) ..................19

*Elm 3DS Innovations, LLC v. Samsung Elecs. Co.*,
No. 14-1430-LPS-CJB, 2015 WL 5725768 (D. Del. Sept. 29, 2015) ............13

*Finjan, Inc. v. ESET, LLC*,
No. 3:17-CV-0183-CAB-(BGS), 2017 WL 1063475 (S.D. Cal. Mar. 21, 2017)............13

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
136 S. Ct. 1923 (2016) ................................................................ *passim*

*Hughes v. Experian Info. Sols., Inc.*,
No. 15-CV-05118-BLF, 2016 WL 3670051 (N.D. Cal. July 11, 2016)................19

*InterMetro Indus. Corp. v. Capsa Sols., LLC*,
50 F. Supp. 3d 657 (M.D. Pa. 2014) ....................................................15

*Irori Techs., Inc. v. Luminex Corp.*,
No. 13-CV-2647-BEN (NLS), 2014 WL 769435 (S.D. Cal. Feb. 25, 2014) ................13

i

*Lamont v. Time Warner, Inc.*,
   No. CV 12-8030-CAS (VBKX, 2012) ........................................................................11

*In re LDK Solar Sec. Litig.*,
   584 F. Supp. 2d 1230 (N.D. Cal. 2008) ...................................................................10

*Longitude Licensing v. Apple, Inc.*,
   No. C-14-04275-EDL, 2015 WL 1143071 (N.D. Cal. Mar. 13, 2015) .........................14

*Max Sound Corp. v. Google, Inc.*,
   No. 5:14-CV-04412-EJD, 2015 WL 2251060 (N.D. Cal. May 13, 2015)................10, 11

*McMahon v. Take-Two Interactive Software, Inc.*,
   640 F. App'x 669 (9th Cir. 2016) .............................................................................9

*McRo, Inc. v. Namco Bandaia Games Am., Inc.*,
   23 F. Supp. 3d 1113 (C.D. Cal. 2013) ......................................................................9

*Nanosys, Inc. v. QD Vision, Inc.*,
   No. 16-CV-01957-YGR, 2016 WL 4943006 (N.D. Cal. Sept. 16, 2016) .................18, 19

*Nanosys, Inc. v. QD Vision, Inc.*,
   No. 16-CV-01957-YGR, 2017 WL 35511 (N.D. Cal. Jan. 4, 2017) ...........................18

*OpenTV, Inc. v. Apple, Inc.*,
   No. 14-cv-01622-HSG, 2015 WL 1535328 (N.D. Cal. Apr. 6, 2015) .........................14

*Oracle Am., Inc. v. Hewlett Packard Enter. Co.*,
   No. 16-CV-01393-JST, 2017 WL 635291 (N.D. Cal. Feb. 16, 2017)..........................11

*Potter Voice Techs., LLC v. Apple, Inc.*,
   24 F. Supp. 3d 882 (N.D. Cal. 2014) .................................................................9, 10, 11

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
   No. 09-CV-05235-MMC, 2017 WL 130236 (N.D. Cal. Jan. 13, 2017)........................18

*Princeton Digital Image Corp. v. Ubisoft Entm't SA*,
   No. 13-335-LPS-CJB, 2016 WL 6594076 (D. Del. Nov. 4, 2016) ..........................16, 17

*Radware, Ltd. v. A10 Networks, Inc.*,
   No. C-13-02021-RMW, 2014 WL 61047 (N.D. Cal. Jan. 7, 2014) .......................9, 10, 14

*Radware, Ltd. v. F5 Networks, Inc.*,
   No. 5:13-CV-02024-RMW, 2016 WL 4427490 (N.D. Cal. Aug. 22, 2016)..................15

*Raytheon Co. v. Cray, Inc.*,
   No. 2:16-CV-00423-JRG-RSP, 2017 WL 1362700 (E.D. Tex. Mar. 13, 2017) ...........13

ii

*Seoul Laser Dieboard Sys. Co. v. Serviform, S.r.l.*,
   957 F. Supp. 2d 1189 (S.D. Cal. 2013)...................................................................................13

*Spectrum Pharm., Inc v. Sandoz Inc.*,
   No. 2:12-CV-00111-GMN-NJK, 2013 WL 5492667 (D. Nev. Sept. 30, 2013) ..............................10

*Traffic Info., LLC v. Yahoo! Inc.*,
   No. 2:09-CV-246-TJW-CE, 2010 WL 2545500 (E.D. Tex. Apr. 13, 2010) ......................................9

*Varian Med. Sys., Inc. v. Elekta AB*,
   No. CV 15-871-LPS, 2016 WL 3748772 (D. Del. July 12, 2016) ...................................................16

*Windy City Innovations, LLC v. Microsoft Corp.*,
   193 F. Supp. 3d 1109 (N.D. Cal. 2016) ........................................................................................19

FINJAN'S OPPOSITION TO CISCO'S MOTION TO DISMISS      Case No. 5:17-cv-00072-BLF
FINJAN'S SECOND AMENDED COMPLAINT RE: WILLFULNESS

I.     INTRODUCTION

Finjan's allegations in its Second Amended Complaint (Dkt. No. 55, the "SAC") are more than sufficient to plead a claim for willful infringement.  Finjan alleged detailed facts supporting Cisco's knowledge of the Asserted Patents and egregious willful infringement.  In doing so, Finjan specifically addressed each deficiency identified in the Court's prior order, which permitted Finjan to amend its willfulness allegations (Dkt. No. 44, the "Order").

For pre-suit knowledge of the Asserted Patents, Finjan alleged in its SAC specifically when and how Cisco gained pre-suit knowledge of *each* individual Asserted Patent—not simply knowledge of a patent portfolio broadly as Cisco falsely claims in its Motion.  In fact, Finjan's SAC even referenced specific documents Finjan produced in this litigation that indisputably provided notice to Cisco by specifically identifying and describing each particular Asserted Patent.  The Court may take judicial notice of these documents to confirm their existence and that they refer to and describe the Asserted Patents.  At the same, contrary to Cisco's suggestion throughout its Motion, this judicial notice may not be used to convert this motion to dismiss into a summary judgment motion of the ultimate determination of Finjan's willfulness claim.  Rather, to properly *plead* willfulness, Finjan need only plead direct infringement coupled with "the barest factual assertion of knowledge" to avoid dismissal.  Finjan's SAC readily satisfies this standard.

For egregiousness, Finjan in its SAC alleged various facts showing the depth and extent of the collaborative partnership between Finjan and Cisco for over twenty years, Cisco's admiration for Finjan and its technology resulting in substantial investments in Finjan since 2004, Cisco's knowledge of each Asserted Patent and Cisco's ultimate decision to betray its trust with Finjan by knowingly acquiring and selling technology that infringed Finjan's patents.  Finjan laid out in detail these factual allegations regarding Cisco's specific intent and willful conduct for each Asserted Patent.  These allegations regarding Cisco's egregious conduct amply satisfy the flexible standard adopted by the Supreme Court in *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1933-35 (2016), which considers the totality of the circumstances as opposed to rigid criteria for proving willfulness and enhanced damages.

