1

2

3

4          UNITED STATES DISTRICT COURT

5          NORTHERN DISTRICT OF CALIFORNIA

6               SAN JOSE DIVISION

7

8    FINJAN, INC.,                           Case No.  17-cv-00072-BLF

           Plaintiff,
9
                                             ORDER DENYING DEFENDANT
10        v.                                 CISCO SYSTEMS, INC.'S MOTION TO
                                             DISMISS WILLFUL INFRINGMENET
11   CISCO SYSTEMS, INC.,                    CLAIMS

12        Defendant.                         [Re: ECF 57]

13

14        Plaintiff Finjan, Inc. ("Finjan") brings this action against Defendant Cisco Systems, Inc.

15   ("Cisco"), alleging that Cisco infringes five patents owned by Finjan.  Before the Court is Cisco's

16   motion to dismiss the claims of willful infringement in Finjan' Second Amended Complaint.

17   Mot., ECF 57.  Having considered the briefing and oral argument of the parties, as well as the

18   governing law, the Court DENIES Cisco's motion to dismiss.

19   **I.    BACKGROUND**

20        On July 7, 2017, Finjan filed a Second Amended Complaint ("SAC") which alleges that

21   Cisco infringes five patents: U.S. Patent Nos. 6,154,844 ("the '844 patent"); 6,804,780 ("the '780

22   patent"); 7,647,633 ("the '633 patent"); 8,141,154 ("the '154 patent"); and 8,677,494 ("the '494

23   patent") (collectively, the "Asserted Patents").  SAC, ECF 55.  For each of these patents, Finjan

24   pleads that Cisco had pre-suit knowledge of the patent and has engaged in egregious behavior that

25   warrants enhanced damages based on the following allegations.

26        According to the SAC, the parties' relationship dates back over two decades.  SAC ¶¶ 47,

27   64, 82, 101, 119, 133.  In the late 1990s, Finjan and Cisco "entered into an original equipment

28   manufacturer [("OEM")] agreement that allowed Cisco to incorporate Finjan's technology into

United States District Court
Northern District of California

Cisco's products." *Id.*  Cisco "explicitly acknowledged in a 1997 Fortune Magazine article that discussions with Finjan brought it to the watershed decision to include content inspection in its security products" and that "Cisco has very high regard for Finjan and its technology." *Id.* (internal quotation marks omitted).

Finjan further alleges that Cisco began investing in Finjan as early as 2004. *Id.* ¶¶ 48, 52, 67, 85, 104, 122, 136.  In 2004, Finjan and Cisco entered into a Series D Preferred Stock Purchase Agreement, which described the '844 patent. *Id.* ¶¶ 48, 62, 83.  Around 2005, Cisco's then-Vice President of Corporate Development, Yoav Samet, attended "Finjan's board of director meetings during which Finjan's patents, technology and business were discussed." *Id.* ¶¶ 49, 65, 83.  In 2006, Finjan gave a "presentation to Cisco titled 'Introducing Finjan Vital Security' that discussed Finjan's patents and described in detail the technology covered by the '844 and '780 Patents and Finjan's products that practiced that technology." *Id.*  Subsequently, in 2008, the parties entered into a Series E Preferred Stock Purchase Agreement, which described the '844 and '780 patents. *Id.* ¶¶ 48, 65.

Cisco also allegedly has been a Beneficial Owner of Finjan, owning 7.5% of Finjan Holdings, Inc.'s common stock since at least 2013, and has gained knowledge of Finjan's patents as a Beneficial Owner. *Id.* ¶¶ 50, 65, 83.  According to the SAC, Finjan Holdings, Inc. published an Annual Report for investors around March 14, 2014. *Id.* ¶¶ 50, 65, 83, 102, 120.  The Annual Report describes the '844, '780, '633, and '154 patents and Finjan's patent infringement lawsuits against third parties. *Id.*  Finjan Holdings, Inc. also published a Quarterly Report for investors around May 8, 2014. *Id.* ¶¶ 50, 134.  That report describes the '844, '780, '633, '154, and '494 patents and Finjan's patent infringement lawsuits against third parties. *Id.*

In addition, Finjan pleads that Cisco's infringement of the Asserted Patents are egregious as exemplified in paragraphs 51 and 52 of the SAC:

> 51.   Despite the foregoing knowledge of the '844, '780, '633, '154 and '494 Patents and the technology covered by these patents, and despite a high likelihood that its actions constituted infringement of these patents, Cisco proceeded to and continued to infringe these patents. Specifically, Cisco acquired technology that infringes each of the Patents-in-Suit from Sourcefire, Inc. ("SourceFire") in or around October 2013, integrated that company's appliances and technology into its own product lines and has continued with its infringing conduct since that time.

