UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FINJAN, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>CISCO SYSTEMS, INC.,<br><br>    Defendant. | Case No. 17-cv-00072-BLF<br><br>**ORDER GRANTING IN PART AND DENYING IN PART WITH LEAVE TO AMEND PLAINTIFF'S MOTION TO STRIKE DEFENDANT'S AFFIRMATIVE DEFENSES**<br><br>[Re: ECF 107] |

Plaintiff Finjan, Inc. ("Finjan") brings this patent infringement lawsuit against Defendant Cisco Systems, Inc. ("Cisco"), alleging infringement of five of Finjan's patents directed to computer and network security. The Court previously denied Cisco's motion to dismiss willful infringement claims in Finjan's Second Amended Complaint. ECF 99. Thereafter, Cisco filed an Amended Answer to the Second Amended Complaint. Am. Answer, ECF 104.

Before the Court is Finjan's motion to strike Cisco's affirmative defenses in the Amended Answer. Mot., ECF 107. Specifically, Finjan asks this Court to strike Cisco's fourth, eighth, and ninth affirmative defenses. Having considered the briefing and oral argument of the parties, as well as the governing law, the Court GRANTS IN PART and DENIES IN PART Finjan's motion with LEAVE TO AMEND.

**I.   LEGAL STANDARD**

Federal Rule of Civil Procedure 12(f) permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The function of a motion made under this rule is "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (quoting *Fantasy, Inc. v.*

*Fogerty*, 984 F.2d 1524, 1527 (9th Cir.1993), *rev'd on other grounds by Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994)) (internal quotation marks omitted). "While a Rule 12(f) motion provides the means to excise improper materials from pleadings, such motions are generally disfavored because the motions may be used as delaying tactics and because of the strong policy favoring resolution on the merits." *Barnes v. AT & T Pension Ben. Plan-Nonbargained Program*, 718 F. Supp. 2d 1167, 1170 (N.D. Cal. 2010).

The decision to strike a portion of a party's pleading is within the sound discretion of the court. *Nurse v. United States*, 226 F.3d 996, 1000 (9th Cir. 2000). If a claim or defense is stricken, leave to amend should be freely given when doing so would not cause prejudice to the opposing party. *Wyshak v. City Nat. Bank*, 607 F.2d 824, 826 (9th Cir. 1979) (per curiam).

## II. REQUEST FOR JUDICIAL NOTICE

Federal Rule of Evidence 201 permits a court to notice an adjudicative fact if it is "not subject to reasonable dispute." Fed. R. Evid. 201(b). A fact is "not subject to reasonable dispute" if it is "generally known," or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(1)–(2). When determining whether to take judicial notice, the court must consider and identify which "fact or facts it is noticing" from a document. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018).

Here, Finjan submitted a request that this Court take judicial notice of 18 exhibits including several patents, excerpts of a patent file history, litigation documents produced in other cases, and documents related to an *inter partes* review ("IPR") proceeding. RJN, ECF 108. To be sure, courts have taken judicial notice of publicly available documents. However, "[j]ust because [a] document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth." *Khoja*, 899 F.3d at 999. Finjan's request fails to identify which facts that are not subject to reasonable dispute should be judicially noticed. The Court thus cannot determine which portions of Finjan's 18 exhibits are properly subject to judicial notice. Therefore, Finjan's request for judicial notice is DENIED only for the purposes of this motion.

2

## III. DISCUSSION

Finjan moves to strike the fourth, eighth, and ninth affirmative defenses in Cisco's Amended Answer pursuant to Federal Rule of Civil Procedure 12(f). Mot. 2. "In resolving a motion to strike, the pleadings must be viewed in the light most favorable to the nonmoving party." *Synopsys, Inc. v. Ubiquiti Networks, Inc.*, No. 17-CV-00561, 2017 WL 3485881, at *6 (N.D. Cal. Aug. 15, 2017). An affirmative defense is insufficiently pleaded if it fails to give the plaintiff "fair notice of the defense." *Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011, 1023 (9th Cir. 2010) (quoting *Wyshak*, 607 F.2d at 827). While Ninth Circuit law is unsettled on the precise standard for determining whether affirmative defenses have been adequately pled, *Synopsys*, 2017 WL 3485881, at *18, the requirement of factual pleading is not a new phenomenon, *see* Fed. R. Civ. P. 8(b)(1)(A); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007) (reciting general standards applicable to Rules 8(a) and 12(b)(6)). The Court considers whether there are sufficient facts alleged in the pleadings and whether Finjan is given "fair notice."

