**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| FINJAN, INC., a Delaware Corporation, | Case No.: 5:17-cv-00072-BLF-SVK |
| Plaintiff, | **LETTER OF REQUEST PURSUANT TO THE HAGUE CONVENTION OF 18 MARCH 1970 ON THE TAKING OF EVIDENCE IN CIVIL OR COMMERCIAL MATTERS** |
| v. | |
| CISCO SYSTEMS, INC., a California Corporation, | |
| Defendant. | |

## LETTER OF REQUEST PURSUANT TO THE HAGUE CONVENTION OF 18 MARCH 1970 ON THE TAKING OF EVIDENCE IN CIVIL OR COMMERCIAL MATTERS

The United States District Court for the Northern District of California ("Court"), on the application of Cisco Systems, Inc., submits this Letter of Request to the Directorate of Courts of the State of Israel under The Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters ("Hague Convention"). The purpose of this Letter of Request is to obtain testimony for use at trial in the above-captioned civil action presently pending before this Court, which involves the infringement, validity, and enforceability of certain United States patents. Pursuant to Annex I of The Hague Convention, the following information is provided:

**1. Sender**

The Honorable Susan van Keulen
Magistrate Judge
U.S. District Court for the Northern District of California
San Jose Courthouse, Courtroom 6 – 4th Floor
280 South 1st Street, San Jose, CA 95113
United States of America

**2. Central authority of the requested State**

Administration of Courts
Legal Assistance to Foreign Countries
22 Kanfei Nesharin St.
Jerusalem 95464
Israel

**3. Persons to whom the executed request is to be returned**

Patrick S. Salceda (CA SBN 247978)
DUANE MORRIS LLP
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA 94105
United States of America

Joseph A. Powers (PA SBN 84590)
Jarrad M. Gunther (PA SBN 207038)
DUANE MORRIS LLP
30 South 17th Street
Philadelphia, PA 19103
United States of America

L. Norwood Jameson (GA SBN 003970)
Matthew C. Gaudet (GA SBN 287759)
David C. Dotson (GA SBN 138040)
Jennifer H. Forte (GA SBN 940650)
DUANE MORRIS LLP
1075 Peachtree Street, Ste. 2000
Atlanta, GA 30309
United States of America

*Attorneys for Defendant*
CISCO SYSTEMS, INC.

Paul J. Andre (CA SBN 196585)
Lisa Kobialka (CA SBN 191404)
James R. Hannah (CA SBN 237978)
Kristopher B. Kastens (CA SBN 254797)
Hannah Y. Lee (CA SBN 253197)
Phuong D. Nguyen (CA SBN 309243)
KRAMER LEVIN NAFTALIS
& FRANKEL LLP
990 Marsh Road
Menlo Park, CA 94025
United States of America

Benu C. Wells (NY SBN 4146163)
Cristina L. Martinez (NY SBN 4695433)
KRAMER LEVIN NAFTALIS
& FRANKEL LLP
1177 Avenue of the Americas
New York, New York 10036
United States of America

*Attorneys for Plaintiff*
FINJAN, INC.

**4.  Date by Which the Requesting Authority Requires Receipt of the Response to the Letter of Request**

March 8, 2019

Additionally, this Court respectfully requests that the deposition be conducted as soon as practicable.

**5a.  Requesting judicial authority (Article 3, *a*)**

The Honorable Susan van Keulen
Magistrate Judge
U.S. District Court for the Northern District of California
San Jose Courthouse, Courtroom 6 – 4th Floor
280 South 1st Street, San Jose, CA 95113
United States of America

**5b.  To the competent authority of (Article 3, *a*)**

Administration of Courts
Legal Assistance to Foreign Countries
c/o Directorate of Courts
22 Kanfei Nesharin St.
Jerusalem 95464
Israel

**5c.  Name(s) of the case(s) and identifying number(s)**

*Finjan, Inc. v. Cisco Systems, Inc.,* Case No. 5:17-CV-00072-BLF-SVK (N.D. Cal.);

**6.  Names and addresses of the parties and their representatives**

**A.  Plaintiff Finjan, Inc.**

2000 University Avenue, Suite 600
East Palo Alto, California 94303
United States of America

**Finjan's Representatives**

Paul J. Andre (CA SBN 196585)
Lisa Kobialka (CA SBN 191404)
James R. Hannah (CA SBN 237978)
Kristopher B. Kastens (CA SBN 254797)
Hannah Y. Lee (CA SBN 253197)
Phuong D. Nguyen (CA SBN 309243)
KRAMER LEVIN NAFTALIS
& FRANKEL LLP
990 Marsh Road
Menlo Park, CA 94025
United States of America

Benu C. Wells (NY SBN 4146163)
Cristina L. Martinez (NY SBN 4695433)
KRAMER LEVIN NAFTALIS
& FRANKEL LLP
1177 Avenue of the Americas
New York, New York 10036
United States of America

*Attorneys for Plaintiff*
FINJAN, INC.

**B.  Defendant Cisco Systems, Inc.**

170 West Tasman Drive
San Jose, California 95134
United States of America

**Cisco's Representatives**

Patrick S. Salceda (CA SBN 247978)
DUANE MORRIS LLP
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA 94105
United States of America

Joseph A. Powers (PA SBN 84590)
Jarrad M. Gunther (PA SBN 207038)
DUANE MORRIS LLP
30 South 17th Street
Philadelphia, PA 19103
United States of America

L. Norwood Jameson (GA SBN 003970)
Matthew C. Gaudet (GA SBN 287759)
David C. Dotson (GA SBN 138040)
Jennifer H. Forte (GA SBN 940650)
DUANE MORRIS LLP
1075 Peachtree Street, Ste. 2000
Atlanta, GA 30309
United States of America

*Attorneys for Defendant*
CISCO SYSTEMS, INC.

**7A. Nature of the proceedings (Article 3, *c*)**

The above captioned civil case is an action for patent infringement under Section 35 of the United States Code. On January 6, 2017, Plaintiff Finjan, Inc. ("Finjan"), a Delaware Corporation, filed Case No. 5:17-cv-00072-BLF in the Northern District of California against Cisco Systems, Inc. ("Cisco"). Thereafter, on March 27, 2017, Finjan filed an amended complaint. After the Court granted Cisco's motion to dismiss Finjan's willful infringement allegations with leave to amend, Finjan filed a Second Amended Complaint amending its willful infringement allegations which Cisco again moved to dismiss. On February 6, 2018, the Court denied Cisco's motion to dismiss and on February 20, 2018, Cisco filed its answer, asserting various affirmative defenses. Discovery is ongoing, with fact discovery to end on April 18, 2019. Finjan and Cisco have entered into a protective order covering the use of confidential material in the litigation.

**B. Summary of complaint**

**Summary of Finjan's complaint against Cisco**

Finjan alleges that Cisco has directly and willfully infringed U.S. Patent Nos. 6,154,844

4

("the '844 Patent"), 6,804,780 ("the '780 Patent"), 7,647,633 ("the '633 Patent"), 8,141,154 ("the '154 Patent") and 8,677,494 ("the '494 Patent") (collectively the "Patents-in-Suit") by making, using, selling, offering for sale and/or importing technologies in connection with Cisco's Advanced Malware Protection ("AMP"), Cisco Collective Security Intelligence ("CCSI"), Cisco Outbreak Filters, Talos Security Intelligence and Research Group ("Talos"), and AMP Threat Grid technologies, including Cisco AMP for Endpoints, Cisco AMP for Networks (also referred to by Cisco as "NGIPS"), Cisco AMP for ASA with FirePOWER Services, Cisco AMP Private Cloud Virtual Appliance, Cisco AMP for CWS, ESA, or WSA, Cisco AMP for Meraki MX, Cisco AMP Threat Grid (collectively, "Accused AMP Products"); Talos service that detects, analyzes and protects against both known and emerging threats, utilizing systems that create threat intelligence for Cisco products (collectively, "Accused Talos Service"); and Cisco's Outbreak Filters (also known as IronPort Outbreak Filters) with Talos, including Cisco's ESA appliances: ESA C690, ESA C690X, ESA C680, ESA C390, ESA C380, ESA C190, ESA C170, ESAV C100v, ESAV C300v, ESAV C600v, SMA M690/690X/680, SMA M390/380 and SMA M190/170 (collectively, "Accused Outbreak Filter Products").

Finjan additionally alleges that Cisco has induced infringement of each of the Patents-in-Suit by instructing, directing and/or requiring others to perform all or some of the steps of method claims of the Patents-in-Suit. Finjan further alleges that Cisco's infringement is willful. Finjan contends it holds all rights, title, and interest in the Patents-in-Suit. Finjan seeks damages and injunctive relief for the alleged infringement, as well as a finding that this case is exceptional.

### C. Summary of Defenses

### Summary of Cisco's Answer and Affirmative Defenses

In its Answer to Finjan's Second Amended Complaint, Cisco contends that its accused products were developed independently of Finjan and do not practice any of Finjan's patents. Cisco accordingly denies Finjan's allegations of patent infringement. Cisco further denied that the Asserted Patents are valid and enforceable. Additionally, Cisco contends that the '494 Patent is unenforceable due to inequitable conduct based on the submission of what Cisco contends was a knowingly false declaration by Shlomo Touboul, a named inventor, during prosecution of that

patent. Cisco further maintains that Finjan's claims and/or damages are barred or limited based by various affirmative defenses including: Express/Implied License; Government Sales Exemption; and Ensnarement Doctrine.

