UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FINJAN, INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>CISCO SYSTEMS INC.,<br><br>    Defendant. | Case No. 17-cv-00072-BLF (SVK)<br><br>***FILED UNDER SEAL***<br><br>**FINAL ORDER ON MOTIONS HEARD ON JUNE 6, 2019**<br><br>Re: Dkt. Nos. 118, 209, 231, 243, 261 |

The Court heard oral argument on the following motions on June 6, 2019:

- ECF 188: Finjan's Motion to Strike Cisco's Further Updated Second Election of Asserted Prior Art;

- ECF 231: Finjan's Motion for Leave to Supplement Infringement Contentions;

- ECF 209: Cisco's Motion to Strike Finjan's Second Supplemental Objections and Responses to Cisco's Interrogatory No. 10 or, in the alternative, Leave to Amend to Assert Counterclaim for Breach of Contract;

- ECF 243: Joint discovery letter brief re deposition subpoena to non-party Neal Rubin; and

- ECF 261: Joint discovery letter brief re Finjan's production of documents regarding relationship between IBM and Finjan/Finjan Blue.

In advance of the hearing, the Court issued tentative rulings and questions on the motions. ECF 271. This order contains the Court's final rulings on the motions. After careful consideration of the parties' submissions, statements at oral arguments, the case file, and relevant law, the Court ORDERS as follows:

////

////

**ECF 188: Finjan's Motion to Strike
Cisco's Further Updated Second Election of Asserted Prior Art**

Finjan moves to strike Cisco's Further Updated Second Election of Asserted Prior Art on the grounds that it does not comply with the Court's August 16, 2017 Order requiring a phased reduction in the number of asserted prior art references in this case. ECF188; *see also* ECF 70 (the "August 2017 Order"). Finjan's motion is **GRANTED IN PART** and **DENIED IN PART.**

I.   **Background**

Patent Local Rule 3-3 requires that after the patent holder serves a Disclosure of Asserted Claims and Infringement Contentions, the accused infringer must serve Invalidity Contentions. The Invalidity Contentions must contain, among other things, "[a] chart identifying specifically where and how in each alleged item of prior art each limitation of each asserted claim is found." Patent L.R. 3-3(c).

The Court's August 2017 Order adopted the parties' stipulation to streamline the case by imposing "phased limits on asserted claims, prior art and invalidity theories." ECF 70 at 4. Specifically, after Cisco provided its Invalidity Contentions, Finjan was required to serve a Preliminary Election of Asserted Claims, selecting a limited number of claims from the claims Finjan had previously asserted in its Infringement Contentions. *Id.* Cisco was then required to serve a Preliminary Election of Asserted Prior Art, electing a limited number of prior art references from prior art previously asserted in its Invalidity Contentions. *Id.*

The second phase of elections required the parties to further reduce the number of asserted claims and prior art references by serving a Second Election of Asserted Claims (by Finjan), followed by a Second Election of Asserted Prior Art (by Cisco). *Id.*

On September 13, 2018, the Court issued an order approving the parties' stipulation to further narrow the asserted claims and prior art in this case. ECF 140. Under that order, Cisco was required to serve a Third Election of Asserted Prior Art, which identified a limited number of invalidity theories from the subset of previously-identified prior art. *Id.* at 1.

////

////

2

## II. Discussion

Finjan's current motion seeks to strike Cisco's Second Election of Asserted Prior Art—more precisely, Cisco's Further Updated Second Election of Asserted Prior Art served on January 18, 2019 (for purposes of this Order, that document will be referred to as Cisco's "Second Election"). ECF 188.[1] The Second Election was served pursuant to the August 2017 Order, which provided that this election "shall assert from the subset of prior art previously identified no more than 6 prior art references per patent and no more than a total of 20 references across all Patents-in-Suit." ECF 70 at 4. The August 2017 Order clarified that "[a] prior art instrumentality (such as a device or process) and associated references that describe that instrumentality shall count as one reference, as shall the closely related work of a single prior artist." *Id.* at n.3. Finjan argues that Cisco's Second Election does not comply with the August 2017 Order because Cisco "chose to obfuscate the specific prior art products it is asserting against Finjan and added new prior art references that Cisco failed to include in its Invalidity Contentions." ECF 188 at 5. Finjan's specific disagreements with Cisco's Second Election are discussed below.

1. **Cisco's identification of multiple versions of software:** The Court's tentative ruling was that each version of software counts as one piece of prior art, and thus if Cisco wants the identified software to count as only one piece of prior art, it must pick a single version of the software to assert. ECF 271. At the hearing, Cisco agreed to update its election of software to conform to the Court's tentative ruling. Accordingly, the Court adopts its tentative ruling as its final order on the issue of software versions.

