1          IN THE UNITED STATES DISTRICT COURT

2        FOR THE NORTHERN DISTRICT OF CALIFORNIA

3                   SAN JOSE DIVISION

4

    FINJAN,                        )   CV-17-00072-BLF
5                                  )
                    PLAINTIFF,     )   SAN JOSE, CALIFORNIA
6                                  )
            VS.                    )   SEPTEMBER 18, 2019
7                                  )
    CISCO SYSTEMS, INC.,           )   PAGES 1-24
8                                  )
                    DEFENDANT.     )
9                                  )
    _____)
10
                  TRANSCRIPT OF PROCEEDINGS
11       BEFORE THE HONORABLE BETH LABSON FREEMAN
                UNITED STATES DISTRICT JUDGE
12

13                  A P P E A R A N C E S

14

15   FOR THE PLAINTIFF:    **PAUL J. ANDRE**
                           KRAMER LEVIN NAFTALIS & FRANKEL
16                         990 MARSH ROAD
                           MENLO PARK, CA 94025
17

18

19   FOR THE DEFENDANT:    **LOUIS NORWOOD JAMESON**
                           DUANE MORRIS LLP
20                         1075 PEACHTREE STREET, N.E., SUITE 2000
                           ATLANTA, GA 30309
21

22        APPEARANCES CONTINUED ON THE NEXT PAGE

23   OFFICIAL COURT REPORTER:     SUMMER FISHER, CSR, CRR
                                  CERTIFICATE NUMBER 13185
24

25       PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
              TRANSCRIPT PRODUCED WITH COMPUTER

```
 1          A P P E A R A N C E S (CONTINUED):

 2      FOR THE PLAINTIFF:      JAMES R. HANNAH
                                KRAMER LEVIN NAFTALIS & FRANKEL
 3                              990 MARSH ROAD
                                MENLO PARK, CA 94025
 4

 5      FOR THE DEFENDANT:      JOSEPH ANDREW POWERS
                                DUANE MORRIS LLP
 6                              30 SOUTH 17TH ST.
                                PHILADELPHIA, PA 19103
 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1              SAN JOSE, CALIFORNIA              SEPTEMBER 18, 2019

 2                      P R O C E E D I N G S

 3         (COURT CONVENED AT 9:11 A.M.)

 4              THE CLERK:  CALLING CASE 15-0072.  FINJAN VERSUS

 5    CISCO SYSTEMS.

 6         COUNSEL, PLEASE COME FORWARD AND STATE YOUR APPEARANCES.

 7              MR. ANDRE:  GOOD MORNING, YOUR HONOR.

 8         PAUL ANDRE FOR FINJAN, WITH ME TODAY IS JAMES HANNAH.

 9              MR. HANNAH:  GOOD MORNING, YOUR HONOR.

10              THE COURT:  GOOD MORNING.  NICE TO SEE YOU.

11              MR. JAMESON:  GOOD MORNING, YOUR HONOR.

12         WOODY JAMESON FOR CISCO SYSTEMS, AND WITH ME IS

13    JOE POWERS.  AND FROM THE CLIENT, CISCO, IS LEAH WATERLAND.

14              THE COURT:  GOOD MORNING.  HAVE YOU APPEARED BEFORE?

15              MR. JAMESON:  THIS IS MY MAIDEN VOYAGE.

16              THE COURT:  EXCELLENT.  WELCOME.

17              MR. JAMESON:  THANK YOU.

18         I HAVE BEEN IN THE COURTROOM OBSERVING SOME OF THE TRIALS

19    IN THE PAST, BUT THIS IS THE FIRST APPEARANCE IN FRONT OF YOU,

20    SO I LOOK FORWARD TO IT.

21              THE COURT:  GOOD.  AND WHERE HAVE YOU TRAVELLED FROM?

22              MR. JAMESON:  ATLANTA, GEORGIA.

23              THE COURT:  WELCOME.  GLAD TO HAVE YOU.

24              MR. JAMESON:  A SOUTHERNER IN CALIFORNIA.

25              THE COURT:  THAT'S GREAT.  AND MR. ANDRE IS NO
```

