**DUANE MORRIS LLP**
D. Stuart Bartow (CA SBN 233107)
dsbartow@duanemorris.com
Nicole E. Grigg (CA SBN 307733)
negrigg@duanemorris.com
2475 Hanover Street
Palo Alto, CA 94304-1194
Telephone:  +1 650 847 4146
Fax:  +1 650 523 4780
Telephone: 415.957.3000
Facsimile: 415.957.3001

**DUANE MORRIS LLP**
Joseph A. Powers (PA SBN 84590)
Admitted *Pro Hac Vice*
japowers@duanemorris.com
Jarrad M. Gunther (PA SBN 207038)
Admitted *Pro Hac Vice*
jmgunther@duanemorris.com
30 South 17th Street
Philadelphia, PA  19103
Telephone: 215.979.1000
Facsimile: 215.979.1020

**DUANE MORRIS LLP**
L. Norwood Jameson (GA SBN 003970)
Admitted *Pro Hac Vice*
wjameson@duanemorris.com
Matthew C. Gaudet (GA SBN 287789)
Admitted *Pro Hac Vice*
mcgaudet@duanemorris.com
David C. Dotson (GA SBN 138040)
Admitted *Pro Hac Vice*
dcdotson@duanemorris.com
John R. Gibson (GA SBN 454507)
Admitted *Pro Hac Vice*
jrgibson@duanemorris.com
Jennifer H. Forte (GA SBN 940650)
Admitted *Pro Hac Vice*
jhforte@duanemorris.com
Alice E. Snedeker (GA SBN 151066)
aesnedeker@duanemorris.com
1075 Peachtree NE, Suite 2000
Atlanta, GA 30309
Telephone: 404.253.6900
Facsimile: 404.253.6901

Attorneys for Defendant
CISCO SYSTEMS, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| FINJAN, INC., a Delaware Corporation,<br><br>Plaintiff,<br><br>v.<br><br>CISCO SYSTEMS, INC., a California Corporation,<br><br>Defendant. | Case No.: 5:17-cv-00072-BLF-SVK<br><br>**DEFENDANT CISCO SYSTEMS, INC.'S MOTION IN LIMINE NO. 3 RE PREJUDICIAL LITIGATION SETTLEMENT AMOUNTS (INTEL/MCAFEE, AND BLUE COAT/SYMANTEC)** |

**REDACTED**

**TABLE OF ABBREVIATIONS**

| | |
|---|---|
| Plaintiff Finjan, Inc. | Finjan or Plaintiff |
| Defendant Cisco Systems, Inc. | Cisco or Defendant |
| July 11, 2019 Expert Report of Finjan's Damages Expert, Dr. Layne-Farrar | Ex. 9 |
| John Dunn article titled "McAfee defiant after latest Finjan patent defeat," accessed 4/15/2020 from https://www.networkworld.com/article/2247134/mcafee-defiant-after-latest-finjan-patent-defeat.html | Ex. 10 |
| Deposition transcript of Julie Mar-Spinola, taken March 15, 2019 | Ex. 11 |
| Declaration of Nicole Grigg in Support of Defendant Cisco Systems, Inc.'s Motions in Limine | Grigg Decl.[1] |

---

[1] Unless otherwise specified, all exhibits refer to those attached to the Grigg Decl.

1    Cisco requests that the Court exclude Finjan from referencing:  (1) the total amount it has earned pursuant to its licensing and litigation settlement efforts, and (2) the outlier lump sum payments made by ███████████████ and ██████████ to settle the multiple litigations between the respective parties.  With respect to the ███████████████████ settlement, Finjan's damages expert conceded that the litigation settlement was "complex" and that she does not "have the details" about how the lump sum payment was negotiated.  Ex. 9 at ¶ 290.  She similarly concluded that the fact that the ███████████ "████████████████████████████████████████████."  *Id.* ¶ 311.  As a result, Dr. Layne-Farrar does not rely upon the final lump-sum payment amount from either of these litigation-related settlements, but instead pulls various other facets of these agreements to support her opinions.  For his part, Dr. Becker, Cisco's damages expert, does not rely upon either of these litigation settlements.  Accordingly, exclusion of the total amounts paid would not alter any damages experts' opinions.  Further, the total amount received pursuant to Finjan's licensing activities is also irrelevant to the hypothetical negotiation, and any discussion of the total amounts it has received will confuse the jury and prejudice Cisco.  Pursuant to Federal Rules of Evidence 401, 402, and 403, Cisco moves to exclude this evidence.

