**DUANE MORRIS LLP**
D. Stuart Bartow (CA SBN 233107)
dsbartow@duanemorris.com
Nicole E. Grigg (CA SBN 307733)
negrigg@duanemorris.com
2475 Hanover Street
Palo Alto, CA 94304-1194
Telephone: +1 650 847 4146
Fax: +1 650 523 4780
Telephone: 415.957.3000
Facsimile: 415.957.3001

**DUANE MORRIS LLP**
Joseph A. Powers (PA SBN 84590)
Admitted *Pro Hac Vice*
japowers@duanemorris.com
Jarrad M. Gunther (PA SBN 207038)
Admitted *Pro Hac Vice*
jmgunther@duanemorris.com
30 South 17th Street
Philadelphia, PA 19103
Telephone: 215.979.1000
Facsimile: 215.979.1020

**DUANE MORRIS LLP**
L. Norwood Jameson (GA SBN 003970)
Admitted *Pro Hac Vice*
wjameson@duanemorris.com
Matthew C. Gaudet (GA SBN 287789)
Admitted *Pro Hac Vice*
mcgaudet@duanemorris.com
David C. Dotson (GA SBN 138040)
Admitted *Pro Hac Vice*
dcdotson@duanemorris.com
John R. Gibson (GA SBN 454507)
Admitted *Pro Hac Vice*
jrgibson@duanemorris.com
Jennifer H. Forte (GA SBN 940650)
Admitted *Pro Hac Vice*
jhforte@duanemorris.com
Alice E. Snedeker (GA SBN 151066)
aesnedeker@duanemorris.com
1075 Peachtree NE, Suite 2000
Atlanta, GA 30309
Telephone: 404.253.6900
Facsimile: 404.253.6901

Attorneys for Defendant
CISCO SYSTEMS, INC.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| FINJAN, INC., a Delaware Corporation,<br><br>Plaintiff,<br><br>v.<br><br>CISCO SYSTEMS, INC., a California Corporation,<br><br>Defendant. | Case No.: 5:17-cv-00072-BLF-SVK<br><br>**DEFENDANT CISCO SYSTEMS, INC.'S MOTION IN LIMINE NO. 5 TO EXCLUDE EVIDENCE THAT IMPROPERLY SKEWS THE DAMAGES HORIZON** |

**REDACTED**

**TABLE OF ABBREVIATIONS**

| | |
|---|---|
| Plaintiff Finjan, Inc. | Finjan or Plaintiff |
| Defendant Cisco Systems, Inc. | Cisco or Defendant |
| *Finjan, Inc. v. Blue Coat Systems, LLC*, No. 5:15-cv-3295-BLF, Order Regarding Motions *in Limine* (Redacted), Dkt. 404 (Nov. 4, 2017) | *Blue Coat 2* Order |
| July 11, 2019 Expert Report of Finjan's Damages Expert, Dr. Layne-Farrar. | Ex. 9 |
| March 26, 2020 transcript of proceedings before Judge Freeman. | Ex. 12 |
| April 18, 2019 Deposition transcript of Hilton Romanski | Ex. 13 |
| Second Amended Expert Report of Michael Mitzenmacher, Ph.D. Regarding Infringement by Cisco Systems, Inc. of Patent Nos. 6,804,780 and 8,141,154. | Ex. 14 |
| Second Amended Expert Report of Eric Cole, Ph.D. Regarding Infringement by Cisco Systems, Inc. of Patent Nos. 6,154,844 and 8,677,494. | Ex. 15 |
| Second Amended Expert Report of Nenad Medvidovic, Ph.D. Regarding Infringement by Cisco Systems, Inc. of Patent No. 7,647,633. | Ex. 16 |
| August 29, 2019 Errata to Expert Report of Dr. Anne Layne-Farrar, Exhibit 5 | Ex. 17 |
| September 11, 2019 deposition transcript of Anne Layne-Farrar | Ex. 18 |
| Declaration of Nicole Grigg in Support of Defendant Cisco Systems, Inc.'s Motions in Limine | Grigg Decl.[1] |

---

[1] Unless otherwise specified, all exhibits refer to those attached to the Grigg Decl.

i

CISCO'S MOTION IN LIMINE NO. 5 TO EXCLUDE EVIDENCE THAT IMPROPERLY SKEWS THE DAMAGES HORIZON
CASE NO. 5:17-CV-00072-BLF-SVK

