**DUANE MORRIS LLP**
D. Stuart Bartow (CA SBN 233107)
DSBartow@duanemorris.com
Nicole E. Grigg (CA SBN 307733)
negrigg@duanemorris.com
2475 Hanover Street
Palo Alto, CA 94304-1194
Telephone: 650.847.4150
Facsimile: 650.847.4151

**DUANE MORRIS LLP**
Joseph A. Powers (PA SBN 84590)
Admitted *Pro Hac Vice*
japowers@duanemorris.com
Jarrad M. Gunther (PA SBN 207038)
Admitted *Pro Hac Vice*
jmgunther@duanemorris.com
30 South 17th Street
Philadelphia, PA 19103
Telephone: 215.979.1000
Facsimile: 215.979.1020

**DUANE MORRIS LLP**
L. Norwood Jameson (GA SBN 003970)
Admitted *Pro Hac Vice*
wjameson@duanemorris.com
Matthew C. Gaudet (GA SBN 287789)
Admitted *Pro Hac Vice*
mcgaudet@duanemorris.com
David C. Dotson (GA SBN 138040)
Admitted *Pro Hac Vice*
dcdotson@duanemorris.com
John R. Gibson (GA SBN 454507)
Admitted *Pro Hac Vice*
jrgibson@duanemorris.com
Jennifer H. Forte (GA SBN 940650)
Admitted *Pro Hac Vice*
jhforte@duanemorris.com
1075 Peachtree NE, Suite 2000
Atlanta, GA 30309
Telephone: 404.253.6900
Facsimile: 404.253.6901

Attorneys for Defendant
CISCO SYSTEMS, INC.

**IN THE UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| FINJAN, INC., a Delaware Corporation,<br><br>Plaintiff,<br><br>v.<br><br>CISCO SYSTEMS, INC., a California Corporation,<br><br>Defendant. | Case No.: 5:17-cv-00072-BLF-SVK<br><br>**DEFENDANT CISCO SYSTEMS, INC.'S OPPOSITION TO PLAINTIFF FINJAN, INC.'S MOTION *IN LIMINE* NO. 1: TO PRECLUDE REFERENCE TO PENDING AND UNRELATED LITIGATIONS AND PTO PROCEEDINGS**<br><br>Date:    April 30, 2020<br>Time:    1:30 PM<br>Courtroom: 3, 5th Floor<br>Judge:   Hon. Beth L. Freeman |

**REDACTED**

# TABLE OF ABBREVIATIONS

| | |
|---|---|
| Plaintiff Finjan, Inc. | Finjan or Plaintiff |
| Defendant Cisco Systems, Inc. | Cisco or Defendant |
| Exhibit 14 entered at the August 6, 2019 deposition of Shlomo Touboul | Ex. 23 |
| Exhibit 15 entered at the August 5, 2019 deposition of Asher Polani | Ex. 24 |
| July 11, 2019 expert report of Dr. Anne Layne-Farrar | Ex. 25 |
| August 14, 2019 expert report of Dr. Stephen Becker | Ex. 26 |
| May 23, 2019 Final Written Decision in IPR2018-00391 | Ex. 27 |
| April 3, 2018 Decision Denying Institution of *Inter Partes* Review in IPR2017-02154 | Ex. 28 |
| April 3, 2018 Decision Denying Institution of *Inter Partes* Review in IPR2017-02155 | Ex. 29 |
| March 17, 2010 email exchange regarding Finjan | Ex. 31 |

Finjan's Motion should be denied for several reasons. Cisco addresses the issues relating to concluded litigation, pending litigation, and PTO proceedings separately below.