FINJAN'S OPPOSITION TO CISCO'S MOTION TO DISMISS          Case No. 5:17-cv-00072-BLF
FINJAN'S SECOND AMENDED COMPLAINT RE: WILLFULNESS

For the reasons explained further below, Cisco's motion should be denied.

**II.    STATEMENT OF ISSUE TO BE DECIDED**

Whether Finjan's SAC alleges facts sufficient to state a claim for willful infringement.

**III.   FACTUAL BACKGROUND**

Finjan filed its First Amended Complaint ("FAC") on March 27, 2017 (Dkt. No. 26), in which Finjan pled a cause of action for Cisco's willful infringement of the Asserted Patents.[1]  The Court dismissed without prejudice Finjan's claim for willful infringement as set forth in Finjan's FAC on the grounds that Finjan failed to plead sufficient factual allegations that Cisco had pre-suit knowledge of the Asserted Patents and only included a conclusory allegation that Cisco's behavior was egregious. Order at 6-7.  The Court granted Finjan leave to amend its pleading.  *Id.*  Finjan in its SAC corrected each deficiency identified by the Court by (i) specifically alleging separately for each Asserted Patent the date and manner by which Cisco obtained pre-suit knowledge; and (ii) including factual allegations demonstrating Cisco's subjective intent and egregious conduct in infringing the Asserted Patents.

**A.    Finjan Alleged in its SAC Cisco's Pre-Suit Knowledge of Each Asserted Patent**

In finding Finjan's allegations regarding Cisco's pre-suit knowledge of the Asserted Patents insufficient in the FAC, the Court stated that Finjan's FAC alleged Cisco's general knowledge of

---

[1] Finjan's FAC reflects amendments to Finjan's factual allegations in support of its willfulness claim. In its original complaint, Finjan included allegations based in part on certain discussions between Finjan and Cisco that occurred after the parties entered into a Non-Disclosure Agreement in 2014 (the "NDA").  Dkt. No. 1 at ¶ 9.  On March 6, 2017, Cisco filed its Answer and Counterclaims against Finjan, alleging, *inter alia*, a counterclaim for "breach of contract," claiming that Finjan's reliance on these discussions violated the NDA.  Dkt. No. 24 at 19-21.  However, this counterclaim did not state a plausible claim for relief because the NDA only restricted use of "Proprietary Information," and Finjan did not include any "Proprietary Information" in its complaint.  For this reason, Finjan intended to seek to dismiss Cisco's breach of contract counterclaim under Rule 12(b)(6).  Dkt. No. 35-1, Declaration of Benu Wells in Support of Finjan's Opposition to Cisco's Motion to Dismiss, ¶ 2.  During the parties' meet and confer in advance of Finjan's anticipated motion to dismiss, it became apparent that the parties' dispute regarding the counterclaim could be resolved if Finjan provided different instances of notice to Cisco of Finjan's patents, as opposed to those based on discussions following the NDA.  *Id.* Thus, while Finjan disputed Cisco's breach of contract claim, Finjan had various bases for its willfulness claim not limited to these discussions, and thus Finjan was willing to amend its complaint to reflect these other bases and avoid burdening the Court with a dispute over Cisco's counterclaim.  *Id.* Accordingly, on March 27, 2017, Finjan filed the FAC removing all references to the NDA.

FINJAN'S OPPOSITION TO CISCO'S MOTION TO DISMISS          Case No. 5:17-cv-00072-BLF
FINJAN'S SECOND AMENDED COMPLAINT RE: WILLFULNESS

Finjan's patent portfolio, but failed to either tie that general knowledge to the Asserted Patents or to allege that Cisco specifically learned of the Asserted Patents. Order at 6. The Court also found that Finjan did not sufficiently include "the content of information exchanged" or the "dates" for the interactions that would give rise to Cisco's knowledge. *Id.* In light of the Court's ruling, Finjan in its SAC specifically alleged separately for each Asserted Patent the date and the content of the information that Cisco received by which Cisco obtained pre-suit knowledge. Finjan also went a step further by supporting its factual allegations with reference to specific documents, which Finjan produced to Cisco, that confirm each of Finjan's allegations regarding Cisco's knowledge of each Asserted Patent.

In particular, Finjan alleged that Cisco knew of the '844 Patent and Finjan's pending application for the '780 Patent as early as June 2, 2004. SAC at ¶¶ 48, 65, and 83. Finjan supported this allegation by referencing a Series D Preferred Stock Purchase Agreement (the "Series D Stock Agreement") executed by the parties on that date. *Id.* As Finjan alleged in the SAC, this Series D Stock Agreement specifically identified and described the '844 Patent and the application that resulted in the '780 Patent. SAC at ¶¶ 48, 65 and 83; Dkt. No. 56-6, Declaration of Patrick S. Salceda in Support of Cisco's Motion to Dismiss ("Salceda Decl."), Ex. C at ¶ 2.10.[2] The '844 Patent issued on November 28, 2000 (SAC at ¶ 9; Dkt. No. 55-1 at 4 (Ex. 1 to SAC)), and Finjan filed the patent application for the '780 Patent in March 2000, which issued in October 2004 (SAC at ¶ 12; Dkt. No. 55-2 at 2 (Ex. 2 to SAC)). Thus, Finjan adequately alleged that Cisco had knowledge of the '844 Patent and the application for the '780 Patent as early as June 2, 2004.

Finjan further alleged that Cisco had knowledge by November 14, 2008 of the '844 and '780 Patents, as well as the application that led to the '633 Patent, based on the parties' execution of a Series

---

[2] The version of the Series D Stock Purchase Agreement Finjan produced does not include the Schedule of Exceptions. However, because the '844 Patent issued on November 28, 2000, and the '780 Patent application was filed in March 2000, the Schedule of Exceptions would have included both the '844 Patent and the '780 Patent application. Finjan will endeavor during discovery to locate a complete copy of the Schedule D Stock Purchase Agreement, including all schedules.

FINJAN'S OPPOSITION TO CISCO'S MOTION TO DISMISS      Case No. 5:17-cv-00072-BLF
FINJAN'S SECOND AMENDED COMPLAINT RE: WILLFULNESS

E Stock Purchase Agreement (the "Series E Stock Agreement") on that date.  SAC at ¶¶ 48, 65, 83 and 102.  Again, the Series E Stock Agreement specifically identified and described the '844 Patent (Dkt. No. 56-8, Salceda Decl., Ex. D at FINJAN-CISCO 121138), the '780 Patent (*id.* at FINJAN-CISCO 121139) and the patent application for the '633 Patent, i.e., patent application 11/159,455 (*id.* at FINJAN-CISCO 121143; *see also* Dkt. No. 55-3 at 2 (Ex. 3 to SAC)).  Finjan filed the application for the '633 Patent in June 2005, which issued as the '633 Patent in January 2010.  *Id.*  Thus, Finjan adequately alleged that Cisco had knowledge of the '844 and '780 Patents and the application for the '633 Patent as early as November 14, 2008.