United States District Court
Northern District of California

Also, at least as early as March 2012, Cisco integrated into its products Outbreak Filters, which infringe the '154 Patent, and has continued with its infringing conduct since.

52.   Cisco's infringement of the '844 Patent, '780 Patent, '633 Patent, '154 Patent and '494 Patent is egregious. Cisco and Finjan had been in a long and extensive collaborative working relationship for almost twenty years during which Cisco had "very high regard for Finjan and its technology." As described above, from at least as early as 2004 until 2014, Cisco gained knowledge of each of the Patents-in-Suit and the technology they cover. Based on information obtained from Finjan concerning Finjan's patents and technology, Cisco continuously invested in Finjan since at least as early as 2004. Finjan and Cisco maintained an amicable and collaborative relationship over the course of these years, in which Cisco's representative even attended multiple Finjan board meetings where Finjan's information, including its patents, technology and business strategy, was discussed. As such, Cisco recognized and valued Finjan's patents, including the '844 Patent, '780 Patent, '633 Patent, '154 Patent and '494 Patent, and it desired to have this patented technology incorporated into its own products and services. Thus, in violation of the relationship of trust and collaboration for approximately twenty years in which Cisco led Finjan to believe it was a partner, Cisco made the deliberate decision to acquire and to continue to sell products and services that it knew infringe Finjan's Patents-in-Suit.

*Id.* ¶¶ 51–52.

Finjan filed the SAC to include additional allegations, including those discussed above, in an attempt to cure the deficiencies in its First Amended Complaint ("FAC"). Previously, the Court concluded the FAC was deficient for failing to sufficiently plead that Cisco had pre-suit knowledge of the Asserted Patents or that Cisco engaged in egregious conduct which would warrant enhanced damages. Order 6–7, ECF 44.

## II.   LEGAL STANDARD

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). When determining whether a claim has been stated, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff. *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011). However, the Court need not "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citations omitted). While a complaint need not contain detailed

United States District Court
Northern District of California

United States District Court
Northern District of California

factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

The Court may generally consider exhibits attached to or incorporated by reference into the complaint and matters properly subject to judicial notice.  *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).  In support of its motion, Cisco filed a Request for Judicial Notice ("RJN") of (1) Finjan Holdings, Inc.'s Form 10-K Annual Report dated March 14, 2014, (2) Finjan Holdings, Inc.'s Form 10-Q Quarterly Report dated May 8, 2014, (3) Finjan Software, Inc. Series D Preferred Stock Purchase Agreement dated June 2, 2004, (4) Finjan Software, Inc. Series E Preferred Stock Purchase Agreement dated November 14, 2008, (5) December 2006 Presentation to Cisco titled "Introducing Vital Security," and (6) a Fortune Magazine article dated July 7, 1997.  RJN, ECF 58.  Cisco's Request is GRANTED, as the documents are not subject to reasonable dispute and the authenticity of the documents are not in dispute.  Fed. R. Evid. 201. The documents are accepted as what they represent, but any specific fact findings and legal conclusions set forth in those documents may not bind this Court.  Also, the Court does not make any factual determinations as to whether the documents are sufficient evidence to support the merits of Finjan's case.  Rather, the Court reviews the SAC's allegations and the documents as a whole to determine whether Finjan pleads a plausible claim under the standards set forth in *Twombly* and *Iqbal*.