The Court turns to each affirmative defense challenged by Finjan.

### A. Fourth Affirmative Defense

The fourth affirmative defense invokes the doctrine of prosecution laches. Am. Answer ¶¶ 149–51. This doctrine " 'may render a patent unenforceable when it has issued only after an unreasonable and unexplained delay in prosecution' that constitutes an egregious misuse of the statutory patent system under the totality of the circumstances." *Cancer Research Tech. Ltd. v. Barr Labs., Inc.*, 625 F.3d 724, 728–29 (Fed. Cir. 2010). "[The] [p]rosecution laches' requirement of an unreasonable and unexplained delay includes a finding of prejudice, as does any laches defense." *Id.* at 729. Cisco alleges that Finjan's claims of infringement of one or more of the asserted patents in this action are barred by this doctrine. Am. Answer ¶ 149. Cisco further pleads the following with respect to Finjan's U.S. Patent No. 8,677,494 ("the '494 patent"):

> 150. Plaintiff unreasonably delayed prosecuting at least the claims of the '494 Patent, which issued March 18, 2014 from an application filed November 7, 2011 and claiming priority through a series of continuation and continuation-in-part applications to a provisional application dated November 8, 1996.
>
> 151. Plaintiff's unreasonable delay prosecuting the claims of the

3

> '494 Patent has prejudiced Cisco at least because many of Plaintiff's allegations of infringement are tied to Cisco's acquisition of Sourcefire, Inc. in 2013.

*Id.* ¶¶ 150–51.

Finjan argues that Cisco's prosecution history laches defense "is not sufficiently plead or facially plausible." Mot. 3. According to Finjan, the three sentences in paragraphs 149 to 151 of Cisco's Amended Answer are conclusory and lack explanation or support. *Id.* at 4. Cisco counters that Finjan unreasonably delayed prosecuting the claims of the '494 patent for seven years and did so to claim broader subject matter, and waited until Cisco purchased Sourcefire, Inc. that allegedly practiced the patented invention. Opp'n 4, ECF 119. Here, Cisco relies on additional facts that are not alleged in its Amended Answer. For example, the Amended Answer contains no allegations supporting Cisco's assertion that Finjan delayed prosecuting the '494 patent for seven years. This Court may not consider facts that are not pled in the Amended Answer when ruling on Finjan's motion. *See Finjan, Inc. v. Bitdefender Inc.*, No. 17-CV-04790-HSG, 2018 WL 1811979, at *4 (N.D. Cal. Apr. 17, 2018). Thus, Cisco's arguments are unpersuasive.

The Court finds that Cisco's fourth affirmative defense does not contain factual allegations that provide notice as to what unreasonably delay caused prejudice and how Cisco intends to rely on the prosecution laches doctrine. As such, Cisco has failed to sufficiently plead the fourth affirmative defense. The Court therefore GRANTS Finjan's motion to strike the fourth affirmative defense with LEAVE TO AMEND.

### B. Eighth Affirmative Defense

Cisco's eighth affirmative defense asserts the ensnarement doctrine. Am. Answer ¶ 157. "Ensnarement bars a patentee from asserting a scope of equivalency that would encompass, or 'ensnare,' the prior art." *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1322 (Fed. Cir. 2009) (citation omitted). Cisco's Amended Answer pleads the following:

> 157. Plaintiff's claims of infringement under the doctrine of equivalents are barred under the Ensnarement Doctrine, which bars Plaintiff from asserting an infringement theory under the doctrine of equivalents that encompasses, or "ensnares," the prior art.

4

*Id.* ¶ 157.