**8A. Evidence to be obtained (Article 3, *d*)**

**Confidentiality of documents and testimony**

This Letter of Request is for evidence that is expected to be used at trial in the underlying civil action. The evidence will be treated consistent with the protective order that has already been entered in this case. Confidential information disclosed in *Finjan, Inc. v. Cisco Systems, Inc.*, Case No. 5:17-cv-00072-BLF-SVK (N.D. Cal.), is subject to a protective order ("Stipulated Protective Order") attached to this Letter of Request as Exhibit 1. The Stipulated Protective Order is designed to protect producing entities from any unauthorized use or disclosure of confidential or proprietary information and allows third parties to produce material designated as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE." Stipulated Protective Order at §§ 2.5; 2.14; 11. Further, the Stipulated Protective Order provides generally for return or destruction of designated material within sixty (60) days of the final disposition of the case. *Id.*, at § 15.1. This Court has jurisdiction over the parties and the Protective Orders for the purposes of compliance with and enforcement of its terms.

Third parties in Israel – such as Mr. Polani whose testimony is sought herein – may enforce the terms of the Protective Order against the parties. Stipulated Protective Order at § 11.

**Requested Evidence**

This Court respectfully requests that this Letter of Request be executed by the Directorate of Courts of Israel and carried out (in whole or part) by the Directorate of Courts and any court appointed by it. Upon execution of this Letter of Request, it is respectfully requested that the competent judicial authorities of Israel apply all appropriate means available to them to compel compliance with the following requests for documents and testimony.

Consistent with Chapter 2 Articles 17, 18, and 19 of the Hague Convention, and to the extent that the Israeli Court deems it appropriate to appoint a private lawyer to assist in taking

evidence (pursuant to section 16(b) of Israel's Legal Assistance between Countries Law, 1998), the Court respectfully requests that Advocate Shlomo Cohen be so appointed. This Court is informed that Advocate Cohen is a principal of Dr. Shlomo Cohen & Co., B. S. R Tower 3, 5 Kineret St., Bnei Brak, 5126237, Israel (Phone: (972-3) 527 1919; Fax: (972-3) 527 2666) and that Advocate Cohen has, in connection with several other Hague Convention Letters of Request from the United States, been so appointed pursuant to section 16(b) of the Legal Assistance between Countries Law.

### Requested Evidence from Asher Polani and Purpose of the Evidence Sought

Cisco understands that between July 2005 through October 2007, Mr. Polani was Finjan's Chief Executive Officer and also served as a member of Finjan's Board of Directors for some time thereafter. Therefore, Cisco believes that Mr. Polani has knowledge of and possesses documents, related to at least: (1) Finjan's efforts to license and/or enforce its intellectual property between 2005 and 2007; (2) Finjan's statement regarding the scope of its intellectual property and technology; (3) Finjan's demotion of and potential litigation with its founder, Shlomo Touboul; (4) document preservation efforts between 2005 and 2007; and (5) communications to, from, and concerning Cisco between 2005 and 2007. Because Mr. Polani does not agree to appear for deposition in the United States, this Court requests that Mr. Polani be compelled to appear for deposition regarding the topics set forth in the schedule attached as Exhibit 2 and that he be compelled to produce all documents within his possession, custody or control covered by the schedule attached as Exhibit 3.

### 9. Identity and address of any person to be examined (Article 3, *e*)

This Court is informed that Mr. Polani is not represented by counsel but may be contacted at his place of business: ContinUse Biometrics Ltd., HaBarzel 32b, Tel Aviv 6971048 Israel.

### 10. Subject matter about which persons are to be examined (Article 3, *f*)

This Court requests that Mr. Polani be compelled to appear for deposition regarding the topics set forth in the schedule attached as Exhibit 2.

### 11. Documents or other property to be inspected (Article 3, *g*)

This Court requests that Mr. Polani be compelled to produce all documents within his

possession, custody or control covered by the schedule attached as Exhibit 3.

**12.  Any requirement that the evidence be given on oath or affirmation and any special form to be used (Article 3, _h_)**

This Court requests that this witness be placed under oath before answering questions.  The requested form of the oath is: "Do you solemnly state that the testimony you will give in this deposition proceeding will be the truth, the whole truth, and nothing but the truth?"

In the event that the witness cannot be placed under oath, it is requested that he or she answer questions in such manner as provided by Israeli law for taking evidence, including those provisions intended to ensure the veracity of oral testimony.

**13.  Special methods or procedure to be followed (Articles 3, _i_ and 9)**

For production of documents, this Court requests that:

> (a)    the witnesses produce all documents within their possession, custody, or control, or to which the witnesses otherwise have access, that are responsive to the document requests;

> (b)    the requested documents be produced in the form of duplicates of the original documents instead of summaries or descriptions;

> (c)    the requested documents be numbered serially (_e.g._, "POLANI00001") for ease of identification;

> (d)    any confidential information be so designated according to the terms of the Stipulated Protective Order;

> (e)    the requested documents be produced as they are kept in the usual course of business, or be organized and labeled to correspond to the categories in the request;

> (f)    the requested documents include electronically stored information produced in a form in which it is ordinarily maintained or in a reasonably usable for; and

> (g)    the same electronically stored information need not be produced in more than one form.

This Court requests "American-style" depositions.  Specifically, it is requested that:

> (a)    United States trial counsel for Finjan and Cisco be permitted to examine the witnesses under oath pursuant to the United States Federal Rules of Civil Procedure;

> (b)    counsel for the witnesses, including any United States counsel, be permitted to defend the depositions pursuant to the United States Federal Rules of Civil Procedure;

(c)   the depositions take place before a court reporter experienced in American depositions who will produce a verbatim transcript of the deposition;

(d)   the depositions take place before a videographer experienced in American depositions who will videotape the deposition;

(e)   the witnesses be required to review, correct, and sign the verbatim transcript within 14 days after the transcript is furnished to the witness (which may take 2 to 3 weeks);

(f)   the witnesses be examined as soon as practicable; and

(g)   the witnesses produce requested documents thirty business days prior to the examination of the witnesses.

**14.  Request for notification of the time and place for the execution of the Letter of Request and identity and address of any person to be notified (Article 7)**

This Court requests that the legal representatives for the parties (listed in Section 6, above) be informed as soon as practicable of the time and place for deposition of the witnesses.

**15.  Request for attendance or participation of judicial personnel of the requesting authority at the execution of the Letter of Request (Article 8)**

Not applicable (assuming that American-style depositions will take place).

**16.  Specification of privilege or duty to refuse to give evidence under the law of the State of origin (Article 11, *b*)**

Any privilege to refuse to give evidence under United States law is contained in the United States Federal Rules of Civil Procedure, Federal Rules of Evidence, and other applicable United States laws.  Specifically, the witness must answer all questions unless the witness is directed by counsel not to answer the question.  Such an instruction is appropriate only when necessary to preserve a privilege, to enforce a limitation directed by a court, or to support a motion to cease testimony due to harassment of the witness.

**17.  The fees and costs incurred which are reimbursable under the second paragraph of Article 14 or under Article 26 of the Convention will be borne by.**

The fees and costs incurred that are reimbursable under the second paragraph of Article 14 or under Article 26 of The Hague Convention will be borne by Cisco.

**Conclusion**

It is respectfully requested that this Letter of Request be given the highest consideration and

9

enforced as soon as practicable.  To the extent that any portion of the Request cannot be granted, it is respectfully requested that the remaining parts be granted.  This Court assures the Judicial Authorities in Israel that it will reciprocate with similar assistance in like cases and extends the Judicial Authorities the assurances of its highest consideration.

Date: _February 19, 2019_

Signature and seal of the requesting authority:

_Susan van Keulen_

The Honorable Susan van Keulen
United States District Court Magistrate Judge
U.S. District Court for the Northern District of California
United States

Date: _____

Signature and seal of the executing authority:

_____

Competent Authority
Israel

DM2\9651470.1

# **EXHIBIT 1**

PAUL ANDRE (State Bar No. 196585)
pandre@kramerlevin.com
LISA KOBIALKA (State Bar No. 191404)
lkobialka@kramerlevin.com
JAMES HANNAH (State Bar No. 237978)
jhannah@kramerlevin.com
KRAMER LEVIN NAFTALIS &
FRANKEL LLP
990 Marsh Road
Menlo Park, CA  94025
Telephone:  (650) 752-1700
Facsimile:   (650) 752-1800

Attorneys for Plaintiff
FINJAN, INC.

DUANE MORRIS LLP
Patrick S. Salceda (CA SBN 247978)
psalceda@duanemorris.com
One Market Plaza
Spear Tower, Suite 2200
San Francisco, CA 94105
Telephone: 415.957.3000
Facsimile: 650.618.2713

Attorneys for Defendant
CISCO SYSTEMS, INC.