2. **Cisco's identification of multiple versions of user manuals:** The Court's final order is that for an elected version of software, Cisco may identify a user manual that refers to that

---

[1] Following Cisco's service of it Second Election of Asserted Prior Art, the parties met and conferred on various issues. *See* ECF 188 at 3-4. As a result of those meet and confer efforts, Cisco subsequently served an Updated Second Election on December 14, 2018 and, following additional meet and confer efforts, a Further Updated Second Election of Asserted Prior Art on January 18, 2019. *Id.*; ECF 188-1 at ¶¶ 4-5.

1  specific software version as an "associated reference" under the August 2017 Order.  For an
2  elected version of software, Cisco may not identify multiple user manuals across various operating
3  systems

3. **References that Finjan claims Cisco did not chart as part of its original invalidity contentions:**  As discussed above, Patent Local Rule 3-3(c) requires the accused infringer to chart each alleged prior art reference.  The Court therefore holds that only those primary references that were charted in Cisco's Invalidity Contentions are valid choices from which Cisco may elect prior art in its narrowing elections.  Finjan's motion to strike argues that Cisco did not chart the '346 Chess patent, the '035 Nash patent, or the '348 Ji patent and that therefore those references may not be included in Cisco's election of prior art.

a. **'346 Chess patent and '035 Nash patent**

Cisco argues that it adequately charted the '346 Chess patent the '035 Nash patent because the chart in its Invalidity Contentions for patent-in-suit 7,647,633, while not identifying these patents specifically, cross-references Section III.C.3 of Cisco's Invalidity Contentions cover pleading.  *See* ECF 195-3 at 8.  However, Section III.C.3. of the Invalidity Contentions cover pleading is 15 pages in length and covers at least five claim elements.  *See* ECF 194-3 at 51-67.  Under the element "Determining if Downloadable-Information has Executable Code," which itself covers six pages, the Chess and Nash patents are mentioned, along with numerous other references.  *Id*.  If the issue before the Court was purely a question of whether Finjan was on notice of the Chess and Nash patents, Cisco's manner of cross-referencing the cover pleading in the '633 chart might suffice.  However, Patent Local Rule 3-3(c) requires prior art references to be charted.  Having failed to chart these references, Cisco cannot now elect them as prior art references.

b. **'348 Ji patent**

At the hearing, Finjan agreed with Cisco that the '348 Ji patent was charted for certain asserted claims.  Accordingly, that patent can be elected by Cisco as a prior reference for any claim for which it was charted.

      **c. Digital Immune System ("DIS")**

For patents-in-suit 7,647,633 and 8,677,494, Cisco identified as prior art "Digital Immune System" and listed four (for the '633 patent) and five (for the '494 patent) "following references." ECF 188-6 at 3-4. Based on the arguments and clarifications presented by the parties at the hearing, where the Digital Immune System reference has been identified for the '633 and the '494 patents, Cisco must limit its election to just one of the "following references" that has been charted.

**4.**     **Amendment of Second Election:** The Court **DENIES** Finjan's motion to strike Cisco's prior art allegations as a sanction for Cisco's conduct. The Court instead **ORDERS** that Cisco must serve an amended Second Election that conforms to this order within seven (7) days of the date of the order. Cisco must also serve an amended Third Election of Prior Art within seven (7) days of serving the amended Second Election.

5.     **Production of prior art:** Finjan's motion to strike refers to certain issues regarding the production of prior art. *See, e.g.,* ECF 188 at 8. At the hearing, neither party raised an issue with respect to Court's tentative ruling that within seven (7) days of Cisco's service of its amended election of prior art, the parties must meet and confer to resolve and, if necessary, file a joint discovery letter brief regarding any issues concerning the production of prior art. Accordingly, the Court adopts its tentative ruling as its final order on this issue.

////
////
////
////
////
////
////
////

**ECF 231: Finjan's Motion to Amend Infringement Contentions**

Finjan moves to amend its Infringement Contentions. ECF 231. Finjan's motion is **DENIED** for the reasons set forth below.

A plaintiff may amend its infringement contentions "only by order of the Court upon a timely showing of good cause," such as the "[r]ecent discovery of nonpublic information about the Accused Instrumentality." Patent L.R. 3-6. When determining whether to grant leave to amend, the Court first considers whether the party seeking leave acted diligently. *Apple Inc. v. Samsung Elecs. Co.*, No. CF 12-00630 LHK, 2012 WL 5632618, at *2 (N.D. Cal. Nov. 15, 2012) (citation omitted). The Court then considers whether the proposed amendment would unduly prejudice the non-moving party. *Id.* (citation omitted).