 1     STRANGER TO THIS COURTROOM.

 2          MR. ANDRE:  AND YOUR HONOR, I'M ACTUALLY --

 3     MR. HANNAH BROUGHT ME ALONG TO TALK ABOUT YOUR ORDER REGARDING

 4     THE HEARING, AND MR. HANNAH IS GOING TO DO THE SUBSTANTIVE

 5     ARGUMENT, IF WE GET TO THAT.

 6          THE COURT:  THAT SOUNDS GREAT.  THAT SOUNDS GREAT.

 7     AND I WELCOME THE CISCO REPRESENTATIVE TOO.  THANK YOU FOR

 8     MAKING THE TIME.

 9          WELL, LET'S TALK ABOUT MY INITIAL NOTE TO YOU, BECAUSE I'M

10     SURE THAT GOT YOUR ATTENTION.

11          SO THERE ARE A BUNCH OF MOTIONS THAT ARE STACKING UP THAT

12     WOULD BE AFFECTED BY THIS CONCERN OF MINE.  I WOULD SAY THAT

13     PERHAPS THE MOTION TO STRIKE THE HALL-ELLIS REPORT IS UNTIMELY.

14     IT MAY BE DIFFERENT, BECAUSE THAT ACTUALLY WOULD FALL UNDER MY

15     SCHEDULING ORDER, AND IT MIGHT BE A DIFFERENT CIRCUMSTANCE.

16     BUT I'VE GOT TODAY'S MOTION, I'VE GOT A MOTION TO STRIKE, I'VE

17     GOT A DEFENSE MOTION TO STRIKE EXPERTS, TWO OF THEM, ACTUALLY,

18     THE DAMAGES THEORIES FROM LAYNE-FARRAR AND A SECOND MOTION.

19          SO THESE AREN'T DAUBERT MOTIONS, THEY ARE NOT ATTACKING

20     THE FOUNDATION OR THE QUALIFICATIONS OF THE EXPERTS, THEY ARE

21     ATTACKING THE ADMISSIBILITY OF EVIDENCE.

22          AND THEY ARE UNTETHERED TO ANY OFFERING OF THESE

23     PARTICULAR OPINIONS INTO EVIDENCE.  AND SO IT WOULD BE LIKE YOU

24     PROVIDING TO ME A THUMB DRIVE OF ALL OF THE DISCOVERY IN THE

25     CASE AND ASKING ME TO SORT IT TO ADMISSIBLE AND UNADMISSIBLE

1    BEFORE YOU DO YOUR WORK SO THAT YOU CAN ONLY RELY ON ADMISSIBLE

2    EVIDENCE.  AND WE DON'T DO THAT.  SO I WANT TO KNOW WHY THESE

3    MOTIONS ARE APPROPRIATE.

4         MR. ANDRE, IT'S YOUR MOTION.

5              MR. ANDRE:  SURE.

6         AND I CALLED MY COLLEAGUE OVER HERE ON MONDAY AND TALKED

7    TO HIM AND SAID WHY DON'T WE JUST AGREE TO PUSH THEM OFF TO THE

8    PRETRIAL BECAUSE I THINK THEY WOULD HAVE THE SAME EFFECT.

9              THE COURT:  OH, ABSOLUTELY.

10             MR. ANDRE:  IT WOULD HAVE THE SAME EFFECT.

11        SO LET ME TELL YOU WHY WE FILED THE MOTION TO STRIKE.

12   IT'S BECAUSE WE HAVE BEEN GETTING A LITTLE BIT WHIPSAWED BY

13   DIFFERENT JUDGES IN THIS DISTRICT WITH OUR FINJAN CASES.  WE

14   HAD AN ISSUE WHERE WE DIDN'T FILE A MOTION TO STRIKE AND THEY

15   SAID, YOU COULD HAVE DONE THAT EARLIER.

16        SO WE ARE BEING OVERLY CAUTIOUS HERE WITH COUNSEL.  WE'VE

17   SEEN IT WITH DIFFERENT JUDGES REQUIRING A MOTION TO STRIKE.  WE

18   THINK IT HAS THE SAME AFFECT AS IF WE PUSH TODAY OFF TO THE

19   PRETRIAL.  WHEN I TALKED TO MY COLLEAGUE HERE HE SAID, AND I

20   AGREE WITH HIM, IT MIGHT NARROW THINGS, IT MIGHT FOCUS THE

21   CASE.  SO THAT'S AN ADVANTAGE.

22             THE COURT:  OF COURSE.

23             MR. ANDRE:  BUT AT THE SAME TIME, BY THE TIME WE GET

24    TO IT AT THE PRETRIAL, THIS MAY BE MOOT.  THE CASE MAY BE

25    NARROWED --

1          THE COURT:  MR. ANDRE, YOU HAVE THE EXPERIENCE WITH

2     ME AND MR. JAMESON DOESN'T, EVEN WHEN YOU FILE THE NIGHT BEFORE

3     DURING TRIAL, EVIDENTIARY OBJECTIONS FOR THE NEXT MORNING, I

4     WAIT UNTIL THE NEXT MORNING TO EVEN LOOK AT THEM BECAUSE SO

5     MUCH CHANGES AND SO MUCH IS MOOT OVERNIGHT.

6          MR. ANDRE:  YEAH.

7          THE COURT:  AND YOU'VE WATCHED THAT AND PARTICIPATED

8     IN IT THROUGH SEVERAL TRIALS.

9          MR. ANDRE:  AND THAT'S THE REASON I MADE THE OFFER

10    THAT I WOULD BE QUITE WILLING TO PUNT THIS UNTIL WE GET CLOSER

11    TO TRIAL BECAUSE SOME OF THESE ISSUES MAY BE MOOT, BUT I DO

12    AGREE WITH COUNSEL, IT WOULD ALSO NARROW THE CASE, SO I THINK

13    THAT'S SELF-EVIDENT.

14          THE COURT:  RIGHT.

15       BUT OF COURSE IF DISTRICT COURTS WERE TO PERFORM THAT

16    FUNNEL, THAT'S WHY I SAY, YOU GIVE ME ALL THE PRODUCED EVIDENCE

17    IN THE CASE AND LET ME NARROW IT BEFORE YOU ROLLED UP YOUR

18    SLEEVES.

19          MR. ANDRE:  SO FROM OUR POSITION, WE ARE QUITE HAPPY

20    TO WAIT.  BUT AT THE SAME TIME, WE ARE WILLING TO ARGUE AS