I.     **ARGUMENT AND CITATIONS TO AUTHORITY**

A.     **Legal Standard**

The patent owner has the burden of demonstrating that licenses relied on to prove damages are "sufficiently comparable to the hypothetical license at issue in suit."  *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1325, 1329 (Fed. Cir. 2009).  A patentee cannot rely on license agreements that are "radically different from the hypothetical agreement under consideration" to determine a reasonable royalty.  *Id.* at 1327.  Rather, "there must be a basis in fact to associate the royalty rates used in prior licenses to the particular hypothetical negotiation at issue in the case."  *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1317 (Fed. Cir. 2011).  District courts should guard against attempts to "inflate the reasonable royalty analysis with conveniently selected licenses without an economic or other link to the technology."  *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 872-73 (Fed. Cir. 2010).

The Federal Circuit has warned that special attention should be paid to license agreements that were heavily tainted by litigation: "[t]he notion that license fees that are tainted by the coercive environment of patent litigation are unsuitable to prove a reasonable royalty is a logical extension of *Georgia-Pacific*, the premise of which assumes a voluntary agreement will be reached between a willing licensor and willing licensee, with validity and infringement of the patent not being disputed." *LaserDynamics*, 694 F.3d at 77; *see also Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075, 1078-79 (Fed. Cir. 1983). As set forth below, the two agreements at issue here are textbook cases of such taint: the ▮▮▮▮ agreement was a direct outgrowth of a willfulness and enhanced damages judgment and then injunction issued in favor of Finjan against Secure Computing, which was then acquired by McAfee (which was in turn acquired by Intel); and the ▮▮▮▮ settlement was entered after the parties had already conducted 4 jury trials (one of which was a mistrial) and had 3 more jury trials already on schedule for the calendar year following the execution of the agreement.

**B.     Background**

Given Finjan's extensive licensing history, both parties' damages experts have relied on some of its agreements to support their damages opinions. For her part, Finjan's Dr. Layne-Farrar has opined that Finjan's licenses are "▮▮▮▮" Ex. 9 at ¶ 284. Nevertheless, she has pulled certain "▮▮▮▮" of these agreements that she believes are "▮▮▮▮." *Id.* She then goes on to provide information as to how certain of Finjan's 20+ portfolio-wide licenses "▮▮▮▮." *Id.*

Dr. Layne-Farrar noted that the "▮▮▮▮" and it arose after Secure Computing was found to infringe certain of Finjan's patents, a jury award of $9.18 million, and an ultimate award of $37 million after an increase related to willful infringement. *Id.* ¶ 290; *see also id.*, at ¶¶ 204-208 (▮▮▮▮). There was also an injunction, and the possibility of McAfee violating that injunction as an affiliate after acquiring Secure Computing. *Finjan, Inc. v. Secure*

1  *Computing Corp.*, 626 F.3d 1197 (Fed. Cir. 2010) ("The district court awarded damages to Finjan,
2  enhanced the award under 35 U.S.C. § 284, and imposed a permanent injunction against
3  Defendants."); Ex. 10.  Dr. Layne-Farrar further conceded that she does "███████████████
4  ████████████████████████████████████████████████████████████████████████████████████
5  ██████." Ex. 9 at ¶ 290.  Given the infirmities of relying upon the actual lump-sum amount, Dr.
6  Layne-Farrar concludes that only the "████████████████████████████████████████████████
7  ████████████████████████████████████████████████████████████████████████████████████
8  ████████████████████████████████." *Id.*

This Court excluded reliance on this agreement in the Blue Coat II case.  This Court previously noted that the lump sum paid by Intel agreement is an outlier and thus would only serve to skew the damages horizon.  *Finjan, Inc. v. Blue Coat Sys.*, Case No. 15-cv-03295, Dkt. 404 (redacted version), at 18-19 (N.D. Cal. Nov. 4, 2017) (excluding Intel agreement "for all purposes except for arguing validity as rebuttal")).  In that same Order, the Court further held that Finjan's damages expert could not rely on litigation-related settlements "to show the dollar amount of licensing" and thus precluded Finjan from introducing evidence regarding "the amount of settlement." *Id.* at 20.