Cisco seeks to preclude Finjan from introducing, under FRE 403, evidence, arguments and opinions that will skew the damages horizon and prejudice Cisco. This includes: (1) Cisco's size, stock value/market cap, annual revenues, sales by segment, past annual revenue of the accused products (prior to the start of damages), and like data points; (2) Cisco's payment of $2.7 billion to acquire Sourcefire, based almost entirely on unaccused products; (3) Worldwide (*i.e.*, non-U.S.-based) revenues for the accused products in Dr. Layne-Farrar's Methods 1 and 2 (royalty rate x royalty base); and (4) "Attempted" submissions" and submissions to Threat Grid's German data center in Dr. Layne-Farrar's Method 4 (price-per-scan). The Court has recognized the prejudicial effect of large numbers untethered to the accused functionality, which skew the damages horizon:

> [T]he Federal Circuit has repeatedly looked at cases where certain expert testimony so skewed the damages evaluations for the jury as a way of prejudicially resetting their calculation … and has rejected that. … [I]f you put a billion dollars on the table, then the jury might think, if the jury thinks you did a lousy job but they are going to give you something, maybe they will give you $250 million and think that you've lost terribly. And that's the problem with skewing. Whereas in fact, the reasonable damages, they should never hear anything about a billion dollars.

Ex. 12, at 32:4-21. The same concerns arise with each of the types of information discussed herein.

## I.      Company-Wide Information Regarding Cisco's Size And Overall Sales

Disclosures of overall revenue and company-wide financial information "skew the damages horizon for the jury." *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1320 (Fed. Cir. 2011); *see also LaserDynamics, Inc. v. Quanta Computer, Inc.,* 694 F.3d 51, 68 (Fed. Cir. 2012). The disclosure of a company's "size, wealth, or overall revenues" is not relevant to the damages analysis and the admission of such evidence "is substantially outweighed by the risk of unfair prejudice, confusion of the issues and misleading the jury necessitating its exclusion under Rule 403." *HTC v. Techn. Props. Ltd.,* No. 2013 WL 4782598, at *11-12 (N.D. Cal. 9/6/12) ("Federal Circuit case law [such as *Uniloc*] does not permit the use of a company's overall size or revenue as a check to confirm the reasonableness of a jury award."). This is because "[a]dmission of overall revenues that have no demonstrated correlation to the value of the patented features only serves to make a patentee's

proffered damages amount appear modest by comparison, and to artificially inflate the jury's damages calculation beyond that which is 'adequate to compensate for infringement.'" *Blue Coat 2* Order at 23 (internal quotation marks omitted). Similarly, the Court should not permit Finjan to argue that the royalty it seeks is only a fraction, small percentage, etc., of Cisco's overall revenue. *LaserDynamics,* 694 F.3d at 67-68; *Blue Coat 2* Order at 22-23. And, by extension, the Court should precluded Finjan under Rules 401/402 and/or 403 from introducing other large financial figures, such as Cisco's market capitalization or capital expenditures, that would only confuse the jury and skew the damages horizon. *Uniloc*, 632 F.3d at 1320; *Golden Bridge Tech. v. Apple Inc.*, No. 2014 WL 4057187, at *2 (N.D. Cal. June 1, 2014) (granting motion in limine to exclude argument or testimony regarding Apple's size, wealth, market capitalization, cash, overall revenues, revenues on accused products, or entire market value of Apple's accused sales).

Similarly, the Court previously ordered that the damages period begins with the filing of the Complaint. *See* Dkt. 487 (granting summary judgment on the issue of pre-suit damages). Accordingly, the Court should preclude Finjan from referencing the revenues of the accused products prior to the filing of the Complaint. It would be misleading and prejudicial to reference revenues earned prior to this date, and such numbers would only tend to skew the damages horizon.

## II.    What Cisco Paid to Acquire Sourcefire

Similar concerns arise with respect to the $2.7 billion Cisco paid to acquire Sourcefire (and similar figures regarding Sourcefire's total revenues). That transaction was based on the unaccused Next-Generation Firewall technology, including an Intrusion Prevention System—not the AMP products, which are at issue here. Ex. 13 at 84:8-15("Sourcefire had a intrusion prevention system …, as well as a strong leadership team in technology to be able to execute on that strategy of extending back into the security market. That's what drove that acquisition. **Q**. Now, is that something different than AMP? **A**. It is something different than AMP …").