### A.     Finjan's Concluded Litigations Are Relevant To Damages and Willfulness

**1.** Finjan's willfulness and damages cases rely on the idea that Cisco knew it was infringing Finjan's patents. But Finjan's litigation history, coupled with the correspondence between the parties, shows why Cisco would have no such belief. Aspects of Finjan's prior litigation are crucial for the jury to get the full picture of the actual communications and relationship between Finjan and Cisco, a topic that Finjan appears intent on making a centerpiece of this trial. For example, in 2006 Finjan described to Yoav Samet (Cisco's board observer) its patent litigation strategy against competitors: Finjan would "█████████████████████████████████████████████████████████████████████████████████████████████████████████████." Ex. 24. Then, in 2010, Finjan told Mr. Samet that Finjan became an "█████████" and would focus on "█████." Ex. 31. Finjan then executed that plan and started filing litigation throughout the industry—all leading to what, the jury should conclude, Cisco perceives as completely unfounded assertions of patents in this case. If Finjan wants to put Cisco's state of mind at issue based on the parties' relationship, the facts relating to concluded litigation cannot be artificially excised.

The concluded litigation pertains to Cisco's state of mind as to the '780 and '844 Patents in particular, as it explains Cisco's position that Finjan is asserting patents that were previously described to Cisco in a way that Cisco could not possibly infringe. Specifically, in 2004, Finjan's Shlomo Touboul (its founder) sent an email to Mr. Samet describing Finjan's patents, including the "Gateway Patents" (*i.e.*, the subject matter of this case). Ex. 23. Finjan first described the '194 Patent as "█████████████████████████████████████████████████████████████████████████." It then described the '780 Patent as the other "Gateway Patent" that covers the concept of "█████████████████"—a characterization Finjan now disputes. The '844 Patent was separately described (under the heading "█████████████") as follows: "█████████████████████████████████████████████████████████████████████████████████." *Id.* The '194 Patent was later invalidated in Finjan's litigation against Symantec. From Cisco's perspective, that invalidation is why Finjan has reinterpreted the '780 and '844 Patents in order to assert them against Cisco now. Thus, in

order to fairly and fully understand Cisco's state of mind (which, again, is the focus of Finjan's willfulness claim), the jury must hear about Finjan's concluded litigations.

**2.** All but two of the ten licenses that Dr. Layne-Farrar (Finjan's damages expert) points to as supportive of her reasonable royalty rate were executed against the backdrop of litigation. The jury must be able to evaluate the circumstances of these litigations to determine what weight, if any, to place on these licenses. Specifically, at the time of her expert report, Dr. Layne-Farrar found that "███████████████████████████████████████," each of which involved a license to Finjan's entire patent portfolio, including the five patents-in-suit. Ex. 25 ¶ 189. Although she concluded that none of these agreements is "██████████," for certain agreements she finds "█████████████████████████████████████." Ex. 9 at ¶ 284. Similarly, some of the license agreements relied upon by Dr. Becker resulted from litigation.

Dr. Layne-Farrar recognized that "████████████████████████████████████████████████████████████████████████████████." Ex. 25 at ¶ 190. Finjan argues, however, that the experts should not go "into irrelevant details of the cases or allowing Cisco to paint Finjan as particularly litigious." Mot., at 1 n.1. Finjan provides no guidance as to what it thinks is an "irrelevant detail," and the jury must be able to evaluate the full facts and circumstances surrounding these settlements in making its determination of the weight to afford them. *See, e.g.*, *Prism Techs. LLC v. Sprint Spectrum L.P.*, 849 F.3d 1360, 1370-71 (Fed. Cir. 2017) (court properly balanced the potential prejudice under Rule 403 and admitted a settlement agreement, both parties were free to introduce relevant evidence regarding the circumstances of the settlement); *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 77 (Fed. Cir. 2012) (settlement licenses must be "consider[ed] … in its proper framework to ensure that the reasonable royalty rate reflects 'the economic demand for the claimed technology.'").