Finjan alleged that Cisco had knowledge of the '633 and '154 Patents (as well as the '844 and '780 Patents) since at least on or about March 14, 2014, when Finjan Holdings, Inc. published its Annual Report for investors, which included Cisco.  SAC at ¶¶ 50, 65, 83, 102, and 120.  Finjan alleged Cisco has been a beneficial owner of Finjan Holdings, Inc.'s common stock, as well as holding voting power, since at least June 2013 when Finjan became a public company.  *Id.*  It is undisputed that the Annual Report (i) specifically identifies the asserted '844, '780, 633 and '154 Patents (Dkt. No. 57-2 at FINJAN-CISCO 123642-43); (ii) described each legal proceeding in which Finjan asserted the '844, '780, 633 and '154 Patents (*id.* at FINJAN-CISCO 123661; FINJAN-CISCO 123722); and (iii) confirms Cisco's 7.5% ownership interest in Finjan (*id.* at FINJAN-CISCO 123694).  Thus, Finjan adequately alleged that Cisco had knowledge of the '844, '780, '633 and '154 Patents by March 14, 2014.

Finjan alleged that Cisco had knowledge of the '494 Patent (as well as the '844, '780, '633, and '154 Patents) since at least on or about May 8, 2014, when Finjan Holdings, Inc. published its Quarterly Report for investors, which included Cisco.  SAC at ¶¶ 50 and 134.  In addition to describing Cisco's investment in Finjan, Finjan alleged that the Quarterly Report "specifically identified and described the pending lawsuits Finjan had filed against third parties for infringement of the '494 Patent and described the '494 Patent as follows:

On March 18, 2014, our subsidiary, Finjan, was issued a new U.S. patent (8,677,494) expiring in 2017 (the "494 Patent").  This patent relates to a

FINJAN'S OPPOSITION TO CISCO'S MOTION TO DISMISS      Case No. 5:17-cv-00072-BLF
FINJAN'S SECOND AMENDED COMPLAINT RE: WILLFULNESS

proprietary malicious mobile code runtime monitoring systems and methods, designed to address potential network security threats through better recognition of malicious code segments passing through Internet infrastructure and networks to endpoint devices.  The techniques described in the '494 Patent cover protection systems and methods offering security for one or more personal computers and/or other intermittently or persistently network accessible devices or processes.  Specifically, the inventive aspects of the patent cover various defenses from undesirable or otherwise malicious operations of Java TN applets, ActiveX™ controls, JavaScript™ scripts, Visual Basic scripts, add-ins, and downloaded/uploaded programs which are often downloaded by users without considering the inherent security risks."

Dkt. No. 57-3, Salceda Decl., Ex. B at 20.  Thus, Finjan adequately alleged that Cisco had knowledge of the '844, '780, '633, '154 and '494 Patents by May 8, 2014.

In addition to the foregoing, Finjan included in the SAC further factual allegations of Cisco's knowledge of the Asserted Patents.  For example, Finjan alleged Cisco had pre-suit knowledge of the '844 and '780 Patents based on a December 2006 presentation Finjan gave to Cisco.  SAC at ¶ 49.  Finjan's presentation to Cisco discussed Finjan's patents and patent applications and described in detail the technology covered by the '844 and '780 Patents.  *Id.*  Indeed, the title of this presentation is "Introducing Finjan Vital Security," which is the product that Finjan previously produced and sold that practiced claims of the '844, '780 and '633 Patents.  Declaration of Benu Wells in Support of Finjan's Opposition ("Wells Decl.") filed herewith, Ex. 1, Finjan's Infringement Contentions at 9.  Thus, contrary to Cisco's mischaracterization (Dkt. No. 56-4, Cisco's Notice of Motion and Motion to Dismiss SAC ("Cisco Br.") at 5-6), this presentation contains seventy-four pages detailing Finjan's technology and products, which Finjan explicitly explained to Cisco was covered by its patents.  *See, e.g.*, Dkt. No. 56-10, Salcedo Decl., Ex. E at FINJAN-CISCO 031359 (describing Finjan's technology and number of issued and pending patents); *id.* at FINJAN-CISCO 031360 (describing Finjan's patented behavior-based detection technology); *id.* at FINJAN-CISCO 031361 (detailing Finjan's strong security related intellectual property and referencing the number of Finjan's issued and pending patent applications). This presentation further supports Cisco's pre-suit knowledge of the Asserted Patents because the focus of the presentation is on describing how Finjan's patented technology complemented Cisco's business.  *See, e.g.*, *id.* at FINJAN-CISCO 031367-031388.

FINJAN'S OPPOSITION TO CISCO'S MOTION TO DISMISS          Case No. 5:17-cv-00072-BLF
FINJAN'S SECOND AMENDED COMPLAINT RE: WILLFULNESS

Furthermore, Finjan alleged in the SAC that beginning in or around 2005, Cisco continuously sent an observer to Finjan's board of directors meetings during which Finjan's patents, technology and business strategy were discussed.  SAC at ¶¶ 48, 49, 52, 65, 67, 83, 85, 104, 122, and 136.  This observer, Yoav Samet, had a senior position at Cisco as Cisco's Vice President of Corporate Development.  *Id.* at ¶¶ 49, 65, and 83.  This allegation supports an inference of Cisco's pre-suit knowledge of the Asserted Patents based on Cisco's financial interest as an investor in Finjan, and associated presence at Finjan board meetings during which Finjan's patents and business strategies were discussed.

Thus, Finjan's allegations in the SAC of specific dates and context of Cisco's pre-suit knowledge of each individual Asserted Patent goes far beyond alleging the "barest factual assertions" that Cisco had knowledge of the Asserted Patents, which, as explained below, is all that is required to state a claim for willfulness.

### B.    Finjan Alleged in its SAC Detailed Allegations of Cisco's Egregious Conduct

In dismissing Finjan's willful infringement claim as set forth in Finjan's FAC, the Court also found that Finjan did not include sufficient allegations regarding Cisco's egregious conduct.  The Court determined that Finjan included "no specific factual allegations about Cisco's subjective intent, or any other aspects of Cisco's behavior that would suggest its behavior was 'egregious.'"  Order at 7.  The Court stated: "The FAC simply makes the conclusory allegation that '[d]espite knowledge of Finjan's patent portfolio, Defendant has sold and continues to sell the accused products and services . . . .'"  *Id.* (citations omitted).

Importantly, the Court's analysis of Finjan's egregiousness allegations in the FAC did not address the sufficiency of any of the "four major touchpoints between the companies since 2000" in establishing Cisco's egregious conduct.  *Id.* at 6.  Rather, the entirety of the Court's analysis of these touchpoints related to whether Finjan's allegations in the FAC of the parties relationship could establish pre-suit knowledge of the Asserted Patents.  *Id.* at 6-7.  The Court based its determination that Finjan had failed to sufficiently allege egregiousness on the fact that Finjan had "simply made conclusory allegations of knowledge and infringement," which the Court found insufficient.  *Id.* at 7.