## III.   DISCUSSION

Under 35 U.S.C. § 284, in a case of infringement, courts "may increase the damages up to three times the amount found or assessed."  Section 284 "contains no explicit limit or condition" on when a district court may award enhanced damages, but instead allows courts to "punish the full range of culpable behavior."  *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1931, 1933 (2016).  This "sort of conduct warranting enhanced damages has been variously described in our cases as willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or— indeed—characteristic of a pirate."  *Id.* at 1932.  When awarding enhanced damages, "courts

should continue to take into account the particular circumstances of each case." *Id*. at 1934. Enhanced damages are generally reserved for "egregious cases of misconduct beyond typical infringement," such as those "typified by willful misconduct." *Id*. at 1934–35.

In assessing the egregiousness of an actor's behavior, "culpability is generally measured against the knowledge of the actor at the time of the challenged conduct." *Id*. at 1933 (citation omitted). What matters is the actor's subjective state of mind at the time of the challenged conduct, not his objective reasonableness. *See id*. For this reason, "[t]he subjective willfulness of a patent infringer, intentional or knowing, may warrant enhanced damages, without regard to whether his infringement was objectively reckless." *Id*. at 1933. Courts have considered the "totality of the allegations to determine whether a claim of willfulness is plausible." *See, e.g.*, *Nanosys, Inc. v. QD Vision, Inc.*, No. 16-CV-01957, 2016 WL 4943006, at *7 (N.D. Cal. Sept. 16, 2016) ("*Nanosys I*").

In its motion to dismiss, Cisco argues that Finjan has failed to state a claim for willful infringement because the SAC fails to allege facts from which a plausible conclusion could be reached that (1) Cisco had pre-suit knowledge of the Asserted Patents and (2) Cisco engaged in "egregious" conduct under the Supreme Court's standard in *Halo*. Mot. 10–16. The Court addresses each of Cisco's argument in turn.

### A.   Pre-Suit Knowledge of the Asserted Patents

"Knowledge of the patent alleged to be willfully infringed continues to be a prerequisite to enhanced damages" after *Halo*. *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1341 (Fed. Cir. 2016) (citing *Halo*, 136 S. Ct. at 1932–33). District courts have continued to assess this requirement in evaluating the sufficiency of willfulness claims. *See, e.g.*, *Cont'l Circuits LLC v. Intel Corp.*, No. CV16-2026, 2017 WL 679116, at *11 (D. Ariz. Feb. 21, 2017) ("Plaintiff's failure to plead sufficient facts to show Intel's knowledge of the patents is fatal to its willfulness claim.

Here, the parties dispute whether the SAC sufficiently pleads that Cisco had knowledge of the Asserted Patents before the filing of this case. Cisco contends that the SAC's allegations are deficient because "they remain premised on the notion that Cisco received notice of a particular patent because of its purported knowledge that Finjan had a patent portfolio." Mot. 15. In

United States District Court
Northern District of California

particular, Cisco argues that the allegations regarding Finjan's 2014 Annual Report and Quarterly Report simply identify every patent in Finjan's portfolio and thus are not sufficient to constitute notice of any specific patent. *Id.* at 16. For support, Cisco relies on the following cases which declined to infer knowledge of the asserted patent from allegations based on the accused infringer's awareness of the patentee's patent portfolio: *CG Tech. Dev., LLC v. FanDuel, Inc.*, No. 216CV00801, 2017 WL 58572 (D. Nev. Jan. 4, 2017); *OpenTV, Inc. v. Apple, Inc.*, No. 14-CV-01622, 2015 WL 1535328 (N.D. Cal. Apr. 6, 2015); *Longitude Licensing v. Apple Inc*, No. C-14-04275, 2015 WL 1143071 (N.D. Cal. Mar. 13, 2015); *Vasudevan Software, Inc. v. TIBCO Software Inc.*, No. C 11-06638, 2012 WL 1831543 (N.D. Cal. May 18, 2012). Mot. 15–16; Opp'n 6. Finjan counters that the Annual Report and Quarterly Report describe the issue date, expiration date, and subject matter of the Asserted Patents and thus the SAC alleges pre-suit knowledge of those patents. Reply 11–15, ECF 63.