Finjan argues that Cisco "does nothing more than state the legal doctrine" and that the eighth affirmative defense is devoid of factual allegations. Mot. 6. Cisco responds that pleading the name of the affirmative defense is sufficient in some cases. Opp'n 20. Cisco also contends that its allegations are commensurate with what defendants have pled in support of this defense in other cases. *Id.* at 20–21 (citing *Kruse Tech. P'ship v. Daimler AG*, No. 8:10-cv-01066, Dkt. No. 87 (C.D. Cal.)). Cisco also points to *Finjan, Inc. v. Palo Alto Networks, Inc.*, Case No. 14-cv-04908-EMC (N.D. Cal.) for support. In that case, the defendant alleged that Finjan was precluded from asserting patent infringement claims because a hypothetical scope of equivalency would "ensnare" prior art, and would be anticipated or rendered obvious, for example, by the "Ji patent." Opp'n 21 (citing *Finjan, Inc. v. Palo Alto Networks, Inc.*, Case No. 14-cv-04908-EMC, Dkt. 27). Cisco further argues that the merit of this affirmative defense will depend on Finjan's infringement contentions. *Id.*

The Court does not find that pleading the name of the affirmative defense is sufficient for Cisco to adequately plead its eighth affirmative defense. Cisco's Amended Answer contains no allegations that inform Finjan on how Cisco intends to rely on this defense. Moreover, Cisco's reliance on *Kruse* and *Palo Alto Networks* is unpersuasive. Cisco admits that the plaintiff in those cases did not challenge the sufficiency of the allegations supporting the ensnarement defense. Opp'n 20. Thus, there was no determination whether allegations in those cases were sufficient. Moreover, the pleadings in those cases contained more allegations—albeit slightly—than what is pled in Cisco's Amended Answer. *See Kruse Tech. P'ship v. Daimler AG*, No. 8:10-cv-01066, at Dkt. 87; *Finjan, Inc. v. Palo Alto Networks, Inc.*, Case No. 14-cv-04908-EMC, Dkt. 27.

Because the allegations in the Amended Answer do not provide notice on how Cisco intends to prosecute the ensnarement defense, the Court finds that Cisco has failed to sufficiently plead the eighth affirmative defense. This ruling is not intended to require a defendant to recount the asserted patents' prosecution history in detail in its affirmative defense pleading. *Cf. Bitdefender*, 2018 WL 1811979, at *4 (indicating that pleading each patent's prosecution history of an asserted patent is not necessary to allege a prosecution history estoppel defense). Finjan's

motion to strike the eighth affirmative defense is GRANTED with LEAVE TO AMEND.

**C.  Ninth Affirmative Defense**

Cisco asserts in its ninth affirmative defense that "[a]t least the '494 [p]atent is unenforceable for inequitable conduct [that occurred] during its prosecution, including among other misconduct, false statements made to the PTO regarding the conception and inventorship of the '494 [p]atent." Am. Answer ¶ 158.  "Inequitable conduct is an equitable defense to patent infringement that, if proved, bars enforcement of a patent." *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1285 (Fed. Cir. 2011).

To state a claim for inequitable conduct, a party must allege that "(1) an individual associated with the filing and prosecution of a patent application made an affirmative misrepresentation of a material fact, failed to disclose material information, or submitted false material information; and (2) the individual did so with a specific intent to deceive the PTO." *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1327 n.3 (Fed. Cir. 2009).  "Inequitable conduct . . . must be pled with particularity under Rule 9(b)." *Id.* at 1326.  This requires identification of "the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." *Id.* at 1328.

Cisco pleads two separate grounds for inequitable conduct.  First, Cisco alleges that Shlomo Touboul, an inventor named in the '494 patent, made false statements in his declaration submitted to the PTO during the prosecution of the '494 patent.  Am. Answer ¶¶ 159–74.  Second, Cisco alleges that Finjan's counsel engaged in misconduct before the Patent Trial and Appeal Board ("PTAB") during an *inter partes* review ("IPR") proceeding of the '494 patent.  *Id.* ¶¶ 175–81.  The Court turns to each ground.