(Complete list of counsel for Defendant on
signature page)

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| FINJAN, INC., a Delaware Corporation,<br><br>Plaintiff,<br><br>v.<br><br>CISCO SYSTEMS, INC., a California Corporation,<br><br>Defendant. | Case No.: 5:17-cv-00072-BLF-SVK<br><br>**[PROPOSED] STIPULATED PROTECTIVE ORDER**<br><br>**DEMAND FOR JURY TRIAL** |

1.   <u>PURPOSES AND LIMITATIONS</u>

Disclosure and discovery activity in this action are likely to involve production of confidential, proprietary, or private information for which special protection from public disclosure and from use for any purpose other than prosecuting this litigation may be warranted. Accordingly, the parties hereby stipulate to and petition the Court to enter the following Stipulated Protective Order. The parties acknowledge that this Order does not confer blanket protections on all disclosures or responses to discovery and that the protection it affords from public disclosure and use extends only to the limited information or items that are entitled to confidential treatment under the applicable legal principles. The parties further acknowledge, as

set forth in Section 14.4 below, that this Stipulated Protective Order does not entitle them to file confidential information under seal; Civil Local Rule 79-5 sets forth the procedures that must be followed and the standards that will be applied when a party seeks permission from the Court to file material under seal.

2.    DEFINITIONS

2.1    Challenging Party: a Party or Non-Party that challenges the designation of information or items under this Order.

2.2    "CONFIDENTIAL" Information or Items: information (regardless of how it is generated, stored or maintained) or tangible things that qualify for protection under Federal Rule of Civil Procedure 26(c).

2.3    Counsel (without qualifier): Outside Counsel of Record and House Counsel (as well as their support staff).

2.4    Designated House Counsel: House Counsel who seek access to "CONFIDENTIAL" information in this matter.

2.5    Designating Party: a Party or Non-Party that designates information or items that it produces in disclosures or in responses to discovery as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE."

2.6    Disclosure or Discovery Material: all items or information, regardless of the medium or manner in which it is generated, stored, or maintained (including, among other things, testimony, transcripts, and tangible things), that are produced or generated in disclosures or responses to discovery in this matter.

2.7    Expert: a person with specialized knowledge or experience in a matter pertinent to the litigation who (1) has been retained by a Party or its counsel to serve as an expert witness or as a consultant in this action, (2) is not a past or current employee of a Party, and (3) at the time of retention, is not anticipated to become an employee of a Party.

[PROPOSED] STIPULATED
PROTECTIVE ORDER

Case No.: 17-cv-00072-BLF-SVK

2.8     "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" Information or Items: extremely sensitive "Confidential Information or Items," disclosure of which to another Party or Non-Party would create a substantial risk of serious harm that could not be avoided by less restrictive means.

2.9     "HIGHLY CONFIDENTIAL –  ATTORNEYS' EYES ONLY – SOURCE CODE" Information or Items: extremely sensitive "Confidential Information or Items" representing "Source Code," (defined below), disclosure of which to another Party or Non-Party would create a substantial risk of serious harm that could not be avoided by less restrictive means.

2.10    House Counsel: attorneys who are employees of a Party to this action and who are responsible for supervising this Action.  House Counsel does not include Outside Counsel of Record or any other outside counsel.

2.11    Non-Party: any natural person, partnership, corporation, association, or other legal entity not named as a Party to this action.

2.12    Outside Counsel of Record: attorneys who are not employees of a Party to this action but are retained to represent or advise a Party to this action and have appeared in this action on behalf of that Party or are affiliated with a law firm which has appeared on behalf of that Party.

2.13    Party: any party to this action, including all of its officers, directors, employees, consultants, retained experts, House Counsel and Outside Counsel of Record (and their support staffs).

2.14    Producing Party: a Party or Non-Party that produces Disclosure or Discovery Material in this action.

2.15    Professional Vendors: persons or entities other than employees of a Party to this action that provide litigation support services (e.g., photocopying, videotaping, translating, preparing exhibits or demonstrations, and reviewing, categorizing, organizing, storing, or retrieving data in any form or medium) and their employees and subcontractors.

2.16    Protected Material: any Disclosure or Discovery Material that is designated as

3

1  "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," or

2  "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE."

3      2.17   <u>Receiving Party</u>: a Party that receives Disclosure or Discovery Material from a

4  Producing Party.

5      2.18   <u>Source Code</u>:  computer instructions and data definitions expressed in a form

6  suitable for input to an assembler or compiler and associated comments and revision histories to

7  the extent such comments and revision histories are contained within the source code itself.

8  3.   <u>SCOPE</u>

9      3.1   The protections conferred by this Stipulation and Order cover not only Protected

10  Material (as defined above), but also (1) any information copied or extracted from Protected

11  Material; (2) all copies, excerpts, summaries, or compilations of Protected Material; and (3) any

12  testimony, conversations, or presentations by Parties or their Counsel that might reveal Protected

13  Material. However, the protections conferred by this Stipulation and Order do not cover the

14  following information: (a) any information that is in the public domain at the time of disclosure to

15  a Receiving Party or becomes part of the public domain after its disclosure to a Receiving Party

16  as a result of publication not involving a violation of this Order, including becoming part of the

17  public record through trial or otherwise; and (b) any information known to the Receiving Party

18  prior to the disclosure or obtained by the Receiving Party after the disclosure from a source who

19  obtained the information lawfully and under no obligation of confidentiality to the Designating

20  Party. Any use of Protected Material at trial shall be governed by a separate agreement or order.

21  4.   <u>DURATION</u>

22      4.1   Even after final disposition of this litigation, the confidentiality obligations

23  imposed by this Order shall remain in effect until a Designating Party agrees otherwise in writing

24  or a court order otherwise directs. Final disposition shall be deemed to be the later of (1)

25  dismissal of all claims and defenses in this action, with or without prejudice; and (2) final

26  judgment herein after the completion and exhaustion of all appeals, rehearings, remands, trials, or

27  reviews of this action, including the time limits for filing any motions or applications for

28

[~~PROPOSED~~] STIPULATED                                    Case No.: 17-cv-00072-BLF-SVK
PROTECTIVE ORDER

1    extension of time pursuant to applicable law.

2    5.      DESIGNATING PROTECTED MATERIAL

3           5.1     Exercise of Restraint and Care in Designating Material for Protection. Each Party

4    or Non-Party that designates information or items for protection under this Order must take care

5    to limit any such designation to specific material that qualifies under the appropriate standards.

6    To the extent it is practical to do so, the Designating Party must designate for protection only

7    those parts of material, documents, items, or oral or written communications that qualify – so that

8    other portions of the material, documents, items, or communications for which protection is not

9    warranted are not swept unjustifiably within the ambit of this Order.

10          Mass, indiscriminate, or routinized designations are prohibited. Designations that are

11   shown to be clearly unjustified or that have been made for an improper purpose (e.g., to

12   unnecessarily encumber or retard the case development process or to impose unnecessary

13   expenses and burdens on other parties) expose the Designating Party to sanctions.

14          If it comes to a Designating Party's attention that information or items that it designated

15   for protection do not qualify for protection at all or do not qualify for the level of protection

16   initially asserted, that Designating Party must promptly notify all other Parties that it is

17   withdrawing the mistaken designation.

18          5.2     Manner and Timing of Designations. Except as otherwise provided in this Order

19   (see, e.g., second paragraph of Section 5.2(a) below), or as otherwise stipulated or ordered,

20   Disclosure or Discovery Material that qualifies for protection under this Order must be clearly so

21   designated before the material is disclosed or produced. Designation in conformity with this

22   Order requires:

23          (a)     for information in documentary form (e.g., paper or electronic documents, but

24   excluding transcripts of depositions or other pretrial or trial proceedings), that the Producing

25   Party affix the legend "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS'

26   EYES ONLY," or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE

27   CODE" to each page of a document or portion of a document that contains Protected Material, or,

28

[PROPOSED] STIPULATED                                    Case No.: 17-cv-00072-BLF-SVK
PROTECTIVE ORDER

if produced in native format, in the native document's file name.

      A Party or Non-Party that makes original documents or materials available for inspection need not designate them for protection until after the inspecting Party has indicated which material it would like copied and produced. During the inspection and before the designation, all of the material made available for inspection shall be deemed "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," or if the material is Source Code, "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE." After the inspecting Party has identified the documents it wants copied and produced, the Producing Party must determine which documents, or portions thereof, qualify for protection under this Order. Then, before producing the specified documents, the Producing Party must affix the appropriate legend ("CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE") to each page of a document or portion of a document that contains Protected Material, or, if produced in native format, in the native document's file name.

      (b)    <u>for testimony given in deposition or in other pretrial or trial proceedings</u>, that the Designating Party identify on the record, before the close of the deposition, hearing, or other proceeding, or within 21 days thereafter in a written notice to the other Party, all protected testimony and specify the level of protection being asserted. Only those portions of the testimony that are appropriately designated for protection within the 21 days shall be covered by the provisions of this Stipulated Protective Order. Alternatively, a Designating Party may specify, at the deposition, hearing or other proceeding, or up to 21 days afterwards in writing, that the entire transcript shall be treated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY."

      During a deposition, when counsel deems that the answer to a question may result in the disclosure of Protected Material of that counsel's client, counsel may request that any persons present who are not authorized pursuant to Section 7 leave the deposition during the confidential portion of the deposition.  The use of a document as an exhibit at a deposition shall not in any

                Case No.: 17-cv-00072-BLF-SVK

1   way affect its designation as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL –

2   ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

3   – SOURCE CODE."