In support of its motion, Finjan does not provide a redline of its existing infringement contentions, claiming that redlines made the charts unwieldly. Instead, Finjan has prepared "Supplemental Infringement Charts" and provided the chart for patent-in-suit 6,154,844 as an exemplar. *See* ECF 230-14 ("exemplary example" of Supplemental Infringement Chart – *see* ECF 231-1 at ¶ 26). At the hearing, Finjan stated that the issues raised by this motion and Cisco's opposition fall into two categories: (1) Finjan's identification of components that correspond to previous contentions, and (2) Finjan's assertion of Talos as a standalone infringing product. However, the Supplemental Infringement Chart (hereinafter "SIC") does not distinguish between amendments to identify components and amendments that now assert Talos alone is an infringing product.

### 1. Identification of components

Finjan argues that many of its proposed amendments to the Infringement Contentions would simply add the name of a particular component (*e.g.*, ThreatBrain) to its previous contentions regarding the associated functionality. Finjan argues that it learned the internal codenames of various Cisco components only recently during deposition.

Cisco argues that (1) Finjan's proposed amendments are not as simple as Finjan suggests, and (2) most of the proposed amendments could have been "discovered" earlier in the litigation

through focused depositions. ECF 250. In particular, Cisco notes that the SIC, which is only for the '844 patent, contains 47 proposed changes. Whereas some of the proposed amendments might simply add the name of a component to functionality previously disclosed in Finjan's Infringement Contentions, others appear to seek to link newly-identified components to functionalities disclosed in the Infringement Contentions in a way that simply mirrors the claim language.

It appears from the Court's careful review of the proposed SIC and the arguments presented at the hearing that Finjan's proposed amendments to identify components are significantly more complex and prejudicial than Finjan has portrayed them. First and foremost, as described above, Finjan did not present its proposed amendments in the form of a redlined version of its existing Infringement Contentions, but instead as an entirely new, separate document. At the hearing, the Court pressed Finjan on its suggestion that it was merely inserting specific names for a previously described functionality. If that were the case, it is not clear why Finjan's current infringement contention charts could not be redlined to insert the purportedly recently discovered name at the place where the functionality is presently described. Simply put, without a redline, the Court is unable to determine that Finjan's proposed amendments are limited to clarifying the existing contentions rather than expanding them. Thus, the Court is unable to conclude that Finjan has carried its not insubstantial burden of showing diligence and lack of prejudice. Further, creating an entirely new, separate document raises a specter that the parties and experts would have to work with *two* operable infringement contention documents—the original Infringement Contentions and a set of Supplemental Infringement Charts. There is no provision in the Local Rules for this approach, and no other Court in this District has endorsed it.

Accordingly**,** Finjan's motion to amend its infringement contentions to add the identification of components is **DENIED.** Finjan's showing of diligence is insufficient given the apparent significance of its proposed amendment/supplementation which defy redlining its existing contentions. An amendment/supplementation this extensive would disrupt the case schedule at this point in the litigation.

### 2. Talos standalone infringement theory

Finjan argues that it should be permitted to amend its Infringement Contentions to reflect Talos, by itself, as an infringing product. In its brief, Finjan argues that its SIC merely "identifies the relevant technological relationships among the Accused Products, such that there is no 'amendment' to Finjan's infringement claims against Cisco. In other words, the same grounds for asserting infringement against the same Accused Products remain the same . . . ." ECF 230-4 at 9. However, at the hearing Finjan admitted for the first time that its "standalone Talos" contention is a new theory. Finjan argues that this new infringement theory arises from recent deposition testimony of Cisco witness Matt Watchinski that Talos uses sandboxes and other allegedly infringing features. *Id.* at 5.

It is too late for Finjan to add this new theory to its infringement contentions. The nature and characteristics of Talos have long been the subject of discovery and argument between these parties. *See* ECF 79, ECF 83, ECF 198, ECF 199, and ECF 200. Finjan argues that Cisco misrepresented the nature of Talos not only to Finjan but to this Court, but a review of the proffered evidence on this point is not persuasive. That evidence, including produced documents and deposition testimony, indicates that enough of Talos's functionality was revealed to Finjan to enable it to seek discovery on these issues earlier. *See* ECF 249-62 (chart identifying previous references to Talos). Moreover, in its Initial Disclosures, Cisco disclosed Stefan Buhlmann of Joe Security as a witness "[k]nowledgeable regarding JoeBox (n/k/a Joe Sandbox) sandboxing" and Mr. Watchinski as a witness with "information relating to Talos service." ECF 250-44 at 3.