21    WELL.

22       WE JUST DON'T HAVE ANYTHING WAIVED.  WE CAN TAKE THE

23    CURRENT BRIEFING AS FILED, BOTH THE ONES THAT WERE SCHEDULED

24    FOR THE NOVEMBER HEARING AND THIS ONE, AND JUST CONSIDER THEM

25    FILED.

1        THE COURT:  WELL, THEY VIOLATE THE PAGE LIMITS.  THEY

2   HAVE TO BE FIVE PAGES FOR MY MOTIONS IN LIMINE.

3        MR. ANDRE:  WELL, MAYBE WE GET AN EXCEPTION ON THAT

4   BECAUSE THIS IS PRETTY DENSE STUFF.

5        THE COURT:  IT'S JUST THE WAY IT GOES.

6        MR. ANDRE:  WE CAN MAKE IT FIVE PAGES --

7        THE COURT:  I KNOW YOU CAN.

8        MR. ANDRE:  -- IF NEED BE.  WE CAN BE MORE SUCCINCT,

9   I'M SURE.

10        THE COURT:  MR. JAMESON, IN YOUR VIEW, BECAUSE YOU

11   ARE SPONSORING SOME OF THESE MOTIONS AS WELL.

12        MR. JAMESON:  YES, YOUR HONOR.

13     AND I GUESS MY STARTING PROPOSITION IS I THINK THAT THESE

14   MOTIONS ARE RIPE TO BE DECIDED NOW.

15     I OBVIOUSLY DISAGREE ON THE MERITS WITH THEIR MOTION,

16   WHICH WE WILL GET INTO IT, BUT IF YOU LOOK AT THE HISTORY OF

17   THIS CASE, AND QUITE FRANKLY A LOT OF THE FINJAN CASES, THEY

18   ARE INCREDIBLY COMPLICATED.

19        THE COURT:  I KNOW, I'VE HAD A COUPLE OF THEM MYSELF.

20        MR. JAMESON:  I KNOW YOU HAVE.

21     AND IN FACT, IN THE FINJAN V. BLUE COAT CASE, IT APPEARS

22   THAT YOU ACTUALLY ENTERTAINED MOTIONS TO STRIKE OF THIS ILK AT

23   THIS STAGE OF THE CASE PRIOR TO TRIAL.  AND IN OUR RESEARCH, IT

24   APPEARS THAT JUDGE GILLIAM DID IN FINJAN V. PROOFPOINT,

25   JUDGE ORRICK DID IN FINJAN V. SOPHOS, MAGISTRATE JUDGE CORLEY

1    DID IN FINJAN V. SYMANTEC.   AND GOING BACK IN TIME, IT LOOKS

2    LIKE YOU DID AS WELL IN CLEAR-VIEW TECHNOLOGIES V. RASNIC,

3    WHICH IS A LITTLE BIT OF A DATED CASE.

4           THE COURT:  IT WILL LIVE ON FOREVER.  THAT'S ANOTHER

5    MATTER.

6           MR. JAMESON:  AND I THINK WHY THEY ARE TIMELY NOW, OR

7    AT LEAST ASPECTS OF THE MOTIONS ARE TIMELY, ARGUMENTS THAT BOTH

8    SIDES ARE MAKING ARE TIED TO A FAILURE TO DISCLOSE IN

9    COMPLIANCE WITH EITHER THE LOCAL RULES OR THE CMC ORDERS IN

10   THIS CASE.

11       AND THERE'S AN ARGUMENT WHILE THIS IS STYLED AS A MOTION

12   TO STRIKE EXPERT THEORIES, THEY COULD HAVE ARGUABLY FILED THIS

13   AS A MOTION FOR FAILURE TO COMPLY WITH THE COURT'S THIRD

14   ELECTION OF ASSERTED THEORIES IN THIS CASE.

15          THE COURT:  AND OF COURSE YOU ARGUED THAT IN YOUR

16   PAPERS.  THAT'S CERTAINLY POSSIBLE, THAT WOULD HAVE GONE RIGHT

17   TO THE MAGISTRATE JUDGE TO DEAL WITH.  AND I THINK IT'S

18   JUDGE VAN KEULEN IN THIS CASE, SHE WOULD HAVE DEALT WITH IT.

19       YOU KNOW, I APPRECIATE THAT I HAVE ENTERTAINED THESE

20   MOTIONS IN THE PAST, AND AS I SAW THESE MOUNT UP HERE, OUR

21   TRIAL IS IN THE SPRING --

22          MR. ANDRE:  JUNE 1ST.

23          THE COURT:  WELL, EXTENDED SPRING.

24       THIS REALLY -- WHAT CONCERNED ME, MR. JAMESON, WAS THAT MY

25   STANDING ORDER LIMITS THE MOTIONS IN LIMINE TO FIVE.  AND IF

1    YOU FILE ALL OF THESE MOTIONS THROUGHOUT THE MONTHS LEADING UP

2    TO THE FINAL PRETRIAL CONFERENCE, I THINK IT'S A VIOLATION OF

3    MY STANDING ORDER.

4        AND IT'S NOT A DAUBERT.  I MEAN, I CLEARLY LOOKED AT THAT,

5    AND I LOOKED AT ALL THE OTHER MOTIONS AND FELT THAT THE MOTION

6    TO STRIKE THE REPORT AS UNTIMELY WAS DIFFERENT, AND I WOULD

7    ADDRESS THAT.  I DON'T THINK THAT'S REALLY EQUAL TO AN IN

8    LIMINE MOTION.

9        THANK YOU FOR DOING THE RESEARCH ON WHAT ALL THE OTHER

10   JUDGES HAVE DONE.  I ACCEPT THAT I HAVE ALLOWED THESE MOTIONS

11   IN THE PAST, AND MR. ANDRE HAS BEEN ON THE WRONG SIDE OF THE

12   DECISION IN OTHER COURTROOMS, AND I'M SORRY FOR THAT

13   INCONSISTENCY, I KNOW IT EXISTS.  AND I THINK, MR. ANDRE, YOU

14   FOUND A LOT OF THINGS WERE DIFFERENT IN THAT OTHER COURTROOM

15   THAN IN THIS COURTROOM.  SO THAT'S THE WAY IT GOES, I'VE BEEN

16   TOLD THAT BEFORE.

17       BUT I JUST -- I THINK THIS IS OUT OF ORDER.  I THINK THAT

18   THERE'S NO PROVISION IN ANY OF OUR LOCAL RULES, ANY OF MY