Finjan should likewise be precluded from referencing each of the $9.18 million jury award, the $37 million judgment (which reflects an increase for willful infringement), and the follow-on payment of ███████.  As noted above, Dr. Layne-Farrar does not rely upon any of these amounts in her reasonable royalty analysis, but instead ████████████████████████████████████████ ████████████████████████████████████████████████████.  Dr. Layne-Farrar has conceded that the lack of information regarding how these lump-sum figures were calculated—and the fact that they each settled multiple rounds of litigation—rendered the final amounts unhelpful in her analysis. *See*, *e.g.*, Ex. 9 at ¶¶ 291 (████████████████████████████████████████████████████████████ ██████████████████████████████").  Whatever the merits of Dr. Layne-Farrar's use of those rates in this case—and Cisco contends there is none (*see* Dkt. 429), because neither Dr. Layne-Farrar nor Dr. Becker rely or otherwise reference the final lump-sum payment made by Intel to settle the multiple litigations, the Court should preclude Finjan from referencing the lump-sum amount.

1

2  Similarly, Finjan entered into a patent license agreement and settlement with ▓▓▓

3  and its subsidiary ▓▓▓, as a part of a settlement agreement resolving *numerous*

4  patent infringement suits, including an appeal. Ex. 9 at ¶¶ 251-53. At the time the license/settlement

5  agreement was executed, the parties had already tried four cases to different juries (one of which

6  ended in a mistrial). Ex. 11 at 97:22-99:14. There were 3 more trials between the parties in the then-

7  upcoming calendar year, for a total of 7 jury trials reflected in the settlement. *Id.* It is difficult to

8  imagine an agreement more tainted by litigation.

9  The agreement provided for a lump-sum payment of ▓▓▓. Ex. 9 at ¶¶ 251-53. Dr.

10 Layne-Farrar acknowledges that settlement "▓▓▓

11 ▓▓▓," and that the

12 "▓▓▓ … " *Id*. at ¶¶ 311-

13 313. Thus, instead of relying upon the final lump-sum amount to justify her opinions, Dr. Layne-

14 Farrar suggests that "[t▓▓▓

15 ▓▓▓)" (*id.* ¶ 312), and points to

16 the license's "▓▓▓

17 ▓▓▓" (*id.* ¶ 313). Again, because neither Dr. Layne-Farrar nor Dr.

18 Becker rely upon or otherwise reference the final lump-sum payment made by ▓▓▓

19 to settle these litigations—as opposed to other facets surrounding the negotiation of that license—

20 the Court should preclude Finjan from referencing such lump-sum amount.

21     **C.**    **Aggregate Amount**

22 Any discussion by Finjan of the aggregate amount of money it has received in connection

23 with its patent portfolio is also irrelevant to the hypothetical negotiation and highly prejudicial.

24 Despite Finjan having entered into 20 agreements as of the time of Dr. Layne-Farrar's report,

25 approximately half of the total revenue arises from just the above two outlier agreements.

26 Accordingly, those agreement skew the horizon. Introduction of the total licensing revenue would

27 only be done to improperly influence the jury by anchoring Finjan's proposed royalty here. *See*

28 *LaserDynamics*, 694 F.3d at 77-78 (finding abuse of discretion where district court admitted license

agreement that was significantly more than next highest license and, based on procedural posture of litigation, reflected strong desire to avoid further litigation, not value of claimed invention).  The Court should preclude Finjan from referencing the aggregate amount of licensing revenue Finjan has generated in its litigation campaign.

Dated:  April 16, 2020                              Respectfully submitted,

<u>/s/ Nicole E. Grigg</u>
Nicole E. Grigg
D. Stuart Bartow
**DUANE MORRIS LLP**
2475 Hanover Street
Palo Alto, CA 94304-1194
Email: negrigg@duanemorris.com
Email: dsbartow@duanemorris.com
Telephone:  650.847.4146
Facsimile:  650.847.4151

L. Norwood Jameson (admitted *pro hac vice*)
Email:  wjameson@duanemorris.com
Matthew C. Gaudet (admitted *pro hac vice*)
Email:  mcgaudet@duanemorris.com
John R. Gibson (admitted *pro hac vice*)
Email: jrgibson@duanemorris.com
David C. Dotson (admitted *pro hac vice*)
Email:  dcdotson@duanemorris.com
Jennifer H. Forte (admitted *pro hac vice*)
Email:  jhforte@duanemorris.com
Alice E. Snedeker
Email: aesnedeker@duanemorris.com
1075 Peachtree Street, Ste. 2000
Atlanta, GA  30309
Telephone: 404.253.6900
Facsimile: 404.253.6901

Joseph A. Powers (admitted *pro hac vice*)
Email:  japowers@duanemorris.com
Jarrad M. Gunther (admitted *pro hac vice*)
jmgunther@duanemorris.com
30 South 17th Street
Philadelphia, PA  19103
Telephone: 215.979.1000
Facsimile: 215.979.1020

*Attorneys for Defendant*
CISCO SYSTEMS, INC.