Notably, the Court stated that it does not "want a whole trial on" why Cisco purchased Sourcefire and what was the driver of the acquisition price. Ex. 12, at 30. The Court was properly concerned about the likelihood that a $2.7 billion acquisition price would confuse the jury and skew the damages horizon, as well as lead to a trial within a trial on the value of the AMP technology

2

CISCO'S MOTION IN LIMINE NO. 5 TO EXCLUDE EVIDENCE THAT IMPROPERLY SKEWS THE DAMAGES HORIZON
CASE NO. 5:17-CV-00072-BLF-SVK

1   (which was very small) to the overall purchase price of Sourcefire. In sum, the total purchase price

2   of Sourcefire is not probative of the value of the accused AMP products, much less the portion of

3   AMP accused of infringement. *See also Blue Coat 2* Order, at 22 (excluding Symantec's acquisition

4   price because "it has no probative value and is highly prejudicial. Finjan fails to establish probative

5   value as there is no indication that the acquisition price shows how Symantec valued the technology

6   that allegedly infringed the Asserted Patents."). To be clear, Cisco does not seek to exclude from trial

7   any reference to the fact of Cisco's acquisition of Sourcefire, but instead to the total amount paid,

8   Sourcefire's total annual revenues at the time of acquisition, or Sourcefire's market cap at the time.

9   **III.   Worldwide Sales**

10          For Methods 1 and 2 of her damages opinions (royalty rate x royalty base, Dr. Layne-Farrar

11  provided separate royalty calculations for "USA" and "Worldwide." For Method 1, her use of

12  "Worldwide" sales figures instead of "USA" sales figures resulted in her damages range increasing

13  by approximately 50%. *See*, *e.g.*, Ex. 9 ¶ 353 ("

14

15

16                                          "). Similar increases are shown in Method 2. But neither Dr. Layne-

17  Farrar nor Finjan's technical experts expressed any opinion about which, if any, of Cisco's

18  worldwide sales qualify as acts of infringement under § 271(a). *See* Exs. 14 ¶¶2495-2503; 15 pp.

19  1417-1419; 16 ¶¶4503-4511). Thus, there is no factual basis to include in any royalty calculation,

20  for example

21

22                                                                                      , is clearly a

23  foreign sale with no U.S. connection. Yet the revenue from these types of sales are included in Dr.

24  Layne-Farrar's worldwide figures and wrongfully skew the damages horizon.

25          "It is axiomatic that U.S. patent law does not operate extraterritorially to prohibit

26  infringement abroad." *Power Integrations, Inc. v. Fairchild Semiconductor Int'l., Inc.*, 711 F.3d

27  1348, 1371 (Fed. Cir. 2013); *see also id.* ("Regardless of how the argument is framed under the facts

28  of this case, the underlying question here remains whether Power Integrations is entitled to

compensatory damages for injury caused by infringing activity that occurred outside the territory of the United States. The answer is no."). Thus, the patent laws "do not provide compensation for a defendant's foreign exploitation of a patented invention, which is not infringement at all." *Id.*

Here, the parties agree that all of the sales/revenue captured in Dr. Layne-Farrar's "USA" calculations in Methods 1 & 2 of her damages opinion are properly credited as allegedly infringing United States sales, and such figures are not at issue here. However, Dr. Layne-Farrar also calculated separate "worldwide" figures that include foreign sales for which no evidentiary foundation exists in the record. For Method 4 (price-per-scan), she includes all submissions to Threat Grid, even if the submission was made by*, e.g.*, a European-based customer to Threat Grid's German data center.

The Federal Circuit has described the standard for proving U.S. infringement as follows:

> [W]e think that § 271(a) provides the basis for drawing the needed line. It states a clear definition of what conduct Congress intended to reach—making *or* using *or* selling in the United States *or* importing into the United States, even if one or more of those activities also occur abroad.

*Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, 807 F.3d 1283, 1306 (Fed. Cir. 2015). Thus, before the Court allows Finjan to present evidence of worldwide sales, the Court should require Finjan to proffer evidence showing how it will prove that any foreign sale (or submission to Threat Grid) qualifies as infringement under § 271(a). Otherwise, allowing Finjan to put a damages number in front of the jury without proof tying that damages figure to an act of infringement invites the jury to award impermissible damages and will artificially and improperly inflate the top-end of the damages range the jury considers. *See MLC Intellectual Property, LLC v. Micron Technology, Inc.*, Case No. 14-2019, 2019 WL 2437073, *3 (N.D. Cal. June 11, 2019) (granting motion *in limine* "to exclude evidence of foreign sales" where plaintiff had not identified any evidence challenging "categorization of certain sales as 'foreign'"); *see also Halo Electronics, Inc. v. Pulse Electronics, Inc.*, 769 F.3d 1371, 1377-81 (Fed. Cir. 2014), *rev'd on other grounds*, 136 S. Ct. 1923 (2016) (affirming summary judgment that no sale or offer to sell occurred in the U.S. where manufacturing and delivery occurred outside the United States and there was no evidence of the location of the formation of relevant binding contracts to sell); *Texas Advanced Optoelectronic Sols., Inc. v. Renesas*

4

*Elecs. Am., Inc.*, 895 F.3d 1304, 1330 (Fed. Cir. 2018) ("TAOS has presented an even weaker case than Halo presented. Here, the undisputed facts show manufacture and packaging abroad, and shipping of the units to locations abroad. And TAOS has not presented any evidence similar to Halo's 'general business agreement' and domestic quarterly pricing negotiations as to specific products.").