Moreover, each of the licenses relied upon by both damages experts provides rights to Finjan's entire patent portfolio. Dr. Becker opines that this licensing history is evidence that Finjan equally values each patent within its portfolio, thereby justifying his opinion that an equal value of patents within Finjan's portfolio is appropriate. *See, e.g.*, Ex. 26 at ¶¶ 127, 437-442, 453-458; *see also Prism*, 849 F.3d at 1371 (where prior license covered "the patents at issue here, though not only the

1  patents at issue here … evidence was needed that reasonably addressed what bearing the amounts in
2  that Agreement had on the value of the particular patents at issue here"). This Court noted that such
3  evidence "establish[es] the proper foundation for his opinion that Finjan treats the patents in its
4  portfolio as having equal value." Dkt. 549 (redacted at Dkt. 555) (citing *Finjan, Inc. v. Blue Coat Sys.,*
5  *Inc.*, No. 13-cv-03999-BLF, 2015 WL 4272870, *7 (N.D. Cal. July 14, 2015)).

6  For other licenses that settled litigation—*e.g.*, Proofpoint/Armorize, F5, FireEye, and Carbon
7  Black—to the extent that Dr. Layne-Farrar relies on these agreements to support her position that
8  Finjan and Cisco would have agreed to a royalty rate of 8% on hardware and 16% on software for the
9  patents-in-suit here, Cisco must be able to provide the jury the context within which those agreements
10 were reached, including the patents asserted and the timing of the settlement.

11 With respect to two specific concluded litigations (and the resulting licenses)—Intel/McAfee
12 and Blue Coat/Symantec—it would appear that the parties agreed that at least the outlier lump-sum
13 payments made by Intel/McAfee and Blue Coat/Symantec should be excluded.  Cisco's Motion *in*
14 *Limine* No. 3 (Dkt. 532-6).  The lump-sum payments are not relied upon by any expert and, therefore,
15 are irrelevant and should be excluded. Indeed, Cisco does not believe any portion of these litigations
16 or licenses is relevant. Should the Court nevertheless permit Finjan to introduce these licenses and/or
17 the settlement figures or jury verdicts from these agreements, then Cisco must be permitted to provide
18 the full context behind these settlements and how the final lump-sum amounts were influenced by
19 litigation, including, *e.g.*, the fact that at the time the Symantec/Blue Coat settlement was executed,
20 the parties had already tried four cases and three more trials were scheduled for the upcoming year.

21 Similarly, there is nothing relevant about the Websense and Sophos settlements and Cisco
22 does not object to the total exclusion of discussions of these settlements (and the litigations from
23 which they arose). Specifically, Dr. Layne-Farrar relies on Finjan's September 2014 settlement
24 agreement with Websense, and in particular Finjan's Mr. Hartstein's assertion that "
25 " Ex. 25 at ¶ 292. However, as Dr. Layne-Farrar notes,
26 "
27 ." *Id.* ¶ 293. She also relies on Finjan's
28 settlement agreement with Sophos, arguing that because she "

|   |   |
|---|---|
| 1 | ███████████████████████████████████████████████████████ |
| 2 | ███████████████████████████████████████████████████████." *Id.* ¶ |
| 3 | 302. Dr. Layne-Farrar further notes that ███████████████ |
| 4 | ███████████████████████████" and " |
| 5 | ██████████████" *Id.* ¶ 300. She then goes on to cite her trial testimony regarding her proposed |
| 6 | royalties "█████████████████." *Id.* Thus, total exclusion of these settlements and litigations |

is warranted.  However, to the extent Finjan is permitted to introduce the Websense and Sophos agreements, Cisco must be able to cross-examine Dr. Layne-Farrar, for example, on the nature of her opinions in Sophos case and the impact the litigations (including findings on patents not asserted here) had on settlement.

      **B.**     **Finjan's Pending Litigations Are Relevant to Expert Credibility And Finjan's Negotiation Positions.**

Finjan has repeatedly hired the identical set of technical experts, each one always finding infringement, regardless of the patents or the accused products. The collective revenue from the pending litigation constitutes a very substantial portion of those expert's *current* income. Cisco should be permitted to probe these witnesses' bias and will necessarily need to refer to co-pending litigations. Likewise, even if an agreement was entered into prior to the commencement of litigation, Finjan's pattern of litigation against industry participants, as evidenced by the large number of pending cases, demonstrates that the threat of litigation loomed over all of Finjan's recent licenses.  The jury must be permitted to see exactly what those licensees saw regarding Finjan's litigation profile. Indeed, as a publicly traded company, Finjan regularly provides the public (which of course includes potential licensees), with updates on its litigation efforts.