FINJAN'S OPPOSITION TO CISCO'S MOTION TO DISMISS          Case No. 5:17-cv-00072-BLF
FINJAN'S SECOND AMENDED COMPLAINT RE: WILLFULNESS

1    In light of the Court's ruling, Finjan in the SAC amended its willfulness claim to include

2    detailed factual allegations demonstrating Cisco's subjective intent and egregious conduct.  Finjan

3    alleged in detail the context of the parties' twenty-year relationship.  SAC at ¶¶ 47-53.  In particular,

4    Finjan alleged that for over two decades the parties maintained an amicable relationship and

5    consistently collaborated on cybersecurity.  *Id.* at ¶ 47.  Finjan further alleged that in the late 1990's,

6    the parties entered into an original equipment manufacturer agreement that allowed Cisco to

7    incorporate Finjan's technology into Cisco's products.  *Id.*  Cisco publicly acknowledged the value of

8    Finjan's technology in a 1997 Fortune Magazine article wherein Cisco confirmed that its "discussions

9    with Finjan brought it to the 'watershed decision' to include content inspection in its security

10   products," and that Cisco has "very high regard for Finjan and its technology."  *Id.*

11       Finjan went on to allege facts regarding each of Cisco's multiple and substantial investments in

12   Finjan, Cisco's sending a representative to all Finjan board of directors meetings, Finjan's presentation

13   to Cisco that discussed Finjan's patents and described in detail Finjan's technologies and products

14   covered by certain of the Asserted Patents, and Cisco's 7.5% beneficial ownership in Finjan.  *Id.* at

15   ¶¶ 49-50.  Finjan further alleged that despite Cisco's knowledge of Finjan's Asserted Patents and the

16   technology covered by these patents, and despite a high likelihood that its actions constituted

17   infringement of these patents, Cisco elected to undertake actions that infringed the Asserted Patents.

18   *Id.* at ¶ 51.  Specifically, Finjan alleged that Cisco acquired in or around October 2013 from

19   Sourcefire, Inc. ("SourceFire") technology that infringes each of the Asserted Patents and integrated

20   SourceFire's appliances and technology into Cisco's own product lines.  *Id.*  Finjan further alleged

21   that, at least as early as March 2012, Cisco integrated into its products Outbreak Filters, which infringe

22   the '154 Patent.  *Id.*

23       Incorporating each of these factual allegations as context supporting Cisco's willful

24   infringement, Finjan specifically alleged Cisco's egregious conduct as follows:

25            Cisco's infringement of the '844 Patent, '780 Patent, '633 Patent, '154
26            Patent and '494 Patent is egregious.  Cisco and Finjan had been in a long
             and extensive collaborative working relationship for almost twenty years
27            during which Cisco had "very high regard for Finjan and its technology."

28

                                              7

As described above, from at least as early as 2004 until 2014, Cisco gained knowledge of each of the Patents-in-Suit and the technology they cover.  Based on information obtained from Finjan concerning Finjan's patents and technology, Cisco continuously invested in Finjan since at least as early as 2004.  Finjan and Cisco maintained an amicable and collaborative relationship over the course of these years, in which Cisco's representative even attended multiple Finjan board meetings where Finjan's information, including its patents, technology and business strategy, was discussed.  As such, Cisco recognized and valued Finjan's patents, including the '844 Patent, '780 Patent, '633 Patent, '154 Patent and '494 Patent, and it desired to have this patented technology incorporated into its own products and services.  Thus, in violation of the relationship of trust and collaboration for approximately twenty years in which Cisco led Finjan to believe it was a partner, Cisco made the deliberate decision to acquire and to continue to sell products and services that it knew infringe Finjan's Patents-in-Suit.

Dkt. No. 55 at ¶¶ 52, 67, 85, 104, 122, and 136.

Finjan's factual allegations in the SAC specifically address Cisco' subjective intent  in desiring to use Finjan's patented technology in its own products and services, and egregious behavior of availing itself to board meetings and presentations regarding Finjan's patents, technologies and business strategies by holding itself out as a partner of, and significant financial investor in,  Finjan for over twenty years, only to thereafter proactively elect to infringe Finjan's Asserted Patents.  Thus, Finjan's SAC addressed the issues identified by this Court's prior ruling and is more than adequate to plead a cause of action for willful infringement.

## IV.    ARGUMENT

### A.    The Court May Not Weigh Documents Subject to Judicial Notice To Determine Willfulness At This Early Pleading Stage.

The Court should reject Cisco's improper attempt to convert this motion to dismiss into a *de facto* motion for summary judgment through Cisco's request for judicial notice of documents Finjan referred to in its SAC.  At the motion to dismiss stage, the Court's only inquiry is as to the sufficiency of Finjan's factual allegations.  Order at 3 ("A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'") (citing *Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (quotation omitted).  In analyzing the sufficiency of a party's pleading, the Court "does not undertake a full

evaluation of 'probability,' but simply asks for 'more than sheer possibility that a defendant has acted unlawfully.'" *Potter Voice Techs., LLC v. Apple, Inc.*, 24 F. Supp. 3d 882, 887 (N.D. Cal. 2014) (rejecting defendant's argument on a motion to dismiss that "go[es] to the weight of the evidence rather than the sufficiency of [the plaintiff's] allegations") (citation omitted).

"[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 546 (2007) (citation omitted). In resolving Cisco's motion to dismiss under Rule 12(b)(6), the court must accept Finjan's allegations of material fact as true and construe them in a light most favorable to Finjan. *See McMahon v. Take-Two Interactive Software, Inc.*, 640 F. App'x 669, 671 (9th Cir. 2016) (reversing the district court's decision for erring to construe plaintiff's allegations in the light most favorable to plaintiffs); *Potter Voice Techs.*, 24 F. Supp. 3d at 887 ("With all of its allegations accepted as true, [plaintiff] demonstrates more than a sheer possibility that [defendant] was aware of the asserted patent.").[3]

The Court may not weigh the sufficiency of Finjan's evidence at the pleading stage pursuant to Cisco's request for judicial notice.  A court "generally may not look beyond the four corners of the complaint in ruling on a Rule 12(b)(6) motion, with the exception of documents incorporated into the complaint by reference, and any relevant matters subject to judicial notice." *Radware, Ltd. v. A10 Networks, Inc.*, No. C-13-02021-RMW, 2014 WL 61047, at *3 (N.D. Cal. Jan. 7, 2014) (citations