The Court agrees with Finjan that the SAC sufficiently alleges that Cisco had pre-suit knowledge of the Asserted Patents. In the cases cited by Cisco, the courts held that the complaint failed to adequately plead knowledge of the asserted patents because it alleged only the existence of the patent portfolio instead of how the accused infringer knew about the specific patents at issue. *See, e.g.*, *Longitude Licensing*, 2015 WL 1143071, at *3 ("If [the complaint alleges] that Apple had knowledge of SanDisk's patent portfolio generally, this is insufficient to allege Apple's pre-lawsuit knowledge of the specific patents-in-suit."). Unlike those cases, Finjan's SAC alleges that the Annual Report and Quarterly Report in combination specifically identify all five Asserted Patents. Indeed, the documents submitted by Cisco show that those reports describe the issue date, expiration date, and subject matter of the Asserted Patents. Ex. A to Salceda Decl., ECF 57-2; Ex. B to Salceda Decl., ECF 57-3. Thus, the SAC does not merely allege that Cisco has been aware about Finjan's general patent portfolio. Rather, the SAC alleges that Cisco, as an investor of Finjan Holdings, Inc., gained knowledge of the Asserted Patents at least through the 2014 Annual Report and Quarterly Report which were published for investors. SAC ¶ 50. These allegations support a reasonable inference that Cisco had pre-suit knowledge of the Asserted Patents.

United States District Court
Northern District of California

### B.   Egregious Conduct

The award of enhanced damages is limited "to egregious cases of misconduct beyond typical infringement." *Halo*, 136 S. Ct. at 1935.  Such damages "should generally be reserved for egregious cases typified by willful misconduct." *Id.* at 1934.

### i.   Whether the SAC Must Sufficiently Allege Egregious Conduct

As a threshold issue, the parties disagree whether the complaint must plead some allegations of egregious behavior to survive a motion to dismiss.  *Compare* Mot. 9 *with* Opp'n 13. Cisco argues that egregiousness must be pled through specific facts.  Mot. 10.  Finjan responds that it only needs to allege knowledge of the Asserted Patents to sufficiently state a claim for willfulness, and cites numerous cases in support.[1]  Opp'n 13.

Not every case cited by Finjan supports its position that allegations of knowledge of an asserted patent by themselves are sufficient to plead a claim for willful infringement.  For example, in *Finjan, Inc. v. ESET, LLC*, the court held that willful infringement claims were sufficiently pled because, the complaint alleged that Finjan had put ESET on notice of its contentions that ESET's products infringed the patents at issue and the parties met to address those contentions.  No. 317CV0183, 2017 WL 1063475, at *4 (S.D. Cal. Mar. 21, 2017).  Hence, in that case, the defendant was allegedly not only on notice of the asserted patents but aware that it infringed those patents.  Such awareness suggests egregiousness.  Nevertheless, the Court acknowledges that some courts have denied a motion to dismiss claims for willful infringement based solely on allegations of pre-suite knowledge of the patents-in-suit.  *See, e.g.*, *Avocet Sports Tech., Inc. v. Garmin Int'l, Inc.*, No. C 11-04049, 2012 WL 2343163, at *3 (N.D. Cal. June 5, 2012).

On the other hand, numerous courts have required a complaint to plead some factual allegations to support egregious behavior other than mere knowledge of the asserted patents to survive a motion to dismiss.  *See, e.g.*, *Cont'l Circuits*, 2017 WL 2651709, at *7–8 (collecting

---

[1] In a footnote, Finjan comments that one case found "[p]ost-complaint knowledge is sufficient under *Halo*" to state a claim for willful infringement.  Opp'n 13 n.5 (citing *Raytheon Co. v. Cray, Inc.*, No. 216CV00423, 2017 WL 1362700, at *5 (E.D. Tex. Mar. 13, 2017).  The Court need not decide whether post-complaint knowledge is sufficient because the SAC does not plead willful infringement claims based on post-complaint knowledge.

cases and concluding that allegations of knowledge alone are insufficient); *Nanosys, Inc., et al. v. QD Vision, Inc.*, No. 16-CV-01957, 2017 WL 35511, at \*1 (N.D. Cal. Jan. 4, 2017) ("*Nanosys II*") (requiring plaintiffs to allege more than "mere knowledge" to support a claim for willful infringement).