      **i.  Cisco's Inequitable Conduct Defense Based on Shlomo Touboul's Declaration**

Cisco pleads that Finjan made false statements to the PTO regarding how the '494 patent was conceived and invented.  The Amended Answer alleges the following.  The '494 patent names four inventors: Yigal Mordechai Edery, Nimrod Itzhak Vered, David R. Kroll, and Shlomo Touboul.  Am. Answer ¶ 159.  During prosecution of the '494 patent, Finjan submitted a

6

declaration by Mr. Touboul stating that claims 1, 3, 4–6, 9, 10, 12–15, and 18 of the '494 patent were his sole invention. *Id.* ¶ 162. Mr. Touboul declared that "[his] sole invention was in his mind and developed by at least November 18, 1996." *Id.* According to the Amended Answer, because of Mr. Touboul's declaration, the patent examiner found that the then-pending claims overcame "the Ji, U.S. 5,983,348 reference" which had a filing date of September 10, 1997. *Id.* ¶ 164. Cisco also alleges that Finjan's discovery responses in later litigation show that the other named inventors, Yigal Edery, Nimrod Vered, and David Kroll, "were involved with, and may have knowledge related to the conception and reduction to practice of the '494 patent." *Id.* ¶¶ 166–67. Cisco further alleges that those discovery responses establish that Mr. Touboul's declaration statements that he was the sole inventor of certain claims as well as statements regarding the date of conception were false. *Id.* ¶¶ 168–72.

Finjan argues that Cisco misconstrues Finjan's discovery responses as stating that all of the named inventors worked on every claim of the '494 patent. Mot. 12. Finjan contends that "different claims in a patent can have different inventors" and that its discovery responses establish only that "the named inventors worked together on certain aspects" of the '494 patent. *Id.* On this basis, Finjan asserts that Mr. Touboul's declaration is accurate and contains no misrepresentation. *Id.* at 12–14. In Finjan's view, Cisco alleges no fact supporting materiality because Mr. Touboul's declaration did not contain false statements. Cisco claims that any purported misstatements were immaterial on the grounds that Mr. Touboul's statements regarding sole inventorship were not the basis for the PTO's withdrawal of its rejection over the Ji reference. *Id.* at 14. As for the specific intent element of inequitable conduct, Finjan challenges Cisco's allegations that Mr. Touboul specifically intended to deceive the PTO "upon information and belief." *Id.* at 15. Finjan reasons that Cisco fails to allege specific facts in support of those allegations. *Id.*

The Court is unpersuaded by Finjan's arguments which may be more appropriately directed to a summary judgment motion. As mentioned, the Amended Answer pleads that Finjan represented that inventors Yigal Edery, Nimrod Vered, and David Kroll "were involved with[] . . . the conception and reduction to practice of the '494 patent." *Id.* ¶¶ 166–67. When viewing the

7

Amended Answer in the light most favorable to Cisco, *Synopsys*, 2017 WL 3485881, at *6, the Court finds that Cisco's allegations are sufficient to put Finjan on notice of the facts giving rise to Mr. Touboul's purported misrepresentation regarding his sole inventorship and conception date of certain claims in the '494 patent. As such, Cisco's Amended Answer contains sufficient factual allegations to support a showing of misrepresentation to the PTO at this stage.

With respect to materiality, the Court rejects Finjan's argument that Cisco's defense is implausible "because [Mr.] Touboul's statements regarding sole inventorship in his declaration [were] not the basis for the PTO's withdrawal of its rejection" (Mot. 14). The Amended Answer pleads that "the [e]xaminer allowed all of the then-pending claims stating [that Mr. Touboul's] Declaration filed on May 7, 2013 under 37 CFR 1.131(a) is sufficient to overcome the Ji, U.S. 5,983,348 reference." Am. Answer ¶ 164. While not conclusive, Cisco's allegations are sufficient at this stage to support a reasonable inference that the PTO withdrew its rejection based on Mr. Touboul's declaration which allegedly contained misrepresentations.

The Court also finds that the Amended Answer's allegations support a reasonable inference of Mr. Touboul's intent to deceive the PTO. "Malice, intent, knowledge and other conditions of a person's mind may be alleged generally" under Rule 9(b). Fed. R. Civ. P. 9(b). A pleading must still contain sufficient allegations of underlying facts that would allow a court to reasonably infer that the individual: "(1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO." *Exergen*, 575 F.3d at 1328–29. "Pleading on 'information and belief' is permitted under Rule 9(b) when essential information lies uniquely within another party's control, but only if the pleading sets forth the specific facts upon which the belief is reasonably based." *Id.* at 1330.