4          Transcripts containing Protected Material shall have an obvious legend on the title page

5   that the transcript contains Protected Material, and the title page shall be followed by a list of all

6   pages (including line numbers as appropriate) that have been designated as Protected Material and

7   the level of protection being asserted by the Designating Party. The Designating Party shall

8   inform the court reporter of these requirements. Any transcript that is prepared before the

9   expiration of the 21-day period for designation shall be treated during that period as if it had been

10  designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" in its entirety unless

11  otherwise agreed. After the expiration of that period, the transcript shall be treated only as

12  actually designated.

13         (c)    <u>for information produced in some form other than documentary and for any other</u>

14  <u>tangible items</u>, that the Producing Party affix in a prominent place on the exterior of the container

15  or containers in which the information or item is stored the legend "CONFIDENTIAL,"

16  "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL

17  – ATTORNEYS' EYES ONLY – SOURCE CODE." If only a portion or portions of the

18  information or item warrant protection, the Producing Party, to the extent practicable, shall

19  identify the protected portion(s) and specify the level of protection being asserted.

20         5.3    <u>Inadvertent Failures to Designate</u>. An inadvertent failure to designate qualified

21  information or items does not, standing alone, waive the Designating Party's right to secure

22  protection under this Order for such material. Upon correction of a designation, the Receiving

23  Party must make reasonable efforts to assure that the material is treated in accordance with the

24  provisions of this Order.  If at the time of such correction, the Receiving Party has already

25  disclosed the Protected Material in a manner inconsistent with the corrected designation, the

26  Receiving Party shall comply with the procedures set forth at Section 12.1.

27

28

7

1      6.      CHALLENGING CONFIDENTIALITY DESIGNATIONS

2          6.1     Timing of Challenges. Any Party or Non-Party may challenge a designation of

3   confidentiality at any time. Unless a prompt challenge to a Designating Party's confidentiality

4   designation is necessary to avoid foreseeable, substantial unfairness, unnecessary economic

5   burdens, or a significant disruption or delay of the litigation, a Party does not waive its right to

6   challenge a confidentiality designation by electing not to mount a challenge promptly after the

7   original designation is disclosed.

8          6.2     Meet and Confer. The Challenging Party shall initiate the dispute resolution

9   process by providing written notice of each designation it is challenging and describing the basis

10  for each challenge. To avoid ambiguity as to whether a challenge has been made, the written

11  notice must recite that the challenge to confidentiality is being made in accordance with this

12  specific paragraph of the Protective Order. The parties shall attempt to resolve each challenge in

13  good faith and must begin the process by conferring directly (in voice to voice dialogue; other

14  forms of communication are not sufficient) within 14 days of the date of service of notice. In

15  conferring, the Challenging Party must explain the basis for its belief that the confidentiality

16  designation was not proper and must give the Designating Party an opportunity to review the

17  designated material, to reconsider the circumstances, and, if no change in designation is offered,

18  to explain the basis for the chosen designation. A Challenging Party may proceed to the next

19  stage of the challenge process only if it has engaged in this meet and confer process first or

20  establishes that the Designating Party is unwilling to participate in the meet and confer process in

21  a timely manner.

22         6.3     Judicial Intervention. If the Parties cannot resolve a challenge without court

23  intervention, the Designating Party shall file and serve a motion to retain confidentiality under

24  Civil Local Rule 7 (and in compliance with Civil Local Rule 79-5, if applicable) within 21 days

25  of the initial notice of challenge or within 14 days of the parties agreeing that the meet and confer

26  process will not resolve their dispute, whichever is earlier. Each such motion must be

27  accompanied by a competent declaration affirming that the movant has complied with the meet

28

8

and confer requirements imposed in the preceding paragraph. Failure by the Designating Party to make such a motion including the required declaration within 21 days (or 14 days, if applicable) shall automatically waive the confidentiality designation for each challenged designation. In addition, the Challenging Party may file a motion challenging a confidentiality designation at any time if there is good cause for doing so, including a challenge to the designation of a deposition transcript or any portions thereof. Any motion brought pursuant to this provision must be accompanied by a competent declaration affirming that the movant has complied with the meet and confer requirements imposed by the preceding paragraph.

The burden of persuasion in any such challenge proceeding shall be on the Designating Party. Frivolous challenges and those made for an improper purpose (e.g., to harass or impose unnecessary expenses and burdens on other parties) may expose the Challenging Party to sanctions. Unless the Designating Party has waived the confidentiality designation by failing to file a motion to retain confidentiality as described above, all parties shall continue to afford the material in question the level of protection to which it is entitled under the Producing Party's designation until the Court rules on the challenge.

7.    ACCESS TO AND USE OF PROTECTED MATERIAL

7.1    Basic Principles. A Receiving Party may use Protected Material that is disclosed or produced by another Party or by a Non-Party in connection with this case only for prosecuting, defending, or attempting to settle this litigation. Such Protected Material may be disclosed only to the categories of persons and under the conditions described in this Order. When the litigation has been terminated, a Receiving Party must comply with the provisions of Section 15 below (FINAL DISPOSITION).

Protected Material must be stored and maintained by a Receiving Party at a location and in a secure manner that ensures that access is limited to the persons authorized under this Order.

7.2    Disclosure of "CONFIDENTIAL" Information or Items. Unless otherwise ordered by the Court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated "CONFIDENTIAL" only to:

[~~PROPOSED~~] STIPULATED                    Case No.: 17-cv-00072-BLF-SVK
PROTECTIVE ORDER

1        (a)      the Receiving Party's Outside Counsel of Record in this action, as well as

2  employees of said Outside Counsel of Record to whom it is reasonably necessary to disclose the

3  information for this litigation;

4        (b)      Designated House Counsel of the Receiving Party (1) to whom disclosure is

5  reasonably necessary for this litigation, (2) who have signed the "Acknowledgment and

6  Agreement to Be Bound" (Exhibit A), and (3) as to whom the procedures set forth in section 7.4,

7  below, have been followed;

8        (c)      Experts (as defined in this Order) (1) to whom disclosure is reasonably necessary

9  for this litigation, (2) who have signed the "Acknowledgment and Agreement to Be Bound"

10  (Exhibit A), and (3) as to whom the procedures set forth in section 7.4, below, have been

11  followed;

12        (d)      the Court and its personnel, pursuant to Section 14.4;

13        (e)      court reporters and their staff,

14        (f)      professional jury or trial consultants (expressly excluding mock jurors) who have

15  signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A) and Professional

16  Vendors (as defined in this Order) to whom disclosure is reasonably necessary for this litigation;

17        (g)      during their depositions, witnesses in the action (1) to whom disclosure is

18  reasonably necessary, and (2) who have signed the "Acknowledgment and Agreement to Be

19  Bound" (Exhibit A);

20        (h)      the author or recipient of a document containing the information or a custodian or

21  other person who otherwise possessed or knew the information;

22        (i)      subject to timely objection including objection that such person is not internally

23  authorized to receive such information, any current employee of the Producing Party.

24        7.3      <u>Disclosure of "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" and</u>

25  <u>"HIGHLY CONFIDENTIAL –  ATTORNEYS' EYES ONLY – SOURCE CODE" Information</u>

26  <u>or Items</u>: Unless otherwise ordered by the Court or permitted in writing by the Designating Party,

27  a Receiving Party may disclose any information or item designated "HIGHLY CONFIDENTIAL

28

[~~PROPOSED~~] STIPULATED                Case No.: 17-cv-00072-BLF-SVK
PROTECTIVE ORDER

– ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES

ONLY – SOURCE CODE" only to:

(a)    the Receiving Party's Outside Counsel of Record in this action, as well as

employees of said Outside Counsel of Record to whom it is reasonably necessary to disclose the

information for this litigation;

(b)    Experts of the Receiving Party (1) to whom disclosure is reasonably necessary for

this litigation, (2) who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit

A), and (3) as to whom the procedures set forth in Section 7.4, below, have been followed;

(c)    the Court and its personnel, pursuant to Section 14.4;

(d)    court reporters and their staff, subject to Section 9.1(g),

(e)    professional jury or trial consultants (expressly excluding mock jurors) who have

signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A) and Professional

Vendors (as defined in this Order) to whom disclosure is reasonably necessary for this litigation,

but expressly excluding information or items designated "HIGHLY CONFIDENTIAL –

ATTORNEYS' EYES ONLY – SOURCE CODE" which shall not be disclosed to professional

jury or trial consultants;

(f)    the author or recipient of a document containing the information or a custodian or

other person who otherwise possessed or knew the information;

(g)    subject to timely objection including objection that such person is not internally

authorized to receive such information, any current employee of the Producing Party.

In addition, the Parties agree to meet and confer in good faith regarding potential

disclosures of particular "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY"

documents or information to Designated House Counsel, where the disclosure is reasonably

necessary to the litigation of this action, where the disclosure is reasonably necessary to further

settlement negotiations.