In sum, Finjan's showing of diligence is insufficient given the significance of its proposed amendment/supplementation, which would add a new infringement theory at this very late date in the litigation. Accordingly, Finjan's motion to amend its infringement contentions to add a standalone Talos infringement theory is **DENIED.**

////
////
////
////

**ECF 209: Cisco's Motion to Strike Finjan's Second Supplemental Response to Interrogatory 10 or, in the alternative, Motion to Amend Counterclaim**

Cisco moves to strike Finjan's second supplemental response and objections to Interrogatory No. 10. That interrogatory seeks Finjan's allegations regarding when Cisco received actual or constructive notice of infringement of each patent-in-suit. The second supplemental response adds allegations of notice arising from the parties' pre-litigation licensing discussions, which were covered by a non-disclosure agreement ("NDA"). Cisco argues that Finjan's second supplemental response should be stricken because the facts that were added to that response have been in Finjan's possession since it filed the lawsuit. Cisco also argues that if the interrogatory response is not stricken, it should be granted leave to amend to assert a counterclaim for breach of the parties' NDA.

At the hearing, Finjan provided a timeline attempting to link its second supplemental response to Interrogatory No. 10 on March 11, 2019 to a production of documents that occurred in January to April 2019 in advance of the depositions of Finjan's CEO and its former VP of licensing. According to Finjan, documents regarding the parties' pre-litigation licensing discussions were in that document production. Finjan also argued that although it had included allegations concerning the licensing discussions in its original complaint (which it later removed from the complaint), those allegations related to willfulness, whereas Interrogatory No. 10 relates to notice.

Finjan's arguments miss the point. Finjan has known about the licensing discussions and related documents it now, belatedly, points to as evidence of notice since before the lawsuit was filed, as evidenced by the allegations regarding those discussions in its original complaint. Although the focus of the interrogatory on notice may differ from the purpose for which Finjan offered evidence of licensing discussions in its complaint, the underlying facts have nevertheless been known to Finjan since the outset of the case. There simply is no good cause as to why Finjan waited until its second supplemental response to assert facts in support of its position on notice.

Cisco's motion to strike Finjan's second supplemental response and objections to Interrogatory No. 10 is therefore **GRANTED**.

### ECF 243:  Joint Discovery Letter Brief re
### Motion to Quash Deposition Subpoena to Neal Rubin

At the hearing neither party challenged the Court's tentative ruling that the request by Cisco and non-party Neal Rubin to quash the deposition subpoena served by Finjan on Mr. Rubin is **DENIED.**  ECF 271 at 3.  Accordingly, the Court adopts its tentative ruling as the final order on this issue for the reasons discussed in the tentative ruling.  *Id.*

### ECF 261:  Joint Discovery Letter Brief re
### Cisco's Motion to Compel Production of Documents re Finjan Blue

Cisco asks the Court to compel Finjan to produce all documents that hit on Cisco's email search terms related to the patent acquisition and development agreement entered into between Finjan subsidiary Finjan Blue, Inc. and IBM and the relationship between Finjan and IBM.  ECF 261.

At the hearing, Finjan argued that it only intends to make one reference to IBM to explain to the jury that Finjan has a subsidiary, Finjan Blue, that has or had a relationship with IBM.  Finjan said it might also use a demonstrative reflecting, among other things, its relationship with IBM.  Finjan argues that because it will offer only minimal references to IBM and Finjan Blue at trial, in the context of explaining Finjan's corporate structure, Cisco is not entitled to the discovery it seeks and Finjan's previous production of the Finjan's agreement with IBM is sufficient.

According to Cisco, under Finjan's agreement with IBM, Finjan purchased patents from IBM and has the right to retain the inventors on an hourly basis to assist in patent prosecution and enforcement.  ECF 260-4 at 2.  Cisco is concerned that Finjan will portray its relationship with IBM as more extensive.  Cisco argues that if Finjan intends to create a "halo effect" at trial by mentioning the company's relationship with IBM, Cisco must be given an opportunity to obtain evidence to impeach that statement.  Cisco has offered to forego discovery on this issue if Finjan agrees not to reference its relationship with IBM at trial.

Cisco's motion to compel discovery on this issue is **CONDITIONALLY GRANTED**.  The fact that Finjan may refer only briefly to IBM at trial does not mean that discovery on the

1   issue must be limited to the Finjan-IBM contract that Finjan has already produced.  Cisco has
2   demonstrated why additional discovery is necessary to challenge statements Finjan may make at
3   trial regarding its relationship with IBM.  Therefore, if Finjan intends to refer to its relationship
4   with IBM at trial, it must produce the requested documents.  Within two (2) weeks, Finjan must
5   either product the requested documents or inform Cisco in writing that it will not refer to Finjan's
6   relationship with IBM at trial.
7   **SO ORDERED.**
8   Dated: June 11, 2019

*[signature]*

SUSAN VAN KEULEN
United States Magistrate Judge

11