19   STANDING ORDERS OR THE RULES OF CIVIL PROCEDURE THAT ALLOW FOR

20   THESE SERIATIM, EVIDENTIARY EXCLUSION MOTIONS THROUGHOUT THE

21   LIFE OF THE CASE.

22       AND PART OF THAT IS, IT ALMOST FEELS LIKE IT'S AN ADVISORY

23   OPINION HERE OF WHAT WOULD BE ADMISSIBLE IF IT WAS OFFERED.

24   AND IN FACT, I'M DEPRIVED OF THE CONTEXT IN WHICH IT WOULD BE

25   OFFERED AT TRIAL.

1       AND IT STARTS WITH, THIS IS FINJAN'S MOTION, SO FINJAN IS

2    PRESUMING THAT YOU WILL ACTUALLY GO FORWARD ON THIS INVALIDITY

3    THEORY.  AND IN FACT, YOU MAY CHOOSE NOT TO.  FINJAN MAY NOT

4    EVEN GO FORWARD ON THE PARTICULAR CLAIM, AND THEN THE

5    INVALIDITY THEORY WILL NOT BE SUBMITTED TO THE COURT.

6       AND SO THAT WOULD HAVE WASTED MY TIME, FIRST OF ALL, ON

7    EXCLUDING EVIDENCE THAT WILL NEVER BE OFFERED IN TRIAL OR TO

8    SUPPORT A SUMMARY JUDGEMENT MOTION.

9       SO, YOU KNOW, IN GOING THROUGH THESE, YOU KNOW, IF THESE

10   ARE THE KINDS OF MOTIONS I ULTIMATELY WOULD DECIDE AND IT'S

11   REALLY A TIMING ISSUE.

12      MR. JAMESON:  YOUR HONOR, I DON'T KNOW WHETHER YOU'VE

13   ALREADY MADE UP YOUR MIND, BUT IN THE EVENT THAT YOU HAVEN'T

14   ALREADY MADE UP YOUR MIND --

15      THE COURT:  YEAH, PLEASE.

16      MR. JAMESON:  -- FROM A CASE MANAGEMENT PERSPECTIVE,

17   THE PARTIES, PREPARING FOR THIS TRIAL IS GOING TO BE AN

18   ABSOLUTE MONUMENTAL UNDERTAKING, AND PREPARING OUR EXPERTS FOR

19   TRIAL IS GOING TO BE A MONUMENTAL UNDERTAKING.

20      AND, YOU KNOW, WE CERTAINLY HAVE PUT FORTH EXPERT REPORTS

21   WITH INVALIDITY THEORIES THAT WE INTEND TO PRESENT TO THE JURY

22   ONE DAY, ABSENT WE BEING TOLD THAT WE CANNOT.

23      AND, YOU KNOW, THE NUMBER OF STICKY TABS I HAVE ON THE

24   BINDERS RELATING TO THIS MOTION ALONE FOR ME TO GET UP TO SPEED

25   TO ARGUE THESE MOTIONS --

1           THE COURT:  -- SURE, SURE.

2           MR. JAMESON:  AND THAT'S JUST ONE MOTION.  JUST THE

3     IDEA THAT WE ARE GOING TO DECIDE ALL OF THIS STUFF IN THE

4     30 DAYS BEFORE TRIAL, IT WOULD BE OF GREAT ASSISTANCE TO THE

5     PARTIES, EXPENSE OF THE PARTIES, TO UNDERSTAND, YOU KNOW, IF

6     THESE THEORIES ARE OUT.  I MEAN, I DON'T WANT THE THEORY TO BE

7     OUT, BUT IT WOULD BE GOOD TO KNOW THAT.

8           AND IT'S THE SAME WITH RESPECT TO OUR MOTIONS AGAINST

9     FINJAN.  I MEAN, IF DR. LAYNE-FARRAR CANNOT PUT FORTH A COUPLE

10    OF HER DAMAGES THEORIES BECAUSE FINJAN NEVER DISCLOSED THEM,

11    YOU KNOW, LEARNING THAT SOONER RATHER THAN LATER, IT'S GOING TO

12    SAVE THE PARTIES A LOT OF MONEY WITH RESPECT TO DAMAGES EXPERTS

13    AND TECHNICAL EXPERTS.

14          THE COURT:  THE TRIAL IS A THOUSAND BITES, ISN'T IT.

15    WE DON'T DO IT THAT WAY THOUGH.

16          MR. JAMESON:  WELL, BUT THAT IS THE ISSUE.  AND IT'S

17    REALLY AN INTERESTING QUESTION TO ME, YOU ASKED THE QUESTION

18    ABOUT, IS THIS AN ADVISORY OPINION.

19          THE COURT:  UH-HUH.

20          MR. JAMESON:  WELL, BUT A DAUBERT MOTION BY

21    DEFINITION IS A FORM OF ADVISORY OPINION BECAUSE THAT THEORY

22    HAS NOT BEEN OFFERED INTO EVIDENCE YET AT TRIAL.

23          THE COURT:  EXCEPT THE FEDERAL RULES OF EVIDENCE

24    PROVIDE FOR IT AND THE SUPREME COURT HAS ENDORSED THE FILING OF

25    THOSE MOTIONS IN ADVANCE OF TRIAL.

1          MR. JAMESON:  MOTIONS IN LIMINE ARE A FORM OF AN

2   ADVISORY OPINION AND THERE'S ACTUALLY CASE LAW THAT SAYS THAT

3   THEY ARE ADVISORY OPINIONS.

4          THE COURT:  YOU KNOW, I THINK YOU ARE RIGHT ON THAT,

5   EXCEPT WHEN WE ARE ON THE EVE OF TRIAL AT THE FINAL PRETRIAL

6   CONFERENCE WHERE THE PARTIES IN THEIR FINAL PRETRIAL STATEMENT

7   HAVE SET THE ISSUES, AT LEAST THE OUTER BOUNDARIES.  THE CASE

8   CAN CERTAINLY NARROW, BUT IT CAN'T EXPAND AT THAT POINT, IT

9   REALLY USES IT.

10         HERE'S MY CONCERN IS THAT I THINK THAT THIS PROCEDURE

11   ALLOWS THE PARTIES TO DEVELOP FAR-FETCHED UNSUPPORTED OPINIONS

12   THAT CAUSE THE OPPONENT TO PUT THIS ENORMOUS AMOUNT OF WORK

13   INTO BEATING THEM DOWN, KNOWING THAT THEY STILL HAVE TIME TO