## IV. "Attempted" and non-U.S. "Submissions" Under the "Price Per Scan" Theory

Dr. Layne-Farrar's Method 4 calculates damages based on both "Attempted Submissions" and "Successful Submissions." Ex. 17. A "successful submission" "indicates when the analysis did not crash but rather worked properly." Ex. 9 ¶ 357. But none of Finjan's technical experts have opined that an ***attempted submission*** of a file to Threat Grid—irrespective of whether the submission is successful (*e.g.*, if the sandbox crashes or the file sent was not a supported file type)—infringes. Ex. 18 at 256:13-258:8 (does not "have that information" on whether unsuccessful submissions infringe).

Damages are limited to those "adequate to compensate for the infringement," 35 U.S.C. § 284, and a proposed royalty "cannot include activities that do not constitute patent infringement." *AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1343 (Fed. Cir. 2015). Accordingly, the number of "Attempted Submission" is irrelevant and should be excluded pursuant to Rules 401/402. Moreover, the "attempted submissions" damages figures should also be excluded under Rule 403, because using "attempted submissions" figure doubles Dr. Layne-Farrar's damages calculations (the top-end of Dr. Layne-Farrar's range balloons from ███████████████████████████ for "attempted" submissions) without any attempt by Finjan to argue that attempted submissions infringe.

Similarly, both the attempted and successful submissions figures capture worldwide submissions, including, *e.g.*, submissions by European-based customers to the German data center. Again, no expert has articulated an infringement theory for such foreign submissions. "It is axiomatic that U.S. patent law does not operate extraterritorially to prohibit infringement abroad." *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348, 1371 (Fed. Cir. 2013); *see also Enplas Display Device Corp. v. Seoul Semiconductor Co., Ltd.*, 909 F.3d 398, 411 (Fed. Cir. 2018) (vacating jury verdict because district court improperly permitted damages testimony on noninfringing uses). Accordingly, the Court should not permit the introduction of this theory to the extent a portion of it relies on admittedly non-infringing submissions and thus skews the royalty.

5

CISCO'S MOTION IN LIMINE NO. 5 TO EXCLUDE EVIDENCE THAT IMPROPERLY SKEWS THE DAMAGES HORIZON
CASE NO. 5:17-CV-00072-BLF-SVK

1    Dated: April 16, 2020                         Respectfully submitted,

2

3                                      */s/ Nicole E. Grigg*
                                       Nicole E. Grigg

4                                        D. Stuart Bartow
                                       **DUANE MORRIS LLP**

5                                        2475 Hanover Street
                                       Palo Alto, CA 94304-1194

6                                        Email: negrigg@duanemorris.com
                                       Email: dsbartow@duanemorris.com

7                                        Telephone: 650.847.4146
                                       Facsimile: 650.847.4151

8

9                                        L. Norwood Jameson (admitted *pro hac vice*)
                                       Email: wjameson@duanemorris.com

10                                       Matthew C. Gaudet (admitted *pro hac vice*)
                                       Email: mcgaudet@duanemorris.com

11                                       John R. Gibson (admitted *pro hac vice*)
                                       Email: jrgibson@duanemorris.com

12                                       David C. Dotson (admitted *pro hac vice*)
                                       Email: dcdotson@duanemorris.com

13                                       Jennifer H. Forte (admitted *pro hac vice*)
                                       Email: jhforte@duanemorris.com

14                                       Alice E. Snedeker
                                       Email: aesnedeker@duanemorris.com

15                                       1075 Peachtree Street, Ste. 2000
                                       Atlanta, GA 30309

16                                       Telephone: 404.253.6900
                                       Facsimile: 404.253.6901

17                                       Joseph A. Powers (admitted *pro hac vice*)
                                       Email: japowers@duanemorris.com

18                                       Jarrad M. Gunther (admitted *pro hac vice*)
                                       jmgunther@duanemorris.com

19                                       30 South 17th Street
                                       Philadelphia, PA 19103

20                                       Telephone: 215.979.1000
                                       Facsimile: 215.979.1020

21

22                                       *Attorneys for Defendant*
                                      CISCO SYSTEMS, INC.

23

24

25

26

27

28