      **C.**     **PTO Proceedings**

Finjan asks this Court to exclude any discussion of "other pending proceedings involving Finjan's asserted patents, including in … the USPTO." Dkt. 527, at 1. Finjan does not identify any pending USPTO proceedings it seeks to exclude, other than characterizing them as "multiple co-pending proceedings involving … the asserted patents, but not Cisco." *Id.* at 2. It appears that what

Finjan requests is for it to be able to present evidence about three Cisco IPR proceedings on the '633, '844 and '494 Patents while precluding Cisco from presenting evidence about any other IPRs.

To be clear, as set forth in Cisco's Motion *in Limine* No. 2 (Dkt. 535) ("Cisco's MIL No. 2"), Cisco believes the Court should exclude *all* evidence and argument about post-grant proceedings—both those involving Cisco and those involving third parties—as they are of little (if any) probative value and are highly prejudicial. Specifically, the Court should exclude all evidence and argument regarding the three irrelevant and prejudicial Cisco proceedings, two of which (the '494 and '844 IPRs) were not even instituted and the other of which (the '633 IPR) is for a patent that Cisco is not challenging with prior art at trial. *See, e.g.,* Cisco's MIL No. 2 at § I.B.

Cisco submits, however, that should the Court allow Finjan to present evidence to the jury regarding the Cisco proceedings, then it is only proper to allow Cisco to present evidence pertaining to other PTO proceedings. Some of these proceedings invalidated claims in the asserted patents. For example, independent claim 1 of the asserted '494 Patent was invalidated in an IPR. *See* Cisco's MIL No. 2 at 1-2 (citing *Palo Alto Networks, Inc. v. Finjan, Inc.*, 777 F. App'x 501, 508 (Fed. Cir. 2019)). Given the very minor differences between the now-invalidated independent claim 1 and the asserted independent claim 10 (which is the only other independent claim in the patent), it would be highly misleading for Finjan to bathe claim 10 in the glow of a non-institution decision, but prevent the jury from hearing that the very similar claim 1 was invalidated.

Moreover, the Cisco proceedings themselves expressly refer to prior non-Cisco proceedings and, if the Cisco IPRs are admitted, Cisco should be afforded the opportunity to address the other proceedings discussed therein. *See, e.g.,* Ex. 27 (May 23, 2019 Final Written Decision (IPR2018-00391)) at 2 (referring to non-Cisco prior PTAB final written decision and non-Cisco *ex parte* reexamination), at 7-9 (same), at 46 (referring to prior non-Cisco PTAB proceeding in which Board considered same evidence of objective indicia of non-obiousness); Ex. 28 (April 3, 2018 Decision Denying Institution of *Inter Partes* Review (IPR2017-02154)) at (referring to non-Cisco prior PTAB proceedings), at 13-14 (same), at 27 (same) at 34 (same); Ex. 29 (April 3, 2018 Decision Denying Institution of *Inter Partes* Review (IPR2017-02155)) at 3 (referring to non-Cisco prior PTAB proceedings), at 6-9 (same), at 36 (same).

| | |
|---|---|
| Dated: April 23, 2020 | **DUANE MORRIS LLP** |
| | |
| | /s/ Nicole E. Grigg |
| | Nicole E. Grigg |
| | D. Stuart Bartow |
| | L. Norwood Jameson (admitted *pro hac vice*) |
| | Matthew C. Gaudet (admitted *pro hac vice*) |
| | David C. Dotson (admitted *pro hac vice*) |
| | John R. Gibson (admitted *pro hac vice*) |
| | Jennifer H. Forte (admitted *pro hac vice*) |
| | Joseph A. Powers (admitted *pro hac vice*) |
| | Jarrad M. Gunther (admitted *pro hac vice*) |
| | |
| | *Attorneys for Defendant* |
| | CISCO SYSTEMS, INC. |