---

[3] Contrary to Cisco's assertion, there is no basis for or benefit to resolving at the motion to dismiss stage the ultimate issue of whether will ultimately prevail on its willfulness claim.  Cisco Br. at 8 n.4.  The only case Cisco cites to support its argument is entirely inapposite.  *McRo, Inc. v. Namco Bandaia Games Am., Inc.*, 23 F. Supp. 3d 1113, 1125 (C.D. Cal. 2013).  The *McCro* decision addressed an issue not present here, namely whether a plaintiff must pursue a preliminary injunction when a willfulness allegations is based exclusively on post-suit knowledge. *Id.*  The district court explicitly stated: "We are not here presented with a question of whether the claim contains sufficient factual detail.  Instead, the question is whether the claim can exist under the circumstances present, where the alleged knowledge of the patent resulted only from the filing of the original complaint in the action and the plaintiff has not sought a preliminary injunction." *Id.* at 1123.  Thus, contrary to Cisco's assertions, willfulness claims are not uniquely appropriate for dismissal under Rule 12(b)(6), but must be measured under the same plausibility standard as any other claim.

omitted).  However, to the extent a court elects to take judicial notice of the existence of documents cited in a complaint, it is prohibited from making factual determinations as to the sufficiency of such evidence as to the final issues in the case.  *Id.* at *3 (taking judicial notice of figures contained in prior art references but declining to evaluate the similarity of the figures for purposes of determining knowledge of an asserted patent on a motion to dismiss); *Max Sound Corp. v. Google, Inc.,* No. 5:14-CV-04412-EJD, 2015 WL 2251060, at *4 (N.D. Cal. May 13, 2015) ("While the Court takes judicial notice of the existence of the prosecution history, it declines to take judicial notice of Defendants' interpretation of the documents."); *Brodsky v. Yahoo! Inc.*, 630 F. Supp. 2d 1104, 1111 (N.D. Cal. 2009) (a court may take judicial notice of the fact that statements were made on the dates specified, but not of the truth of the matters asserted therein); *In re LDK Solar Sec. Litig.*, 584 F. Supp. 2d 1230, 1254 (N.D. Cal. 2008) (taking judicial notice of statements made in SEC filings, but not for the truth of documents' contents).  To do so would improperly convert a motion for judicial notice into a motion for summary judgment.  *Radware*, 2014 WL 61047, at *3 (dispute regarding sufficiency of plaintiff's knowledge allegations involved "factual judgments [] better made by a jury, or at least at summary judgment upon consideration of evidence.").

Here, the Court's only concern at the Rule 12(b)(6) motion to dismiss stage is whether Finjan's SAC alleges a plausible claim for willful infringement.  Cisco cannot use its request for judicial notice as a mechanism for the Court to determine whether Finjan will ultimately prevail on its claim of willfulness based on a premature weighing of Finjan's evidence alleged in the SAC and without the benefit of discovery.   This is inconsistent with the applicable legal standard that the Court may only consider whether Finjan pled facts sufficient to state a plausible cause of action.  *Id.* at *3 (stating it would be "improper" for court to make factual conclusions based on judicially noticed documents); *Potter Voice Techs.*, 24 F. Supp. 3d at 887 (declining to consider arguments on a motion to dismiss that required weighing of evidence as opposed to analysis of sufficiency of allegations); *Spectrum Pharm., Inc v. Sandoz Inc.*, No. 2:12-CV-00111-GMN-NJK, 2013 WL 5492667, at *3 (D. Nev. Sept. 30, 2013) ("[A]t the motion to dismiss stage, the Court does not weigh the alleged facts and consider whether

Defendant will ultimately prevail on this cause of action. The Court need only determine, assuming the alleged facts as true, whether the Amended Answer establishes a plausible [defense].").

As demonstrated in the following sections, Finjan adequately plead a plausible cause of action for willfulness, including detailed allegations of Cisco's pre-suit knowledge of the Asserted Patents and egregious conduct.  The Court may properly take judicial notice of documents referenced in Finjan's SAC[4], which undisputedly confirm Finjan's allegations that Cisco had pre-suit knowledge of the Asserted Patents.  Judicial notice, however, is limited to confirming the existence of these documents and their reference to Finjan's Asserted Patents.  The Court may not at this pleading stage use Cisco's request for judicial notice to make factual determinations or weigh the evidence to finally determine Finjan's willfulness claim

### B.   The Detailed Allegations of Cisco's Pre-Suit Knowledge of the Asserted Patents in Finjan's SAC Are Sufficient to Plead Willfulness.

Cisco's motion to dismiss the SAC should be rejected outright because Finjan pled in the SAC—separately for each Asserted Patent—allegations of the specific date and manner that Cisco became aware of each Asserted Patent before this action was filed.  Specifically, Finjan alleged Cisco had knowledge of each of the Asserted Patents as follows:

- Cisco knew of the '844 Patent and Finjan's pending application for the '780 Patent as early as June 2, 2004 based on the parties' Series D Stock Agreement (SAC at ¶¶ 48, 65, and 83);

- Cisco knew of the '844 and '780 Patents, as well as the application that led to the '633 Patent, by November 14, 2008 based on the parties' Series E Stock Agreement (*id.* at ¶¶ 48, 65, 83, and 102);

---

[4] However, Finjan's presentation to Cisco and the parties' stock purchase agreements, which are not public documents and Cisco's characterization of which is subject to reasonable dispute, are not the type of the documents courts typically find proper for judicial notice.  *Oracle Am., Inc. v. Hewlett Packard Enter. Co.*, No. 16-CV-01393-JST, 2017 WL 635291, at *2 (N.D. Cal. Feb. 16, 2017) (declining to take judicial notice of deposition testimony which is not an established "fact"); *Lamont v. Time Warner, Inc.*, No. CV 12-8030-CAS (VBKX, 2012), WL 5248061, at *2 (C.D. Cal. Oct. 19, 2012) (declining to take judicial notice of non-public, uncertified or unverified documents); *Max Sound Corp.*, 2015 WL 2251060, at *4 (declining to take judicial notice of defendants' interpretation of judicially noticed documents).

1
2
- Cisco knew of the '633 and '154 Patents (as well as the '844 and '780 Patents) since at least on or about March 14, 2014, when Finjan Holdings, Inc. published its Annual Report for investors, which included Cisco (*id.* at ¶¶ 50, 65, 83, 102, and 120); and

3
4
- Cisco knew of the '494 Patent (as well as the '844, '780, '633, and '154 Patents) since at least on or about May 8, 2014, when Finjan Holdings, Inc. published its Quarterly Report for investors, which included Cisco (*id.* at ¶¶ 50 and 134).

5       As Finjan alleged in its SAC, these stock purchase agreements and investor reports specifically

6   identified and described the Asserted Patents.  To the extent these documents are subject to judicial

7   notice, it is clear that this description of the Asserted Patents included their subject matter, inventor,

8   filing date, issue date, expiration date and a description of the legal proceedings in which the patent

9   was asserted.  *See, e.g.*, Dkt. No. 57-2 at FINJAN-CISCO 123643, 123661 (annual report describing

10  the title, file date, issue date, expiration date and legal proceedings for certain Asserted Patents); Dkt.