Moreover, while not explicitly requiring a showing of egregious behavior, many post-*Halo* cases have found that the plaintiff sufficiently pled willfulness when the complaint alleged knowledge of the patents-in-suit and additional facts in support of egregious behavior.  For example, in *Bio-Rad*, the complaint alleged that the plaintiff sent a letter accusing the defendant of selling infringing products and that the defendant continued to sell the accused products.  *Bio-Rad Labs. Inc. v. Thermo Fisher Sci. Inc.*, 267 F. Supp. 3d 499, 501 (D. Del. 2017).  Based on these allegations, the court concluded that the complaint sufficiently alleged that the defendant willfully sold the products.  *Id.*  Similarly, in *Bobcar Media*, the plaintiff send multiple letters to the defendant, naming specific patents and identifying the defendant's purportedly infringing products.  *Bobcar Media, LLC v. Aardvark Event Logistics, Inc.*, No. 16-CV-885, 2017 WL 74729, at \*6 (S.D.N.Y. Jan. 4, 2017).  The defendant allegedly never claimed non-infringement but instead argued that the patents were invalid and continued to infringe those patents.  *Id.*  The court held that those allegations were sufficient to plead willful infringement.  *Id.*

After reviewing the cases discussed by the parties as well as cases cited therein, the Court agrees with Cisco's position.  A court may not award "enhanced damages simply because the evidence shows that the infringer knew about the patent *and nothing more.*"  *See Halo*, 136 S. Ct. at 1936 (Breyer, J., concurring) (emphasis in original).  Most of the cases cited by Finjan in support of its position were decided before *Halo*.  *See* Opp'n 6.  But to the contrary, as discussed above, many post-*Halo* cases have inquired whether the complaint alleges more than mere knowledge of the patents-in-suit to determine whether willful infringement claims were adequately pled.  *See, e.g.*, *Cont'l Circuits*, 2017 WL 2651709, at \*7–8 (collecting cases).  The Court is persuaded by those cases and concludes that a complaint must contain some allegations which make it plausible that the accused infringer's behavior was egregious and that allegations of knowledge of the patents-in-suit alone are insufficient.  However, that is not to say that a court

1    may not draw inferences of egregious behavior and the accused infringer's knowledge of the

2    patents-in-suit from the same set of allegations. "[C]ourts should . . . to take into account the

3    particular circumstances of each case in deciding whether to award damages." *Halo*, 136 S. Ct. at

4    1933.

5         Accordingly, Finjan's SAC must allege facts from which a plausible conclusion could be

6    reached that Cisco engaged in egregious conduct under *Halo*.

7              **ii.     Whether the SAC Sufficiently Alleges Egregious Conduct**

8         The Court turns to whether Finjan's SAC contains allegations that make it plausible that

9    Cisco engaged in egregious conduct.  Cisco argues that Finjan fails to plead egregiousness because

10   the "SAC still does not allege any form of pre-suit accusation of infringement relating to any

11   Cisco product, nor any form of copying or 'piracy,' or anything at all exceptional."  Mot. 10.

12        As Cisco contends, the SAC does not allege that Cisco received any pre-suit accusation of

13   infringement or that it engaged in copying.  But such allegations are not necessary to plead a claim

14   for willful infringement.  To be sure, many courts have denied a motion to dismiss willful

15   infringement claims when the complaint alleged the defendant received letters accusing

16   infringement of the plaintiff's patents.  *See, e.g.*, *Bobcar Media*, 2017 WL 74729, at *6.  And

17   "[e]vidence of copying weighs in favor of enhanced damages."  *Apple Inc. v. Samsung Elecs. Co.*,

18   258 F. Supp. 3d 1013, 1030 (N.D. Cal. 2017).  However, *Halo* made clear that courts should

19   exercise their discretion and "take into account the particular circumstances of each case."  *Halo*,

20   136 S. Ct. at 1933.  The Supreme Court did not hold that only certain types of conduct were

21   egregious.  *See id.* at 1932 ("[A]lthough there is 'no precise rule or formula' for awarding damages

22   under § 284, a district court's 'discretion should be exercised in light of the considerations'

23   underlying the grant of that discretion." (citing *Octane Fitness, LLC v. ICON Health & Fitness,*

24   *Inc.*, 134 S. Ct. 1749, 1756 (2014))).  As such, a motion to dismiss a claim for willful infringement

25   may be denied where the plaintiff alleges facts other than pre-suit accusation of infringement or

26   copying.  *See Nanosys II*, 2017 WL 35511, at *1 (denying motion to dismiss willful infringement

27   claims where the complaint alleged that a named inventor of the patents-in-suit found the

28   defendant company and used his knowledge of the patents to develop competing technology).