Here, the Amended Answer pleads that the patent examiner rejected pending claims of the '494 patent over the Ji reference. Am. Answer ¶ 161. In response to the rejection, Mr. Touboul submitted his declaration allegedly stating that the subject matter of "claims 1, 3, 4–6, 9, 10, 12–15 and 18" of the '494 patent were solely conceived him. *Id.* ¶ 162. Cisco also alleges that Mr. Touboul made those statements knowing that the examiner would credit those allegedly false

8

statements as evidence that he invented the subject matter at issue before the effective date of the Ji reference. *Id.* ¶ 174. At this stage, those allegations are sufficient for Cisco to plead that Mr. Touboul acted with an intent to deceive the PTO.

Accordingly, the Court concludes that Cisco has sufficiently pled an inequitable conduct defense based on Mr. Touboul's declaration. Finjan's motion to strike the ninth affirmative defense with respect to Mr. Touboul's declaration regarding his sole inventorship of certain claims in the '494 patent is DENIED.

### ii. Cisco's Inequitable Conduct Defense Based on Counsel's Conduct During the IPR Proceeding

Cisco pleads that Finjan's counsel made false statements to the PTAB during an IPR proceeding of the '494 patent (IPR2016-00159) filed by Palo Alto Networks, Inc. ("PAN"). The Amended Answer alleges that PAN challenged all claims of the '494 patent in view of Int'l Publication No. WO 1998/0023683 to Touboul ("Int'l Touboul reference") which published on May 22, 1998. Am. Answer ¶ 175. According to Cisco, Finjan's counsel including James Hannah and Jeffrey Price of Kramer Levin Naftalis & Frankel LLP and Michael Kim of Finjan, Inc. signed a Patent Owner's Preliminary Response arguing that all claims of the '494 patent found support under 35 U.S.C. § 112 in the description of the '194 patent and thus are entitled to the November 6, 1997 priority date of the '194 patent.[1] *Id.* ¶¶ 175–78. In Cisco's view, this argument was effectively a statement that Mr. Touboul was the sole inventor of all claims of the '494 patent.

Cisco also alleges that counsel knew or should have known that Finjan repeatedly asserted that Mr. Touboul co-invented the subject matter covered by some claims of the '494 patent and that none of the other inventors worked at Finjan until at least a year after the application that issued as the '194 patent was filed. Am. Answer ¶ 178. On this basis, Cisco pleads that Finjan's counsel engaged in inequitable conduct by making false statements—"i.e., that all of the claims of the '494 Patent found § 112 support in the '194 [p]atent, which disclosure is attributable only to Mr. Touboul"—and failed to disclose the purportedly inconsistent statements regarding joint inventorship made by Finjan and Mr. Touboul. *See id.* ¶¶ 179–81.

---

[1] Cisco's Amended Answer does not specify the full patent number for the '194 patent.

9

Finjan contends that its IPR counsel did not make any misrepresentation to the PTO because the statements which Cisco takes issue relate to the priority date and not conception of the claims in the '494 patent. Mot. 16. Finjan asserts that the issue during the IPR proceeding was whether the '494 patent could claim priority to the '194 patent. *Id.* For this reason, Finjan argues, the PTAB did not analyze facts regarding conception but only looked at the issue of the '494 patent's "priority chain." *Id.* Finjan further avers that Finjan's representations during the IPR did not contradict statements in Mr. Touboul's declaration because that declaration addressed issues of conception and inventorship but not priority date. *Id.* In addition, Finjan points out that the majority of the cases involving inequitable conduct relate to the prosecution of an application to obtain the patent in the first instance as opposed to IPR proceedings that involve an adversarial setting. *Id.* at 16–17.