7.4    Procedures for Approving or Objecting to Disclosure of "CONFIDENTIAL,"

"HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL –

[PROPOSED] STIPULATED                              Case No.: 17-cv-00072-BLF-SVK
PROTECTIVE ORDER

1    ATTORNEYS' EYES ONLY – SOURCE CODE" Information or Items to Designated House
2    Counsel and Experts.

3        (a)(1)   Unless otherwise ordered by the court or agreed to in writing by the Designating
4    Party, a Party that seeks to disclose to Designated House Counsel any information or item that has
5    been designated "CONFIDENTIAL" pursuant to Section 7.2(b) first must (1) provide the
6    Designating Party with the "Acknowledgment and Agreement to Be Bound" (Exhibit A) executed
7    by the Designated House Counsel and (2) make a written request to the Designating Party that (a)
8    sets forth the full name of the Designated House Counsel and the city and state of his or her
9    residence, and (b) describes the Designated House Counsel's current and reasonably foreseeable
10   future primary job duties and responsibilities in sufficient detail to determine if House Counsel is
11   involved, or may become involved, in any competitive decision making.

12       (a)(2)   Unless otherwise ordered by the Court or agreed to in writing by the Designating
13   Party, a Party that seeks to disclose to an Expert (as defined in this Order) any information or item
14   that has been designated "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS'
15   EYES ONLY" or "HIGHLY CONFIDENTIAL– ATTORNEYS' EYES ONLY – SOURCE
16   CODE" pursuant to Section 7.2(c) or 7.3(b) first must (1) provide the Designating Party with the
17   "Acknowledgment and Agreement to Be Bound" (Exhibit A) executed by the Expert and (2)
18   make a written request to the Designating Party that (a) sets forth the full name of the Expert and
19   the city and state of his or her primary residence, (b) attaches a copy of the Expert's current
20   resume, (c) identifies the Expert's current employer(s), (d) identifies each person or entity from
21   whom the Expert has received compensation or funding for work in his or her areas of expertise
22   or to whom the expert has provided professional services, including in connection with a
23   litigation, at any time during the preceding five years,[1] and (e) identifies (by name and number of

24
25   _____

26   [1] If the Expert believes any of this information is subject to a confidentiality obligation to a third-
     party, then the Expert should provide whatever information the Expert believes can be disclosed
27   without violating any confidentiality agreements, and the Party seeking to disclose to the Expert
     shall be available to meet and confer with the Designating Party regarding any such engagement.
28

1    the case, filing date, and location of court) any litigation in connection with which the Expert has
2    offered expert testimony, including through a declaration, report, or testimony at a deposition or
3    trial, during the preceding five years.

4         (b)    A Party that makes a request and provides the information specified in the
5    preceding respective paragraphs may disclose the subject Protected Material to the identified
6    Designated House Counsel or Expert unless, within 14 days of delivering the request, the Party
7    receives a written objection from the Designating Party. Any such objection must set forth in
8    detail the grounds on which it is based.

9         7.5    A Party that receives a timely written objection must meet and confer with the
10   Designating Party (through direct voice to voice dialogue) to try to resolve the matter by
11   agreement within 7 days of the written objection. If no agreement is reached, the Party seeking to
12   make the disclosure to the Designated House Counsel or Expert may file a motion as provided in
13   Civil Local Rule 7 (and in compliance with Civil Local Rule 79-5, if applicable) seeking
14   permission from the Court to do so. Any such motion must describe the circumstances with
15   specificity, set forth in detail the reasons why the disclosure to the Designated House Counsel or
16   Expert is reasonably necessary, assess the risk of harm that the disclosure would entail, and
17   suggest any additional means that could be used to reduce that risk. In addition, any such motion
18   must be accompanied by a competent declaration describing the parties' efforts to resolve the
19   matter by agreement (i.e., the extent and the content of the meet and confer discussions) and
20   setting forth the reasons advanced by the Designating Party for its refusal to approve the
21   disclosure. In any such proceeding, the Party opposing disclosure to the Designated House
22   Counsel or Expert shall bear the burden of proving that the risk of harm that the disclosure would
23   entail (under the safeguards proposed) outweighs the Receiving Party's need to disclose the
24   Protected Material to its Designated House Counsel or Expert.

25   8.   PROSECUTION BAR

26        8.1    Absent written consent from the Producing Party, any individual who receives
27   access to "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY

28

13

1    CONFIDENTIAL– ATTORNEYS' EYES ONLY – SOURCE CODE" information shall not be

2    involved in the prosecution of patents or patent applications relating to systems and methods for

3    protecting computers and computer networks from malicious programs or code, including without

4    limitation the patents asserted in this action and any patent or application claiming priority to or

5    otherwise related to the patents asserted in this action, before any foreign or domestic agency,

6    including the United States Patent and Trademark Office ("the Patent Office").

7        8.2    For purposes of this section, "prosecution" includes any involvement in or

8    advising regarding drafting, editing, approving, or amending patent claims.[2] To avoid any doubt,

9    "prosecution" as used in this section does not include representing a party challenging a patent

10   before a domestic or foreign agency (including, but not limited to, a reissue protest, *ex parte*

11   reexamination, *inter partes* reexamination, *inter partes* review or other post grant proceeding).

12   "Prosecution" as used in this section also does not include participation by such individual

13   representing a patent-holder in a reissue protest, *ex parte* reexamination, *inter partes*

14   reexamination, *inter partes* review or other post grant proceeding, so long as the proceeding is not

15   initiated by the patent-holder itself for any of its own patents, and so long as the individual has no

16   involvement in and does not advise regarding drafting, editing, approving, or amending patent

17   claims.[3] No prohibition set forth in this paragraph shall apply to or result from any Protected

18   Materials that such individual had lawfully received or authored prior to and apart from this

19   litigation, or to any other material not covered by this Stipulated Protective Order.  Moreover, any

20   Parties' litigation counsel participating in any reissue protest, *ex parte* reexamination, or *inter*

21   *parte*s review are under an express legal obligation not to rely in any way on information

22   designated as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES

23   _____

24   [2] Prosecution includes, for example, original application, or involvement in or advising regarding

25   drafting, editing, approving or amending patent claims in a reissue protest, *ex parte*
     reexamination, *inter partes* reexamination, *inter partes* review or other post grant proceeding.

26   [3] Such individual may be involved in other activities such as reviewing, drafting or editing briefs,
     correspondence, or other materials in any reissue protest, *ex parte* reexamination, or *inter partes*

27   review, so long as the individual has no involvement in and does not advise regarding drafting,
     editing, approving, or amending patent claims.

28

[~~PROPOSED~~] STIPULATED                              Case No.: 17-cv-00072-BLF-SVK
PROTECTIVE ORDER

ONLY," OR "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE"
pursuant to this Protective Order supplied by the Producing Party through the course of this
litigation.

8.3     This Prosecution Bar shall begin when access to "HIGHLY CONFIDENTIAL –
ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL– ATTORNEYS' EYES ONLY –
SOURCE CODE" information is first received by the affected individual and shall end two (2)
years after final termination of this action, including any appeals thereof.

9.     SOURCE CODE

9.1     Source Code may be designated as "HIGHLY CONFIDENTIAL – ATTORNEYS'
EYES ONLY – SOURCE CODE" and shall be subject to all protections applicable to materials
designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," in addition to the
following protections:

(a)     If the production of Source Code is to occur in this litigation, after reasonable
notice to the Receiving Party, a single electronic copy of any such Source Code shall be made
available for inspection on a non-networked standalone computer with all ports, software, and
other avenues that can be used to copy or transfer such data blocked ("Standalone Computer").
The Standalone Computer shall be maintained at an office of Outside Counsel or Record for the
Producing Party or such other mutually agreeable location and at mutually agreeable times during
normal business hours, or Source Code shall be made available in another form selected by the
Producing Party that is at least as accessible as the Standalone Computer option described herein.
The source code shall be made available on the Standalone Computer in the same format as
maintained in the normal course of business, and in a format allowing it to be reasonably
reviewed and searched.  The non-networked Standalone Computer shall be password protected
and supplied by the Producing Party.  No person other than the Producing Party may alter,
dismantle, disassemble, or modify the Standalone Computer in any way, or attempt to circumvent
any security feature of the Standalone Computer.

(b)     The Receiving Party shall not copy, remove, or otherwise transfer any portion of

[~~PROPOSED~~] STIPULATED                                    Case No.: 17-cv-00072-BLF-SVK
PROTECTIVE ORDER

the Source Code onto any recordable media or recordable device.  The Producing Party may

visually monitor the activities of the Receiving Party's representatives during any Source Code

review, but only to ensure that there is no unauthorized recording, copying, or transmission of the

Source Code.  No cell phones, personal digital assistants (PDAs), Blackberries, cameras, voice

recorders, Dictaphones, or other personal communication devices are permitted in the secure

room containing the Standalone Computer.  The Receiving Party shall be entitled to take notes

(electronic or non-electronic) relating to the Source Code but may not copy the Source Code into

such notes. To the extent the Receiving Party desires to take notes electronically, the Producing

Party shall provide a note-taking computer (e.g., a computer, which is distinct from the

Standalone Computer, that is not linked to any network, including a local area network ("LAN"),

an intranet or the Internet, and has image making functionality of any type disabled, including but

not limited to camera or video functionality) ("note-taking computer") in the Source Code review

room for the Receiving Party's use in taking such notes. The notes shall not contain verbatim

copies of lines of Source Code.  Producing Party shall install commercially reasonable tools that

are sufficient for taking and saving of encrypted notes on the note-taking computer, and do not

require payment of additional license fees. The Producing Party shall not deny Receiving Party's

reasonable requests for specific note-taking tools.  The Receiving Party may save the electronic

notes in a container on the note-taking computer that is encrypted by the Receiving Party.  The

Producing Party shall also provide a maximum of three (3) encrypted USB drives onto which the

Receiving Party may copy such container that contain such notes at the end of a source code

review session. Whether the copying of such container from the note-taking computer onto the

encrypted USB drive(s) occurs inside or outside of the Source Code review room will be at the

discretion of the Producing Party. The Producing Party may observe the copying of such

container from the note-taking computer onto the encrypted USB drive(s) but may not access or

review the content of such container. The Receiving Party shall be responsible for deleting the

encrypted container and any notes and/or any files containing information remaining on the note-

taking computer that refer to, reference, or otherwise permit the review or reconstruction in whole

16

1   or part of, such notes, including without limitation any temporary files or file fragments,

2   remaining on the note-taking computer.  The Producing Party will not attempt to reconstruct any

3   notes that remain on the note-taking computer.  The Producing Party will not install any software

4   or device that is capable of recording or reconstructing notes taken on the note-taking computer.