14   REEVALUATE AND REPOSITION THE CASE IF THE CRAZINESS IS KNOCKED

15   OUT.

16         AND SO I'M TROUBLED BY THAT.  YOU TALK ABOUT CASE

17   MANAGEMENT.  I THINK THIS ACTUALLY ULTIMATELY HAS THE OTHER

18   IMPACT ON A CASE IN BLOWING IT UP.  AND YOU BOTH HAVE LITIGATED

19   MANY OF THESE CASES.  YOU'VE SEEN FAR-FETCHED OPINIONS OF

20   EXPERTS THAT YOU KNOW WILL NEVER SEE THE LIGHT OF DAY.  BUT IF

21   THERE CAN BE A FORUM A YEAR IN ADVANCE OF TRIAL TO TEST THEM

22   OUT, THEN ALL YOU NEED THEN IS TO JUST COME UP WITH ANOTHER

23   GROUP OF OPINIONS.

24         THIS WAY IT KIND OF, IT'S A LITTLE BIT LIKE BASE BALL

25   ARBITRATION HERE BECAUSE YOU DON'T KNOW UNTIL THE FINAL

1    PRETRIAL CONFERENCE WHETHER IT'S IN OR OUT.  AND IF ALL YOU

2    HAVE IS A CRAZY THEORY AND IT'S OUT, THEN YOU STAND THERE IN

3    FRONT OF THE JURY AND MAKE YOUR PITCH WITHOUT ANY SUPPORT.

4         AND I THINK THAT'S A GOOD CASE MANAGEMENT TOOL TO LET

5    EXPERIENCED LAWYERS GAUGE THE APPROPRIATENESS OF THE WORK THEY

6    ARE DOING RATHER THAN TOSSING IT ALL AGAINST THE WALL TO SEE

7    WHAT STICKS, BECAUSE THAT'S REALLY WHAT'S GOING ON HERE, IN MY

8    VIEW.

9         AND I ACKNOWLEDGE THE OBLIGATION OF THE COURT TO ASSIST IN

10   CONTROLLING THE COST OF LITIGATION, AND I'M ALWAYS CONCERNED

11   ABOUT THE IMPACT ON YOUR CLIENTS OF FUNDING THIS LITIGATION,

12   THEY HIRED THE BEST FIRMS IN THE COUNTRY AND YOU GIVE THEM THE

13   BEST WORK THAT YOU HAVE.

14        AND SO -- AND I'VE SEEN ATTORNEY'S FEES BILLS.  I KNOW

15   THAT COMES AT QUITE A HIGH COST, AND I'VE WATCHED THIS CASE.

16   THIS CASE HAS BECOME MORE COMPLICATED BY THE MANNER IN WHICH

17   IT'S BEEN LITIGATED THAN ANY OF THE OTHERS.

18        AND YOU KNOW, I SAY THAT BECAUSE I'VE SEEN THE OTHER

19   CASES, I'VE HAD THIS DISCUSSION WITH MR. GAUDET IN THE PAST.

20   ABOUT THING THAT IS HAVE BEEN DISPUTED.  NOW THIS ISN'T YOUR

21   MOTION TODAY, SO YOU ARE JUST DEFENDING, BUT I DON'T SEE THIS

22   CASE AS BEING TOO COMPLICATED TO GET READY FOR TRIAL.

23        I HAVE CASES WHERE I HAVE 50 OR 70 LAWYERS IN MY COURTROOM

24   WHO ARE GOING TO WORK ON THE CASE AND THEY FUNNEL IT ALL

25   THROUGH ME AND I DON'T KNOW, IT MAY NOT BE PRETTY SOME DAYS,

1      BUT WE DO GET IT DONE, AND YOU'VE DONE THAT YOURSELF I'M SURE

2      WITH TEAMS THAT YOU'VE TAKEN INTO TRIAL ALL OVER THE COUNTRY.

3              SO I'M ACTUALLY NOT INCLINED TO CONSIDER THIS OR TWO OTHER

4      OF THE MOTIONS.  AND, YOU KNOW, I WAS CONCERNED ABOUT SOME OF

5      THE ISSUES THAT WERE RAISED.  I CERTAINLY THINK THAT THE ISSUE

6      OF MODIFICATION OF THE JANUS 0.8 IS A REALLY IMPORTANT

7      EVIDENTIARY ISSUE ON ADMISSIBILITY.  I WAS CONCERNED ABOUT WHAT

8      YOU REFERENCE IN YOUR PAPERS, MR. JAMESON, AS A -- THE ROLE OF

9      THE FIRST AND SECOND ELECTIONS AND THE SEPARATE ROLE OF THE

10     THIRD ELECTION OF PRIOR ART REFERENCES.

11             MR. ANDRE DIDN'T COMMENT ON IT, BUT YOU SUGGEST THAT THE

12     PARTIES UNDERSTOOD THAT IN THE FIRST AND SECOND ELECTIONS YOU

13     WERE JUST THROWING OUT PRIOR ART REFERENCES, AND IT WAS ONLY IN

14     THE THIRD ELECTION THAT THE COMBINATIONS WOULD BE SET.

15             I DON'T RECALL THAT.  AND THAT WAS SOMETHING THAT WAS

16     LEFT, MR. ANDRE DIDN'T ADDRESS IT IN THE REPLY BRIEF, OR I

17     MESSED IT, AND I APOLOGIZE ON THAT.

18             MR JAMESON:  CAN I COMMENT ON THAT?

19             THE COURT:  YEAH.

20             MR. JAMESON:  OKAY.  THIS GOES BACK TO THE ORIGINAL

21     CASE MANAGEMENT CONFERENCE IN THIS CASE, THE VERY FIRST ONE.

22     AND THE PARTIES HAD A FAIRLY SIGNIFICANT DISPUTE ABOUT HOW ARE

23     WE GOING TO NARROW THE PRIOR ART IN THIS CASE.

24             AND FROM CISCO'S PERSPECTIVE, WE WANTED TO FOLLOW THE

25     FEDERAL CIRCUIT MODEL RULES THAT USED TO BE OR AN APPROACH

1    SIMILAR TO THAT.  AND THERE WAS A -- AND OBVIOUSLY FINJAN

2    WANTED US TO DO THINGS MUCH EARLIER IN THE CASE, AND YOU MADE

3    COMMENTS ON THE RECORD ABOUT, YOU KNOW, THIS IS ALWAYS A TOUGH