11  No. 57-3 at 20, 27-31 (quarterly report including a description of the '494 Patent and legal proceedings

12  in which other patents were asserted); Dkt. No. 56-10, Salceda Decl., Ex. D, Series E Stock Agreement

13  at FINJAN-CISCO 031359-61 identifying the title, inventor, filing date and status for the Asserted

14  Patents).  Moreover, Finjan alleged additional facts from which Cisco's pre-suit knowledge of the

15  Asserted Patents may be inferred.  Specifically, Finjan alleged Cisco had pre-suit knowledge of the

16  '844 and '780 Patents based on a December 2006 presentation Finjan gave to Cisco, which, to the

17  extent it is subject to judicial notice, includes seventy-four slides that informed Cisco of Finjan's

18  patents, and described in detail the technology covered by the '844 and '780 Patents and Finjan's Vital

19  Security products that practiced that technology.  SAC at ¶ 49.  Finjan further alleged in the SAC that

20  beginning in or around 2005, Cisco continuously sent its Vice President of Corporate Development to

21  observe Finjan's board of directors meetings during which Finjan's patents, technology and business

22  strategy were discussed.  *Id.* at ¶¶ 48, 49, 52, 65, 67, 83, 85, 104, 122, and 136.

23       These allegations in Finjan's SAC address each deficiency raised in the Court's Order.

24  Specifically, Finjan "tie[d] [the] general knowledge of Finjan's patent portfolio to the Asserted

25  Patents" and alleged how "Cisco specifically learned of the Asserted Patents" including "the content of

26  information exchanged" and the "dates" at which it was exchanged.  Order at 6-7.  Finjan did so in the

27  SAC by providing an account of when and how Cisco obtained knowledge separately for ***each***

28

FINJAN'S OPPOSITION TO CISCO'S MOTION TO DISMISS          Case No. 5:17-cv-00072-BLF
FINJAN'S SECOND AMENDED COMPLAINT RE: WILLFULNESS

Asserted Patent, as well as the content of the information Cisco received, including Finjan's reference to documents supporting each factual allegation and other factual averments of circumstances indicative of Cisco's pre-suit knowledge.

These allegations go far beyond alleging the "barest factual assertions" that Cisco had knowledge of the Asserted Patents, which is all Finjan must do to state a claim for willfulness.  Indeed, numerous cases, including post-*Halo* cases, recognize this is all that is required to adequately plead willfulness.  *Seoul Laser Dieboard Sys. Co. v. Serviform, S.r.l.*, 957 F. Supp. 2d 1189, 1196-97 (S.D. Cal. 2013) (internal quotation and citation omitted); *see also Finjan, Inc. v. ESET, LLC*, No. 3:17-CV-0183-CAB-(BGS), 2017 WL 1063475, at *7 (S.D. Cal. Mar. 21, 2017) (denying to dismiss willful infringement claims based solely on the defendant's knowledge of the asserted patent because "[w]illfulness is measured by reference to the knowledge of the accused infringer at the time of the challenged conduct"), citing *Halo,* 136 S. Ct. at 1933; *Raytheon Co. v. Cray, Inc.,* No. 2:16-CV-00423-JRG-RSP, 2017 WL 1362700, at *5 (E.D. Tex. Mar. 13, 2017) ("Because [the plaintiff's] allegations concerning knowledge of the patents-in-suit are sufficient, a proper claim for willfulness has been made") (citation omitted)[5]; *Avocet Sports Tech., Inc. v. Garmin Int'l, Inc*., No. C 11-04049 JW, 2012 WL 2343163, at *3 (N.D. Cal. June 5, 2012) (finding "allegations make out the 'barest factual assertion' that [defendant] had knowledge of the patent at issue, which is sufficient to plead a claim for willful infringement") (citation omitted); *Elm 3DS Innovations, LLC v. Samsung Elecs. Co*., No. 14-1430-LPS-CJB, 2015 WL 5725768, at *2 (D. Del. Sept. 29, 2015) (holding that it was plausible that defendant had pre-suit knowledge based on a presentation made to defendant regarding related patents and the fact that the patent-in-suit was well known in the semiconductor industry); *Irori Techs., Inc. v. Luminex Corp*., No. 13-CV-2647-BEN (NLS), 2014 WL 769435, at *2 (S.D. Cal. Feb. 25, 2014) ("courts have denied motions to dismiss where the [plaintiff] couples an allegation of direct infringement with 'the barest factual assertion' of knowledge") (citation omitted); *Blitzsafe Texas, LLC*

---

[5] Notably, *Raytheon Co.* found that even "[p]ost-complaint knowledge is sufficient under *Halo*" to state the claims of willful infringement.  *Raytheon*, 2017 WL 1362700, at *5 (citation omitted).

*v. Volkswagen Group of Am., Inc.*, Nos. 2:15-cv-1274-JRG-RSP, 2:15-cv-1278-JRG-RSP, 2016 WL 4778699, at *6 (E.D. Tex. Aug. 19, 2016) (denying motion to dismiss willful infringement claims and finding that accused infringer's knowledge of a patent application was all that was required).

Cisco's repeated arguments that the SAC is deficient because Finjan did not allege that Cisco copied Finjan or tie its allegations to Cisco's products are red herrings.  *See, e.g.,* Cisco Br. at 4, 5, 14. Finjan is not required to allege these types of facts for willfulness, and tellingly, Cisco cites no authority that there is any such requirement.  *Id*.  Rather, the inquiry for pleading willfulness is whether Finjan pled Cisco's pre-suit knowledge ***of the Asserted Patents***, which Finjan more than adequately satisfied in the SAC.  Cisco's regurgitated argument that Finjan's willfulness allegations are premised on knowledge of a patent portfolio as opposed a particular patent also fails because it is demonstrably false.  Cisco Br. at 15.  It is simply not the case that Finjan relies on knowledge of a "patent portfolio" in the SAC—rather Finjan provides a patent-by-patent account of when and how Cisco gained knowledge of each Asserted Patent.  For the '844 and '780 Patents, Cisco provides no other argument disputing the adequacy of Finjan's allegations regarding Cisco's knowledge, and thus there can be no dispute that those allegations are sufficient.  *Id.*

For the remaining patents (i.e., the '633, '154 and '494 Patents), contrary to Cisco's unsupported assertion, Finjan's public annual and quarterly reports to the SEC provided Cisco with knowledge for purposes of willful infringement.  *Radware*, 2014 WL 61047, at *2 (finding pre-suit knowledge allegations premised, in part, on public documents sufficient to state a plausible claim for willfulness at the pleading stage).  These reports indisputably make explicit reference to and describe the Asserted Patents and provide detail regarding litigations in which Finjan asserted these patents (*see* SAC at ¶¶ 50, 65, 83, 102, 120, and 134), and they also confirm Cisco's status as an investor in Finjan. Neither of the two cases Cisco cites (*id.* at 16) support its incorrect contention that the Court should simply ignore these reports.  *See Longitude Licensing v. Apple, Inc.*, No. C-14-04275-EDL, 2015 WL 1143071, at *3 (N.D. Cal. Mar. 13, 2015) (plaintiff's knowledge allegation limited to conclusory allegation that defendant had knowledge of patent portfolio prior to lawsuit and did not allege, as Finjan did here, that publicly filed statement to investors specifically identified patents in suit);

14

*OpenTV, Inc. v. Apple, Inc.*, No. 14-cv-01622-HSG, 2015 WL 1535328, at * 7 (N.D. Cal. Apr. 6, 2015) (only allegation of pre-suit knowledge was that defendant would have knowledge of entire patent portfolio of plaintiff's parent company).