1     Perhaps, recognizing that allegations on pre-suit accusation of infringement or copying are

2  not necessary to plead willful infringement claims, Cisco asserts that the "SAC still does not

3  allege . . . anything at all exceptional."  Mot. 10.  Finjan counters that it amended the complaint to

4  include detailed factual allegations demonstrating Cisco's subjective intent and egregious behavior

5  in the context of the parties' relationship and collaboration.  Opp'n 7.  The Court evaluates

6  whether those allegations make it plausible that Cisco engaged in egregious conduct.

7     A complaint falls short of the pleading standards if it merely recites the legal standard for

8  willful infringement.  *See, e.g.*, *Varian Med. Sys., Inc. v. Elekta AB*, No. CV 15-871, 2016 WL

9  3748772, at *8 (D. Del. July 12, 2016) (holding that the allegations were insufficient where the

10  plaintiff provided little more than "a formulaic recitation of the pre-*Halo* elements of a willful

11  infringement claim").  Here, among other things, the SAC alleges that in 1997 Cisco publicly

12  acknowledged the value of Finjan's technology.  SAC ¶ 47.  Cisco allegedly began investing in

13  Finjan in 2004, sent a representative to Finjan's board of director meetings where Finjan's patents

14  and technology were discussed, and learned about Finjan's technology during a 2006 presentation.

15  *Id.* ¶¶ 48–49.   Cisco also allegedly remained an investor of Finjan at least until 2014.  *See id.* ¶ 50.

16  Based on these allegations, Finjan pleads that Cisco gained knowledge of the Asserted Patents and

17  the involved technology.  According to Finjan, despite the knowledge and a high likelihood of

18  infringement, Cisco allegedly incorporated infringing technology into its products in an egregious

19  manner.  *Id.* ¶¶ 51–52.  These allegations clearly contain factual allegations that are more than a

20  formulaic recitation of the legal standard using the word "egregious."

21     Nevertheless, Cisco argues that the SAC's allegations do not plausibly support a

22  conclusion of egregiousness.  Mot. 11–14.  In Cisco's view, the allegations are immaterial because

23  none suggests any detailed discussions of the Asserted Patents.  *Id.*  In particular, Cisco asserts

24  that (1) the 1997 Fortune Magazine article was published before the Asserted Patents issued and

25  does not pertain to any of those patents or accused products; (2) the Series D and E Preferred

26  Stock Purchase Agreements do not contain any detailed discussion of any patent although they

27  listed issued patents; (3) the allegations regarding Finjan's board meeting do not identify any

28  patent and accused product or that Finjan tried to license its patents to Cisco; (4) the 2006

United States District Court
Northern District of California

presentation slides do not identify any patent but merely mentions that Finjan had "16 patents granted, 26 patents pending;" and (5) the 2014 Annual Report and Quarterly Report show only that Finjan had a general patent portfolio and do not identify any Cisco product.  *Id.*  Cisco contends that the combination of those allegations cannot support egregiousness.  *Id.* at 14–15.

The Court disagrees with Cisco's argument.  "At the motion to dismiss stage, the Court does not undertake a full evaluation of 'probability,' but simply asks for 'more than a sheer possibility that a defendant has acted unlawfully.'"  *Potter Voice Techs., LLC v. Apple Inc.*, 24 F. Supp. 3d 882, 886 (N.D. Cal. 2014) (citing *Iqbal*, 556 U.S. at 678).  Taking the SAC's allegations as true, there is "more than a sheer possibility" that Cisco subjectively knew that the technology it incorporated into its products infringed the Asserted Patents.