Cisco responds that Finjan necessarily asserted during the IPR proceeding that Mr. Touboul is the sole inventor of the '494 patent claims because he is the only person named on the '194 patent as an inventor and none of the other inventors named in the '494 patent worked for Finjan at the time of the filing of the application that issued as the '194 patent. Opp'n 17. Cisco also contends that Finjan's argument that "PTAB did not analyze any facts regarding conception but instead found that there was no break in the priority chain" is an improper "evidence-based argument." *Id.* Cisco further argues that the adversarial setting of IPR proceedings does not bar a finding of inequitable conduct. *Id.* at 18.

Furthermore, Cisco asserts that it has pled "but for" materiality because the PTAB relied on the alleged misrepresentations made by Finjan's counsel to conclude that the Int'l Touboul reference was not prior art and to deny institution of the IPR. *Id.* Cisco contends that its allegations are sufficient to plead specific intent to deceive the PTO. *Id.* at 19.

As a threshold issue, the Court agrees with Cisco's position that the fact that an IPR proceeding is adversarial does not necessarily bar a finding that an attorney's conduct during the IPR amounted to inequitable conduct. *See Depomed, Inc. v. Purdue Pharma L.P.*, No. CV 13-571, 2017 WL 2804953, at *6 (D.N.J. June 28, 2017) (finding that the defendant sufficiently pled an inequitable conduct defense based on counsel and the inventor's statements that were made

10

during an IPR proceeding).

Nevertheless, the Court finds that Cisco has failed to sufficiently allege an inequitable conduct defense based on the representations of Finjan's IPR counsel. According to Cisco, Finjan's statements in the Patent Owner's Preliminary Response regarding the priority date of the '494 patent claims mean that Finjan necessarily asserted to the PTO that Mr. Touboul was the sole inventor of those claims. Opp'n 17. However, as Cisco admits (*id.*), the determination of the priority date of patent claims depends on whether those claims have § 112 support in the priority application. The § 112 inquiry concerns whether the priority application has written description support in the specification of that application. *See* 35 U.S.C. § 120 (Pre-AIA). On the other hand, "inventorship is determined on a claim-by-claim basis" and thus tied to each respective claim. *Trovan, Ltd. v. Sokymat SA, Irori*, 299 F.3d 1292, 1302 (Fed. Cir. 2002). In other words, while the determination of priority looks at the whole disclosure of the priority application, the question of inventorship concerns a narrower portion—the respective claim that issued in the patent. As such, the fact that Finjan's counsel argued that certain claims had written description support in an earlier application does not mean that counsel represented that the inventor of those claims was the same as the inventor of the issued claims in the patent (i.e., the '194 patent) that issued from the earlier application. Moreover, Cisco's allegation that other inventors named in the '494 patent were not employed by Finjan before 1998 without more does not change this conclusion. The Court thus rejects Cisco's arguments.

Accordingly, the Court finds that the Amended Answer does not contain sufficient factual allegations that show that Finjan's IPR counsel's statements to the PTAB were inconsistent with Mr. Touboul's declaration. Because the Amended Answer fails to plead that Finjan's IPR counsel made a misrepresentation to the PTO, it also does not sufficiently allege the materiality and specific intent elements that are required to support an inequitable conduct defense. Finjan's motion to strike the ninth affirmative defense with respect to the IPR proceeding of the '494 patent is GRANTED with LEAVE TO AMEND.

**IV. CONCLUSION**

For the foregoing reasons, IT IS HEREBY ORDERED that:

(1) Finjan's motion to strike the fourth affirmative defense is GRANTED with LEAVE TO AMEND.

(2) Finjan's motion to strike the eighth affirmative defense is GRANTED with LEAVE TO AMEND.

(3) Finjan's motion to strike the ninth affirmative defense with respect to Mr. Touboul's declaration regarding his sole inventorship of certain claims in the '494 patent is DENIED.

(4) Finjan's motion to strike the ninth affirmative defense with respect to the IPR proceeding of the '494 patent is GRANTED with LEAVE TO AMEND.

(5) Cisco may amend the stricken affirmative defenses **within twenty-one (21) days of the date of this Order.** *Wyshak*, 607 F.2d at 826 (holding that leave to amend should be freely given when doing so would not cause prejudice to the opposing party).

**IT IS SO ORDERED.**

Dated: September 13, 2018

*[signature]*
BETH LABSON FREEMAN
United States District Judge