5   The Receiving Party's notes shall be treated in accordance with the requirements of Fed. R. Civ.

6   P. 26(b)(4)(B) or (C) as appropriate.

7          (c)     Access to the Standalone Computer shall be permitted, after notice to the

8   Producing Party and an opportunity to object, to Outside Counsel of Record representing the

9   Receiving Party and Experts retained by the Receiving Party, the Experts having been approved

10   under Section 7.44 of this Protective Order.  The persons who will review Source Code on behalf

11   of a Receiving Party shall be named in writing to the Producing Party at least 7 court days in

12   advance of the first time that such person reviews such Source Code, and the Producing Party

13   may object in writing within 5 court days of such notice.  The parties shall thereafter meet and

14   confer within 3 court days of any objection by the Producing Party to attempt to resolve the

15   objection.  If the Parties cannot resolve the objection without court intervention, the Producing

16   Party may file a motion as provided in Civil Local Rule 7 (and in compliance with Civil Local

17   Rule 79-5, if applicable) within 5 court days of the end of the meet and confer period for relief

18   from providing the Receiving Party's proposed Source Code reviewer access to the Producing

19   Party's Source Code pursuant to the terms herein.  In any such proceeding, the Producing Party

20   shall bear the burden of proving that the risk of harm that the access would entail outweighs the

21   Receiving Party's need to allow its proposed Source Code reviewer access to the Source Code

22   under the safeguards proposed;

23          (d)     The Receiving Party may request that additional software tools be installed on the

24   standalone computer to assist the Receiving Party's review of the Source Code. The Receiving

25   Party shall be responsible for providing the tools or licenses to the tools that it wishes to use to the

26   Producing Party at least 7 days prior to the date on which access to the Standalone Computer is

27   sought so that the Producing Party may install such tools on the Standalone Computer.  If the

28

[~~PROPOSED~~] STIPULATED                                        Case No.: 17-cv-00072-BLF-SVK
PROTECTIVE ORDER

1  Parties are unable to agree on the additional requested software tools, the Receiving Party may

2  seek an Order from the Court after making a good faith effort to resolve their dispute;

3        (e)    The Receiving Party may request up to 500 printed pages of Source Code that are

4  reasonably necessary for the preparation of court filings, pleadings, expert reports, or other

5  papers, or for deposition or trial, but shall not request paper copies for the purposes of reviewing

6  the Source Code other than electronically as set forth in paragraph (a) in the first instance.  The

7  Receiving Party may not request more than 20 consecutive pages of Source Code absent express

8  permission from the Producing Party or an order from the Court.  The Producing Party shall

9  provide all such Source Code in paper form including bates numbers and the label "HIGHLY

10  CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE" within 5 court days of the

11  Receiving Party's request.  The Producing Party may challenge the amount of Source Code

12  requested in hard copy form pursuant to the dispute resolution procedure and timeframes set forth

13  in Section 6 whereby the Producing Party is the "Challenging Party" and the Receiving Party is

14  the "Designating Party" for purposes of dispute resolution.  To the extent the Receiving Party

15  requests more than 500 total pages of Source Code or more than 20 consecutive pages of Source

16  Code, the burden shall be on the Receiving Party to demonstrate the need for such requested

17  pages.   In the event that the Court orders production of the requested hard copy of Source Code,

18  the Producing Party shall produce such hard copy within 5 court days of the court order;

19        (f)    All access to the Source Code computer shall be maintained on a Source Code

20  Access Log identifying, for each and every time any Source Code is viewed, accessed or

21  analyzed: (1) the name of each person who accessed the code; (2) the date and time of access; (3)

22  the length of time of access; and (4) a copy of any hard (non-electronic) copies of any portion of

23  the code that were produced;

24        (g)    The Receiving Party shall not create any electronic copies or other images of the

25  paper copies and shall not convert any of the information contained in the paper copies into any

26  electronic format without the agreement of the Producing Party or further order of the Court.  The

27  Receiving Party shall maintain all paper copies of any printed portions of the Source Code in a

28

[PROPOSED] STIPULATED                                    Case No.: 17-cv-00072-BLF-SVK
PROTECTIVE ORDER

secured, locked area.  No additional hard (non-electronic) copies of Source Code or portions of Source Code shall be made without the agreement of the Producing Party or further order of the Court.  Notwithstanding the foregoing, nothing in this sub-Paragraph shall prevent a Party from making such additional hard or electronic copies of Source Code as are (1) necessary for use as exhibits at trial; (2) necessary to prepare court filings, pleadings, or other papers (including a testifying expert's expert report), (3) necessary for deposition, or (4) otherwise necessary for the preparation of its case. Such papers shall be subject to the requirements of Section 14.4 herein, and all other protections applicable to Protected Material.  Any paper copies used during a deposition shall be retrieved by the Producing Party at the end of each day provided that the Producing Party provides the party taking the deposition with a copy of any such document that has been marked as an exhibit during the deposition.  Such paper copies must not be given to or left with a court reporter or any other unauthorized individual.  No party may thereafter object to the deposition transcript or exhibit on the basis that the exhibit is not attached to the court reporter's version of the transcript or on the basis that the court reporter did not retain the exhibit;

(h)	Within 60 days of final termination of the suit as to the Producing Party, the Receiving Party shall return all hard (non-electronic) copies of Source Code or certify through counsel with personal knowledge that all such copies have been destroyed.

10.	<u>PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED IN OTHER LITIGATION</u>

10.1	If a Party is served with a subpoena or a court order issued in other litigation that compels disclosure of any information or items designated in this action as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE," that Party must:

(a)	promptly notify in writing the Designating Party. Such notification shall include a copy of the subpoena or court order;

(b)	promptly notify in writing the party who caused the subpoena or order to issue in the other litigation that some or all of the material covered by the subpoena or order is subject to this Protective Order. Such notification shall include a copy of this Stipulated Protective Order;

[~~PROPOSED~~] STIPULATED
PROTECTIVE ORDER
Case No.: 17-cv-00072-BLF-SVK

and

      (c)     cooperate with respect to all reasonable procedures sought to be pursued by the Designating Party whose Protected Material may be affected.

      10.2    If the Designating Party timely seeks a protective order, the Party served with the subpoena or court order shall not produce any information designated in this action as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY." or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE" before a determination by the court from which the subpoena or order issued, unless the Party has obtained the Designating Party's permission. The Designating Party shall bear the burden and expense of seeking protection in that court of its confidential material – and nothing in these provisions should be construed as authorizing or encouraging a Receiving Party in this action to disobey a lawful directive from another court.

11.    <u>A NON-PARTY'S PROTECTED MATERIAL SOUGHT TO BE PRODUCED IN THIS LITIGATION</u>

      (a)     The terms of this Order are applicable to information produced by a Non-Party in this action and designated as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE." Such information produced by Non-Parties in connection with this litigation is protected by the remedies and relief provided by this Order. Nothing in these provisions should be construed as prohibiting a Non-Party from seeking additional protections.

      (b)     In the event that a Party is required, by a valid discovery request, to produce a Non-Party's confidential information in its possession, and the Party is subject to an agreement with the Non-Party not to produce the Non-Party's confidential information, then the Party shall:

      (i)  promptly notify in writing the Requesting Party and the Non-Party that some or all of the information requested is subject to a confidentiality agreement with a Non-Party;

      (ii) promptly provide the Non-Party with a copy of the Stipulated Protective Order in this litigation, the relevant discovery request(s), and a reasonably specific description of the information requested; and

20

1     (iii)make the information requested available for inspection by the Non-Party.

2     (c)     If the Non-Party fails to object or seek a protective order from this Court within 14 days of receiving the notice and accompanying information, the Receiving Party may produce the Non-Party's confidential information responsive to the discovery request. If the Non-Party timely seeks a protective order, the Receiving Party shall not produce any information in its possession or control that is subject to the confidentiality agreement with the Non-Party before a determination by the Court. Absent a court order to the contrary, the Non-Party shall bear the burden and expense of seeking protection in this Court of its Protected Material.

12.     <u>UNAUTHORIZED DISCLOSURE OF PROTECTED MATERIAL</u>

12.1     If a Receiving Party learns that, by inadvertence or otherwise (including due to an incorrect designation pursuant to Section 5.3), it has disclosed Protected Material to any person or in any circumstance not authorized under this Stipulated Protective Order, the Receiving Party must immediately (a) notify in writing the Designating Party of the unauthorized disclosures, (b) use its best efforts to retrieve all unauthorized copies of the Protected Material, (c) inform the person or persons to whom unauthorized disclosures were made of all the terms of this Order, and (d) request such person or persons to execute the "Acknowledgment and Agreement to Be Bound" that is attached hereto as Exhibit A.