4    ISSUE BECAUSE WE NEED TO BALANCE THE TWO AND BE FAIR TO BOTH

5    SIDES.

6         AND LITERALLY, YOU KNOW, IT'S DOCUMENT 51, THE DIALOG ON

7    THIS BEGINS AT PAGE 13, AND IT GOES FOR ABOUT 13 PAGES.  AND

8    MR. ANDRE'S STATEMENTS AT THAT POINT IN TIME WERE ALONG THE

9    LINES OF, WHAT I NEED TO KNOW IS WHAT ARE THE COMBINATIONS

10   30 DAYS BEFORE EXPERT REPORTS, BECAUSE WE ARE NOT TAKING

11   DISCOVERY ON THE INVALIDITY ISSUES.

12        SO AS LONG AS I KNOW WHAT THOSE COMBINATIONS ARE 30 DAYS

13   BEFORE EXPERT REPORTS, THAT'S ALL I CARE ABOUT.

14        AND I MEAN, THAT'S EFFECTIVELY, IT'S A PARAPHRASE, BUT

15   IT'S AT PAGE 20 THROUGH ABOUT 23 OF THE TRANSCRIPT.  AND PRIOR

16   TO THAT, THE PARTIES HAD REACHED AN AGREEMENT THAT FIRST

17   ELECTION, WE ARE GOING TO IDENTIFY 12 REFERENCES, WE ARE NOT

18   IDENTIFYING ANY COMBINATIONS AT ALL.

19        SECOND ELECTION, WE ARE GOING TO TAKE THE 12 REFERENCES

20   DOWN TO SIX, NO COMBINATIONS AT ALL, AND THEN YOU DECIDED SO

21   SET A SECOND CMC FOLLOWING CLAIM CONSTRUCTION.  AND AT THAT

22   SECOND CMC, THE PARTIES AGREED ON THIS APPROACH OF THE THIRD

23   ELECTION, WE ARE GOING TO TAKE THE SIX REFERENCES AND WE ARE

24   GOING TO COME UP WITH A TOTAL OF NO MORE THAN SIX COMBINATIONS

25   FROM THOSE REFERENCES.

1          AND THE PARTIES WORKED THAT OUT.

2               THE COURT:  SO, LET ME SAY THAT THIS IS SOMETHING

3     THAT THE TWO OF YOU NEED TO MEET AND CONFER ABOUT, BECAUSE IF I

4     WERE, AT SOME POINT, TO CONSIDER THIS AND DETERMINE THAT THE

5     PARTIES HAD AGREED TO THE CONTENT OF EACH OF THE ELECTIONS AND

6     WHEN THE COMBINATIONS WOULD BE SET FORTH, THAT WOULD GUIDE ME.

7          MR. ANDRE, DO YOU AGREE WITH THAT?

8               MR. ANDRE:  I DON'T HAVE ANY MEMORY OF THAT.

9               THE COURT:  NO, NO, AN AGREEMENT -- THAT APPROACH

10    THAT YOU TWO SHOULD TALK ABOUT IT.

11              MR. ANDRE:  ABSOLUTELY.

12              THE COURT:  BECAUSE IF THE TWO OF YOU COME TO THE

13    RECOGNITION THAT THAT WAS THE APPROACH, THEN SOME OF THESE

14    ISSUES SHOULD RESOLVE THEMSELVES.

15              MR. ANDRE:  I AGREE WITH THAT, YOUR HONOR.

16         AND I THINK THAT IS A MEET AND CONFER AND WE WILL

17    OBVIOUSLY -- IF WE PUT THIS INTO A MOTION IN LIMINE, WE WILL

18    HAVE THAT MEET AND CONFER BEFORE THAT, AND IT WILL BE A

19    FIVE-PAGE MOTION IN LIMINE.

20              THE COURT:  WELL, IT'S NOT A COMPLICATED ISSUE IF THE

21    ISSUE BOILS DOWN TO -- THE COMBINATIONS ARE EITHER IN THE FIRST

22    AND SECOND ELECTIONS OR THEY ARE NOT, THAT'S NOT ROCKET

23    SCIENCE, AND THAT'S NOT HARD, AND WHAT THE CONTOURS OF YOUR

24    AGREEMENT OF THE CONTENTS OF THESE ELECTIONS.  BECAUSE MY

25    CONCERN, AND MY ONLY CONCERN IN MY ORDERS, IS THAT ONCE THE

1        COMBINATIONS ARE SET, THEY CAN'T BE RESCRAMBLED.

2                MR. JAMESON:  AND THAT MAKES PERFECT SENSE,

3        YOUR HONOR.

4                THE COURT:  WELL, IT DIDN'T IN EARLIER LITIGATION.

5                MR. JAMESON:  WELL, NO, I HEAR YOU LOUD AND CLEAR ON

6        THAT.  AND THAT, LITERALLY, THAT'S HOW THE PARTIES CAME UP WORD

7        PROCESS THIS APPROACH AND ULTIMATELY --

8                THE COURT:  AND YOU MAY BE SUCCESSFUL ON THIS,

9        MR. JAMESON, BUT I'M GOING TO DEFER TO MEET AND CONFER BECAUSE

10       I HAVE A FEELING IT'S GOING TO WORK ITSELF OUT.  AND THAT'S THE

11       BETTER WAY TO GO.

12               MR. JAMESON:  AND YOUR HONOR, IT WAS REALLY AT PAGES

13       19 AND 20 OF THIS TRANSCRIPT.  AND, I MEAN, THERE'S CONTEXT

14       BEFORE AND AFTER.

15               THE COURT:  GOOD.  THAT'S HELPFUL.

16               MR. JAMESON:  BUT THEN IT LEAD TO YOUR INITIAL CMC

17       ORDER WHERE YOU SET FORTH FIRST ELECTION, 12 REFERENCES, SECOND

18       ELECTION, SIX REFERENCES.  NO COMBINATIONS REQUIRED.  FURTHER

19       CMC, THAT'S WHEN WE IDENTIFY THE SIX COMBINATIONS THAT ARE

20       GOING TO BE PART OF --

21               THE COURT:  ALL RIGHT.  I'M GOING TO LET MR. ANDRE GO