Importantly, while Cisco attempts to discount Finjan's annual and quarterly reports because they were "public," Cisco was not merely part of the general public with respect to these reports. Cisco had a unique status as an investor in Finjan for over twenty-years, and at the time of the reports, Cisco owned 7.5% of Finjan's common stock as one of just a small number of companies that invested in Finjan.  Dkt. No. 57-2, Salceda Decl, Ex. A at FINJAN-CISCO 123694.[6]  These quarterly and annual reports were distributed for the purpose of updating these investors, including Cisco, as to the status of Finjan's business.  At a minimum, it is reasonable to infer that Cisco received and reviewed these reports as Finjan's investor and therefore had knowledge of the '633, '154 and '494 Patents. Thus, the SAC sets forth ample factual allegations to support Cisco's knowledge of the Asserted Patents.

### C.   The Detailed Allegations of Cisco's Egregious Conduct in Finjsn's SAC Are Sufficient to Plead Willfulness.

Cisco's argument that Finjan failed to plead egregious conduct for purposes of willful infringement is spurious.  As this Court recognized in its Order, "under *Halo*, willlfulness is not a prerequisite to awarding enhanced damages, nor are enhanced damages required upon a finding of willfulness."  Order at 4 (citations omitted).  Rather, willful infringement typifies egregious conduct that would justify an award of enhanced damages.  *Id.* (""However, enhanced damages are generally reserved for 'egregious cases of misconduct beyond typical infringement,' such as those 'typified by

---

[6] Cisco's citation to *Radware, Ltd. v. F5 Networks, Inc.*, is inapposite because that case involved the dismissal of a willfulness claim after a jury trial, not on a motion to dismiss at the pleading stage under Rule 12(b)(6).  No. 5:13-CV-02024-RMW, 2016 WL 4427490, at *4-5 (N.D. Cal. Aug. 22, 2016) (granting judgment as a matter of law of no willful infringement after jury trial and direct testimony that no one at defendant ever reviewed a press release plaintiff relied on to establish defendant's knowledge that a patent had issued).  Similarly, *InterMetro Indus. Corp. v. Capsa Sols., LLC* does not support Cisco's argument because it is a pre-*Halo* and out-of-district decision where litigation, not the asserted patents, was discussed in press releases and an article with no allegation defendant was an investor in plaintiff, as Cisco is here.  50 F. Supp. 3d 657, 666 (M.D. Pa. 2014).

15

1   willful misconduct.'") (citation omitted).  Indeed, the Supreme Court's *Halo* decision lowered the bar

2   to prove willfulness, eliminating the requirement that the infringer must have acted despite an

3   objectively high likelihood that its actions constituted infringement of a valid patent.  *Halo*, 136 S. Ct.

4   at 1933-35.  Thus, it is sufficient to show that the risk of infringement was either known to the accused

5   infringer or so obvious that it should have been known.  *Id.*

6        The cases Cisco cites wherein a party's egregiousness allegations were found insufficient

7   (Cisco Br. at 10 n.5) are largely not controlling and do not support Cisco's argument because, unlike

8   Finjan's detailed factual allegations here, the parties in those cases merely recited the legal standard

9   followed by a conclusory statement that defendant's conduct was egregious.  *Varian Med. Sys., Inc. v.*

10  *Elekta AB*, No. CV 15-871-LPS, 2016 WL 3748772, at *8 (D. Del. July 12, 2016) ("Plaintiff does little

11  more than provide a formulaic recitation of the pre-*Halo* elements of a willful infringement claim.");

12  *CG Tech. Dev., LLC v. Zynga, Inc.*, No. 2:16-CV-00859-RCJ-VCF, 2017 WL 662489, at *4 (D. Nev.

13  Feb. 17, 2017) (plaintiff "simply made the conclusory allegations" of knowledge and awareness); *CG*

14  *Tech. Dev., LLC v. FanDuel, Inc.*, No. 2:16-CV-00801-RCJ-VCF, 2017 WL 58572, at *6 (D. Nev. Jan.

15  4, 2017) (plaintiff's conclusory statement that defendants knowledge and continued sale of infringing

16  products constitute egregious conduct is insufficient); *Princeton Digital Image Corp. v. Ubisoft Entm't*

17  *SA*, No. 13-335-LPS-CJB, 2016 WL 6594076, at *11 (D. Del. Nov. 4, 2016) (plaintiff failed to allege

18  knowledge of the asserted patent).

19       Here, Finjan went to great lengths to specifically address each issue raised in the Court's prior

20  order, and amended its willfulness claim in the SAC to include detailed factual allegations

21  demonstrating Cisco's subjective intent and egregious conduct.  Finjan first set forth numerous

22  allegations detailing the parties' twenty-year relationship, including the parties' consistent

23  collaboration on cybersecurity; the execution of an OEM agreement that allowed Cisco to incorporate

24  Finjan's technology into Cisco's products; Cisco's public acknowledgment of the value of Finjan's

25  technology; Cisco's multiple and substantial investments in Finjan; a senior Cisco representative's

26  ongoing attendance at Finjan board of directors meetings; Finjan's presentation to Cisco that discussed

27

28

FINJAN'S OPPOSITION TO CISCO'S MOTION TO DISMISS        Case No. 5:17-cv-00072-BLF
FINJAN'S SECOND AMENDED COMPLAINT RE: WILLFULNESS

Finjan's patents and described in detail Finjan's technologies and products covered by certain of the Asserted Patents; and Cisco's 7.5% beneficial ownership in Finjan.  SAC at ¶¶ 47-50.

Finjan further alleged that despite Cisco's knowledge of Finjan's Asserted Patents and the technology covered by these patents, and despite a high likelihood that its actions constituted infringement of these patents, Cisco elected to undertake actions that infringed the Asserted Patents. *Id.* at ¶ 51.  Specifically, Finjan alleged that Cisco acquired technology from SourceFire that infringes each of the Asserted Patents and integrated SourceFire's appliances and technology into Cisco's own product lines, as well as integrated into its products Outbreak Filters that infringe the '154 Patent.  *Id.*

Finjan incorporated each of these factual allegations as context supporting its specific allegation of Cisco's willful infringement and egregious conduct.  SAC at ¶¶ 52, 67, 85, 104, 122, and 136.  In particular, Finjan included factual allegations of Cisco' subjective intent recognizing the value and importance of Finjan's technology and desiring to use Finjan's patented technology in its own products and services.  Finjan alleged Cisco acted on this intent through egregious behavior, including availing itself to Finjan's board meetings and presentations regarding Finjan's patents, technologies and business strategies by holding itself out as a partner of, and significant investor in, Finjan for over twenty years, only to proactively acquire technology from third-parties and proceed to sell products that Cisco knew infringed Finjan's Asserted Patents.  Indeed, Finjan's allegations show that Cisco was benefiting from its investment in and relationship with Finjan while simultaneously knowingly violating Finjan's patent rights by selling infringing products.  Thus, Finjan's SAC addressed the issues identified by this Court's prior ruling concerning egregiousness and adequately pleads a cause of action for willful infringement.