As discussed earlier, the SAC plausibly alleges that Cisco had pre-suit knowledge of the Asserted Patents by 2014 when Finjan Holdings, Inc. issued the Annual Report and Quarterly Report for its investors.  Other pre-2014 allegations, except for those regarding the stock purchase agreements which purportedly listed some of the Asserted Patents, do not specifically identify the Asserted Patents.  However, allegations that do not directly identify the patents-in-suit can support willful infringement claims.  *Cf. Nanosys I*, 2016 WL 4943006, at *7 (The "totality of the allegations . . . determine whether a claim of willfulness is plausible").  Indeed, Courts should "take into account the particular circumstances of each case."  *Halo*, 136 S. Ct. at 1933.  Here, in addition to pre-suit knowledge of the Asserted Patents, the SAC alleges that Cisco continuously invested in Finjan over a long period of time and learned about Finjan's technology.  *See* SAC ¶¶ 47–52.  That Cisco valued Finjan's technology, desired and actively learned about the technology on multiple occasions can be inferred from the allegations.[2]  In light of the allegations regarding Cisco's interest and knowledge about Finjan over the years, there is "more than a sheer possibility" that Cisco understood the scope of the Asserted Patents and that the Asserted Patents

---

[2] Cisco points out that the SAC does not plead Yoav Samet, who allegedly attended Finjan's board of directors meetings, participated in the development of Cisco's products.  Reply 5.  The SAC need not plead such an allegation because "[c]orporations act through their employees" and generally "an agent's knowledge is imputed to the corporate principal when employees are acting within the scope of their authority or employment."  *Kellogg Brown & Root Servs., Inc. v. United States*, 728 F.3d 1348, 1369 (Fed. Cir. 2013).

United States District Court
Northern District of California

covered the technology acquired from SourceFire and utilized by Cisco.  In other words, when Cisco allegedly sold products that incorporated SourceFire's technology and Outbreak Filters, the risk of infringement of the Asserted Patents was plausibly "known or so obvious it should have been known" to Cisco.  Accordingly, the SAC's allegations allow a reasonable inference to be drawn that Cisco had the subjective intent to willfully infringe the Asserted Patents.  *See Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, No. 09-CV-05235, 2017 WL 130236, at *3 (N.D. Cal. Jan. 13, 2017) (holding that, after *Halo*, a willful infringement claim can still be supported by a showing that "the risk of infringement was either known or so obvious it should have been known" to the alleged infringer).[3]

As a final point, Cisco argues that the parties' pre-suit relationship does not matter and relies on *Cont'l Circuits LLC v. Intel Corp.*, No. CV16-2026, 2017 WL 679116 (D. Ariz. Feb. 21, 2017).  Opp'n 14–15.  In Cisco's view, the complaint in *Cont'l Circuits* contained allegations regarding the parties' relationship "far more than Finjan does" in this case, but the court found that those allegations did not create a reasonable inference that the defendants' conduct went beyond those "in a typical infringement case."  *Id.*  Finjan counters that the plaintiff in that case took the position that no pleading of egregiousness was necessary to survive a motion to dismiss and instead merely added the word "egregious" in a conclusory manner.  Reply 19.

In *Cont'l Circuits*, the plaintiff sued defendants Ibiden and Intel.  2017 WL 679116, at *1. The amended complaint contained the following allegations.  Around 1996 to 1998 the plaintiff and Intel held meetings to discuss "design rules and manufacturing reliability of printed circuit boards."[4]  *Id.*, at *6.  Intel and the plaintiff "coordinated together on [the latter's] Photolink, a

---

[3] In *Halo*, the Supreme Court abrogated the Federal Circuit's two-part test for establishing willfulness that was announced in *In re Seagate Tech., LLC*, 497 F.3d 1360 (Fed. Cir. 2007). *Seagate*'s two-part test required a patentee to show by clear and convincing evidence (1) the objective recklessness regarding infringement and (2) that the risk of infringement was either known or so obvious that it should have been known to the accused infringer.  497 F.3d at 1371. The Supreme Court rejected the clear and convincing standard and the first part of the test.  *Halo*, 136 S. Ct. at 1932–34.

[4] To be accurate, the allegations involve the interaction between the plaintiff's former entity, Continental Circuits, Inc., which dissolved in 2013.  *Id.*, at *1 n.3.  The plaintiff, Continental Circuits LLC, is a non-operating entity formed in 2016.  *Id.*, at *1.  For simplicity, the two entities will be both referred to as the plaintiff.