13.     <u>INADVERTENT PRODUCTION OF PRIVILEGED OR OTHERWISE PROTECTED MATERIAL</u>

(a)     When a Producing Party gives notice to Receiving Parties that certain inadvertently produced material is subject to a claim of privilege or other protection, the obligations of the Receiving Parties are those set forth in Federal Rule of Civil Procedure 26(b)(5)(B). This provision is not intended to modify whatever procedure may be established in an e-discovery order that provides for production without prior privilege review. Pursuant to Federal Rule of Evidence 502(d) and (e), insofar as the parties reach an agreement on the effect of disclosure of a communication or information covered by the attorney-client privilege or work product protection, the parties may incorporate their agreement in the stipulated protective order submitted to the Court.

[PROPOSED] STIPULATED     Case No.: 17-cv-00072-BLF-SVK
PROTECTIVE ORDER

14.    MISCELLANEOUS

14.1    <u>Right to Further Relief</u>. Nothing in this Order abridges the right of any person to seek its modification by the Court in the future.

14.2    <u>Right to Assert Other Objections</u>. By stipulating to the entry of this Protective Order, no Party waives any right it otherwise would have to object to disclosing or producing any information or item on any ground not addressed in this Stipulated Protective Order. Similarly, no Party waives any right to object on any ground to use in evidence of any of the material covered by this Protective Order.

14.3    <u>Export Control</u>. Disclosure of Protected Material shall be subject to all applicable laws and regulations relating to the export of technical data contained in such Protected Material, including the release of such technical data to foreign persons or nationals in the United States or elsewhere. The Producing Party shall be responsible for identifying any such controlled technical data, and the Receiving Party shall take measures necessary to ensure compliance.

14.4    <u>Filing Protected Material</u>. Without written permission from the Designating Party or a court order secured after appropriate notice to all interested persons, a Party may not file in the public record in this action any Protected Material. A Party that seeks to file under seal any Protected Material must comply with Civil Local Rule 79-5. Protected Material may only be filed under seal pursuant to a court order authorizing the sealing of the specific Protected Material at issue. Pursuant to Civil Local Rule 79-5, a sealing order will issue only upon a request establishing that the Protected Material at issue is privileged, protectable as a trade secret, or otherwise entitled to protection under the law. If a Receiving Party's request to file Protected Material under seal pursuant to Civil Local Rule 79-5(e) is denied by the Court, then the Receiving Party may file the Protected Material in the public record pursuant to Civil Local Rule 79-5(e)-(f) unless otherwise instructed by the Court.

15.    FINAL DISPOSITION

15.1    Within 60 days after the final disposition of this action, as defined in Section 4, each Receiving Party must return all Protected Material to the Producing Party or destroy such

22

1   material. As used in this subdivision, "all Protected Material" includes all copies, abstracts,

2   compilations, summaries, and any other format reproducing or capturing any of the Protected

3   Material. Whether the Protected Material is returned or destroyed, the Receiving Party must

4   submit a written certification to the Producing Party (and, if not the same person or entity, to the

5   Designating Party) by the 60 day deadline that (1) identifies (by category, where appropriate) all

6   the Protected Material that was returned or destroyed and (2) affirms that the Receiving Party has

7   not retained any copies, abstracts, compilations, summaries or any other format reproducing or

8   capturing any of the Protected Material. Notwithstanding this provision, Counsel are entitled to

9   retain an archival copy of all pleadings, motion papers, trial, deposition, and hearing transcripts,

10  legal memoranda, correspondence, deposition and trial exhibits, expert reports, attorney work

11  product, and consultant and expert work product, even if such materials contain Protected

12  Material. Any such archival copies that contain or constitute Protected Material remain subject to

13  this Protective Order as set forth in Section 4 (DURATION).

14

15  IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.

16  Dated:      December 28, 2017

17

18          */s/ James Hannah*                    */s/ Jennifer H. Forte*
            Paul Andre                          Patrick S. Salceda
19          Lisa Kobialka                       Email:  psalceda@duanemorris.com
            James Hannah                        DUANE MORRIS LLP
20          KRAMER LEVIN NAFTALIS &             Spear Tower
            FRANKEL LLP                         One Market Plaza, Suite 2200
21                                              San Francisco, CA  94105-1127
            990 Marsh Road                      Telephone: 415.957.3000
22          Menlo Park, CA 94025                Facsimile: 650.618.2713
            Telephone: (650) 752-1700
23          Facsimile: (650) 752-1800           L. Norwood Jameson (admitted *pro hac vice*)
24          pandre@kramerlevin.com              Email:  wjameson@duanemorris.com
            lkobialka@kramerlevin.com           Matthew C. Gaudet (admitted *pro hac vice*)
25          jhannah@kramerlevin.com             Email:  mcgaudet@duanemorris.com
                                                David C. Dotson (admitted *pro hac vice*)
26                                              Email:  dcdotson@duanemorris.com
            Benu Wells (admitted *pro hac vice*) Jennifer H. Forte (admitted *pro hac vice*)
27          KRAMER LEVIN NAFTALIS &             Email:  jhforte@duanemorris.com
            FRANKEL LLP                         DUANE MORRIS LLP
28          1177 Avenue of the Americas         1075 Peachtree Street, Ste. 2000

                                            23

1    New York, New York 10036            Atlanta, GA  30309
     Telephone: (212) 715-7590           Telephone: 404.253.6901
2    Facsimile: (212) 715-8314           Facsimile: 404.253.6901
     bwells@kramerlevin.com              Joseph A. Powers (admitted *pro hac vice*)
3                                        Email:  japowers@duanemorris.com
                                         Jarrad M. Gunther (admitted *pro hac vice*)
4    *Counsel for Plaintiff*             Email: jmgunther@duanemorris.com
     *Finjan, Inc.*                      DUANE MORRIS LLP
5                                        30 South 17th Street
                                         Philadelphia, PA  19103
6                                        Telephone: 215.979.1000
                                         Facsimile: 215.979.1020
7
                                         *Counsel for Defendant*
8                                        *Cisco Systems, Inc.*

9

10   PURSUANT TO STIPULATION, IT IS SO ORDERED.

11

12   DATED: January 5, 2018              Susan van Keulen
                                         _____
13                                       Magistrate Judge Susan van Keulen

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                        24
[~~PROPOSED~~] STIPULATED                    Case No.: 17-cv-00072-BLF-SVK
PROTECTIVE ORDER

1

## <u>ATTESTATION</u>

2

In accordance with General Order 45.X.B, Jennifer H. Forte, counsel for Cisco Systems,

3

Inc., attests that all signatories have concurred in this filing.

4

5

Dated: December 28, 2017                          */s/ Jennifer H. Forte*

6                                                              Jennifer H. Forte

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[PROPOSED] STIPULATED                          Case No.: 17-cv-00072-BLF-SVK
PROTECTIVE ORDER

1
2

<u>EXHIBIT A</u>

<u>ACKNOWLEDGMENT AND AGREEMENT TO BE BOUND</u>

3    I, _____ [print or type full name], of

4 _____ [print or type full address], declare under penalty of perjury that I have read

5 in its entirety and understand the Stipulated Protective Order that was issued by the United States

6 District Court for the Northern District of California, San Jose Division on _____ [date] in the

7 case of FINJAN, INC. v. CISCO SYSTEMS, INC., Case No.:17-cv-00072-BLF-SVK.  I agree to

8 comply with and to be bound by all the terms of this Stipulated Protective Order, and I understand

9 and acknowledge that failure to so comply could expose me to sanctions and punishment in the

10 nature of contempt. I solemnly promise that I will not disclose in any manner any information or

11 item that is subject to this Stipulated Protective Order to any person or entity except in strict

12 compliance with the provisions of this Order.

13    I further agree to submit to the jurisdiction of the United States District Court for

14 the Northern District of California for the purpose of enforcing the terms of this Stipulated

15 Protective Order, even if such enforcement proceedings occur after termination of this action.

16    I hereby appoint _____ [print or type full name] of

17 _____ [print or type full address and telephone

18 number] as my California agent for service of process in connection with this action or any

19 proceedings related to enforcement of this Stipulated Protective Order.

20

21 Date: _____

22 City and State where sworn and signed: _____

23 Printed name: _____
24    [printed name]

25 Signature: _____
26    [signature]

27

28

[PROPOSED] STIPULATED       Case No.: 17-cv-00072-BLF-SVK
PROTECTIVE ORDER

# **EXHIBIT 2**

## SCHEDULE OF ASHER POLANI DEPOSITION TOPICS

## DEFINITIONS

1.      "You" or "your" means Asher Polani.

2.      "Finjan" shall refer to Plaintiff Finjan, Inc. and any predecessor or related entities such as Finjan Software, Ltd., Finjan Software, Inc., and Finjan Holdings, Inc.

3.      The term "Cisco" means Cisco Systems, Inc., including its employees, agents and representatives acting on its behalf.

4.      Every reference herein to a corporation or a company includes such corporation or company's officers, directors, current and former employees, counsel, agents, consultants, representatives, and any other persons acting on behalf of any of the foregoing.