22       BACK AND TAKE A LOOK AT THAT.

23           SO RECOGNIZING THAT DIFFERENT JUDGES SEE THESE

24       DIFFERENTLY, THIS REALLY IS A MATTER OF CONTROLLING TRIAL, AND

25       IT IS DIFFERENT FROM JUDGE TO JUDGE.  I THINK THIS MOTION IS

1    PREMATURE, MR. ANDRE.  AND SO I AM NOT -- I AM GOING TO DENY

2    THE MOTION WITHOUT PREJUDICE TO BEING REFILED AS MOTION IN

3    LIMINE.

4         I WANT TO BE CLEAR THAT IN TERMS OF CONTROLLING THE CASE,

5    MY STANDING ORDERS ARE VERY CLEAR THAT THERE ARE FIVE IN LIMINE

6    MOTIONS PER SIDE.  AND THIS WOULD REALLY BE FOUR MOTIONS,

7    FRANKLY.  I DON'T THINK YOU WANT ME TO TREAT IT AS FOUR

8    MOTIONS, BECAUSE IT'S FOUR SEPARATE SUBJECT MATTERS.

9         AND I DON'T JUST TELL YOU YOU CAN FILE 25 PAGES OF IN

10   LIMINE MOTIONS, YOU GET FIVE MOTIONS.  IF IT'S A DAUBERT, YOU

11   ARE WELCOME TO HAVE DAUBERT CHALLENGES, BUT EACH EXPERT IS A

12   SEPARATE MOTION.  YOU CAN'T CRUNCH IT TOGETHER AND STICK IT IN.

13        MR. ANDRE KNOWS THIS, BUT I WANT YOU TO BE CLEAR ON THIS,

14   EACH MOTION IS A SEPARATE SUBJECT.  IT MAY HAVE MANY

15   SUB-ISSUES, BUT IF YOU ARE TRYING TO STRIKE A PARTICULAR -- AN

16   OPINION, I THINK AN IN LIMINE MOTION CAN BE BASED ON THE

17   PARTICULAR COMBINATION, AND THEN IT MAY HAVE A THREAD THROUGH A

18   COUPLE OF EXPERTS, AND I UNDERSTAND THAT, BUT I DON'T WANT YOU

19   TO GET INTO TROUBLE ON THAT.

20        SO I AM GOING TO DENY THIS MOTION, AND I AM INCLINED TO --

21   THEN I ALSO HAVE A MOTION TO STRIKE INFRINGEMENT THEORIES AND A

22   MOTION TO STRIKE DAMAGES THEORIES AT DOCKET 312 AND 326 THAT

23   I'M INCLINED TO ALSO DENY WITHOUT PREJUDICE AS SIMPLY BEING

24   PREMATURE, AND THAT WOULD CLEAR THE CALENDAR FOR THOSE.

25        AND I WILL RETAIN THE MOTION TO STRIKE THE SUPPLEMENTAL

1    INVALIDITY EXPERT REPORT OR THE INVALIDITY REPORT AS BEING

2    UNTIMELY AT DOCKET 365, WHICH ISN'T SET UNTIL JANUARY, BECAUSE

3    I THINK THAT'S DIFFERENT.

4            MR. JAMESON:  AND YOUR HONOR, LET ME MAKE ONE

5    COMMENT, IF YOU DON'T MIND, WITH RESPECT TO THE -- THE MOTION

6    TO STRIKE THE DAMAGES THEORIES IS SIMILAR TO THE MOTION.

7            THE COURT:  I KNOW.

8            MR. JAMESON:  OKAY.

9            THE COURT:  THAT'S WHY I WOULD BE TREATING IT

10   SIMILARLY.

11           MR. JAMESON:  I UNDERSTAND.

12       THE MOTION TO STRIKE THE INFRINGEMENT CONTENTIONS, AT

13   LEAST IN MY OPINION, THAT IS DIRECTLY TIED TO TWO PRIOR COURT

14   ORDERS ON THAT VERY ISSUE.  THE FIRST ORDER WAS BY

15   JUDGE VAN KEULEN.  THEY OBJECTED TO JUDGE VAN KEULEN'S ORDER,

16   AND THEN IT WAS APPEALED OR BROUGHT TO YOU.

17           THE COURT:  RIGHT.  YEAH.

18           MR. JAMESON:  AND YOU AFFIRMED WHAT JUDGE VAN KEULEN

19   DECIDED.

20       SO I FEEL LIKE THAT'S A LITTLE BIT OF A DIFFERENT ILK THAN

21   THE --

22           THE COURT:  THAT'S THE ONE ON DAMAGES OR --

23           MR. JAMESON:  THAT'S THE ONE ON INFRINGEMENT.

24           THE COURT:  OKAY.

25           MR. JAMESON:  IT REALLY IS A -- FROM OUR PERSPECTIVE,

1    IT'S A FLAVOR OF A VIOLATION OF TWO COURT ORDERS THAT HAD

2    INSTRUCTED FINJAN WHAT COULD BE IN THE CASE AND WHAT'S NOT IN

3    THE CASE.  AND SO I THINK THAT'S A LITTLE BIT DIFFERENT.

4           THE COURT:  I WILL TAKE A LOOK AT IT.

5           MR. JAMESON:  THANK YOU.

6           THE COURT:  I WILL ABSOLUTELY -- THIS MORNING I WENT

7    THROUGH THEM AT A PRETTY HIGH LEVEL, AND I WANTED TO MAKE IT

8    CLEAR I WAS LOOKING AT ALL OF THESE MOTIONS.

9         MR. ANDRE, ANY THOUGHTS ON THAT?

10          MR. ANDRE:  I THINK IT'S SIMILAR.  I THINK THEY ARE

11   ALL SIMILAR TO THE MOTION TO STRIKE.  WHEN YOU LOOK AT WHAT

12   THAT MOTION IS ABOUT, IT IS WHAT'S IN THE INFRINGEMENT

13   CONTENTIONS, THE EVIDENCE SIDE THERE, YOU ADD MORE EVIDENCE IN

14   EXPERT REPORTS IS WHAT IT COMES DOWN TO IT.  IS EVERYTHING YOU

15   CITE IN THE INFRINGEMENT CONTENTIONS WHAT YOU ARE LOCKED INTO.

16      IT'S SOMETHING, A SIMPLE MOTION IN LIMINE ON THAT GROUNDS