Cisco distorts the Court's prior ruling on Finjan's willfulness allegation and, in particular, the Court's analysis of the "four major touchpoints between the companies since 2000."  Order at 6.  The Court analyzed these touchpoints in connection with its analysis of Finjan's allegations regarding Cisco's pre-suit knowledge, _not_ Finjan's allegations of egregious conduct.  *Id.*  This distinction is important because the Court never ruled, as Cisco incorrectly contends, that these touchpoints do not support Cisco's egregious conduct.  Rather, the Court found Finjan's allegation of willfulness in its

FINJAN'S OPPOSITION TO CISCO'S MOTION TO DISMISS      Case No. 5:17-cv-00072-BLF
FINJAN'S SECOND AMENDED COMPLAINT RE: WILLFULNESS

FAC insufficient because it did not address Cisco's egregious behavior at all, but consisted of a conclusory sentence that Cisco continued to sell the accused products despite knowledge of Finjan's patent portfolio.  *Id.* at 7.

Finjan cured this deficiency in its SAC by including factual allegations specifically directed toward Cisco's egregious conduct, including Cisco's knowledge of each of the Asserted Patents, the parties' two-decade long collaborative relationship, and Cisco's egregious conduct in obtaining strategic information regarding Finjan's patents, technologies and business strategies by attending Finjan's board meetings only to then turn around and violate the parties' relationship of trust and collaboration by deliberately acquiring and selling products and services that Cisco knew infringed Finjan's patents.

There is also no merit to Cisco's argument that the Court may not consider each of Finjan's allegations of egregious conduct in combination to determine whether Cisco's infringement was willful and egregious.  Cisco Br. at 14-15.  The Supreme Court in *Halo* adopted a flexible approach to determining whether a court should award enhanced damages: "As with any exercise of discretion, courts should continue to take into account the particular circumstances of each case in deciding whether to award damages, and in what amount. . . . [S]uch punishment should generally be reserved for egregious cases typified by willful misconduct."  *Id.* at 1933-34; *see also Nanosys, Inc. v. QD Vision, Inc.*, No. 16-CV-01957-YGR, 2017 WL 35511, at *1 (N.D. Cal. Jan. 4, 2017) (applying Halo's totality of circumstance approach and finding patentee's allegations of willfulness sufficient).   Courts in this District routinely find that a combination of events is sufficient for a finding of willfulness. *Nanosys, Inc. v. QD Vision, Inc.*, No. 16-CV-01957-YGR, 2016 WL 4943006, at *7 (N.D. Cal. Sept. 16, 2016) (the Court finds it should consider the totality of the allegations to determine whether a claim of willfulness is plausible.); *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, No. 09-CV-05235-MMC, 2017 WL 130236, at *3 (N.D. Cal. Jan. 13, 2017) (finding willfulness based on a combination of (1) awareness of asserted patents, (2) confirmation of validity of said patents upon reexamination, and (3) failure to perform an analysis of said patents).

1    Cisco misinterprets the single out-of-district case it relies upon to support its argument that

2    factual allegations regarding the parties' prior relationship cannot state a plausible cause of action for

3    willful infringement, namely *Cont'l Circuits LLC v. Intel Corp.*, No. CV16-2026 PHX DGC, 2017 WL

4    2651709, at *7 (D. Ariz. June 19, 2017).  Cisco Br. at 14.  In *Cont'l Circuits*, the District of Arizona

5    explicitly stated that plaintiff failed to plead ***any*** allegations regarding egregiousness, instead taking the

6    position that no such pleading is required.  *Cont'l Circuits,* 2017 WL 2651709, at *7.  The district

7    court found that plaintiff "pled no facts" regarding egregious behavior, but instead merely added the

8    word "egregious" to its conclusory allegations that defendant's conduct was willful.  *Id.* at *8.  Here,

9    as explained above, Finjan included specific factual allegations of Cisco's specific intent to infringe

10   the Asserted Patents and particular circumstances confirming Cisco's egregious conduct.  Thus, Finjan

11   has more than adequately plead allegations from which egregiousness of Cisco's actions can be found.

12          **D.       In the Alternative, Finjan Should Be Allowed to Amend the Complaint.**

13          In the event that the Court determines that Finjan did not adequately plead willful infringement,

14   Finjan requests leave to amend its Complaint to include additional allegations.  *See Nanosys*, 2016 WL

15   4943006, at *7-8 (granting leave to amend willfulness claim); *see also Windy City Innovations, LLC v.*

16   *Microsoft Corp.*, 193 F. Supp. 3d 1109, 1117 (N.D. Cal. 2016) (same); *Hughes v. Experian Info. Sols.,*

17   *Inc.*, No. 15-CV-05118-BLF, 2016 WL 3670051, at *3 (N.D. Cal. July 11, 2016) (granting party third

18   opportunity to amend complaint).  Amendment is appropriate here because, as demonstrated above,

19   Finjan established the plausibility of its claims.

20   **V.      CONCLUSION**

21          For the reasons stated above, Finjan respectfully requests that the Court deny Cisco's motion to

22   dismiss Finjan's willful infringement cause of action from the Second Amended Complaint.

23   ///

24   ///

25   ///

26

27

28

FINJAN'S OPPOSITION TO CISCO'S MOTION TO DISMISS          Case No. 5:17-cv-00072-BLF
FINJAN'S SECOND AMENDED COMPLAINT RE: WILLFULNESS

1

Respectfully submitted,

2

DATED:  August 4, 2017                    By:  */s/ Lisa Kobialka*

3                                                Paul J. Andre (State Bar. No. 196585)
                                               Lisa Kobialka (State Bar No. 191404)

4                                                James Hannah (State Bar No. 237978)
                                               KRAMER LEVIN NAFTALIS

5                                                  & FRANKEL LLP
                                               990 Marsh Road

6                                                Menlo Park, CA  94025
                                               Telephone: (650) 752-1700

7                                                Facsimile: (650) 752-1800
                                               pandre@kramerlevin.com

8                                                lkobialka@kramerlevin.com
                                               jhannah@kramerlevin.com

9

10                                               *Attorneys for Plaintiff*
                                               FINJAN, INC.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FINJAN'S OPPOSITION TO CISCO'S MOTION TO DISMISS          Case No. 5:17-cv-00072-BLF
FINJAN'S SECOND AMENDED COMPLAINT RE: WILLFULNESS