United States District Court
Northern District of California

1    product which came to embody the patented inventions." *Id.*  Around 1997, one of the plaintiff's

2    employee shared with Ibiden the technology which was later described in the patents-in-suit.  *Id.*

3    Ibiden was a supplier to Intel.  *Id.*  In 2005, the former entity contacted Intel about licensing a

4    continuation application.  *Id.*  Intel decided "not to pursue" the licensing.  *Id.*  The continuation

5    application later led to the issuance of the four patents-in-suit, which were granted in 2009, 2012,

6    2013, and 2016, respectively.  *Id.*, at *1.

7         *Cont'l Circuits* found that the plaintiff failed to plead egregious behavior and dismissed the

8    willful infringement claims.  *Id.*, at *8.  In doing so, the court pointed out that the amended

9    complaint added the word "egregious" but the allegation was merely conclusory.  *Id.*  The court

10   also held that the case involved a pending continuation application but no allegations of pre-suit

11   accusations of infringement, and thus distinguished other cases where willfulness was sufficiently

12   pled.  *Id.*  Finally, the court concluded that "the allegations concerning 'the pre-suit relationship

13   between the parties' did not create a reasonable inference" that the defendants' conduct went

14   beyond those "in a typical infringement case."  *Id.*

15        After reviewing *Cont'l Circuits*, the Court is unpersuaded by Cisco's argument that

16   Finjan's willful infringement claims should be dismissed as in that case.  To the extent that *Cont'l*

17   *Circuits*' dismissal relied on the fact the allegations did not involve pre-suit accusations of

18   infringement, the Court declines to follow such reasoning.  As discussed above, a complaint may

19   sufficiently plead a claim for willful infringement where the plaintiff alleges facts other than a pre-

20   suit accusation of infringement.  *See Nanosys II*, 2017 WL 35511, at *1 (holding that willful

21   infringement claims were adequately pled without allegations of pre-suit notice of infringement).

22        Moreover, *Cont'l Circuits* did not hold that "the pre-suit relationship between the parties"

23   is irrelevant in determining whether egregious conduct is adequately pled.  In fact, the court

24   acknowledged that the circumstance may "transform[] simple knowledge into . . . egregious

25   behavior." *Cont'l Circuits*, 2017 WL 679116, at *8 (citing *Halo*, 136 S. Ct. at 1936 (Breyer, J.,

26   concurring)).  Considering the circumstances, the Court finds that the situation here is

27   distinguishable from *Cont'l Circuits*.  In that case, the plaintiff and Intel interacted with each other

28   to collaborate for a short period of time.  *See id.*, at *6.  Also, Intel did not actively seek the

13

plaintiff's technology.  In fact, Intel was contacted once about licensing the plaintiff's continuation application but expressed no interest in doing so.  *Id.*  By contrast, Cisco allegedly formed an investment relationship with Finjan that lasted many years.  SAC ¶¶ 47–50.  The SAC contains factual allegations from which it can be inferred that Cisco valued Finjan's technology and actively learned about the technology, for example, by sending a representative to Finjan's board meetings and attending a presentation.  *Id.* ¶¶ 47–52.  Cisco also received on multiple occasions information about Finjan's patents, including the Asserted Patents, over the course of the parties' investment relationship.  *Id.* ¶¶ 48, 50.  Hence, unlike *Cont'l Circuits*, here the SAC's allegations allow a reasonable inference to be drawn that Cisco subjectively knew that selling the accused products infringes the Asserted Patents and that such conduct went beyond "typical infringement." *Halo*, 136 S. Ct. at 1935.

The Court therefore finds that Cisco's reliance on *Cont'l Circuits* unavailing.  At this motion to dismiss stage, Finjan has satisfied its burden to allege facts from which a plausible conclusion could be reached that Cisco engaged in egregious conduct under *Halo*.  To be clear, further developments of this case may reveal that the circumstances do not support that Cisco's purported behavior was egregious.

## IV.     CONCLUSION

For the foregoing reasons, Finjan's SAC sufficiently pleads willful infringement.  Cisco's motion to dismiss the SAC as to the claims for willful infringement is DENIED.

**IT IS SO ORDERED.**

Dated: February 6, 2018

BETH LABSON FREEMAN
United States District Judge