5.      The term "Asserted Patents" shall refer to U.S. Patent Nos. 6,154,844; 8,677,494; 7,647,633; 8,141,154; and 6,804,780.

6.      The term "Asserted Claim" shall mean any claim of the Asserted Patents that Finjan contends is infringed by Cisco.

7.      The term "Related Patent" shall mean and refer to any U.S. or foreign patent or application in any jurisdiction worldwide which claims priority from the Patents-in-Suit or to which the Patents-in-Suit claim priority, including but not limited to any and all parent applications, originals, divisionals, renewals, continuations, continuations-in-part, continuation prosecution applications, provisional applications, reissues, re-examinations, extensions, patents of importation, patents of addition, utility models, and foreign counterparts of any of the foregoing, and all patents claiming priority based on or in common with any of the foregoing.

8.      The term "Finjan Product" shall refer to any instrumentality incorporating, embodying, practicing or otherwise covered by any claim of any of the Asserted Patents made or

sold by Finjan, including but not limited to, all versions of SurfinGate, SurfinShield, Vital Security appliances, and Finjan Secure Browser.

9.      "Communication" means the exchange of information by any means of transmission.

10.      "Concerning," "referring to," "that refer(s) to," "relating to," "that relate(s) to," and other variations thereof, as used herein shall be construed in their broadest possible sense, and shall mean without limitation: referring to, constituting, bearing upon, commenting upon, reflecting, evidencing, pertaining to, describing, depicting, consisting of, containing, comprising, embodying, identifying, stating, or having any logical or factual connection whatsoever with the subject addressed, regardless whether the factual connection is favorable to or adverse to you.

11.      "Document" is used in its customary broad sense, and includes, but is not limited to, any written, printed, typed, recorded, videotaped, filmed, transcribed, taped, electronically-created or other matter of any kind or nature held or produced or reproduced. The foregoing specifically includes electronically-stored information, such as electronic mail.

12.      The term "infringe" or any variation thereof, including "infringing," "infringement" and "infringer" shall refer to the commission of any act constituting infringement under the Patent Laws, including 35 U.S.C. § 271.

13.      "Product" means any machine, manufacture, apparatus, device, system, process, or method which is designed to function together electrically, mechanically, chemically, or otherwise, to achieve a particular function or purpose, including those offered for sale, sold, imported, or under development.

14.      "Including" shall not be used to limit any general category or description that precedes it and shall mean "including without limitation" so as to be inclusive.

15.　　　"Person" as used herein includes any natural person, firm, partnership, association, corporation, trust, and any other business, governmental or legal entity.

## DEPOSITION TOPICS

1.　　　Any funding or compensation provided by Finjan to you, including any financial interest you have in Finjan or the outcome of any Finjan patent infringement lawsuit.

2.　　　Your employment at Finjan and work done for Finjan.

3.　　　Your interactions and/or communications with Cisco and/or any current or former employee of Cisco, including but not limited to Yoav Samet.

4.　　　Your interactions and/or communications with members of Finjan's Board of Directors, including but not limited to Daniel Chinn, Arad Naveh, Michael Eisenberg, Justin Label, Sigal Widman and Neil Cohen.

5.　　　Your interactions and/or communications with Shlomo Touboul.

6.　　　Your understanding, if any, of the meaning or scope of, or the inventions claimed in the Asserted Patents.

7.　　　Your understanding, if any, of the structure, function, and operation of any Finjan Product.

8.　　　The business operations and commercial activities of Finjan, including without limitation any research, development, manufacturing, licensing, and sales activities by Finjan related to the Asserted Patents and/or Finjan Products, and the revenues and profits associated with any commercial embodiments of the Finjan patents, including the Finjan Products.

9.　　　Finjan's efforts to license the Asserted Patents or Related Patents assigned to Finjan, whether or not such efforts were successful, including without limitation Finjan's

licensing negotiations, policies or practices, and any valuation of the Patents-in-Suit by Finjan or another person.

10.     Finjan's interactions and/or communications with Aladdin Knowledge Systems, Ltd. ("Aladdin") that refer or relate to Aladdin's products or intellectual property.

11.     The removal or demotion of Shlomo Touboul as Finjan's CEO and a board member, including the reasons for such demotion or removal and any potential litigation resulting therefrom.

12.     All equity investments of third parties in Finjan, including without limitation the date of any investment, the size of the investment, any monetary value placed by Finjan on any investment, the terms or contingencies of the investment, and any communications pursuant to such investments concerning the Asserted Patents.

13.     Finjan's document retention policies between 2005 through 2007.

DM2\9651569.2

4

# **EXHIBIT 3**

## SCHEDULE OF ASHER POLANI REQUESTS FOR PRODUCTION

## DEFINITIONS AND INSTRUCTIONS

The Requests herein are subject to and incorporate the following definitions:

1.      "You" means Mr. Asher Polani.

2.      "Finjan" refers to Finjan, Inc., its current and former officers, directors, employees, consultants, attorneys, experts, agents, partners, corporate parents, subsidiaries, subdivisions, predecessors and/or affiliates of each such entity, including Finjan Software, Ltd., Finjan Software, Inc., and Finjan Holdings, Inc.

3.      The term "Cisco" means Cisco Systems, Inc., including its employees, agents and representatives acting on its behalf.

4.      The term "the '844 Patent," as used herein, refers to and includes United States Patent No. 6,154,844 entitled "System and Method for Attaching a Downloadable Security Profile to a Downloadable."

5.      The term "the '780 Patent," as used herein, refers to and includes United States Patent No. 6,804,780 entitled "System and Method for Protecting a Computer and a Network From Hostile Downloadables."

6.      The term "the '633 Patent," as used herein, refers to and includes United States Patent No. 7,647,633 entitled "Malicious Mobile Code Runtime Monitoring System and Methods."

7.      The term "the '494 Patent," as used herein, refers to and includes United States Patent No. 8,677,494 entitled "Malicious Mobile Code Runtime Monitoring System and Methods."

8.     The term "the '154 Patent," as used herein refers to and includes U.S. Patent No. 8,141,154 entitled "System and Method for Inspecting Dynamically Generated Executable Code."

9.     The term "Asserted Patents," as used herein, refers to and includes any patent asserted by Finjan in this action, including specifically, the '844 Patent, the '780 Patent, the '633 Patent, the '494 Patent, and the '154 Patent.

10.     The term "Finjan Product" shall refer to any instrumentality incorporating, embodying, practicing or otherwise covered by any claim of any of the Asserted Patents whether made or sold by Finjan, including but not limited to, all versions of SurfinGate, SurfinShield, Vital Security appliances, and FinjanMobile Vital Security Browser.

13.     "Document" carries its broadest meaning consistent with Rule 34 of the Federal Rules of Civil Procedure and includes all non-identical copies (i.e., copies that differ in any way, including copies bearing additions, deletions, notes, annotations, riders, or similar markings) and any electronically stored information, including emails from your apolani@finjan.com email account.

14.     "Including" and "includes" mean "including" and "includes" without limitation.

15.     The connectives "and," "or," and "and/or" shall be construed either disjunctively or conjunctively, as necessary, to bring within the scope of these requests for production all responses that might otherwise be construed to be outside of their scope.

16.     The use of the singular of any word shall include the plural and vice versa, and the use of a verb in any tense or voice shall be construed as the use of that verb in all other tenses and voices, as necessary to bring within the scope of the discovery request all responses that might otherwise be construed as outside its scope.

17.     All documents requested herein shall be produced in the same sequence as they are contained or found and with the file folders and other identifying documents or containers (e.g., copy of envelope, file cabinet market, binder tab) in which such documents were located when these requests were served.

18.     If You object or otherwise refuse to respond or produce documents or things in response to any portion of a document request, You shall (1) state the objection or reason for such refusal, and (2) provide all documents or things called for by that portion of the request for production to which you do not object or refuse to respond.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

1.      All agreements that You entered into with Finjan or Finjan's counsel.

2.      Documents created while You worked for Finjan that reference or relate to Cisco, its products or services, and/or its current or former employees, including but not limited to, Yoav Samet.

3.      Documents that reference or relate to Shlomo Touboul between 2005 through 2007.

4.      Documents that reference or relate to the removal or demotion of Shlomo Touboul as Finjan's CEO and a board member, including the reasons for such demotion or removal and any potential litigation resulting therefrom.

5.      Documents that reference or relate to the revenue generated by Finjan from any Finjan business activities not related to patent licensing or litigation, and how such revenue was generated.

6.      Documents that reference or relate to Finjan's Board of Directors, including but not limited to, any presentations, summaries, or memoranda provided thereto.

7.      Documents commenting upon or describing the scope or coverage of Finjan's intellectual property, including the Asserted Patents and other patents owned by Finjan or patents in which Finjan has an ownership interest.

8.      Documents that reference or relate to any efforts to license the Asserted Patents, including, but not limited to all documents and communications relating to negotiations of any license under the Asserted Patents, whether or not an agreement was reached.

9.      Documents constituting or relating the benefits and advantages allegedly attributable to the patented features in the Asserted Patents.

10.     Documents that referenced or relate to Finjan's document retention policies and procedures.

11.     Documents that refer or relate to the products or intellectual property of Aladdin Knowledge Systems, Ltd.

DM2\9651980.2