17   ALONE.  THAT'S THE NUT SHELL OF THE ARGUMENT.

18      SO IS IT DIFFERENT, NOT REALLY.

19          MR. JAMESON:  I WOULD JUST ASK THAT YOU TAKE A LOOK

20   AT IT.

21          THE COURT:  I WILL ABSOLUTELY TAKE A LOOK AT IT, YES,

22   I WILL.

23          MR. JAMESON:  THANK YOU.

24          THE COURT:  AND LET ME BE CLEAR THAT TO THE EXTENT

25   THAT ANY OF THESE ISSUES ACROSS ANY OF THESE MOTIONS ARE RAISED

1    BY THE EVIDENCE IN SUPPORT OF OR OPPOSITION TO THE SUMMARY

2    JUDGEMENT MOTION, YOU CERTAINLY CAN RAISE EVIDENTIARY

3    OBJECTIONS WITHIN THE CONFINES OF YOUR SUMMARY JUDGEMENT

4    PAPERS.

5         THAT WOULD BE ABSOLUTELY TIMELY.  AND SO I DON'T WANT

6    ANYONE TO BE CONFUSED THAT YOU HAVE TO WAIT UNTIL TRIAL.  I'M

7    JUST SAYING YOU HAVE TO WAIT UNTIL IT'S ACTUALLY OFFERED INTO

8    EVIDENCE, WHICH IS THE FINAL PRETRIAL CONFERENCE, THERE'S A

9    CONCESSION WE MAKE TO CLEARING THE WAY FOR TRIAL.

10        YOU ARE RIGHT.  IT COULD EASILY BE SEEN AS AN ADVISORY ON

11   WHAT I DO AT TRIAL.  BUT, YOU KNOW, THE FARTHER AWAY FROM TRIAL

12   AND THE FARTHER AWAY FROM ANY SUBSTANTIVE ARGUMENTS THAT GIVE

13   THE COURT CONTEXT THAN THESE THEORETICAL ARGUMENTS ON

14   ADMISSIBILITY ARE REALLY, YOU PUT A JUDGE IN A VERY DIFFICULT

15   POSITION.

16        AND IT'S AWFULLY EASY TO MAKE MISTAKES, EVEN HOW MANY

17   TIMES AT FINAL PRETRIAL CONFERENCES HAVE YOU WALKED OUT SAYING

18   GHEE, I JUST DIDN'T GET THE -- THE CONTEXT JUST WASN'T THERE.

19   WELL, WE CAN'T KNOW THE CASE THE WAY YOU KNOW IT.  AS ONE JUDGE

20   SAID TO ME ONCE, I FINALLY UNDERSTAND THE CASE WHEN IT GOES TO

21   THE JURY.  AND THAT'S PRETTY MUCH IT BECAUSE WE DO WHAT WE CAN.

22             MR. JAMESON:  SOMETIMES WE DO TOO.

23             THE COURT:  YEAH, WELL, THAT'S TRUE.  I GET THAT.

24        ANYTHING ELSE WE NEED TO DISCUSS TODAY?

25             MR. ANDRE:  I DON'T THINK SO, YOUR HONOR.  I THINK WE

1    ARE IN GOOD SHAPE.

2              THE COURT:  I KNOW WE WILL COME BACK TO THESE ISSUES,

3    BUT AFTER SUMMARY JUDGEMENT, THE CASE WILL NARROW, AND AS YOU

4    GET READY FOR TRIAL, IT WILL NARROW MORE.

5         YOU KNOW, FIRST MR. ANDRE HAS TO GO FORWARD ON A PATENT

6    AND A PARTICULAR CLAIM BEFORE ANY OF THE INVALIDITY ISSUES EVEN

7    IS BEFORE THE COURT.  AND THAT JUST TELLS ME THAT THERE WILL BE

8    SIGNIFICANT NARROWING.

9         WHATEVER THE TIME I GIVE YOU FOR THE TRIAL, MR. ANDRE CAN

10   TRY TO PROVE AS MUCH AS HE WANTS DURING THAT TIME, BUT HE'S

11   GOING TO BE BALANCING THE NEED TO PRESENT, THE NEED FOR THE

12   JURY TO UNDERSTAND.

13        SO IT JUST DOES BECOME MUCH MORE EFFICIENT AT THAT POINT.

14             MR. ANDRE:  IT WORKINGS ITSELF OUT, USUALLY, DOESN'T

15   IT.

16             THE COURT:  IT DOES.  WELL, THAT'S THE ART OF BEING A

17   TRIAL LAWYER.  I REALLY APPRECIATE THAT.

18             MR. JAMESON:  WE LOOK FORWARD TO IT ONE DAY,

19   YOUR HONOR.

20             THE COURT:  I HAVE NO DOUBT THIS CASE WILL GO TO

21   TRIAL.

22             MR. JAMESON:  IT IS.

23             THE COURT:  MY OTHER FINJAN CASES HAVE AS WELL, SO I

24   LOOK FORWARD TO IT.

25        OKAY.  THANK YOU BOTH.

1          MR. ANDRE:  THANK YOU, YOUR HONOR.

2          MR. JAMESON:  THANK YOU.

3      (THE PROCEEDINGS WERE CONCLUDED AT 9:41 A.M.)

1

2

3

4                    **CERTIFICATE OF REPORTER**

5

6

7

8          I, THE UNDERSIGNED OFFICIAL COURT

9    REPORTER OF THE UNITED STATES DISTRICT COURT FOR

10   THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

11   FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

12   CERTIFY:

13          THAT THE FOREGOING TRANSCRIPT,

14   CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND

15   CORRECT TRANSCRIPT OF MY SHORTHAND NOTES TAKEN AS

16   SUCH OFFICIAL COURT REPORTER OF THE PROCEEDINGS

17   HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED

18   TRANSCRIPTION TO THE BEST OF MY ABILITY.

19

20

21

22

23

24   _____
     SUMMER A. FISHER, CSR, CRR
25   CERTIFICATE NUMBER 13185          DATED: 10/7/19