```
1                  IN THE UNITED STATES DISTRICT COURT

2                FOR THE NORTHERN DISTRICT OF CALIFORNIA

3                          SAN JOSE DIVISION

4
      FINJAN, INC.,                    )   CV-17-00072-BLF
5                                      )
                     PLAINTIFF,        )   SAN JOSE, CALIFORNIA
6                                      )
               VS.                     )   APRIL 21, 2020
7                                      )
      CISCO SYSTEMS, INC.,             )   PAGES 1-69
8                                      )
                     DEFENDANT.        )
9                                      )
      _____ )
10                       TRANSCRIPT OF PROCEEDINGS
11              BEFORE THE HONORABLE SUSAN VAN KEULEN
                    UNITED STATES MAGISTRATE JUDGE
12
                     A P P E A R A N C E S
13

14       FOR THE PLAINTIFF:      BY:  JUANITA R. BROOKS
                                      MEGAN CHACON
15                                    ROGER DENNING
                                 FISH & RICHARDSON P.C.
16                               12390 EL CAMINO REAL
                                 SAN DIEGO, CA 92130
17

18       FOR THE DEFENDANT:      BY:  MATTHEW CHRISTOPHER GAUDET
                                      LOUIS NORWOOD JAMESON
19                               DUANE MORRIS - ATLANTA
                                 1180 WEST PEACHTREE ST
20                               SUITE 700
                                 ATLANTA, GA 30309
21

22               APPEARANCES CONTINUED ON THE NEXT PAGE

23       OFFICIAL COURT REPORTER:     SUMMER FISHER, CSR, CRR
                                      CERTIFICATE NUMBER 13185
24

25           PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
                 TRANSCRIPT PRODUCED WITH COMPUTER
```

1       <u>APPEARANCES CONTINUED:</u>

2       FOR THE PLAINTIFF:      **BY:  AAMIR ABDULQADER KAZI**
                                FISH AND RICHARDSON P.C.
3                               1180 PEACHTREE ST, 21ST FLOOR
                                ATLANTA, GA 30309
4

5       FOR THE DEFENDANT:      **BY:  JOSEPH ANDREW POWERS**
                                DUANE MORRIS LLP
6                               30 SOUTH 17TH ST.
                                PHILADELPHIA, PA 19103
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1          SAN JOSE, CALIFORNIA              APRIL 21, 2020

 2                    P R O C E E D I N G S

 3          (COURT CONVENED AT 10:00 A.M.)

 4              THE CLERK:  YOUR HONOR, ARE YOU READY?

 5              THE COURT:  I AM.  WHY DON'T YOU GO AHEAD AND CALL

 6      THE CASE.

 7              THE CLERK:  THESE PROCEEDINGS WILL ALSO BE RECORDED

 8      USING THE AT&T SERVICE.  THERE WILL BE A SLIGHT DELAY AND THEN

 9      AN AUTOMATED VOICE CONFIRMING THE RECORDING.  PLEASE STAND BY

10      FOR THAT.

11          CALLING CASE NUMBER 17-CV-72.

12          FINJAN, INC. VERSUS CISCO SYSTEMS, INCORPORATED.

13          THIS WILL BE A TELEPHONIC HEARING.  ONLY COUNSEL AND

14      JUDGE VAN KEULEN MAY SPEAK.  PARTIES AND MEMBERS OF THE PUBLIC

15      MUST REMAIN ON MUTE.

16          COUNSEL FOR PLAINTIFF, PLEASE IDENTIFY YOURSELF FOR THE

17      RECORD.

18              MS. BROOKS:  GOOD MORNING.

19          THIS IS JUANITA BROOKS FROM FISH & RICHARDSON ON BEHALF OF

20      FINJAN.  I HAVE WITH ME ROGER DENNING, AAMIR KAZI AND MEGAN

21      CHACON.  AND MR. KAZI WILL BE DOING THE ARGUMENT ON BEHALF OF

22      FINJAN.

23              THE COURT:  GOOD MORNING, MS. BROOKS, MR. KAZI.

24          WELCOME ALL, AND THANK YOU FOR PARTICIPATING TODAY BY

25      PHONE.  IT'S A LESS ELEGANT SOLUTION, BUT WE ARE MANAGING TO
```

1        WORK THROUGH OUR CALENDARS FAIRLY EFFICIENTLY.

2              THE CLERK:  FOR DEFENDANTS TODAY.

3              MR. GAUDET:  GOOD MORNING, YOUR HONOR.

4        THIS IS MATT GAUDET FOR CISCO.  AND ALSO WITH ME ON THE

5    LINE ARE WOODY JAMESON, AND JOE POWERS.

6        AND I WILL BE PRESENTING THE ARGUMENT TODAY FOR CISCO.

7              THE COURT:  THANK YOU, MR. GAUDET.  WELCOME BACK.

8        ALL RIGHT.  WE ARE GOING TO PROCEED, OBVIOUSLY

9    TELEPHONICALLY.  IF WE RECEIVE ANY BEEPS ON THE LINE FROM

10   PEOPLE JOINING OR DROPPING OFF, IF YOU HEAR THEM WHILE YOU ARE

11   SPEAKING, PLEASE PAUSE.  I WILL ALSO INTERRUPT THE PROCEEDINGS

12   AT THAT POINT TO REAFFIRM THAT MADAM COURT REPORTER AND COUNSEL

13   ARE STILL WITH US.

14       IF I DON'T INTERRUPT WITH THOSE INQUIRIES, THEN MY

15   COURTROOM DEPUTY WILL ASK THE QUESTION, ON THE OFF CHANCE THAT

16   I HAVE BEEN CUT OFF.

17       PLEASE DO REMEMBER TO IDENTIFY YOURSELF FOR THE RECORD

18   EACH TIME THAT YOU SPEAK.  AND I KNOW THAT CAN FEEL SOMEWHAT

19   TEDIOUS, ESPECIALLY AS WE MOVE WELL INTO THE PROCEEDINGS, BUT

20   IT'S VERY IMPORTANT FOR MS. SUMMER AND FOR MYSELF, THAT WAY WE

21   WILL BE SURE WE HAVE A CLEAR RECORD.

22       ALL RIGHT.  I HAVE REVIEWED CAREFULLY, ALL OF THE PAPERS

23   THAT WERE SUBMITTED IN SUPPORT OF CISCO'S MOTION TO STRIKE.  I

24   HAVE ACCESS TO ALL OF THE PAPERS ELECTRONICALLY AS WE PROCEED

25   THIS MORNING.  I ALSO HAVE, IN HARD COPY, CISCO EXHIBIT 1 AND 2

1    WHICH WERE REFERRED TO WITH SOME FREQUENCY IN THE PAPERS AS THE

2    OPERATIVE CONTENTIONS.

3        I HAVE IN HARD COPY IN FRONT OF ME, FINJAN EXHIBIT --

4    LET'S ME SEE, I WILL DO THEM IN ORDER.  I HAVE 5 AND 6 WHICH

5    ARE THE E-MAILS CHAIN, AND THEN I HAVE EXHIBITS 11 AND 13,

6    VERSIONS OF THE MEDZIDOVIC REPORT.

7        THOSE DOCUMENTS I HAVE IN HARD COPY, AND THE REST I WILL

8    BE REVIEWING ELECTRONICALLY.  IF YOU SEND ME THERE, JUST GIVE

9    ME A MOMENT TO CATCH UP WITH YOU.  I WILL ALSO CONTINUE TO

10   REMIND COUNSEL THROUGHOUT THE PROCEEDING TO SPEAK SLOWLY.

11       I KNOW THIS IS DIFFICULT, AND WITHOUT VIDEO YOU CAN'T SEE

12   ME REACTING TO YOU, SO PLEASE TRY TO REMEMBER TO SPEAK SLOWLY.

13   I WILL INTERRUPT WHERE I NEED TO, BUT MOST IMPORTANTLY, WE WANT

14   TO BE SURE THAT WE ARE ABLE TO GET A NICE CLEAN RECORD TODAY.

15       ALL RIGHT.  SO CISCO'S MOTION, LET ME GIVE YOU A COUPLE OF

16   PRELIMINARY COMMENTS.  I HAVE A COUPLE OF QUESTIONS, AND THEN

17   MR. GAUDET, IT'S YOUR MOTION AND YOU WILL LEAD US OFF.

18       AS I UNDERSTAND IT, CISCO IS ASKING THIS COURT TO STRIKE

19   CERTAIN THEORIES IN THE MEDZIDOVIC REPORT, WHICH IT ARGUES ARE

20   UNDISCLOSED IN THE CONTENTIONS.  PERHAPS THEORY, SINGULAR,

21   MIGHT BE A BETTER DESCRIPTION.  AS I UNDERSTAND IT, THE

22   INFRINGEMENT THEORY AT ISSUE IS WHETHER THE MOBILE PROTECTION

23   CODE, THAT'S MPC, CAN BE RESIDENT IN THE SANDBOX RATHER THAN

24   HAVING TO BE TRANSMITTED TO THE SANDBOX.

25       AS I HAVE DISCUSSED WITH THESE PARTIES THROUGH PREVIOUS

1    MOTION PRACTICE, THE CONTENTIONS DO SET THE PARAMETERS FOR THE

2    CASE GOING FORWARD, CERTAINLY FOR DISCOVERY, AS WELL AS A GUIDE

3    FOR EXPERT REPORTS.

4         BACK IN JANUARY, AT THE SUMMARY JUDGEMENT HEARING BEFORE

5    JUDGE FREEMAN, AT THAT TIME SHE DID DIRECT THE PARTIES TO BRING

6    ANY ISSUES OF INCONSISTENCIES BETWEEN THE THEN ANTICIPATED

7    AMENDED REPORT, NOT YET BEFORE HER, AND CONTENTIONS, TO COME

8    BEFORE ME.  THAT IS, IF THERE'S A NEW DESCRIPTION IN THE

9    REPORT, IT HAS TO TIE BACK TO THE CONTENTIONS.  AND THAT, I

10   THINK SOMEWHAT SETS THE STAGE FOR OUR PROCEEDINGS HERE TODAY.

11        AND MY FIRST QUESTION, MR. GAUDET, IS I BELIEVE CISCO

12   POINTS OUT IN HIS REPLY PAPERS THAT THE REPORT NOW REFLECTS,

13   THAT IS THE LATEST REPORT WHICH I'M LOOKING AT IS THE

14   MARCH 30TH VERSION BECAUSE THAT IS THE LATEST MEDZIDOVIC

15   REPORT, NOW REFLECTS POTENTIALLY CUT AND PASTE LANGUAGE FROM

16   THE CONTENTIONS.

17        THAT BEING THE CASE, AT LEAST IN TERMS OF LANGUAGE, THE

18   REPORT AND CONTENTIONS ARE NOW CONSISTENT.  AND IF THAT IS THE

19   CASE, DOES THAT END MY INQUIRY.

20        SO LET ME START YOU THERE, AND THEN LET'S PROCEED.

21             MR. GAUDET:  YES.  CAN YOU HEAR ME?

22             THE COURT:  I CAN.

23             MR. GAUDET:  OKAY.  TERRIFIC.  THANK YOU, YOUR HONOR.

24        AND TO START THERE, THE -- I GUESS ONE CLARIFYING POINT,

25   EVEN BEFORE SUMMARY JUDGEMENT, THAT LANGUAGE FROM -- THAT THEY

1  ARE RELYING ON FROM THE OPERATIVE INFRINGEMENT CONTENTIONS,

2  WHICH IS REALLY PAGE 35 OF OUR EXHIBIT 1, THAT WAS EVEN IN THE

3  ORIGINAL MEDZIDOVIC REPORT, THE ISSUE THAT AROSE AT SUMMARY

4  JUDGEMENT.  THAT MORE PARTICULARLY, WE BELIEVE JUDGE FREEMAN

5  REFERRED TO YOU, IS THAT THAT LANGUAGE WASN'T WHAT THEY RELIED

6  ON TO ANSWER OUR SUMMARY JUDGEMENT BRIEF; INSTEAD, THEY RELIED

7  ON SEVEN SPECIFIC COMPONENTS.

8        AND SO WHAT JUDGE FREEMAN SAID IN THE TRANSCRIPT, AND

9  YOUR HONOR -- AND THE CITATIONS FOR THIS ARE, THE FIRST ONE

10  WOULD BE PAGE 120, THAT THIS IS LINE 6, JUDGE FREEMAN SAID, "SO

11  BASED ON MY ORDER, THEY WILL HAVE TO ASK JUDGE VAN KEULEN TO

12  ALLOW A SUBSTITUTION FROM SOMETHING FROM THE CONTENTIONS TO GO

13  TO THE JURY IN PLACE OF ALL THE ARGUMENTS ABOUT ████

14  ████████  WHICH THEY ARE NOW USING TO DEFEAT SUMMARY

15  JUDGEMENT, BECAUSE OTHERWISE THEY HAVE PROVIDED ME NO

16  EVIDENCE."

17        AND SHE SAYS ESSENTIALLY THE SAME THING AGAIN LATER,

18  YOUR HONOR, IN FACT, IT WAS EVEN CONFIRMED BY FINJAN'S COUNSEL

19  AT PAGE 158.  BECAUSE OTHERWISE, THE FACT THAT THERE IS EVEN AN

20  IDENTITY BETWEEN INFRINGEMENT CONTENTIONS AND THE EXPERT

21  REPORT, THAT'S NOT EVEN A NEW DEVELOPMENT, THAT NOBODY EVER

22  RELIED ON THAT MATERIAL TO TRY TO OVERCOME SUMMARY JUDGEMENT.

23  INSTEAD, THE CASE GOT REDUCED DOWN TO JUST SEVEN COMPONENTS.

24  AND THAT WAS AFTER THEY -- FINJAN HAD LOST A MOTION TO STRIKE.

25        AND SO THERE ARE THESE -- THEY START TRYING TO SORT OF

1    COME UP WITH WAYS TO DANCE AROUND THE LOSS OF THE PREVIOUS

2    REPORT.  AND THE ISSUES, JUDGE FREEMAN SAID, IS BASICALLY -- WE

3    SAID JUDGE, THERE IS NO EVIDENCE LEFT IN THIS RECORD, THE STUFF

4    THEY WOULD HAVE RELIED ON IS GONE.  AND SHE SAID, I'M GOING TO

5    ASSUME THAT'S NOT THE CASE.  I'M GOING TO ASSUME THAT THERE IS

6    EVIDENCE, THAT THE EVIDENCE THEY ARE POINTING TO, THAT THAT

7    EQUIVALENT EXISTS.  NOW YOU GO TO JUDGE VAN KEULEN AND FIND OUT

8    IF THAT'S THE CASE OR NOT.

9        IF YOU ACCEPTED THE FORMULATION THE WAY THAT FINJAN IS

10   PRESENTING IT, A, WE WOULD NEVER HAVE BEEN HERE IN THE FIRST

11   PLACE; BUT B, IT JUST MAKES THE SUMMARY, AND EVERYTHING ABOUT

12   THE SUMMARY JUDGEMENT PROCEEDINGS COMPLETELY IRRELEVANT.

13       AND THAT WASN'T WHAT JUDGE FREEMAN SAID.  SHE SAID GO FIND

14   OUT IF THE STUFF YOU ARE RELYING ON ACTUALLY APPEARS IN THE

15   CONTENTIONS, OR IT'S EQUIVALENT FUNCTIONALTIY.

16       AND SO THIS DOES BECOME A VERY STRAIGHTFORWARD EXERCISE,

17   YOUR HONOR.

18           THE COURT:  WELL, LET ME INTERRUPT YOU THERE,

19   MR. GAUDET, BECAUSE THE TERMS -- NONE OF THE TERMS OF THOSE

20   SEVEN THAT WERE AT ISSUE AT SUMMARY JUDGEMENT, THEY HAVE NOW

21   ALL BEEN REPLACED, RIGHT?

22       A FEW WERE -- SOME WERE, FOUR WERE EXCISED ON SUMMARY

23   JUDGEMENT.  THERE WERE THREE REMAINING TERMS.  AND AS I

24   UNDERSTAND THE PAPERS, FROM FINJAN'S PAPERS, IS THAT THOSE

25   THREE REMAINING TERMS, ███████████████████████  AND

1     ███████   HAVE ALL NOW BEEN REPLACED WITH OTHER LANGUAGE.

2               MR. GAUDET:  CORRECT.

3          AND SO THE QUESTION IS -- I'M SORRY.

4               THE COURT:  AND SO THAT LANGUAGE, THAT LANGUAGE, THEN

5     THE REPLACEMENT LANGUAGE, AND THIS I THINK WAS -- THE FACT THAT

6     THE LANGUAGE WAS REPLACED IS IN MR. HANNAH'S DECLARATION, BUT

7     THE REPLACEMENT LANGUAGE IS THE SAME LANGUAGE THAT APPEARS IN

8     THE CONTENTIONS.

9          I THINK THAT'S CORRECT.

10              MR. GAUDET:  YES.

11         THEY ARE LISTING -- IN THE SECTIONS WHERE THEY ARE CUTTING

12    AND PASTING.  SO THERE'S ANOTHER SECTION IN THE REPORT THAT'S

13    LITERALLY THE WHOLE THING VERBATIM, THE CONTENTIONS VERBATIM.

14    THE AREA THAT THEY ARE CUTTING AND PASTING, THEY ARE TAKING

15    EITHER THE PHRASE "VIRTUAL ENVIRONMENT AGENT" OR THE PHRASE

16    THAT THEY USE, FOR ███████████   AND WITH THESE

17    "PARAMETERS TO RUN THE SAMPLE FILE OR URL" AND THEY ARE PASTING

18    THAT INTO THE AREAS THAT USED TO SAY ██████████   THEY JUST

19    INSERT IN NOW, "VIRTUAL ENVIRONMENT AGENT."

20         AND OUR POINT IS THEY CAN'T DO THAT BECAUSE THAT IS NOT --

21    THAT ACT OF SAYING THAT WE HAD DISCLOSED SOMETHING IS FUNCTION

22    EQUIVALENT TO THE ██████████   VIA DISCLOSING A VIRTUAL

23    ENVIRONMENT AGENT, THEY SHOULD NOT BE GRANTED LEAVE TO DO THAT.

24    OR DEPENDING ON HOW YOU VIEW THE PROCEDURES, THAT EFFORT SHOULD

25    BE STRUCK, BECAUSE NOTHING ABOUT THE DISCLOSURE OF A VIRTUAL

1    ENVIRONMENT AGENT COULD EVER PUT US ON NOTICE OF ███████

2    █████████

3         AND THE SAME IS TRUE WITH THE DISCLOSURE OF PARAMETERS TO

4    RUN THE SAMPLE FILE OR URL, WOULD NEVER PUT US ON NOTICE OF

5    ████████████████████    AND THAT'S THE ONLY ISSUE WE ARE

6    ASKING YOU TO DECIDE.

7              THE COURT:  BUT THE TERM ████████████  NEVER SHOWED

8    UP IN THE CONTENTIONS.  THAT'S NEVER BEEN IN THE CONTENTIONS,

9    CORRECT?

10             MR. GAUDET:  THAT'S CORRECT, YOUR HONOR.

11             THE COURT:  RIGHT.  THE CONTENTIONS HAVE ALWAYS USED

12   THE PHRASE "VIRTUAL ENVIRONMENT AGENT."

13             MR. GAUDET:  THAT IS -- WELL, YOUR HONOR, THAT IS

14   LITERALLY TRUE, NOT, I MEAN, IT'S DESCRIBING SOMETHING THAT HAS

15   NOTHING TO DO WITH ANYTHING LIKE A ████████████

16             THE COURT:  I UNDERSTAND, MR. GAUDET.

17        MR. GAUDET, I UNDERSTAND.  I DIDN'T MEAN TO IMPLY THAT

18   THEY ARE THE SAME THING.  BUT MY POINT IS, IS THAT THE

19   LANGUAGE, "VIRTUAL ENVIRONMENT AGENT," HAS ALWAYS BEEN IN THE

20   CONTENTIONS, CORRECT?

21             MR. GAUDET:  THAT'S CORRECT, YOUR HONOR.

22             THE COURT:  OKAY.

23        AND ████████████  SHOWED UP, IT WAS IN -- WHERE DID THAT

24   FIRST SHOW UP, IN ONE OF THE VERSIONS OF THE MEDZIDOVIC REPORT?

25             MR. GAUDET:  YOUR HONOR, ████████████  SHOWED UP IN

1    THE FIRST VERSION OF THE MEDZIDOVIC REPORT, THAT WAS THE

2    JULY 2019 MEDZIDOVIC REPORT, WHICH WAS THE ONE THAT WAS -- AND

3    IT'S A REDLINED VERSION OF IT, OF THE ENTIRE THING, THE

4    3,000 PAGES, IS ATTACHED AS EXHIBIT 1 TO FINJAN'S BRIEF,

5    SHOWING THE DIFFERENCES BETWEEN THAT AND THEN THE FIRST

6    PROPOSED AMENDMENT.  BUT THAT IS CORRECT, YOUR HONOR.

7         THE COURT:  OKAY.  ALL RIGHT.

8         SO I UNDERSTAND YOUR ARGUMENT IS WHERE THEY USED TO TAKE

9    ███████████████████  THAT IS WHERE FINJAN HAD USED AND REFERRED

10   TO AND RELIED ON ███████████  IN THE EXPERT REPORT, NOW JUST

11   BECAUSE THEY HAVE CUT AND PASTED IN LANGUAGE AND CHANGED THAT

12   TO MATCH WORDS IN THE CONTENTIONS, THAT'S NOT -- THAT IS THE

13   POINT.  THAT DOESN'T SOLVE THE PROBLEM.

14        THAT'S WHAT I UNDERSTAND YOU SAYING?

15         MR. GAUDET:  THAT IS EXACTLY RIGHT, YOUR HONOR.

16         THE COURT:  OKAY.

17        AND -- SO WHAT WOULD BE THE LANGUAGE IN THE REPORT THAT

18   YOU WOULD HAVE ME STRIKE?  I'M A LITTLE -- NOT ENTIRELY CLEAR

19   WHAT THE OBJECTIVE IS.

20        I OBVIOUSLY -- IN YOUR PAPERS, YOU WANT A THEORY TO BE

21   STRICKEN.  WHAT DO YOU WANT ME TO STRIKE FROM THE REPORT?  HELP

22   ME TO UNDERSTAND.

23         MR. GAUDET:  ABSOLUTELY, YOUR HONOR.

24        SO RIGHT NOW THERE ARE -- THERE IS ONE ACTUAL OPERATIVE

25   REPORT, WHICH IS THE ONE THAT WAS ASSERTED BACK IN JULY 2015

1       THAT WAS SUBJECT TO A MOTION TO STRIKE BUT THERE HAS NOT BEEN

2       ANY APPROVED AMENDED VERSION.

3            SO STEP 1 --

4                THE COURT:  WHEN YOU SAY APPROVED -- EXCUSE ME.  WHEN

5       YOU SAY APPROVED AMENDED VERSION, WHAT DOES THAT MEAN?

6                MR. GAUDET:  WELL, IN OTHER WORDS, PARTIES WOULD HAVE

7       TO GET LEAVE TO AMEND THE REPORT OR GET AN AGREEMENT TO AMEND

8       THE REPORT.  AND FINJAN NEITHER SOUGHT LEAVE TO PRESENT

9       SOMETHING TO THE COURT AS AN AMENDED VERSION OF THAT ORIGINAL

10      REPORT, NOR DID FINJAN GET AN AGREEMENT FROM US TO AN AMENDED

11      VERSION OF THAT REPORT.

12           SO RIGHT NOW WE'VE GOT THE JULY 2019 REPORT AND TWO

13      PROPOSED AMENDED VERSIONS OF THAT REPORT.

14           SO PROCEDURALLY, WHAT WE ARE ASKING YOU TO DO IS TO STRIKE

15      THE COMPONENTS FROM THE JULY 2019 REPORT.  SO WITH THAT, THOSE

16      ARE GONE.  THAT'S STEP 1.

17           STEP 2 IS TO DENY ANY AMENDMENT, BECAUSE THE ONLY

18      AMENDMENT WOULD BE BASED ON AN ARGUMENT THAT WHATEVER IT IS

19      THEY WANT TO PUT IN PLACE OF THOSE WORDS, CAPTURES THE SAME

20      FUNCTIONALITY.  THAT HAS TO BE THE ARGUMENT TO BE ABLE TO MAKE

21      AN AMENDMENT.

22           AND THAT'S THE ARGUMENT WE ARE PRESENTING TO YOU TODAY.

23      THE SAME REASON YOU SHOULD STRIKE IT, OUT OF 2019, YOU CANNOT

24      PERMIT AN AMENDMENT TO THE LATER TWO VERSIONS TO -- AGAIN, IT

25      WOULD HAVE TO BE PRESENTING THE SAME THEORY, OTHERWISE YOU

1   CAN'T AMEND, SO TO THEN REPLACE THE SPECIFIC COMPONENT NAME

2   WITH A MORE GENERIC NAME THAT THEY ARE ALLEGING WOULD CAPTURE

3   THE FUNCTIONALITY.

4        AND THE REASON YOU CAN'T DO THAT IS BECAUSE THE PROPOSED

5   GENERIC WORD DOESN'T CAPTURE THE FUNCTIONALITY.  AND THAT'S

6   JUST THE BASIC STANDARD, FOR EXAMPLE IN THE DSF TECHNOLOGIES

7   MANAGEMENT CASE, THAT THE CONTENTIONS HAD TO HAVE PUT US ON

8   REAL NOTICE.  THEY HAD TO HAVE BEEN AS NIT PICKY AS THE NAME OF

9   THE GAME.

10       SO YOUR HONOR, THAT'S PROCEDURALLY WHAT WE ARE ASKING YOU

11  TO DO, BUT IT ALL BOILS DOWN TO A SIMPLE COMPARISON OF DID THE

12  INFRINGEMENT CONTENTIONS FAIRLY DISCLOSE THESE SEVEN ELEMENTS?

13       AND SPECIFICALLY, THEY WERE CONCEDING FOUR OF THEM ARE OUT

14  AND AREN'T REALLY EVEN TRYING, BUT THE FOUR, THE VIRTUAL -- THE

15  ███████████████ WAS THAT DISCLOSED BY THESE REFERENCES THEY

16  POINT TO AS VIRTUAL ENVIRONMENT AGENT, AND WERE ██████████

17  ████████ DISCLOSED BY THE PHRASE "PARAMETERS TO RUN THE SAMPLE

18  FILE OR URL."

19       AND THAT'S WHAT I WAS GOING TO ADDRESS SPECIFICALLY FOR

20  YOUR HONOR, BUT BEFORE CHANGING TO THAT, I WANT TO BE SURE THAT

21  I'VE ADDRESSED YOUR QUESTION.

22       THE COURT:  SO YOU HAVE, BUT OF COURSE IT LEADS TO

23  ANOTHER QUESTION WHICH IS, SO THE ARGUMENT OR THE THEORY THAT

24  YOU WANT ME TO STRIKE OF -- YOUR PAPERS REFER TO THE SUMMARY

25  JUDGEMENT ARGUMENT.  SO THIS IS AN ARGUMENT THAT AROSE IN

```
 1    SUMMARY JUDGEMENT, THAT IS WHERE THE MPC WAS IN THE SANDBOX OR

 2    HAD BEEN TRANSMITTED TO THE SANDBOX?

 3              MR. GAUDET:  YES.

 4        SO LET ME GIVE YOU KIND OF THE BACKGROUND ON THAT, BECAUSE

 5    THERE ARE A LOT OF MOVING PIECES HERE.

 6        SO WHEN WE READ THE INFRINGEMENT CONTENTIONS, AND

 7    THROUGHOUT THE CASE, AND FRANKLY IN ALL OF FINJAN'S PREVIOUS

 8    CASES, THE THEORIES ARE ALWAYS THAT MOBILE PROTECTION CODE

 9    TRAVELS FROM A GATEWAY OF SOME SORT, YOU KNOW, SOME DEVICE ON

10    THE EDGE OF A NETWORK, RIGHT.  IF THAT DEVICE --

11              THE COURT:  I UNDERSTAND.

12              MR. GAUDET:  RIGHT.  OKAY.

13        AND SOMETHING THAT WE GENERALLY REFER TO AS A SANDBOX, BUT

14    IT'S A PRODUCT CALLED EITHER THREATGRID OR SANDBOX, OKAY.

15        FOR THE FIRST TIME IN THE EXPERT REPORTS, THERE WERE

16    ARGUMENTS THAT ACTUALLY THE MPC COULD BE SOMETHING THAT'S

17    ALREADY RESIDENT AT THE SANDBOX.  AND SO WE MOVED FOR SUMMARY

18    JUDGEMENT ON BOTH, BOTH STUFF THAT GETS SENT AND STUFF THAT'S

19    ALREADY RESIDENT.

20        IN THE OPPOSITION PAPERS, FINJAN CONCEDED, AND THIS IS

21    REFLECTED IN A FOOTNOTE OF THE SUMMARY JUDGEMENT ORDER, THEY

22    CONCEDED THAT THE THINGS THEY WERE POINTING TO THAT ARE SENT

23    FROM THE GATEWAY TO THREATGRID OR TO ███████ CANNOT BE

24    MOBILE PROTECTION CODE, OKAY.

25        SO WITH THAT, A YEAR AGO, I WOULD HAVE TOLD YOU GREAT, THE
```

1   CASE IS OVER, THAT'S IT, THAT'S THE ONLY THEORY.  THEN THE

2   ENTIRE SUMMARY JUDGEMENT ARGUMENT CAME DOWN TO THESE OTHER

3   SEVEN THINGS.  AND OUR NUMBER ONE POSITION, WAS OBVIOUSLY THAT

4   THESE WERE NEVER DISCLOSED IN THE INFRINGEMENT CONTENTIONS, AND

5   YOU KNOW, THERE WAS JUST A GRANTED MOTION TO STRIKE, WHICH IS

6   KIND OF A MORE OMNIBUS MOTION ABOUT ALL OF THE THINGS THAT

7   FINJAN HAD TRIED TO AMEND AND DIDN'T GET PERMISSION TO.

8       AND SO BY THE TIME WE THEN GET TO THE ACTUAL SUMMARY

9   JUDGEMENT HEARING, A CASE THAT WAS ONCE ABOUT SOMETHING VERY

10  DIFFERENT HAS NOW BECOME JUST ABOUT SEVEN COMPONENTS THAT ARE

11  ALREADY AT THE -- ALREADY AT THREATGRID.  THEY ARE COMPONENTS

12  OF THREATGRID OR COMPONENTS OF ██████████████

13      AND THAT WAS -- AGAIN, WE SAID, THEY CAN'T GET SUMMARY

14  JUDGEMENT ON THIS.  AND JUDGE FREEMAN SAID WELL, I DON'T WANT

15  TO TAKE UP THE QUESTION OF WHETHER OR NOT THIS IS FAIRLY IN THE

16  CASE.

17      AND THE EVIDENCE OF THAT, THE EVIDENCE ON WHICH THE

18  SUMMARY JUDGEMENT ORDER WAS BASED WAS THE JULY 2019 ORIGINAL

19  EXPERT REPORT.  THAT'S THE ONLY EVIDENCE IN THE SUMMARY

20  JUDGEMENT RECORD.

21      SO SHE SAID, I'M GOING TO ASSUME THAT'S OKAY, OR THAT THE

22  EQUIVALENT FUNCTIONALITY IS OKAY, RIGHT, AND LET YOU GO TO

23  JUDGE VAN KEULEN AND SORT OUT WHETHER THERE NEEDS TO BE A

24  DISPUTE OR AN AMENDMENT OR WHATEVER ELSE THE PROCEDURE WOULD

25  BE.

1      SO THAT'S -- NOW WE HAVE NOW ARRIVED AT SEVEN ITEMS THAT

2   ARE ALL LEFT IN THE CASE, THEY ARE ALL RESIDENT AT EITHER

3   THREATGRID.  THREATGRID AND ███████████ ARE JUST TWO DIFFERENT

4   SANDBOXES USED BY CISCO, BUT THEY ARE ALL AT ONE OF THOSE

5   SANDBOXES.

6      FOR THEM, WE WON SUMMARY JUDGEMENT ON.  SO NOW WE ARE DOWN

7   TO JUST THREE OF THEM.  AND THE QUESTION IS, IS THE EVIDENCE ON

8   WHICH SUMMARY JUDGEMENT WAS GRANTED, NAMELY THE ORIGINAL REPORT

9   THAT REFERENCED THESE THINGS, SHOULD THAT BE STRUCK OR SHOULD

10  AN AMENDMENT BE ALLOWED?  BECAUSE ACCORDING TO FINJAN, THEY

11  HAVE DISCLOSED SOMETHING IN THE INFRINGEMENT CONTENTIONS THAT

12  WOULD FAIRLY HAVE PUT US ON NOTICE OF THOSE THREE ELEMENTS,

13  ████████████████████████████

14      YOUR HONOR, DOES THAT ANSWER YOUR QUESTION?

15          THE COURT:  IT DOES.

16      DID NOT JUDGE FREEMAN, WHEN YOU BROUGHT A MOTION TO STRIKE

17  LAST FALL, WASN'T THE RESULT OF THAT, THAT SHE GAVE FINJAN

18  LEAVE TO AMEND THE EXPERT REPORT?  BECAUSE SHE WAS ANTICIPATING

19  HAVING HAD AN AMENDMENT BEFORE HER AT THE TIME OF SUMMARY

20  JUDGEMENT AND THAT DIDN'T WORK OUT THAT WAY, BUT ISN'T THAT

21  WHERE LEAVE TO AMEND THE REPORT CAME FROM?

22          MR. GAUDET:  YOUR HONOR, SHE DID NOT GIVE THEM -- I

23  WOULD SAY SHE DIDN'T GIVE THEM LEAVE AT ALL.  SHE CERTAINLY

24  DIDN'T GIVE THEM OPEN ENDED LEAVE.

25      WHAT SHE SAID AT THE END OF THAT ORDER WAS THAT SHE WOULD

1     CONSIDER A PROPOSAL BY FINJAN FOR AN AMENDMENT.

2         THAT PROPOSAL CAME A WEEK OR TWO BEFORE THE SUMMARY

3     JUDGEMENT HEARING TO US, IT NEVER WENT TO THE COURT.  WE SAID

4     WE DON'T AGREE WITH THIS, AND THAT'S WHAT LEAD TO HER SAYING,

5     WELL, IN EFFECT, HAVE JUDGE VAN KEULEN SORT THIS OUT.

6         SO THE ISSUE YOU ARE IDENTIFYING NAMELY WAS NOT AN

7     IMPLICIT AVENUE WITH RESPECT TO AMENDMENT.  THAT IS EXACTLY THE

8     ISSUE THAT IS NOW IN FRONT OF YOU, WHETHER THEY CAN AMEND OR

9     WHETHER SIMPLY THIS MATERIAL SHOULD BE STRUCK AND THERE SHOULD

10    NOT BE ANY COMPENSATING AMENDMENT.

11            THE COURT:  ALL RIGHT.

12        YOU WANTED TO TALK ABOUT PARAMETERS TO RUN THE SAMPLE

13    FILE.

14            MR. GAUDET:  YES, YOUR HONOR.  AND I WILL TRY TO MOVE

15    THROUGH THIS REASONABLY QUICKLY.

16        THE FIRST ONE ON ██████████████    THAT'S THE FIRST OF THE

17    THREE.  THEY POINT TO SOMETHING CALLED A VIRTUAL ENVIRONMENT

18    AGENT.  BUT YOUR HONOR, THEY NEVER SAY WHAT THAT IS OR HOW IT

19    HAS ANYTHING TO DO WITH A ██████████████

20        AND THE TRUTH IS, THAT'S EVERYTHING YOU NEED TO KNOW.

21    THAT THEY SHOULD HAVE BEEN ABLE TO LINK THESE THINGS UP WITH

22    SOMETHING, SOMETHING IN THE RECORD, SOME TESTIMONY OR DOCUMENT

23    OR SOMETHING.

24        BUT OTHER THAN JUST A BALD ASSERTION, THERE IS LITERALLY

25    NOTHING ATTACHING THE TWO.  AND THAT SHOULD BE ENOUGH FOR US TO

1    WIN THIS MOTION.

2         I'M GOING TO GO INTO A LITTLE BIT OF DETAIL SO YOU HAVE A

3    CLEAR UNDERSTANDING OF WHY THEY COULDN'T TRY TO MAKE THAT

4    SHOWING, BUT WE WOULD SAY THAT THEIR FAILURE TO EVEN TRY IS

5    DISPOSITIVE.

6         BUT WITH RESPECT TO WHAT THESE THINGS ARE, SO THREATGRID

7    IS A PRODUCT THAT HAS MANY COMPONENTS.  IT WILL RECEIVE A FILE,

8    IT WILL GET THE FILE FROM A GATEWAY, IT WILL DETERMINE IF IT

9    SHOULD RUN THAT FILE IN A VIRTUAL ENVIRONMENT WITH SOMETHING

10   THAT EMULATES OR ACTS LIKE AN END POINT.

11        SO IT WILL BE A VIRTUAL ENVIRONMENT THAT WILL HAVE A

12   MICROSOFT WINDOWS OPERATING SYSTEM IN IT.  IT WILL HAVE ALL THE

13   APPLICATIONS LOADED UP AND THEN IT WILL RUN THAT FILE AS IF IT

14   WERE ON THE DESKTOP.  THAT'S ONE OF THE THINGS THAT IS IN

15   THREATGRID.  THREATGRID HAS OTHER THINGS THAT WILL FIGURE OUT

16   WHAT TO DO AND WHAT TO REPORT, DEPENDING ON WHAT HAPPENS INSIDE

17   THAT VIRTUAL ENVIRONMENT.

18        WELL, THE ███████████ IS NOT IN THE VIRTUAL

19   ENVIRONMENT.  THE ███████████ IS LIKE A TAPE RECORDER THAT

20   FITS OUTSIDE OF THE VIRTUAL ENVIRONMENT.  AND IT'S ALWAYS

21   RESIDENT, IT'S NEVER TRANSMITTED ANYWHERE.  IT'S ALWAYS AT

22   THREATGRID.

23        SO WITH THAT UNDERSTANDING, AND WITH RESPECT TO THE STUFF

24   I JUST WENT THROUGH, YOU KNOW, WE CITED, FOR EXAMPLE, THE

25   TESTIMONY OF MATT WATCHINSKI IN OUR REPLY, BUT WE DIDN'T EVEN

1       NEED TO DO THAT.  I MEAN, THAT'S -- THERE IS NO EVIDENCE TO THE

2       CONTRARY FROM THE OTHER SIDE.

3             BUT WITH THAT UNDERSTANDING, LET'S LOOK TO SEE WHAT

4       FINJAN'S INFRINGEMENT CONTENTIONS PUT US ON NOTICE OF.  SO THIS

5       IS NOW, YOUR HONOR, OUR EXHIBIT 1, ELEMENT 14-D, AND THAT'S AT

6       PAGE 35 OF THE CLAIM CHART ITSELF.

7                   THE COURT:  RIGHT.

8                   MR. GAUDET:  AND THIS IS WHAT THE PARTIES KEEP

9       FOCUSSING BACK ON.

10            SO THE FIRST THING, TO GO TO THE SECOND PARAGRAPH, RIGHT,

11      AND IT SAYS -- THE SECOND LINE REFERS TO CISCO AMP FOR NETWORKS

12      "CAUSE A VIRTUAL ENVIRONMENT AGENT," THEY DON'T TELL US WHAT

13      THAT IS, BUT THEY SAY IT'S MOBILE PROTECTION CODE TO BE

14      "EXECUTED WITHIN THE VIRTUAL ENVIRONMENT RUNNING WINDOWS

15      OPERATING SYSTEM."

16            WE DON'T KNOW WHAT EXACTLY A VIRTUAL ENVIRONMENT AGENT IS,

17      BUT WE ALREADY KNOW IT CAN'T BE THINGS THAT AREN'T IN THE

18      VIRTUAL ENVIRONMENT.  AND SO WE HAVE ALREADY DISQUALIFIED NOT

19      JUST ███████████  BUT ABOUT ANOTHER HUNDRED DIFFERENT

20      COMPONENTS, IF NOT THOUSANDS OF DIFFERENT COMPONENTS OF

21      THREATGRID, THAT ARE NOT IN THE VIRTUAL ENVIRONMENT.  SO WE ARE

22      NOT EVEN LOOKING IN THE RIGHT PLACE.

23            SECOND POINT, IF YOU GO DOWN TO THE FOURTH PARAGRAPH ON

24      THIS PAGE, OKAY.  AGAIN, THEY HAVEN'T TOLD US WHAT A VIRTUAL

25      ENVIRONMENT AGENT IS, AND READ THIS PARAGRAPH, IN MOSTLY ITS

1    ENTIRETY.  "CISCO AMP FOR NETWORKS CONTAIN A SCHEDULER WHICH

2    RETRIEVES FROM A VIRTUAL ENVIRONMENT COMPONENT POOL, A VIRTUAL

3    ENVIRONMENT AGENT," WHATEVER THIS THING IS, "FROM MONITORING

4    AND DETECTING CODE THAT PERFORMS SUSPICIOUS CHANGES TO THE

5    OPERATING SYSTEM, AND SENDS IT TO THE VIRTUAL ENVIRONMENT."

6          WHATEVER THIS AGENT IS, IT'S SOMETHING THAT IS SENT, THAT

7    IS TRANSMITTED.  THAT'S STRIKE TWO.  THE ███████████ ALONG

8    WITH DOZENS OR HUNDREDS OF OTHER COMPONENTS, ARE NEVER SENT

9    ANYWHERE.

10         SO THIS IS -- TO POINT TO THIS VIRTUAL ENVIRONMENT AGENT,

11   WHICH ISN'T DEFINED AT ALL, AND SAY THAT SOMEHOW IT COVERS THE

12   ███████████ WOULD NOT WORK IN ANY SCENARIO, BUT THE BREAD

13   CRUMBS THEY HAVE GIVEN US HERE, DEFINITIVELY EXCLUDE THE

14   POSSIBILITY OF THIS EVEN COVERING THE ███████████

15         THE ARGUMENT THEY MAKE IS, WELL, UP AT THE TOP, WE TOLD

16   YOU THAT VIRTUAL ENVIRONMENT AGENT IS SOMETHING THAT WOULD BE

17   EXECUTED.  IT WOULD BE EXECUTED IN THE VIRTUAL ENVIRONMENT.

18         STEP 1 IS, AGAIN, THE ███████████ IS NOT.  SO YOU'VE

19   ALREADY DISQUALIFIED YOURSELF.

20         NUMBER TWO IS, ALL MOBILE PROTECTION CODE IS EVENTUALLY

21   EXECUTED AT THE VIRTUAL ENVIRONMENT, OR ACTUALLY AT THE

22   DESTINATION.  THAT'S REQUIRED.  THAT'S IN THE CLAIM.  THE

23   QUESTION IS, DID YOU TRANSMIT IT FIRST?

24         AND THIS LANGUAGE, OVER, AND OVER, AND OVER AGAIN SAYS YOU

25   TRANSMITTED IT.  AND THAT'S STRIKE TWO.

1    THE OTHER POINT, YOUR HONOR, ON THIS ONE, AND THEN I WILL

2    MOVE ON TO ██████████████████ IS IF YOU LOOK AT EXHIBIT 4,

3    AND THIS IS, I CAN DESCRIBE THIS FOR YOU, YOU DON'T NEED TO

4    PULL THIS UP, BUT EXHIBIT 4 TO OUR BRIEF, THIS WAS ONE OF THE

5    PROPOSED AMENDMENTS THAT FINJAN WANTED TO MAKE TO THEIR

6    INFRINGEMENT CONTENTIONS.  AND BEGINNING ON PAGE 43 AND

7    RUNNING --

8         THE COURT:  MR. GAUDET, LET ME JUST INTERRUPT BECAUSE

9    WE DON'T NEED TO GO THROUGH.  I DID SEE THAT ARGUMENT IN THE

10   PAPERS, AND WE DON'T NEED TO RETRACE WHERE WE HAVE BEEN,

11   ESPECIALLY ON MATERIAL THAT WAS REVIEWED AND RULED UPON QUITE

12   SOME TIME AGO.

13        MR. GAUDET:  OKAY.

14        THE COURT:  LET ME JUST BRING YOU BACK, AND I KNOW

15   YOU WANT TO DO A SIMILAR WALK-THROUGH WITH REGARDS TO ██████

16   ████████████  AND I DID FOLLOW YOUR ARGUMENTS REGARDING

17   FAILURE TO DISCLOSE, AS IT WAS SET FORTH IN THE PAPERS, AND I

18   CAN ASSURE YOU THAT MY PAGE 35 OF YOUR EXHIBIT 1 IS WELL

19   HIGHLIGHTED, FOLLOWING -- TRACKING THE PAPERS.

20        BUT AGAIN, JUST BRINGING US BACK TO THE LANGUAGE IN THE

21   REPORT, AND I TAKE YOUR POINT THAT WHAT'S THE OPERATIVE REPORT,

22   I WANT TO GIVE CAREFUL CONSIDERATION TO JUDGE FREEMAN'S

23   DISCUSSION AROUND LEAVE TO AMEND, BUT LET'S JUST PUT THAT ASIDE

24   FOR THE MOMENT.  WHY ISN'T THIS A TRIAL OBJECTION?

25        IF I DENY YOUR MOTION BECAUSE I KNEW THE REPORT AND

1    CONTENTIONS NOW TO BE CONSISTENT, BECAUSE THE LANGUAGE

2    MIRRORS -- AND AGAIN, JUST HYPOTHETICALLY -- THEN YOUR ARGUMENT

3    THAT THESE WORDS, THE VIRTUAL ENVIRONMENT AGENT, DOES NOT

4    DISCLOSE AN MPC RESIDENT IN THE SANDBOX.  THAT STILL, EVEN WITH

5    THIS SUBSTITUTION, EVEN WITH THIS CUT AND PASTE FROM THE

6    CONTENTION, THE REPORT ONLY IS REFERRING TO AN MPC THAT'S

7    TRANSMITTED.

8         NONE OF THESE WORDS, WHETHER THEY ARE IN THE CONTENTIONS

9    OR THE LATEST VERSION OF THE REPORT, DISCLOSED AN MPC RESIDENT

10   IN THE SANDBOX.

11        SO I MEAN, THAT ARGUMENT, YOU STILL HAVE THAT ARGUMENT,

12   AND WHY ISN'T THAT -- ISN'T THAT A TRIAL OBJECTION?  ISN'T THAT

13   A, JUDGE FREEMAN, DON'T LET THE EXPERT TESTIFY.  THE EXPERT

14   STARTS TO GET TO A QUESTION ON THAT AT TRIAL AND YOU OBJECT AS

15   BEYOND THE SCOPE OF THE REPORT.  ISN'T THAT WHERE THIS IS

16   DRIVING?

17             MR. GAUDET:  YOUR HONOR, I THINK THERE ARE TWO

18   CRUCIAL RESPONSES TO THAT.

19        THE FIRST ONE IS THAT THIS WOULD, IN EFFECT, REWARD FINJAN

20   FOR THE CIRCUITOUS PROCESS OF WHAT THEY DID IN THE INFRINGEMENT

21   CONTENTIONS AND THE AMENDMENT, ON A PATENT THAT THE JUDGE HAS

22   PREVIOUSLY, JUDGE FREEMAN IN ANOTHER CASE GRANTED SUMMARY

23   JUDGEMENT IN ITS ENTIRETY.  IN THIS CASE, ALMOST ITS ENTIRETY.

24   AND THE ONLY PARTS SHE DIDN'T GRANT SUMMARY JUDGEMENT ON WAS ON

25   THE CONDITION THAT THERE'S ACTUALLY EVIDENCE OF IT.

1          AND THE WAY TO ANSWER THAT QUESTION, IS THERE EVIDENCE OF

2     IT, IS PRECISELY THIS, IT DOES ████████████ CORRESPOND TO

3     THESE THINGS.

4          AND IF IT BECOMES A TRIAL OBJECTION, WE SIMPLY REWARDED

5     THEM AS NOW THEY GET PAST SUMMARY JUDGEMENT, PRECISELY BECAUSE

6     OF THIS SORT OF SHIFTING TARGET.  WHEN THE TIME CAME TO SUMMARY

7     JUDGEMENT, THEY DIDN'T HAVE THE EVIDENCE.  AND THAT WAS THE

8     ISSUE THAT JUDGE FREEMAN SORT OF IDENTIFIED TO YOU.

9          THAT'S KIND OF THE SUBSTANTIVE ANSWER, YOUR HONOR.  THE

10    PROCEDURAL ANSWER IS, WE VERY MUCH OBJECT TO THIS NOTION OF

11    REPEATED SERIAL AMENDMENTS OF 6,000 PAGES EACH.  WE HAVE

12    18,000 PAGES.  AND IT'S NOT AN EXAGGERATION, THE ACTUAL NUMBER

13    OF REPORTS ON TECHNICAL MATTERS FROM FINJAN.  PARTIES AREN'T

14    ALLOWED TO SIMPLY AMEND JUST TO AMEND AND TO PUT OFF AN ISSUE

15    FOR ANOTHER DAY AT TRIAL.  THE THRESHOLD QUESTION HAS TO BE,

16    WILL I LET A PARTY CHANGE THE RECORD?  AND THEY HAVE TO MAKE A

17    SHOWING.

18         THE FACT THAT THERE'S SOMETHING IN THE INFRINGEMENT

19    CONTENTIONS IS NOT, BY ITSELF, GOOD ENOUGH TO LET YOU MAKE AN

20    AMENDMENT, ANYMORE THAN IF WE LEFT OUT AN INVALIDITY

21    CONTENTION, WE REALLY WISH WE WOULD HAVE MADE NOW BECAUSE WE

22    GOT TO THIS POINT IN THE CASE.  SINCE I HAD IT BACK IN MY

23    INVALIDITY KNOW CONTENTIONS, I CAN NOW GO AHEAD AND POP IT INTO

24    MY EXPERT REPORT.

25         THE PROCESS JUST DOESN'T WORK THAT WAY.  THEY HAVE TO HAVE

1    A --

2              THE COURT:  BUT THEY'RE -- AND LET ME JUST ARGUE THE

3    POINT WITH YOU THAT THEY ARE NOT POPPING IN A NEW THEORY, THEY

4    ARE INSERTING THE WORDS THAT ARE THERE.

5         THEY ARE SAYING THESE WORDS, VIRTUAL ENVIRONMENT AGENT,

6    WHICH ARE NOW IN OUR EXPERT REPORT AT PARAGRAPH, WHATEVER IT

7    IS, 4,000 SOMETHING, THIS PHRASE MEANS THAT THE MPC IS IN THE

8    SANDBOX.

9              MR. GAUDET:  RIGHT.

10             THE COURT:  AND AS A COMPONENT OF THAT, IT WOULD BE

11   FINJAN'S BURDEN TO DEMONSTRATE THAT, RIGHT.  THAT THAT'S WHAT

12   THOSE WORDS MEAN.

13        SO AGAIN, IT'S A TRIAL OBJECTION STAGE.  I MEAN, YOU HAVE

14   THAT ARGUMENT, THAT THAT'S NOT WHAT IT MEANS, AND YOU CAN'T

15   JUST TAKE ANY WORD IN THE REPORT AND ASSIGN SOME

16   UNSUBSTANTIATED MEANING.

17        ISN'T THAT REALLY YOUR ARGUMENT?

18             MR. GAUDET:  YOUR HONOR, NOT EXACTLY, YOUR HONOR.

19        THAT'S THAT THIS WOULD BE A NEW THEORY, JUST AS IN MY

20   ANALOGIES TO THE INVALIDITY CONTENTION.  IN SO FAR AS RIGHT

21   NOW, THEY SHOULD BE STUCK WITHOUT THIS THEORY AT ALL BECAUSE

22   THERE'S NOTHING IN THE ORIGINAL REPORT, THAT WAS WITHIN THE

23   SCOPE OF THE INFRINGEMENT CONTENTIONS.

24        AND SO THEY SHOULD NOT BE ABLE TO PULL IN, IF WE ARE RIGHT

25   ABOUT THAT.  IN OTHER WORDS, IF WE ARE RIGHT, THAT THERE'S

1    NOTHING IN THE OPENING REPORT, THAT SHOULD HAVE BEEN ABLE TO

2    PUT THIS THEORY IN.

3         SO WE STRIKE OUT ███████████████  WE STRIKE OUT THE OTHER

4    THINGS, THEN THEIR THEORY IS, WE WOULD NOW GET TO PULL WHATEVER

5    WE WANTED TO IN, TO TRY -- IN OTHER WORDS, EITHER A, IT DOESN'T

6    MATCH UP TO THAT, IN WHICH CASE THEY CANNOT MAKE AN AMENDMENT

7    AT ALL.  THE STANDARD FOR THE AMENDMENT IS THEY SHOULD BE THE

8    ONES TO MOVE.  THE STANDARD OF THE AMENDMENT HAS TO BE, THIS

9    THING WE PUT YOU ON NOTICE OF IN THE ORIGINAL REPORT, IT

10   CORRESPONDS TO THIS FUNCTIONALITY.

11        SO WE UNDERSTAND TAKE THE CODE NAME OUT, BUT GIVE US THAT

12   FUNCTIONALITY.  THAT'S THE STEP THEY HAVE TO MEET.  AND THAT'S

13   THE STEP THEY ARE TRYING TO JUMP OVER.

14        THEY ARE TRYING TO SAY, LET US AMEND, WHETHER OR NOT

15   REGARDLESS OF WHETHER OR NOT OUR AMENDMENT CORRESPONDS TO THE

16   FUNCTIONALITY DISCLOSED IN OUR ORIGINAL REPORT.  AND THAT WOULD

17   BE LIKE ME SAYING, LET ME JUST AMEND AND ADD A NEW INVALIDITY

18   CONTENTION RIGHT NOW, WHETHER OR NOT I SHOW YOU IT WAS ALWAYS

19   IN MY OPENING REPORT.

20        AND SO THAT'S WHY THIS HAS TO BE DONE NOW AND NOT AT

21   TRIAL.  WE ARE ASKING THE THRESHOLD QUESTION OF, PARTIES CAN'T

22   JUST AMEND TO AMEND, THEY CAN ONLY AMEND IF THERE IS SOMETHING

23   IN THE ORIGINAL REPORT, RIGHT, THAT CORRESPONDS TO THE

24   AMENDMENT.

25        AND HERE IT WAS, SHOW ME THE FUNCTIONALITY THAT

CORRESPONDS TO THAT ITEM.  AND THAT WAS EXACTLY WHAT I WALKED

YOU THROUGH ON ███████████     THEY CAN'T JUST KICK THE CAN.

THE COURT:  OKAY.  ALL RIGHT.

WHY DON'T YOU, JUST FOR THE COMPLETENESS OF YOUR RECORD,

IF YOU WOULD POINT TO THE LANGUAGE, OR IF YOU WANT TO ADDRESS

THE LANGUAGE, THE SUBSTITUTION WITH REGARDS TO ███████

███████  AND THEN LET ME HEAR FROM FINJAN, AND I WILL BE BACK

TO YOU, IT'S YOUR MOTION AND YOU WILL GET THE LAST WORD.

MR. GAUDET:  THANK YOU, YOUR HONOR.

IF WE NOW GO BACK TO THAT SAME PAGE 35, YOUR HONOR.

THE COURT:  UH-HUH.

MR. GAUDET:  AND YOU SEE NINE LINES DOWN, THERE'S A

LINE THAT BEGINS WITH THE WORD "DETERMINE."

THE COURT:  TELL ME WHICH PARAGRAPH YOU ARE IN?

MR. GAUDET:  I'M SORRY, YOUR HONOR.  THE SECOND

PARAGRAPH, NINE LINES DOWN.

THE COURT:  GOT IT.  "DETERMINE WHETHER."

MR. GAUDET:  RIGHT.

THE FIRST FULL SENTENCE THERE SAYS, IF THE CODE IS

COMPUTABLE, CISCO AMP FOR NETWORKS PACKAGES INFORMATION

PERTAINING TO THE EXECUTABLE AND INFORMATION PERTAINING TO

TASKS AND RELEVANT PARAMETERS AND TRANSMITS IT TO THREATGRID

AND/OR TALOS FOR FURTHER ANALYSIS.

SO WHATEVER WE ARE TALKING ABOUT IN THIS SENTENCE IS

TRANSMITTED.

1      THE SENTENCE SAYS, AT THE CODE AND INFORMATION PERTAINING

2  TO THE TASK AND PARAMETERS RELEVANT TO THREATGRID, AND/OR TALOS

3  IN THE MOBILE PROTECTION CODE.

4      AND THE NEXT SENTENCE, SAYS, "THIS INFORMATION INCLUDES,"

5  AND AFTER THE PARENTHETICAL, WE FIND THE PHRASE THEY ARE

6  RELYING ON, "PARAMETERS TO RUN THE SAMPLE FILE FOR URL."

7      THAT IS DISCLOSED AS SOMETHING THAT IS TRANSMITTED.

8  THAT'S POINT NUMBER ONE.  IT'S NOT A COMPONENT.

9      POINT NUMBER TWO, YOUR HONOR, IS THAT THESE TWO THINGS

10  WERE THE SUBJECT OF A MOTION TO AMEND.

11      THE COURT:  WHEN DID YOU DO THESE THINGS?

12      MR. GAUDET:  ███████████████████  THEY'RE AT

13  PAGE 46 AND PAGE 47 OF THE MOTION TO AMEND THAT FINJAN LOST.

14  AND THAT'S -- SORRY, PAGE 46 AND PAGE 47 OF THE PROPOSED

15  SUPPLEMENT, WHICH IS OUR EXHIBIT 4 THAT WE TALKED ABOUT

16  EARLIER.

17      THEY TRIED TO GET THESE THINGS INTO THE CASE AND IT WAS

18  DENIED.  AND LIKEWISE, YOUR HONOR, IF THOSE PAGES DON'T EVEN

19  INCLUDE ███████████  IF THEY TRIED TO GET ███████████  IN,

20  THAT UNQUESTIONABLY WOULD HAVE BEEN DENIED.

21      AND SO IT KIND OF COMES BACK TO THE SAME POINT THAT WE

22  CAN'T REWARD PARTIES BY KICKING OFF AFTER SUMMARY JUDGEMENT AND

23  INTO A JURY ISSUE, FOR NOT MAKING THE BASIC DISCLOSURES THAT

24  HAVE TO FORM THE CASE, THAT THE INFRINGEMENT CONTENTIONS, THEN

25  YOU DO YOUR REPORTS, IF SOMETHING IS BEYOND THE SCOPE OF THE

1    CONTENTIONS, WE CLEAN THAT UP BEFORE TRIAL.

2         SO THE LAST POINT, YOUR HONOR, I WANTED TO MAKE WAS WITH

3    RESPECT TO, THEY MAKE A POINT ABOUT THREATGRID ONLY CHART, THAT

4    THERE'S A THREATGRID ONLY CHART.  AND THAT'S OUR EXHIBIT 2,

5    WHICH IS THEIR EXHIBIT 6.

6         AND IT'S INTERESTING, YOU WOULD THINK IF THERE WAS TRULY

7    THREATGRID, THEN WE WOULD HAVE TALKED A LOT ABOUT IT.  BUT THEY

8    DIDN'T EVEN MENTION THIS IN THE MEET AND CONFER.

9         AND THE REASON IS WHEN YOU LOOK ON THE FIRST PAGE OF THE

10   CHART ITSELF, IT DEFINES THREATGRID AS INCLUDING ALL THE AMP

11   APPLIANCES.  AND THEN AS YOU MOVE -- IN OTHER WORDS, ALL THE

12   GATEWAYS.  AND THEN IF YOU MOVE TO THE CHART ITSELF, IT'S

13   NOTHING BUT A CUT AND PASTE.  AND IT ACTUALLY BECOMES ALMOST

14   NONSENSICAL IN PLACES, THREATGRID SENDS IT THREATGRID, RIGHT.

15        BUT THE OTHER POINT, AND THIS WILL BE MY FINAL POINT,

16   YOUR HONOR, THEY SAID THAT THERE ARE EXAMPLES IN THIS CHART

17   THAT SHOW, YOU KNOW, MOBILE PROTECTION CODE NOT BEING

18   TRANSMITTED AT ALL.

19        AND THEY POINTED YOU TO THE PAGE 38, BOTTOM OF PAGE 38,

20   WHICH HAS THE PHRASE, "CISCO THREATGRID TRANSMITS UNKNOWN

21   FILES, CISCO'S CLOUD PRODUCTS."  IT GOES ON TO THE NEXT PAGE.

22        THIS WAS THE NOTICE, THIS WAS THEIR NOTICE TO US THAT WE

23   WERE ACCUSING THINGS WHERE THE MOBILE PROTECTION CODE IS NEVER

24   TRANSMITTED.

25        I FOUND THAT CURIOUS, SO I WENT BACK, BECAUSE THIS KIND OF

1    PICKS UP IN THE MIDDLE OF A DISCUSSION, JUST GO BACK ONE PAGE

2    BEFORE TO PAGE 37, THE LAST LINE ON PAGE 37, "AS SHOWN BELOW,

3    CISCO'S THREATGRID," REMEMBER THAT'S DEFINED TO INCLUDE ALL THE

4    GATEWAYS, "TRANSMITS MOBILE PROTECTION CODE TO A NUMBER OF

5    SANDBOXES FOR ANALYSIS, BASED UPON THE DETERMINATION," AND IT

6    GOES ON.

7        THE NEXT PARAGRAPH, "CISCO'S THREATGRID INCLUDES A VIRTUAL

8    MACHINE ENVIRONMENT KNOWN AS GLOVEBOX.  CISCO THREATGRID

9    INCLUDES A NETWORK INTERFACE AND TRANSMITTER SOFTWARE WHICH

10   TRANSMITS MOBILE PROTECTION CODE."  THEN, THE PARAGRAPH THEY

11   TALK ABOUT, ARE HOW IN ADDITION, IT TRANSMITS THE FILE.

12       THIS IS WHAT WE ARE DEALING WITH, YOUR HONOR.  THESE

13   DISCLOSURES COULD NOT BE ANY CLEARER THAT MOBILE PROTECTION

14   CODE IS ALWAYS TRANSMITTED.  AND YET, BY WAY OF -- I MEAN,

15   AFTER LOSING MOTIONS TO AMEND, LOSING A MOTION TO STRIKE, WE

16   ARE GOING TO -- THEY ARE GOING TO GET OVER SUMMARY JUDGEMENT

17   AND POTENTIALLY HAVE THIS THOUSANDS OF PAGES PLAY OUT IN FRONT

18   OF THE JURY OVER SOMETHING THAT CLEARLY WAS NEVER DISCLOSED AND

19   SHOULD BE STRUCK FROM THE ORIGINAL REPORT AND SHOULD NOT BE

20   PERMITTED IN ANY ADMITTED REPORTS.

21       AND YOUR HONOR, THAT'S ALL THAT I HAVE.

22       THE COURT:  THANK YOU, MR. GAUDET.  I APPRECIATE IT.

23   ALL RIGHT.  MR. KAZI?

24       MR. KAZI:  YES.  GOOD MORNING, YOUR HONOR.

25   THIS IS AAMIR KAZI ON BEHALF OF PLAINTIFF FINJAN.

1           THE COURT:  GOOD MORNING.

2           MR. KAZI:  I WOULD LIKE TO START JUST BY FRAMING OUR

3     ISSUES, WHICH IS EXACTLY HOW YOU FRAMED IT AT THE BEGINNING OF

4     YOUR DISCUSSION, YOUR HONOR.

5           AND SO WE AGREE THAT THE QUESTION THAT IS LIVE HERE IS

6     WHETHER THERE IS A SINGLE THEORY IN FINJAN'S CONTENTIONS THAT

7     RELATES TO WHETHER MOBILE PROTECTION CODE CAN BE READ IN THE

8     SANDBOX RATHER THAN HAVING TO BE TRANSMITTED TO THE SANDBOX.

9           AND WE AGREE WITH THE COMMENTS YOU MADE, WHICH IS THAT THE

10    CONTENTIONS ARE TO SERVE AS A GUIDE FOR EXPERT REPORTS AND THAT

11    THE LANGUAGE IN THE CONTENTIONS IS CONSISTENT WITH THE LANGUAGE

12    IN THE REPORTS.  AND FROM OUR PERSPECTIVE, WE AGREE THAT THE

13    INQUIRY SHOULD END THERE.

14          SO FINJAN'S COUNSEL HAD SOME ADDITIONAL ARGUMENT, AND I

15    WILL ADDRESS THAT, BUT FROM OUR PERSPECTIVE, THE INQUIRY ENDS

16    THERE.  THE CONTENTIONS SUPPORT WHAT IS IN THE REPORT AND

17    THAT'S THE CHARGE THAT WE ARE TASKED WITH HERE TODAY.

18          SO BEFORE I GET INTO RESPONDING TO SOME OF THE SUBSTANCE

19    OF MR. GAUDET'S ARGUMENT, LET ME TOUCH A LITTLE BIT UPON SOME

20    OF THE PROCEDURAL ISSUES.

21          SO I THINK MR. GAUDET COMMENTED THAT THESE REPORTS THAT

22    FINJAN HAS SERVED ARE, THAT THE COURT HAD NOT ALLOWED OR HAS

23    NOT ALLOWED THESE REPORTS.  AND WE JUST VIEW THE COURT'S ORDERS

24    A LITTLE BIT DIFFERENTLY THAN CISCO.

25          SO I THINK I WOULD POINT YOU TO DOCKET NUMBER 397 WHICH IS

1    THE ORDER ON THE MOTION TO STRIKE.  AND IN THAT PARTICULAR

2    ORDER, ON PAGE 6 OF THE ORDER, THE COURT VERY SPECIFICALLY

3    SAYS, "FINJAN'S EXPERTS," AND I'M READING FROM PAGE 6, AT LINES

4    6 THROUGH 8.  "FINJAN'S EXPERTS ARE DIRECTED TO REDRAFT THEIR

5    REPORTS TO REMOVE THE DISALLOWED TERMINOLOGY AND ADHERE THEIR

6    OPINIONS OF DISCLOSURES IN FINJAN'S OPERATIVE INFRINGEMENT

7    CONTENTIONS."  THAT IS A VERY DIRECT INSTRUCTION FROM THE

8    COURT.

9         THERE'S A SIMILAR STATEMENT IN THE SUMMARY JUDGEMENT ORDER

10   DOCKET 47 AT PAGE 4.

11        SO --

12            THE COURT:  I'M SORRY, DOCKET WHAT?  I'M SORRY,

13   MR. KAZI, COULD YOU SLOW DOWN JUST A LITTLE BIT, ESPECIALLY

14   WHEN YOU ARE READING.

15            MR. KAZI:  YES, YOUR HONOR.

16            THE COURT:  AND YOU REFERRED TO THE SUMMARY JUDGEMENT

17   ORDER?

18            MR. KAZI:  YES, YOUR HONOR.

19        SO THERE'S A SIMILAR STATEMENT IN THE SUMMARY JUDGEMENT

20   ORDER, WHICH IS DOCKET 487.  AND I WAS LOOKING AT PAGE 4.

21        AND THE OTHER TWO EXAMPLES, I HAVE SEEN OTHER STATEMENTS

22   IN THE HEARING TRANSCRIPTS THAT ARE FROM THE COURT THAT ARE OF

23   A SIMILAR MESSAGE.

24        BUT THE POINT IS, THE JUDGE VERY CLEARLY ASKED US,

25   DIRECTED US TO REDRAFT THE REPORTS, AND THAT'S WHAT FINJAN HAS

1    DONE.

2         SO I WANTED TO RESPOND ON THE PROCEDURAL SIDE OF THINGS

3    BEFORE I TOUCH UPON THE SUBSTANCE.  IF IT'S OKAY, I WILL MOVE

4    ON TO SOME OF THE ARGUMENT MR. GAUDET HAD ABOUT THE SPECIFIC

5    ███████████████  ISSUE.

6         THE COURT:  SO LET ME BE SURE I'M UNDERSTANDING WHERE

7    FINJAN IS WITH REGARDS TO AMENDING ITS REPORTS.  AND I

8    APPRECIATE YOUR POSITION IS, WE HAD LEAVE AND WE WERE DIRECTED

9    TO DO THAT BY THE COURT, AND SO WE HAVE SUBSTITUTED OUT THESE

10   TERMS TO MAKE IT VERY CLEAR THAT OUR REPORT AND OUR CONTENTIONS

11   ARE CONSISTENT.  WE HAVE TAKEN WORDS FROM THE CONTENTIONS AND

12   WE HAVE PUT THOSE IN THE REPORT.

13        AM I UNDERSTANDING THAT OPERATION?

14        MR. KAZI:  JUST MAYBE JUST TO CLARIFY SLIGHTLY.

15        I THINK THE WORDS FROM THE CONTENTIONS WERE ALREADY IN THE

16   REPORT.  I THINK WHAT WE DID WAS WE REMOVED THE SPECIFIC NAMES

17   THAT CISCO OBJECTED TO AND WE ARE RELYING UPON NOT THE SPECIFIC

18   NAMES, BUT THE THEORIES RELATING TO THOSE FEATURES THAT WERE

19   DISCLOSED IN THE ORIGINAL CONTENTIONS.

20        THE COURT:  ALL RIGHT.

21        SO WHAT IS IN THE REPORT?  SO YOU APPROACH YOUR WITNESS AT

22   TRIAL, DR. MEDVIDOVIC IS ON THE STAND, YOU WANT TO ELICIT FROM

23   HIM AN OPINION AS TO, LET'S SAY, THREATGRID INFRINGES BECAUSE

24   THE MPC IS RESIDENT IN THE SANDBOX, AND YOU START DOWN THAT

25   LINE OF QUESTIONING, YOU GET AN OBJECTION THAT THAT IS ASKING

```
1        FOR AN OPINION THAT'S NOT DISCLOSED IN THE REPORT.

2            YOU GO TO JUDGE FREEMAN, YOU HAVE A SIDEBAR, THE BURDEN IS

3    ON YOU TO DEMONSTRATE THAT THAT THEORY IS DISCLOSED IN THE

4    REPORT.  WHERE DO YOU GO?

5            MR. KAZI:  ALL RIGHT.

6        SO WHAT I WOULD ASK -- WHAT I WOULD POINT TO IS A

7    PARAGRAPH IN THE REPORT THAT IS ALSO VERY SIMILAR TO ONE THAT'S

8    IN THE INFRINGEMENT CONTENTIONS.

9        SO I WOULD START, IF YOU HAVE EXHIBIT 2 TO THE FINJAN

10   OPPOSITION, WHICH IS A REDLINE OF DR. MEDVIDOVIC'S REPORT AS

11   COMPARED TO A PREVIOUSLY STRICKEN REPORT.

12       I'M GOING TO PULL THAT DOCUMENT UP HERE MYSELF, BARE WITH

13   ME ONE SECOND.

14           THE COURT:  AND WHAT'S THE DATE -- SO THE REPORT,

15   ORIGINAL REPORT IS IN JULY, THE SECOND AMENDED IS IN MARCH, IS

16   THIS A REDLINE OF THE SECOND AMENDED?

17           MR. KAZI:  THAT'S RIGHT, YOUR HONOR.

18       THIS IS A REDLINE OF THE SECOND AMENDED REPORT AS COMPARED

19   TO THE PRIOR REPORT.

20       SO IF YOU HAVE THAT REPORT IN FRONT OF YOU, I WOULD TAKE

21   AS AN EXAMPLE PARAGRAPH 4018.  AND SO THAT IS ON PAGE 2567.

22           THE COURT:  2567.  OKAY.  LET ME GET THAT.

23           MR. KAZI:  YEAH.  NOW IF YOU HAVE --

24           THE COURT:  HANG ON, HANG ON.  AND I'M SORRY, WHAT

25   WAS THE PARAGRAPH NUMBER?
```

1            MR. KAZI:  4318.

2            THE COURT:  ALL RIGHT.  I'M THERE.

3            MR. KAZI:  SO IF YOU ARE AT PARAGRAPH 4318 AND 4319,

4     THE LANGUAGE IN THOSE TWO PARAGRAPHS ARE VERY SIMILAR, IN FACT

5     I WOULD SAY ALMOST IDENTICAL TO THE LANGUAGE IN THE OPERATIVE

6     INFRINGEMENT CONTENTIONS WHICH WERE EXHIBIT 1 TO -- EXCUSE

7     ME -- CISCO'S MOTION.

8          SO I THINK -- YEAH.  I THINK YOU ARE PROBABLY FAMILIAR

9     WITH THE LANGUAGE.  I THINK WHAT I WOULD POINT YOU TO AS AN

10    EXAMPLE IS THE FIRST SENTENCE, PARAGRAPH 4319 WHERE IT SAYS,

11    "CISCO THREATGRID MEETS THE RECITED CLAIM LANGUAGE BECAUSE

12    CISCO THREATGRID CAUSES A VIRTUAL ENVIRONMENT AGENT (E.G.

13    MOBILE PROTECTION CODE) TO BE EXECUTED WITHIN THE VIRTUAL

14    ENVIRONMENT RUNNING WINDOWS OPERATING SYSTEM."  AND IT GOES ON

15    FROM THERE.

16         AND SO THAT LANGUAGE IS VERY CLEARLY TYING THIS VIRTUAL

17    ENVIRONMENT AGENT TO THE CLAIMED MOBILE PROTECTION CODE.

18    THERE'S A PARENTHESES THAT FOLLOWS RIGHT AFTERWARDS.  AND I

19    SHOULD HAVE POINTED YOU TO ACTUALLY, IF YOU FLIP BACK UP A

20    COUPLE OF PAGES TO 2566, ALL OF THIS DISCUSSION IS IN THE

21    CONTEXT OF ELEMENT 14(B) OF THE '633 PATENT.

22            THE COURT:  RIGHT.

23         SO AGAIN, TO MY POINT, YOU ARE AT YOUR -- YOU HAVE A TRIAL

24    OBJECTION, YOU HAVE YOUR SIDEBAR WITH JUDGE FREEMAN, AND THE

25    MPC BEING RESIDENT IN THE SANDBOX, AND SHE TURNS TO YOU AND

1 SAYS, WELL, IS THAT IN THE REPORT, YES OR NO?  AND YOU TURN TO

2 THIS PARAGRAPH, 4319.

3     MR. KAZI:  WELL -- YES, YOUR HONOR.

4     THE COURT:  IS THAT RIGHT?

5     MR. KAZI:  I WOULD POINT TO THIS PARAGRAPH AS AN

6 EXAMPLE.

7   I UNDERSTAND CISCO'S POSITION IN ITS MOTION AND IN ITS

8 REPLY WAS THAT FINJAN HAD NOT SET FORTH, IN THIS LANGUAGE --

9 WELL, SO LET ME BACK UP A STEP.

10   THE LANGUAGE IN THE PARAGRAPH 4319 IS SIMILAR TO WHAT

11 IS -- IT'S ALMOST IDENTICAL TO WHAT IS IN THE INFRINGEMENT

12 CONTENTIONS.  AND I UNDERSTAND CISCO'S POSITION WAS THAT, WELL,

13 FINJAN DOESN'T SAY IN THE LANGUAGE IN THE INFRINGEMENT

14 CONTENTIONS THAT THE VIRTUAL ENVIRONMENT AGENT IS SOMETHING

15 THAT WAS ALREADY RESIDENT ON THE VIRTUAL MACHINE OR ON THE --

16 IN THE SANDBOX.

17   AND I THINK THAT POSITION, AS I UNDERSTAND IT, YOU KNOW,

18 FINJAN WOULD NOT HAVE HAD ANY REASON TO SAY THAT.  THE CLAIM

19 DOES NOT HAVE A LIMITATION REQUIRING THAT THE MOBILE PROTECTION

20 CODE IS NOT TRANSMITTED.  IF THERE WAS SUCH A LIMITATION, WOULD

21 IT WOULD BE FAIR FOR FINJAN TO SET FORTH ITS THEORY AS TO WHY

22 THE MOBILE PROTECTION CODE WAS NOT TRANSMITTED.  BUT FINJAN

23 NEVER STATES IN ITS INFRINGEMENT CONTENTIONS THAT THE VIRTUAL

24 ENVIRONMENT AGENT IS TRANSMITTED.

25   AND I THINK IT'S A FAIR READ OF THAT LANGUAGE IF FINJAN IS

```
 1    NOT SETTING FORTH THAT THE VIRTUAL ENVIRONMENT AGENT IS

 2    TRANSMITTED, THAT THERE'S NO DISCLOSURE OF IT BEING

 3    TRANSMITTED.  I THINK IT'S UNFAIR TO READ INTO THIS LANGUAGE

 4    THAT THE VIRTUAL ENVIRONMENT AGENT IS TRANSMITTED.

 5         AND CISCO IS DOING THAT JUST BY VIRTUE OF FINJAN'S FAILURE

 6    TO SAY, OR FINJAN NOT SAYING THAT IT WAS TRANSMITTED.

 7              THE COURT:  WELL, IT'S FINJAN'S, OBVIOUSLY,

 8    OBLIGATION TO DISCLOSE ITS THEORIES OF INFRINGEMENT.  THAT

 9    STARTS WITH THE CONTENTIONS, THAT'S WHY WE ARE HERE TODAY.  BUT

10    AT TRIAL, THE QUESTION WILL BE, IS THAT OPINION DISCLOSED IN

11    THE REPORT?

12         AND, YOU KNOW, IF IT MOVES ON TO THE TRIAL PHASE, DOES

13    THIS LANGUAGE SURVIVE, IT MOVES TO THE TRIAL PHASE, WHAT I WANT

14    TO KNOW IS WHAT ARE YOU POINTING AT IN RESPONSE TO CISCO'S

15    OBJECTION?  I'M JUST TRYING TO SHIFT THE CONTEXT.

16         YOU WON'T BE POINTING TO THE CONTENTION, YOU WILL BE WITH

17    HER HONOR AT A SIDEBAR.  YOU WILL HAVE YOUR 4,000 PAGE REPORT

18    OR 2,500 PAGE REPORT HIGHLIGHTED AND TABBED, ET CETERA.  BUT

19    YOU ARE IN A -- AND THIS IS WHERE YOU GO, IS THE ANSWER TO MY

20    QUESTION.  THIS WAS WHAT I HEAR YOU SAYING IS YOU WOULD GO, FOR

21    EXAMPLE, TO PARAGRAPH 4319 AND SAY, THIS LANGUAGE IS

22    SUFFICIENT.

23              MR. KAZI:  YES, YOUR HONOR.

24         SO IF THE QUESTION WAS POSED, WHERE IN FINJAN'S EXPERT

25    REPORT IS THERE DISCLOSURE OF A VIRTUAL ENVIRONMENT AGENT THAT
```

1    IS RESIDENT AT THE SANDBOX?  IF THAT WAS THE QUESTION, I THINK

2    WE WOULD GO TO THIS PARTICULAR PARAGRAPH.

3         CERTAINLY THERE ARE OTHER ASPECTS OF THE VIRTUAL

4    ENVIRONMENT AGENT THAT ARE DISCLOSED AT OTHER PARTS OF THE

5    REPORT, BUT THAT IS ONE PLACE THAT WE WOULD POINT TO.

6         YOU KNOW, IT'S LIKE KIND OF PROVING A NEGATIVE HERE.  THE

7    TRANSMISSION OR ABSENCE OF THE TRANSMISSION IS NOT A

8    LIMITATION, AND IT WOULDN'T BE FEASIBLE FOR FINJAN TO

9    ANTICIPATE EVERY NEGATIVE THAT CISCO WOULD THINK TO APPLY AND

10   INCLUDE IT IN ITS CONTENTIONS, OR FOR THAT MATTER, IN ITS

11   REPORT.

12          THE COURT:  ALL RIGHT.  I TOOK YOU A LITTLE BIT OFF

13    TRACK.

14          MR. KAZI:  OKAY.  NO PROBLEM.

15        SO WHAT I WANTED TO DO WAS TALK A LITTLE BIT ABOUT THE

16   SUBSTANCE AND RESPOND A LITTLE BIT ABOUT TO WHAT MR. GAUDET'S

17   ARGUMENT ABOUT THE SPECIFIC ██████████ ISSUE.

18        AND I THINK WE TOUCHED UPON THIS JUST NOW BECAUSE THE

19   FIRST PART OF MR. GAUDET'S ARGUMENT WAS WHETHER OR NOT FINJAN'S

20   INFRINGEMENT CONTENTIONS DISCLOSE A MOBILE PROTECTION CODE THAT

21   IS RESIDENT AT THE SANDBOX.

22        AND SO THE LANGUAGE THAT I POINTED YOU TO IN

23   PARAGRAPH 4318 IS ALSO THE LANGUAGE ON PAGE 35 OF FINJAN'S

24   INFRINGEMENT CONTENTIONS WHICH WERE ATTACHED AS EXHIBIT CONE TO

25   CISCO'S MOTION.

1      AND SO I THINK WE ARE ALL FAMILIAR WITH THAT LANGUAGE, WE

2    HAVE LOOKED AT IT AND TALKED ABOUT IT A LITTLE BIT TODAY AND

3    CONSIDERABLY THROUGHOUT THE BRIEFING.

4      AND AS I UNDERSTAND CISCO'S POSITION NOW, IT SEEMS TO HAVE

5    SHIFTED A LITTLE BIT TO -- I DIDN'T, LET ME PUT IT THIS WAY, I

6    DIDN'T HEAR REFERENCE TO THAT PARTICULAR SENTENCE THAT WE JUST

7    READ IN MR. GAUDET'S ARGUMENT.

8      SO I DON'T KNOW IF CISCO'S POSITION IS STILL THE FIRST

9    SENTENCE THAT REFERS TO THE VIRTUAL ENVIRONMENTAL AGENT DOESN'T

10   DISCLOSE THE PRESENCE OF MOBILE PROTECTION CODE AT THE SANDBOX.

11   BUT IF I UNDERSTAND WHAT MR. GAUDET WAS SAYING, BY VIRTUE OF

12   THAT LIMITED DISCLOSURE, CISCO WOULD HAVE NO WAY TO KNOW THAT

13   FINJAN IS POINTING TO ███████████

14     AND SO THAT'S THE ARGUMENT THAT I WANT TO TOUCH UPON HERE

15   A LITTLE BIT.

16     SO I THINK THE FIRST RESPONSE -- I THINK THE FIRST

17   RESPONSE TO CISCO'S ARGUMENT HERE IS THAT IF CISCO WAS

18   UNCERTAIN AS TO WHAT CONSTITUTED THE VIRTUAL ENVIRONMENT AGENT,

19   CISCO SHOULD HAVE RAISED THAT ISSUE WITH THE COURT EARLIER.

20     CISCO CAN'T JUST BURY ITS HEAD IN THE SAND, AND THAT'S A

21   QUOTE FROM A PRIOR ORDER ON THIS ISSUE IN A RELATED FINJAN CASE

22   THAT WAS IN FRONT OF JUDGE FREEMAN.  I CAN GIVE YOU THE FULL

23   CITATION THAT'S --

24        THE COURT:  I DON'T THINK THAT'S NECESSARY.  I DON'T

25     THINK THAT'S NECESSARY.

```
1              MR. KAZI:  OKAY.  SURE.

2         SO IF CISCO HAD AN ISSUE UNDERSTANDING FINJAN'S

3    INFRINGEMENT CONTENTIONS, I THINK THE APPROPRIATE RECOURSE FOR

4    IT WAS TO RAISE THAT ISSUE WITH THE COURT AT APPROPRIATE TIME.

5    CISCO DID FILE A MOTION TO COMPEL INFRINGEMENT CONTENTIONS IN

6    THIS CASE, JUST NOT ON THE '633 PATENT.

7         AND I THINK THIS CASE IS ACTUALLY EVEN WORSE BECAUSE

8    FINJAN TRIED TO ADD MORE INFORMATION ABOUT THE ACCUSED PRODUCTS

9    TO THE CONTENTIONS AND CISCO OPPOSED THAT MOTION.

10        SO AS A MATTER OF FAIRNESS, CISCO CAN'T COME BACK NOW AND

11   CLAIM THAT FINJAN DID NOT PROVIDE ENOUGH INFORMATION WHEN

12   FINJAN WAS WILLING TO DO SO AND CISCO OPPOSED.  SO THAT'S THE

13   FIRST POINT.

14        THE SECOND POINT HERE IS OUR POSITION IS THAT THE

15   CONTENTIONS DID PROVIDE SUFFICIENT CONTEXT FOR CISCO TO

16   UNDERSTAND THAT THE ALLEGATIONS WERE DIRECTED TO THE ██████

17   ██████

18        SO WE'VE TALKED A LOT ABOUT THE EXCERPT ON PAGE 35.  BUT

19   IF YOU LOOK THROUGHOUT THE CONTENTIONS, THIS CONCEPT OF A

20   VIRTUAL ENVIRONMENT, VIRTUAL ENVIRONMENT AGENT IS THROUGHOUT

21   THE INFRINGEMENT CONTENTIONS.

22        SO I WILL POINT YOU TO, AS AN EXAMPLE, IF WE TURN TO

23   PAGE 5 OF THE SAME EXHIBIT 1 THAT WE HAVE BEEN LOOKING AT, LET

24   ME KNOW WHEN YOU ARE THERE, YOUR HONOR, AND I CAN POINT YOU TO

25   THE RELEVANT PASSAGE.
```

```
1              THE COURT:  WHICH EXHIBIT, MR. KAZI?

2              MR. KAZI:  EXHIBIT 1 TO CISCO'S MOTION, WHICH IS THE

3     INFRINGEMENT CONTENTIONS.

4              THE COURT:  OH, I'VE GOT IT.

5              MR. KAZI:  IF YOU TURN TO PAGE 5, THE DISCUSSION AT

6     PAGE 5 CONCERNS A DIFFERENT CLAIM.  IT CONCERNS CLAIM 1.

7          BUT HERE, THROUGHOUT THE CONTENTIONS, FINJAN PROVIDES

8     EXPLANATIONS OR CONTEXT AS TO WHAT IT BELIEVES IS THE VIRTUAL

9     ENVIRONMENT AGENT.

10         SO FOR EXAMPLE, AT THE BOTTOM OF PAGE 5 IN ROW 1-B, THE

11    SECOND PARAGRAPH, THERE'S A SENTENCE THAT SAYS, "CISCO AMP FOR

12    NETWORKS MEETS THE RECITED CLAIM LANGUAGE, BECAUSE CISCO AMP

13    FOR NETWORKS CONFIGURE A VIRTUAL ENVIRONMENT AGENT, (E.G.

14    SANDBOXING) FOR INTERCEPTING AND MONITORING THE SYSTEM, WHICH

15    IS TRAFFIC RECEIVED THEN CREATES A BEHAVIORAL ANALYSIS REPORT."

16         THAT'S AN EXAMPLE OF CISCO -- I'M SORRY, FINJAN --

17    PROVIDING MORE CLARITY AS TO WHAT IT VIEWS TO BE THE VIRTUAL

18    ENVIRONMENT AGENT.

19         THE VIRTUAL ENVIRONMENT AGENT HERE IS THE AGENT THAT WAS

20    INVOLVED IN THE SANDBOXING.

21         NOW IF YOU TURN TO PAGE 6, THE NEXT PAGE, AND ON PAGE 6

22    WHICH IS STILL RELATED TO CLAIM 1, IF YOU LOOK IN THE MIDDLE OF

23    THE PAGE UNDERNEATH THE BULLET POINT, THERE'S A PARAGRAPH THAT

24    BEGINS WITH, "AS SHOWN BELOW."

25             AND IN THAT PARAGRAPH, I WILL JUST READ THE SECOND
```

1    SENTENCE WHICH IS "CISCO AMP FOR NETWORKS INCLUDE COMPONENTS

2    WHICH ANALYZE AND DETECT EXECUTABLE CODE WITHIN THE

3    DOWNLOADABLE INFORMATION AND PROVIDE AN OPTION TO TRANSMIT THE

4    MOBILE PROTECTION CODE WHICH INCLUDES EXECUTABLE ENVIRONMENTS,

5    CODE INJECTION AND WRAPPER FILES INTO SANDBOXED ENVIRONMENT,

6    (WHICH IS A VIRTUAL ENVIRONMENT THAT MIMICS A PC ENDPOINT FOR

7    USER MACHINE) SUCH AS THREATGRID.

8         SO THERE'S NO QUESTION THROUGHOUT THE SERIES OF THESE

9    DISCLOSURES IN THE INFRINGEMENT CONTENTIONS, THAT CISCO SHOULD

10   KNOW THAT THE VIRTUAL ENVIRONMENT IS A SANDBOX ENVIRONMENT.

11   AND THE AGENT IS AN AGENT THAT PARTICIPATES IN THIS PROCESS OF

12   SANDBOXING.  THAT'S CLEAR FROM THE CONTEXT OF THE DISCUSSION

13   HERE.

14        BUT WHAT'S MORE IS THAT IF WE LOOK AT HOW CISCO'S OWN

15   ENGINEERS USE THE PHRASE "VIRTUAL ENVIRONMENT AGENT," THEY USED

16   IT THE SAME WAY AS THEY USED THE WORD ████████

17        SO I WOULD LIKE -- DO YOU HAVE ACCESS TO THE DECLARATIONS

18   THAT WERE SUBMITTED ATTACHED TO THE MOTIONS FOR SUMMARY

19   JUDGEMENT, YOUR HONOR?  THIS IS DOCKET 377.

20        MR. GAUDET:  YOUR HONOR, THIS IS MATT GAUDET.

21        IF I COULD, I'M GOING TO OBJECT TO THAT.  I DON'T HAVE

22   ACCESS TO THAT HERE, AND GIVEN THAT THIS ISSUE WAS ABOUT

23   NOTICE, IT DOES SEEM A LITTLE ODD TO BE GOING TO SOMETHING

24   THAT'S NOT EVEN IN THIS RECORD.

25        THE COURT:  THAT'S FINE.

1          MR. KAZI, WHY DON'T YOU JUST REFER TO IT.  EVERYONE

2    DOESN'T HAVE ACCESS UNDER THESE CONDITIONS.  IF YOU WANT TO

3    MAKE A BRIEF REFERENCE, AND LET'S MOVE ON.

4          MR. KAZI:  SURE.  YES.

5      I WILL JUST MAKE THE REFERENCE.

6      SO IN THE SUMMARY JUDGEMENT BRIEFING, YOUR HONOR, CISCO

7    SUBMITTED DECLARATIONS FROM ITS ENGINEERS.  ONE OF THE

8    ENGINEERS WAS VICE PRESIDENT MATTHEW WATCHINSKI.  AND ANOTHER

9    ENGINEER WAS PRINCIPLE ENGINEER CRAIG BROZEFSKY.  BOTH OF THOSE

10   DECLARATIONS ARE ATTACHED TO CISCO'S MOTION FOR SUMMARY

11   JUDGEMENT.  THE WATCHINSKI DECLARATION IS DOCKET 377-23.  THE

12   BROZEFSKY DECLARATION IS DOCKET 377-9.

13        IF YOU LOOK AT PARAGRAPH 6 OF THE WATCHINSKI DECLARATION,

14   HE'S DESCRIBING A VIRTUAL ENVIRONMENT.  AND HE SAYS THAT "THE

15   VIRTUAL ENVIRONMENT AGENT IS USED TO OBSERVE BEHAVIORS INSIDE

16   OF THE VIRTUAL MACHINE DURING EXECUTION OF THE FILE IN THAT

17   VIRTUAL MACHINE."  AND THAT'S A DIRECT QUOTE FROM HIS STATEMENT

18   IN HIS DECLARATION.

19        NOW, CISCO ENGINEER BROZEFSKY SUBMITS A DECLARATION THAT

20   USES THE EXACT SAME LANGUAGE TO DESCRIBE THE FUNCTIONALITY OF

21   THE A ███████████     HE SAYS THAT "THREATGRID USES A ██████

22   ███████   TO OBSERVE BEHAVIORS INSIDE OF THE VIRTUAL MACHINE

23   DURING EXECUTION OF THE FILE IN THAT VIRTUAL MACHINE."

24        POINT BEING, YOUR HONOR, THAT EVEN CISCO'S OWN ENGINEERS

25   USE THE PHRASE "VIRTUAL ENVIRONMENT AGENT" TO REFER TO THE

1    EXACT SAME FUNCTIONALITY AS THE ███████████ AND THIS IS IN

2    THE DECLARATION THAT CISCO SUBMITTED WITH ITS MOTION FOR

3    SUMMARY JUDGEMENT.

4         SO WE DON'T THINK IT'S CREDIBLE FOR CISCO TO COME BACK

5    PLEAD IGNORANCE TODAY AS TO WHAT A VIRTUAL ENVIRONMENT AGENT IS

6    OR HOW IT RELATES TO A ███████████

7         SO I WOULD LIKE TO MOVE ON TO THE ████████ ISSUE, UNLESS

8    THERE'S ANY QUESTIONS ON THAT, YOUR HONOR.

9              THE COURT:  THAT'S FINE.  THANK YOU.  LET'S MOVE ON.

10             MR. KAZI:  OKAY.

11    WITH RESPECT TO THE ISSUE OF ██████████████████ NOW

12    THE ISSUE HERE IS A LITTLE BIT DIFFERENT THAN WITH RESPECT TO

13    ███████████

14         SO AS I UNDERSTOOD MR. GAUDET'S ARGUMENT, HE SAID THAT THE

15    ███████████ COULD NOT CORRESPOND TO THE

16    FUNCTIONALITY DISCLOSED IN THE INFRINGEMENT CONTENTIONS BECAUSE

17    THE FUNCTIONALITY THAT HE POINTED TO WAS OF INFORMATION THAT

18    WAS TRANSMITTED.

19         AND SO I UNDERSTAND THAT TO BE AN ARGUMENT THAT RELATES TO

20    THE ███████████ ISSUE, BUT THAT'S JUST NOT AN ARGUMENT

21    THAT APPLIES TO ██████████████

22         AND THE REASON WHY IS BECAUSE THE SUMMARY JUDGEMENT ORDER,

23    WHEN FINJAN SURVIVED SUMMARY JUDGEMENT ON THE THEORIES RELATED

24    TO ███████████ FOR THE '633 PATENT, FINJAN'S BASIS

25    FOR SURVIVING SUMMARY JUDGEMENT WAS NOT THAT THE ████████ AND

1  ███████ WERE ALREADY RESIDENT IN THE SANDBOX.

2      THE REASON THAT JUDGE FREEMAN FOUND THAT ███████

3  SURVIVED SUMMARY JUDGEMENT WAS BECAUSE JUDGE FREEMAN FOUND THAT

4  THERE WAS AT LEAST A SUFFICIENT FACTUAL QUESTION AS TO WHETHER

5  A ██████ WAS AN COMPUTABLE THAT MONITORED MALICIOUS CODE.

6      AND SIMILARLY, THE REASON WHY ████████ SURVIVED WAS

7  BECAUSE CISCO'S DISPUTE OR CISCO'S MOTION FOR SUMMARY JUDGEMENT

8  WAS THAT ████████ WERE JUST NOT USED, AND JUDGE FREEMAN FOUND

9  THAT THERE WAS AT LEAST A FACTUAL ISSUE AS TO WHETHER THERE WAS

10  USE OR NOT.

11      AND THAT DISCUSSION, THAT'S IN THE SUMMARY JUDGEMENT ORDER

12  DOCKET 487, PAGE 18 REFERS TO ███████, AND PAGE 20 RECITES

13  ███████.

14      SO THE REASONS WHY ████████████ SURVIVE HAD

15  NOTHING TO DO WITH WHETHER OR NOT THOSE CONCEPTS WERE

16  TRANSMITTED TO THE SANDBOX.

17      THE REASON I BRING THAT UP AND THE REASON IT'S RELEVANT IS

18  BECAUSE THE PASSAGES IN THE INFRINGEMENT CONTENTIONS THAT

19  FINJAN HAS POINTED TO ON PAGE 35 FOR ████████████

20  THEY ARE ALSO IN THAT SECOND PARAGRAPH.

21      AND I THINK WE TOUCHED UPON THIS A LITTLE BIT IN

22  MR. GAUDET'S ARGUMENT.  THERE'S A SENTENCE IN THAT SECOND

23  PARAGRAPH THAT IS ABOUT HALFWAY THROUGH THE PARAGRAPH THAT

24  SAYS, "THE CODE AND INFORMATION PERTAINING TO THE TASK AND

25  PARAMETERS RELEVANT TO THREATGRID AND/OR TALOS, IS THE MOBILE

1    PROTECTION CODE."

2         SO THE REFERENCE IN THE INFRINGEMENT CONTENTIONS TO CODE

3    AND INFORMATION PERTAINING TO TASK AND PARAMETERS, THAT CODE IS

4    SOMETHING THAT IS TRANSMITTED TO THE SANDBOX.  I THINK THAT'S

5    CLEAR IN THE INFRINGEMENT CONTENTIONS, AND FINJAN IS NOT

6    CONTENDING OTHERWISE.

7         BUT THE FACT THAT THE CODE AND INFORMATION PERTAINING TO

8    THE TASK AND PARAMETERS IS TRANSMITTED TO THE SANDBOX, DOES NOT

9    DISQUALIFY IT FROM BEING CONSIDERED MOBILE PROTECTION CODE, AND

10   THAT'S JUST NOT THE REASON WHY THOSE PARTICULAR CONCEPTS

11   SURVIVE SUMMARY JUDGEMENT.

12        SO WITH THAT, I THINK I'VE ADDRESSED THE QUESTIONS THAT

13   MR. GAUDET RAISED.  I'M HAPPY TO ANSWER ANY MORE QUESTIONS YOU

14   HAVE, YOUR HONOR, ON THESE PARTICULAR ISSUES, OR I CAN JUST GO

15   AHEAD AND GIVE IT BACK TO MR. GAUDET.

16        THE COURT:  WELL, I WANT TO BE SURE I UNDERSTAND YOUR

17   POINT, MR. KAZI, WHICH IS THAT AS TO THE LANGUAGE, THE

18   PARAMETERS TO RUN THE SAMPLE FILE, WHICH IS WHAT WAS IDENTIFIED

19   AS THE REPLACEMENT LANGUAGE FOR ███████████████        THAT

20   THAT IS TRANSMITTED.

21        MR. KAZI:  I THINK THAT THEY CAN BE TRANSMITTED, AND

22   I THINK WHETHER OR NOT THEY ARE TRANSMITTED, WHETHER OR NOT THE

23   PARAMETERS ARE TRANSMITTED WAS NOT RELEVANT TO THE COURT'S

24   SUMMARY JUDGEMENT DETERMINATION.  THE ORDER SAID AS MUCH.

25        THE ORDER SAYS THAT THE BASIS FOR SURVIVING SUMMARY

1      JUDGEMENT, AND THE ORDER LISTS THE BASIS, AND IT HAS NOTHING TO

2      DO WITH WHETHER OR NOT THE PARAMETERS WERE TRANSMITTED.

3              THE COURT:  ALL RIGHT.  ALL RIGHT.

4          THANK YOU, MR. KAZI, THAT WAS HELPFUL.

5          MR. GAUDET, TO WRAP THIS UP, I DO UNDERSTAND WHAT YOU

6      STATED IN THE PAPERS AND IN YOUR OPENING ARGUMENTS, BUT THERE

7      ARE SOME ISSUES THERE I'M SURE YOU WOULD LIKE TO ADDRESS.

8              MR. GAUDET:  THANK YOU, YOUR HONOR.

9          THE FIRST THING I WANTED TO DO WAS ACTUALLY START FROM THE

10     COURT'S NOVEMBER 11, 2019, ORDER, ADDRESSED THIS QUESTION OF

11     WHETHER OR NOT LEAVE IT AMEND HAS ALREADY BEEN GRANTED,

12     SPECIFICALLY SUCH THAT THESE THINGS ARE ALREADY IN THE CASE.

13     AND --

14             THE COURT:  GIVE ME A DOCKET NUMBER, PLEASE.

15             MR. GAUDET:  SURE.

16         SO THIS IS THE SAME, THIS IS THE SAME ORDER THAT FINJAN'S

17     COUNSEL JUST READ FROM ON PAGE 6.  AND I ACTUALLY -- I TELL YOU

18     WHAT, I WILL SEE IF MR. POWERS, COULD YOU PLEASE TRACK DOWN A

19     DOCKET NUMBER FOR THIS ONE?

20             THE COURT:  I THINK IT'S 397.

21             MR. GAUDET:  YES, YOUR HONOR.  TERRIFIC.

22         SO FINJAN'S COUNSEL READ WHERE THE COURT DIRECTED THE

23     EXPERT TO TAKE STEP 1 TO REDRAFT SOMETHING.  BUT THE CONCLUSION

24     ON THE NEXT PAGE ON PAGE 7 SAYS WHAT'S SUPPOSED TO HAPPEN NEXT.

25     AND THAT IS AT LINE 23 AND A HALF.

1    IT SAYS THE COURT IS WILLING TO CONSIDER A REASONABLE

2    PROPOSAL BY FINJAN TO CORRECT ITS EXPERT REPORTS TO ALIGN WITH

3    ITS INFRINGEMENT CONTENTIONS.  EXPERTS REDRAFT, THE COURT WILL

4    CONSIDER IT.

5    THE COURT HAS NEVER ISSUED A RULING SAYING IT WAS OKAY.

6    AND THAT IS FURTHER PROVEN BY THE NEXT DOCUMENT THAT FINJAN'S

7    COUNSEL CITED NAMING THE SUMMARY JUDGEMENT ORDER, WHERE THIS

8    ORDER WAS AFTER, AFTER FINJAN HAD EXCHANGED ITS FIRST AMENDED

9    PROSECUTE POSED REPORT.

10    AFTER THE HEARING, WE SAID THIS JUST CAME IN, THERE'S ALL

11    KINDS OF DISAGREEMENTS.  AND AT THAT POINT PER WHAT FINJAN'S

12    COUNSEL JUST READ, THE COURT SAID, I'M NOT AWARE OF ANY AMENDED

13    REPORT.  IN OTHER WORDS, NOTHING HAS BEEN ACCEPTED YET.

14    AND THAT'S EXACTLY THE ISSUE THAT WAS REFERRED TO YOU,

15    YOUR HONOR, IS ARE WE GOING TO ALLOW THEM TO AMEND THESE

16    REPORTS.

17    AND THEIR ANSWER TO YOUR QUESTION, RIGHT, OF WE GET TO

18    TRIAL, QUESTION COMES UP, YOU TRY IT TALK ABOUT IT, YOU KNOW,

19    THE FUNCTIONAL EQUIVALENT OF THE ██████████ WHAT ARE YOU

20    GOING TO DO?  LOOK AT WHAT HE POINTED TO, YOUR HONOR.  HE DID

21    NOT POINT TO YOU TO ANY OF THE PROPOSED AMENDMENTS.

22    THIS IS A REDLINED DOCUMENT HE'S SHOWING YOU.  HE SHOWED

23    YOU CLEAN PAGES, BEGINNING WITH 4319, THE PARAGRAPH 4319, IT IS

24    LITERALLY VERBATIM TO THE INFRINGEMENT CONTENTIONS THAT WE HAVE

25    BEEN TALKING ABOUT.  IT IS NOT AMENDED, RIGHT.  THEY DON'T NEED

1  YOUR PERMISSION TO DO THAT LANGUAGE, AND THAT LANGUAGE IS NOT

2  THE SUBJECT OF THIS MOTION.

3      OUR POINT IS THEY HAVE ALREADY GOT THAT, WE ARE NOT

4  WORRIED ABOUT THAT.  THEY DIDN'T LOOK AT THAT FOR SUMMARY

5  JUDGEMENT.  BUT THE ONLY POSSIBLE REASON TO LET THEM TAKE SOME

6  OF THESE WORDS AND RE-SCRAMBLE THEM INTO OTHER PARAGRAPHS, IS

7  TO ARGUE THAT NOW THEY'VE GOT SOMETHING ELSE, THEY GOT

8  SOMETHING BIGGER.  THAT'S THE ONLY POSSIBLE OUTCOME OF THIS

9  AMENDMENT.

10     BECAUSE WE KNOW WHAT THEIR INTENTION IS.  THEIR INTENTION

11 IS TO BE ABLE TO ARGUE TO THE COURT, HERE IT IS IN THIS REPORT,

12 SOMETHING NEW AND DIFFERENT IS DISCLOSED HERE AND THIS IS, OR

13 RATHER WE ARE DISCLOSING, HERE'S SOMETHING THAT'S ALREADY

14 RESIDENT AT THE COMPONENT.  THAT IS THE REASON THEY ARE TRYING

15 TO MAKE THAT AMENDMENT.

16     AND THAT IS EXACTLY THE QUESTION FOR YOU IS, WAS SUCH A

17 THING WITH RESPECT TO THE █████████████████████████

18 ███████  ACTUALLY DISCLOSED IN THE INFRINGEMENT CONTENTIONS?

19 AND IT'S NOT.

20     AND SO, I MEAN, HE HAS ABSOLUTELY PROVEN MY POINT.  YOU

21 SHOULD GRANT THIS MOTION.  SHE DOESN'T NEED AN AMENDMENT IN

22 ORDER TO DO WHAT HE SHOWS YOU.  AND THAT'S NOT OUR FEAR.  OUR

23 FEAR IS THEM RE-SCRAMBLING OTHER THINGS AND MAKING THEM FOR THE

24 EXPRESS PERSON AND WE KNOW IT'S FOR THE EXPRESS PURPOSE OF

25 SAYING THEY SOMEHOW TRACK THE █████████████████

```
1              THE COURT:  WHAT OTHER THINGS, MR. GAUDET?  WHAT

2     OTHER THING?

3              MR. GAUDET:  YOUR HONOR --

4              THE COURT:  BECAUSE -- LET ME -- WHAT I HEAR YOU

5     SAYING IS THERE'S NO ISSUE ABOUT AMENDMENT TO THE REPORT AND

6     NOW THEY ALIGN WITH CONTENTIONS.

7         THE LANGUAGE IN THE REPORT HAS ALWAYS BEEN THERE, THE

8     LANGUAGE IN THE CONTENTIONS HAS ALWAYS BEEN WHAT IT IS --

9     LOOKING AT THE OPERATIVE CONTENTIONS.  THE LANGUAGE IN THE

10    REPORT MIRRORS THAT, AND THAT IS WHAT FINJAN IS POINTING TO IN

11    SUPPORT OF THEIR THEORY OF THE MOBILE PROTECTION CODE BEING

12    RESIDENT IN THE SANDBOX.

13             MR. GAUDET:  YOUR HONOR --

14             THE COURT:  SO WHAT IS THE LANGUAGE THAT CONCERNS

15    YOU?  WHAT IS THE -- BECAUSE THIS HAS COME UP, THIS IS BROUGHT

16    BEFORE ME BECAUSE THE REPORT HAS BEEN AMENDED, BECAUSE THEY

17    MADE CHANGES, THAT'S WHAT JUDGE FREEMAN SAID.  IF YOU MAKE

18    CHANGES TO THE REPORT, IT'S GOT TO TIE BACK TO THE CONTENTIONS.

19    AND IF THERE'S A FIGHT ABOUT THAT, TAKE IT TO JUDGE VAN KEULEN.

20        BUT IF THEY ARE RELYING ON LANGUAGE THAT HAS NOTHING TO DO

21    WITH THE CHANGES THEY HAVE MADE, THEN WE ARE BACK TO A FIGHT

22    ABOUT WHETHER AN OPINION OFFERED AT TRIAL IS WITHIN THE SCOPE

23    OF THE REPORT.  AREN'T WE?

24             MR. GAUDET:  AND YOUR HONOR, FOR EXAMPLE, IF WE, AND

25    I'M KIND OF -- I'M DOING THIS ON THE FLY.  HE TOOK YOU TO A
```

1      SECTION THAT WASN'T --

2              THE COURT:  HE DID.

3              MR. GAUDET:  SO I WANTED FOR EXAMPLE TO TAKE YOU TO,

4      THIS IS JUST AN EXAMPLE, TAKE YOU TO, IT'S PAGE 892.

5              THE COURT:  SO ARE WE IN EXHIBIT 2 OF FINJAN'S

6      OPPOSITION?

7              MR. GAUDET:  CORRECT.

8              THE COURT:  AND WE ARE AT PAGE 892, WHICH BEGINS WITH

9      PARAGRAPH, LET'S SEE, I HAVE PDF 892, YOU WANT PRINTED

10     PAGE 892?

11             MR. GAUDET:  CORRECT.

12         AND WHILE I'M DOING THIS, I WILL ASK MR. POWERS TO TELL ME

13     WHERE THE DISCUSSION OF SECTION 14-B IS.

14         BUT YOUR HONOR, IF YOU TELL ME WHEN YOU ARE THERE AND I

15     WILL SHOW YOU, THIS WILL GIVE YOU SOME EXAMPLES.

16             THE COURT:  YEAH, I'M JUST GRABBING IT.  BECAUSE THE

17     EXHIBIT IS LARGE, IT'S ALL IN LARGE CHUNKS.  OKAY.  I'M THERE.

18     892.  PRINTED PAGE 892.

19             MR. GAUDET:  YEAH.

20             THE COURT:  OKAY.  PARAGRAPH 1600.

21             MR. GAUDET:  WE WILL ACTUALLY GO TO 1599, THAT WILL

22     BE FINE.

23             THE COURT:  I'M SORRY?

24             MR. GAUDET:  PARAGRAPH 1999 WILL BE A FINE EXAMPLE.

25         HERE, WE HAVE A REDLINE.  SO THE STUFF THAT FINJAN'S

```
 1        COUNSEL SHOWED YOU IS NOT WHAT THIS MOTION IS ABOUT.  THIS

 2     MOTION IS ABOUT THEIR EFFORT TO CHANGE THE REPORT, OKAY.

 3          SO HERE WE HAVE THE REDLINE.  THE OLD LANGUAGE WAS THE

 4     THINGS THAT WERE CONSIDERED AT SUMMARY JUDGEMENT, RIGHT.

 5     SCRIPT USED TO RELATE CERTAIN USER ACTIONS, MASTER SCRIPT,

 6     RIGHT.  THEY WANT TO SUBSTITUTE THAT OUT AND PUT IN THEIR SORT

 7     OF MAGIC PHRASE, "PARAMETERS TO RUN THE FILE OR URL."

 8          AND THIS HAPPENS OVER, AND OVER, AND OVER, AND OVER AGAIN.

 9     AND THEY WANT TO DO THE SAME THING WHERE THEY SAY ███████

10     ███████  IN OTHER PARTS, TO TAKE THAT OUT AND PUT IN THE PHRASE,

11     VIRTUAL ENVIRONMENT AGENT.  BUT OTHERWISE, THE ANALYSIS IS

12     LITERALLY THE SAME.  IT'S EXACTLY THE SAME SUPPORTING SENTENCES

13     AROUND IT THAT THEY HAD.

14          AND THIS IS SO IMPORTANT BECAUSE WHEN THEY ARE TALKING

15     ABOUT THE ███████████  AND ALL THE EXPLANATION OF WHAT IT

16     DOES, AND WHAT ITS FUNCTIONS ARE AND HOW IT'S ALWAYS BEEN

17     THERE, THEY JUST WANT TO DROP IN THE PHRASE, VIRTUAL

18     ENVIRONMENT AGENT THERE.

19          SO NOW IN THAT CONTEXT, SURE THE VIRTUAL ENVIRONMENT

20     AGENT --

21               THE COURT:  YES, MR. GAUDET, YES.

22               MR. GAUDET:  JOE, DO YOU HAVE AN EXAMPLE OF THAT?

23               MR. POWERS:  LET ME GET OFF MUTE.  I'M TRYING TO

24     NAVIGATE TO THAT EXHIBIT.  EXHIBIT 2 OF THE OPPOSITION.

25               MR. GAUDET:  CORRECT.
```

1          MR. POWERS:  YOU WANT THE 14-D ANALYSIS?

2          MR. GAUDET:  YES.

3          MR. POWERS:  SCROLLING THROUGH THE TABLE OF CONTENTS,

4   IT DIRECTS US TO CLAIM 14 ANALYSIS STARTS ON PAGE 2117, AND THE

5   14-D ANALYSIS STARTS ON 2566.

6          MR. GAUDET:  AND THEN -- I CHANGED THE SLIDE.

7      WAS IT PAGE 450 OR 455 THAT HAD THE GENERAL DISCUSSION OF

8   THE ██████████████   451 OF THEIR ORIGINAL REPORT.  I'M SORRY,

9   OF EXHIBIT 1.

10         MR. POWERS:  IT'S SHOWING A STRIKE THROUGH, FOR

11  EXAMPLE IN THIS EXHIBIT, ON PAGE 382, PARAGRAPH 632, AS AN

12  EXAMPLE.

13         MR. GAUDET:  YOU ARE ON EXHIBIT 2, JOE?

14         MR. POWERS:  YES.

15         MR. GAUDET:  YOUR HONOR, THANK YOU FOR BEARING WITH

16  US JUST FOR A MOMENT.

17         THE COURT:  THAT'S ALL RIGHT.  WHAT WAS THAT, 382?

18         MR. POWERS:  I'M LOOKING AT PAGE 382 TO 392 OF THE

19  PDF.  AND IT'S PARAGRAPH 632.

20         THE COURT:  OKAY.  ALL RIGHT.

21      AGAIN, I'M LOOKING, AND JUST AS AN EXAMPLE, SO ██████

22  ██████ IS STRUCK OUT, VIRTUAL ENVIRONMENT AGENT IS THE

23  REPLACEMENT LANGUAGE, AND WHEREVER THERE'S A DISCUSSION ABOUT

24  NOW, IN THE AMENDED REPORT, ABOUT VIRTUAL ENVIRONMENT AGENT

25  REPLACING ██████████████

```
 1              MR. GAUDET:  YOUR HONOR, IF I COULD HAVE ONE MORE

 2      SECOND.  IT'S PARAGRAPH 650 -- JOE?

 3              MR. POWERS:  THE ONE WE JUST MENTIONED?

 4              MR. GAUDET:  YEAH.  YOUR HONOR, I APOLOGIZE.

 5              MR. POWERS:  PARAGRAPH 632, THAT'S PDF PAGE 392, PAGE

 6      382 OF --

 7              THE COURT:  YEAH, WE WERE THERE.

 8              MR. GAUDET:  OKAY.  THIS IS EXACTLY THE POINT

 9      YOUR HONOR, ON PARAGRAPH 632, OKAY.

10          THIS PARAGRAPH IS TALKING UN AMBIGUOUSLY, ORIGINALLY ABOUT

11      THE ███████████     AND IT ONLY MAKES SENSE IF YOU ARE TALKING

12      ABOUT THE ███████████

13          AND SO YOU COULD SUBSTITUTE IN THE WORD REFRIGERATOR FOR

14      THE WORD ███████████   AND THE EVIDENCE AND THE SUPPORT WOULD

15      STILL BE POINTING TO THE FUNCTIONALITY OF THE ███████████

16      OKAY.

17          WHAT THEY WANT TO DO IS BY DROPPING THE PHRASE "VIRTUAL

18      ENVIRONMENT AGENT" IN THERE, ALL RIGHT, THEY'VE NOW GIVEN

19      THEMSELVES, BY DEFINITION, EXACTLY THE DISCLOSURE THEY NEED TO

20      SHOW TO THE COURT AT TRIAL, IN ORDER TO PROVE THAT THEY SHOULD

21      BE ABLE TO TALK ABOUT SOMETHING THAT IS ATTACHED TO EVERY

22      RUNNING VIRTUAL MACHINE, NOT WITHIN IT, BUT ATTACHED TO IT,

23      THAT IS ALREADY THERE THAT -- THIS IS DESCRIBING THE

24      FUNCTIONALITY OF THE ███████████

25              BUT NOWHERE DID THEY MAKE THIS CORRELATION BETWEEN ████
```

1        ████      AND THIS PHRASE VIRTUAL ENVIRONMENT AGENT ANYWHERE IN

2     THE CONTENTIONS.

3             SO IF THEY ARE ALLOWED TO MAKE THIS PLACEMENT, THEY HAVE

4     SOLVED THEIR PROBLEM AT TRIAL.  BECAUSE NOW AT TRIAL, WHEN THE

5     QUESTION IS ASKED, I'M GOING TO POINT TO PARAGRAPH 632 AND SAY,

6     IT'S RIGHT HERE, YOUR HONOR, WE ARE NOT GOING TO USE THE PHRASE

7     ████████████      BUT THE PRECISE FUNCTIONALITY OF THE  ████

8     ████      IS NOW IN OUR REPORT.

9             AND OUR ANSWER IS, RIGHT, BUT YOUR HONOR, THEY SHOULDN'T

10    HAVE BEEN ALLOWED TO PUT THE VIRTUAL ENVIRONMENT AGENT IN THE

11    REPORT HERE BECAUSE THE VIRTUAL ENVIRONMENT AGENT, THAT'S NOT A

12    PHRASE THAT EVER WOULD HAVE PUT US ON NOTICE ABOUT THE  ████

13    ████

14            AND AS AN ASIDE, DURING FINJAN COUNSEL'S DISCUSSION, HE

15    COULD NOT ADDRESS THE FACT THAT IT LITERALLY CONTRADICTS THE

16    DISCLOSURE MUCH A VIRTUAL ENVIRONMENT AGENT BEING SOMETHING

17    THAT IS INSIDE AND THAT, YOU KNOW, THE TWO PARAGRAPHS LATER,

18    THAT WAS TRANSMITTED.

19            AND IN FACT, HE WENT SO FAR AS TO SHOW FOR AN EXAMPLE,

20    WHERE THE VIRTUAL ENVIRONMENT AGENT INCLUDES AN ACTION, E.G.

21    SANDBOXING.  SO IT'S LITERALLY EVERYTHING, WHICH IS THE POLAR

22    OPPOSITE OF NIT PICKY DISCLOSURE.

23            SO THEY ARE TAKING A WORD THAT IS HOPELESSLY GENERIC,

24    OKAY, NUMBER ONE, AND EVEN IN ITS HOPELESS GENERICNESS, STILL

25    EXCLUDED THE VERY THING THEY ARE TRYING TO INCLUDE.  AND THEY

1    ARE GETTING PERMISSION TO DROP IT INTO A PARAGRAPH THAT NOW

2    UNAMBIGUOUSLY DESCRIBES THE VERY THING THEY DIDN'T GIVE US

3    NOTICE ON AND THEY HAVE SOLVED THEIR PROBLEM AT TRIAL, WE HAVE

4    NO OBJECTION NOW.  IF THIS AMENDMENT IS PERMITTED, WE HAVE NO

5    OBJECTION AT TRIAL, AND THEY HAVE DONE AN ENDRUN AROUND THE

6    ENTIRE PROCESS.

7           THE COURT:  BUT WHERE THEY HAVE DROPPED IT IN,

8    MR. GAUDET, IF IT IS THE ENTIRE SECTION VERBATIM OUT OF THE

9    CONTENTION, THIS IS MY POINT, THEN THE FIGHT IS, WHAT IS

10   DISCLOSED?  IT'S DISCLOSED IN THE CONTENTIONS, IT'S DISCLOSED

11   THIS THE REPORT.  YOUR ISSUE IS HE DOESN'T DISCLOSE WHAT THEY

12   SAY IT DOES.

13          MR. GAUDET:  YOUR HONOR, THANK YOU, AND LET ME

14   CLARIFY THIS BECAUSE I MAY HAVE JUMPED OVER SOME THINGS.

15      THIS PARAGRAPH 632, NOTHING LIKE IT IS IN THE CONTENTIONS.

16   NOTHING.

17          THE COURT:  I UNDERSTAND THAT.

18      SO -- BUT WE HAVE BEEN, AND IN THE PAPERS, EVERYBODY

19   FOCUSED ON, AND I THINK APPROPRIATELY, THE LANGUAGE IN THE

20   REPORT THAT YOU ARE THE OPERATIVE CONTENTION, WHERE IN THE

21   REPORT IS IT ADDRESSING CLAIM 14 SECTION D, WHERE THERE'S A

22   SUBSTITUTION THAT YOU'RE OBJECTING TO?

23          MR. GAUDET:  THAT'S EXACTLY THE POINT, YOUR HONOR.

24      THAT WAS HIS PARAGRAPH 4319.  THERE IS NOT EVEN A PROPOSED

25   SUBSTITUTION THERE.

1        IN OTHER WORDS, THE LANGUAGE THAT HE POINTED TO IN THE

2   REPORT AS THE BASIS OF THIS MOTION, IS IRRELEVANT IN THIS

3   MOTION, IT DOESN'T EVEN HAVE A PROPOSED SUBSTITUTION.

4        WE ARE FINE WITH THAT.  THEY CAN KEEP THAT IN.  ALL OF THE

5   PROPOSED SUBSTITUTIONS FALL IN LINE WITH THIS EXAMPLE WHERE THE

6   SUBSTITUTION IS INTO A PARAGRAPH THAT DOES NOT COME OUT OF THE

7   INFRINGEMENT CONTENTIONS.

8        BUT THEY ARE TAKING WORDS THAT APPEAR IN OTHER CONTEXT IN

9   THE INFRINGEMENT CONTENTIONS AND DROPPING THEM INTO NEW

10   PARAGRAPHS OR PARAGRAPHS THAT ONLY APPEAR IN THE REPORT AND NOT

11   THE CONTENTIONS; AND BY DOING SO, GIVE THOSE WORDS LIKE VIRTUAL

12   ENVIRONMENT AGENT A WHOLE NEW MEANING.

13        SO WE DO NOT OBJECT AT ALL, WE DON'T HAVE TO.  THE

14   LANGUAGE HEY SHOWED YOU THE VERBATIM STUFF FROM THE REPORT, IT

15   WAS ALWAYS IN THERE.  THEY NEVER AMENDED IT.  THAT'S NOT

16   SUBJECT TO THIS MOTION.  WE ARE NOT TRYING TO STRIKE IT THEY

17   DIDN'T RELY ON IT AT SUMMARY JUDGEMENT.

18           THE COURT:  WELL, MR. GAUDET, WHERE IN YOUR PAPERS DO

19   YOU MAKE THIS CLAIM THAT WHAT YOU WANT TO HAVE STRICKEN IS

20   WHERE THEY ARE ADOPTING OR DROPPING IN THESE WORDS THAT

21   MAINTAIN THE FUNCTIONALITY AND THE FUNCTIONALITY DOESN'T TIE

22   BACK?

23        YOU ARE SAYING, I'M HEARING FOR THE FIRST TIME FROM CISCO,

24   OH HERE'S A PARAGRAPH THAT IS FUNDAMENTAL TO THE EXPERT'S

25   OPINION, IT'S BEEN AMENDED.  IT'S FUNDAMENTAL TO THE EXPERT'S

1      OPINION BUT IT IS NOT REJECTED ANYWHERE IN THE CONTENTION.

2          I MAY HAVE OVERLOOKED IT, SO THAT'S WHY I'M ASKING THE

3      QUESTION.

4              MR. GAUDET:  YOUR HONOR, IF YOU BEGIN, BOTH IN OUR

5      OPENING BRIEF AND IN OUR REPLY, THAT WE ADDRESS, IT'S JUST

6      THREE WORDS, YOUR HONOR, IT'S "VIRTUAL ENVIRONMENT AGENT," IT'S

7      ██████████  AND IT'S  ████████████

8          AND OUR POINT IS EVERY SINGLE PLACE, AND THIS IS ONE

9      EXAMPLE OF PROBABLY A THOUSAND, EVERY SINGLE PLACE THEY DO IT,

10     THAT'S EXACTLY WHAT'S HAPPENING.

11         AND SO --

12             THE COURT:  NOT EVERY PLACE, NOT EVERY PLACE.

13     BECAUSE WE ARE LOOKING -- WE LOOKED AT EXAMPLES WHERE THE

14     REPLACEMENTS ARE MADE IN THE 14-D DISCUSSION, AND YOU SAID IT

15     DOESN'T MATTER.

16             MR. GAUDET:  NO, NO.  NO, YOUR HONOR.  THOSE AREN'T

17     REPLACEMENTS.  THE 14-D DISCUSSIONS HE'S REFERRING TO, NOTHING

18     WAS REPLACED.  THAT'S EXACTLY HOW IT EXISTED IN THE ORIGINAL

19     REPORT.

20             THE COURT:  I UNDERSTAND WHERE THERE'S NO REDLINE.

21         BUT I'M LOOKING AT WHEN WE ARE TALKING ABOUT PARAMETERS TO

22     RUN THE SAMPLE FILE.  AND NOW THAT HAS BEEN DROPPED IN.  BUT

23     IT'S YOUR POINT THAT THAT'S NOT FOR ANY OF THE REMAINING TERMS?

24     BACK AT PARAGRAPH 43.

25             MR. GAUDET:  LET ME GO TO THAT EXAMPLE.

1          I'M SORRY, SAY THAT AGAIN, YOUR HONOR.

2               THE COURT:  4329.

3               MR. GAUDET:  THANK YOU, YOUR HONOR.

4          4329.  THE PROBLEM I HAVE IS THE VERSION OF THE DOCUMENT

5     IS SO LARGE THAT EVERY TIME I MAKE A LITTLE MOVE, IT JUMPS ME

6     MUCH FARTHER.  4329.  THIS IS EXHIBIT 2, YOUR HONOR?

7               THE COURT:  YES.  OH, OH, I'M SORRY.  OH, THAT'S

8     RIGHT, THAT'S RIGHT.  4329.

9          OKAY.

10              MR. GAUDET:  AND EXHIBIT 2?

11              THE COURT:  RIGHT.

12              MR. GAUDET:  OKAY.

13              THE COURT:  ON PDF PAGE 2581, IF YOU ARE SEARCHING.

14              MR. GAUDET:  WHAT'S SHOWING ME DOWN IS I'M USING A

15    VERSION OF THIS ON OUR SYSTEM THAT HAS A DIFFERENT PDF AND I'M

16    ALMOST THERE.  I'M THREE PARAGRAPHS AWAY AND THEN I WILL BE

17    THERE.  SO THANK YOU AGAIN FOR YOUR PATIENCE, YOUR HONOR.

18    OKAY.  4329.

19              THE COURT:  SO WE ARE IN A DISCUSSION OF CLAIM 14 AND

20    THERE'S A SUBSTITUTION.  BUT YOUR POINT IS, IF I'M

21    UNDERSTANDING IT, THAT THIS IS NOT SUBSTITUTING ANY OF THE

22    EITHER OF THE THREE REMAINING DISPUTED TERMS.

23              MR. GAUDET:  NO, YOUR HONOR.  THIS IS THE PROBLEMATIC

24    SUBSTITUTION.  THIS LANGUAGE, THIS LANGUAGE WAS NOT IN THE

25    ORIGINAL CONTENTIONS, OKAY.

1     SO THEY ARE TAKING -- THIS LANGUAGE IS DISCUSSING THINGS

2 THAT THEY ACCUSED IN THE ORIGINAL REPORT, RIGHT, EXECUTING

3 SCRIPTS, SCRIPTS USED TO EMULATE CERTAIN USER ACTIONS, GDB

4 STUBS, MASTER SCRIPT FOR USING DYNAMIC ANALYSIS, RIGHT.  THOSE

5 ARE THE THINGS THEY ACCUSED IN THE ORIGINAL REPORT THAT WERE

6 SUBJECT TO THE SUMMARY JUDGEMENT ORDER.

7     THE PARAGRAPH ITSELF DOES NOT EXIST IN THE INFRINGEMENT

8 CONTENTIONS.  BUT WHAT THEY NOW WANT TO DO, JUST LIKE THE

9 EXAMPLE WITH THE ███████████ IS THEY WANT TO TAKE OUT THE

10 SPECIFIC NAMES, OKAY, THAT WERE THE SUBJECT OF THE SUMMARY

11 JUDGEMENT PAPERS, AND DROP IN THIS PHRASE, "PARAMETERS TO RUN

12 THE SAMPLE FILE OR URL," THIS GENERIC PHRASE, WHICH BY ITSELF

13 WOULDN'T TELL YOU ANYTHING, BUT IS NOW A SIMPLE CUT AND PASTE

14 JOB, IT'S NOW DROPPED INTO A PARAGRAPH THAT GIVES YOU THE

15 NOTICE YOU WOULD HAVE NEEDED TO MAKE SENSE OF THIS.

16     AND SO THEN IT GOES ON TO EXPLAIN, AND THIS IS JUST ONE

17 EXAMPLE, BUT THIS IS EXACTLY THE PROBLEM, THAT THIS PARAGRAPH

18 WITH ALL THE SURROUNDING EXPLANATION THAT LETS YOU KNOW YOU ARE

19 AT THREATGRID.  YOU ARE NOT BEING SENT THERE, OKAY.

20     ALL THAT EXPLANATION, THAT WOULD HAVE BEEN -- IT WOULD

21 HAVE BEEN SO SIMPLE.  IT WOULD HAVE TAKEN A SENTENCE FOR THE

22 JUDGE TO SAY THESE ARE COMPONENTS OF THREATGRID OR SANDBOX.

23 THE IDEA THAT THAT WOULD HAVE PROVEN A NEGATIVE, I DON'T GET.

24     BUT IN ANY EVENT, ALL THE EXPLANATION THAT'S HERE IS

25 NOWHERE IN THE INFRINGEMENT CONTENTIONS, OKAY.  BUT IF WE GET

1    TO TRIAL AND THEY SAY, WELL, YOU KNOW, IT'S THESE SCRIPTS, OR

2    GDB STUBS, ACTUALLY, IN THAT PARTICULAR EXAMPLE ON SUMMARY

3    JUDGEMENT, THE POINT IS THE SAME, OR THEY SAY IT'S THINGS, YOU

4    KNOW, IT'S THINGS THAT ALLOW, JUST TO EXPLAIN IT BY A FUNCTION,

5    THEY WILL COME STRAIGHT TO THIS PARAGRAPH, OKAY, THEY WILL

6    POINT TO IT WITH THE SUBSTITUTION, AND THEY WILL SAY, ALL

7    RIGHT, PARAMETERS TO RUN THE SAMPLE FILE OR URL, AND HERE IS

8    THE EXAMPLE.

9         BUT THE PROBLEM IS, THAT THEORY, THIS THEORY IN THE

10   PARAGRAPH, THAT IS EXECUTING SCRIPTS, SCRIPTS USED TO EMULATE

11   CERTAIN USER ACTIONS, GDB STUBS, MASTER SCRIPT USED FOR DYNAMIC

12   ANALYSIS.  THAT STUFF, EITHER BY NAME OR BY FUNCTION, IS

13   NOWHERE IN THE INFRINGEMENT CONTENTION.

14        AND SO THIS PHRASE, "PARAMETERS TO RUN THE SAMPLE FILE OR

15   URL," THAT MORE GENERIC PHRASE THAT IS IN THE INFRINGEMENT

16   CONTENTIONS, IS NEVER USED IN A WAY THAT WOULD DENOTE WHAT'S

17   BEING DISCLOSED IN THIS REPORT.

18        SO BY LETTING THEM SWAP THIS PHRASE IN, YOU ARE SOLVING

19   THEIR PROBLEM.  JUST LIKE THAT, THEY NEVER NEED TO DEAL WITH

20   THE INFRINGEMENT CONTENTIONS, WE ARE TAKING A PHRASE OUT OF THE

21   INFRINGEMENT CONTENTIONS THAT WAS NEVER USED THIS WAY, THAT WAS

22   GENERIC AND ALMOST MEANINGLESS; IN FACT, IT TALKED EXPRESSLY

23   THAT IT WAS ONLY THINGS THAT WERE TRANSMITTED, AND WE ARE

24   DROPPING THAT INTO THIS PARAGRAPH WHERE SUDDENLY THAT SAME

25   PHRASE, FOR THE FIRST TIME, DENOTES THINGS THAT WE ARE ALWAYS

1        AT THE SANDBOX AND THAT BY FUNCTION, THE DESCRIPTION EXECUTING

2        SCRIPT, SCRIPTS USED TO EMULATE CERTAIN USER ACTIONS, GDB

3        STUBS, ET CETERA.

4             THAT'S WHY -- THE WHOLE POINT OF OUR MOTION IS THIS ALWAYS

5        JUST COMES BACK TO, DID THE INFRINGEMENT CONTENTIONS, BY NAME

6        OR FUNCTION, DESCRIBE THESE SEVEN COMPONENTS?  AND IF THE

7        ANSWER IS NO, THEY CAN'T AMEND FOR ANYTHING, THERE'S NO REASON

8        TO LET THEM AMEND.  AND THAT'S THE WHOLE POINT OF THE MOTION.

9             YOUR HONOR, DID THAT ADDRESS YOUR QUESTION WITH RESPECT TO

10       THAT PARTICULAR PORTION?

11                THE COURT:  IT DOES.  IT DOES.

12                MR. GAUDET:  OKAY.

13            A FEW OTHER ISSUES THAT I WANTED TO HIT, AND I WILL DO

14       THIS QUICKLY, THE FIRST IS, THEY HAVE NO ANSWER TO THE FACT

15       THAT THE DISCLOSURE LITERALLY CONTRADICTS THE ███████████

16       IT CAN'T BE THE SAME THING.  IT IS NOT INSIDE.  AND THAT

17       REFERENCE OVER TO THE SANDBOXING THING, KIND OF PROVES THE

18       POINT.

19            THE NOTION THAT IF WE DIDN'T UNDERSTAND VIRTUAL

20       ENVIRONMENT AGENT AND THESE THOUSANDS OF PAGES, WE NEEDED TO DO

21       SOMETHING, IN A CASE IN WHICH WE FILED AND WON THREE MOTIONS,

22       IS MORE THAN IRONIC.

23            AND THEY HAVE THE PROCESS EXACTLY BACKWARDS.  THEY TRIED

24       TO ADD SOME OF THESE THINGS AND THEY FAILED.  AND THAT FAILURE,

25       IF IT WAS TRUE, IF IT WAS TRUE THAT ALL THEY WERE ADDING WAS A

1    NAME AND THAT THE FUNCTIONALITY WAS ALREADY IN THE CONTENTIONS,

2    THEY WOULD HAVE WON THE MOTION TO AMEND IN THE FIRST PLACE.

3    THAT IS WHAT THE CASE LAW SAYS.

4         THEY ARE ACTING LIKE LOSING THAT MOTION GIVES THEM CART

5    BLANCHE AND NOW THEY CAN HAVE ANYTHING THEY WANT TO DO.

6    THEY'VE GOT THE PROCESS EXACTLY BACKWARDS.  BUT WHAT WILL

7    BECOME OF THIS IS A PARTY THAT TWICE LOST A MOTION TO AMEND AND

8    LOST A MOTION TO STRIKE, NONETHELESS GETS TO DROP IN EXACTLY

9    WHAT IT ALWAYS WANTED TO DO, AT THE LAST MINUTE AFTER SUMMARY

10   JUDGEMENT, TO RECREATE THE MEANING OF ITS EXPERT REPORTS.

11        THE -- WITH RESPECT TO THE SUMMARY JUDGEMENT THING HE'S

12   REFERENCING, I DON'T HAVE THOSE DOCUMENTS IN FRONT OF ME.  I

13   CAN TELL YOU DEFINITIVELY MR. WATCHINSKI, AND IT'S IN THE

14   TESTIMONY, MR. WATCHINSKI SAYS IT'S NOT IN THE VIRTUAL

15   ENVIRONMENT, RIGHT.  THAT ██████████ IS NOT IN THE VIRTUAL

16   ENVIRONMENT.  IT'S ALSO NOT TRANSMITTED.

17        AND THEY ARE USING THE PHRASE, VIRTUAL ENVIRONMENT AGENT,

18   IT IS, IT'S SORT OF THIS MEANINGLESS, GENERIC PHRASE.  IN A

19   VIRTUAL ENVIRONMENT, ANYTHING THAT'S VIRTUAL, AN AGENT.  I

20   MEAN, THAT THE CLASSIC, NO MEANINGFUL NOTICE.  AND ON TOP OF

21   THAT, EVEN IF IT'S A BROAD PHRASE, IT SHOULD BE EXCLUDED.

22        LAST POINT, ██████████████

23        AGAIN, FINJAN'S COUNSEL -- I'M NOT -- I DON'T THINK

24   INTENTIONALLY, BUT LEFT OUT SOME PRETTY IMPORTANT PARTS OF THE

25   SUMMARY JUDGEMENT ORDER, RIGHT.

1      WE MOVED FOR SUMMARY JUDGEMENT ON EVERY THEORY THAT

2   INVOLVED TRANSMISSION, THAT INVOLVED THINGS FROM, AS WE

3   UNDERSTOOD IT, THAT INVOLVED THINGS FROM THE GATEWAY TO THE

4   SANDBOX.  THEY SAID, WE CONCEDE, WHITE FLAG.  AND THAT IS

5   FOOTNOTE 6 ON PAGE 15 OF THE SUMMARY JUDGEMENT ORDER.

6      THAT STUFF IS OUT.  OKAY.  AND IN FACT, AT THE TOP OF THAT

7   PAGE, JUDGE FREEMAN DESCRIBED ALL SEVEN OF THESE COMPONENTS AND

8   SAID THEY ARE ALL COMPONENTS OF THREATGRID AND ▮▮▮▮▮

9      SO WITH THEIR ADMISSION THAT ▮▮▮▮ -- THAT THE LANGUAGE

10  THEY ARE TRYING TO SUBSTITUTE IN IS CLEARLY TRANSMITTED, THAT'S

11  IT, I MEAN, THE SUMMARY JUDGEMENT ORDER MAKES CLEAR THAT THESE

12  THINGS ARE NOT -- AS THEY ARE PRESENTED, ARE COMPONENTS OF

13  THREATGRID AND ▮▮▮▮ AND THE DISCLOSURE OF THEM IN THE

14  CONTENTIONS WAS TALKING ABOUT THINGS THAT WERE TRANSMITTED FROM

15  THREATGRID TO THE GATEWAY.

16     AND I SHOULD BE CLEAR BECAUSE I DON'T WANT TO THROW THIS

17  WORD "TRANSMISSION" AROUND TOO LOOSELY.  WE MOVED FOR SUMMARY

18  JUDGEMENT ON ALL MATTERS TRANSMITTED, ALL COMPONENTS

19  TRANSMITTED FROM THE GATEWAY TO THREATGRID, OKAY.  THEY

20  CONCEDED THAT NONE OF THOSE WOULD BE MOBILE PROTECTION CODE,

21  ALL RIGHT.  THE DISCLOSURE OF THIS PHRASE THAT THEY ARE USING

22  WAS, AS I READ THROUGH IN THAT VERY PARAGRAPH, IT IS FROM THE

23  SANDBOX TO THREATGRID.  WITH THAT, IT'S OUT.

24     NOW, THE QUESTION OF WHETHER SOMETHING CAN BE TRANSMITTED

25  SORT OF WITHIN THREATGRID IS KIND OF A WHOLE DIFFERENT ISSUE

1    AND IT SIMPLY WASN'T BRIEFED.  BUT THAT'S COMPLETELY BESIDE THE

2    POINT WHAT THESE THINGS ARE.

3         TWO OTHER POINTS.  NUMBER ONE.  THE PHRASE THEY ARE TRYING

4    TO USE, "PARAMETERS TO RUN THE SAMPLE FILE OR URL," THAT'S

5    THEIR PHRASE, THAT'S WHAT THEY HAVE TO HAVE-

6              THE COURT:  I UNDERSTAND.  I UNDERSTAND, MR. GAUDET.

7              MR. GAUDET:  RIGHT.

8         IT IS SO GENERIC THAT THAT IS THE SAME PHRASE THEY

9     PROPOSED FOR COMPONENTS THAT WE WON SUMMARY JUDGEMENT ON, AND

10     THEY LOST SUMMARY JUDGEMENT ON.

11         BY DEFINITION, THAT CAN'T BE SPECIFIC ENOUGH TO PUT US ON

12    NOTICE.  AND IT'S MEANINGLESS, "PARAMETERS TO RUN THE SAMPLE

13    FILE OR URL," IT COULD BE ANYTHING.

14         LAST POINT IS THEY DID SPECIFICALLY SEEK LEAVE TO ADD

15    ███████████████████  AND IT WAS DENIED.  AND I DON'T KNOW HOW

16    MUCH MORE A PARTY CAN LITIGATE AND WIN AN ISSUE THAN OPPOSING A

17    MOTION TO AMEND THE VERY TERM, RIGHT, AND WINNING IT, SUCH THAT

18    BY DEFINITION, THE TERM AND CORRESPONDING FUNCTIONALITY ARE NOT

19    IN THE INFRINGEMENT CONTENTIONS AND THEN SEE A REPORT WITH THE

20    VERY SAME TERMS AND THEN SEE THAT PARTY GET TO JUST SWAP IN A

21    GENERIC PHRASE AND KEEP EXACTLY THE FUNCTIONALITY IN IT.

22         IT MAKES THE ENTIRE PROCESS OF US WINNING THE INFRINGEMENT

23    CONTENTION MOTIONS, WINNING THE MOTION TO STRIKE, COMPLETELY

24    IRRELEVANT.

25         AND PERHAPS THE MOST IMPORTANT POINT, YOUR HONOR, IS

1    FINJAN DOESN'T DESERVE THE BENEFIT OF THE DOUBT AT ALL.  THIS

2    WOULD HAVE BEEN SO EASY, THIS WOULD HAVE BEEN A SENTENCE TO PUT

3    US ON REAL NOTICE.  BUT INSTEAD, WE GET THOUSANDS AND THOUSAND

4    THOUSANDS OF PAGES OF THINGS THAT ARE DESIGNED TO KEEP US

5    GUESSING AND FLY AROUND AND TRY TO FIGURE OUT WHAT THEY ARE

6    TALKING ABOUT.

7        AND ESPECIALLY AFTER ALL THE MOTIONS THEY LOST, THEY DON'T

8    DESERVE THE BENEFIT OF THE DOUBT ON ANY OF THIS, IT'S VERY

9    STRAIGHTFORWARD.  AND YOU KNOW, DESPITE IT BEING AN HOUR AND

10   45 MINUTES, IT COMES DOWN TO A VERY EASY QUESTION, WAS ███

11   ███   OR ITS FUNCTIONALITY OR ████████   AND ITS

12   SPECIFIC FUNCTIONALITY, IN A NIT PICKY WAY, DISCLOSED IN THE

13   INFRINGEMENT CONTENTIONS?  IF THE ANSWER IS NO, THEN THERE IS

14   ABSOLUTELY NO BASIS TO PERMIT THEM TO AMEND THESE REPORTS.

15       AND YOUR HONOR, THAT'S EVERYTHING THAT I HAVE

16           THE COURT:  ALL RIGHT.  THANK YOU.

17       THANK YOU BOTH FOR TAKING ON THIS CHALLENGING MOTION AND

18    CHALLENGING PAPERWORK AND DOING IT IN A TELEPHONIC HEARING.  I

19    APPRECIATE THAT.

20       I REMAIN CONCERNED OF, KIND OF COMING BACK FULL CIRCLE

21   WHERE I STARTED WHICH IS, IT'S NOT CLEAR TO ME WHAT CISCO IS

22   ASKING ME TO CITE.  THERE IS BEEN SOME ENLIGHTENING DISCUSSIONS

23   HERE TODAY, AND I WILL TAKE THAT UNDER CAREFUL CONSIDERATIONS

24   AND MAKE A DETERMINATION AS IT'S WHAT I WAS DIRECTED BY JUDGE

25   FREEMAN TO CONSIDER, AND WHETHER IT'S APPROPRIATELY BEFORE ME.

1       I THINK IT WOULD BE HELPFUL TO MR. GAUDET FOR ME TO

2   RECEIVE FROM CISCO, I HAVE FINJAN'S EXHIBIT 2, THE REDLINE OF

3   THE JULY VERSION OF THE REPORT THAT I BELIEVE BRING THOSE UP TO

4   MARCH 30TH, AND I WOULD LIKE YOU TO IDENTIFY BY PARAGRAPH

5   NUMBER, WHICH PARAGRAPH YOU VIEW THE SUBSTITUTIONS ARE

6   PROBLEMATIC.

7           MR. GAUDET:  THANK YOU, YOUR HONOR.  WE WILL

8   ABSOLUTELY DO THAT.

9       WHAT TIME FRAME DID YOU WANT --

10          THE COURT:  AND I APPRECIATE THAT THAT IS A, YOU

11  KNOW, AGAIN, 2500 PAGES OR WHATEVER IT IS, BUT IT IS REDLINED,

12  AND I WOULD ASSUME YOU COULD DO THAT WITH SOME -- I NEED

13  SOMETHING TO LOOK AT TO GIVE BETTER CONTEXT TO THE ARGUMENTS

14  PRESENTED ON BOTH SIDES TODAY.

15          MR. GAUDET:  YOUR HONOR, WE WILL DO THAT.

16      AND ACTUALLY, LET ME ASK TWO QUESTIONS.

17      MY UNDERSTANDING OF THE WAY THAT EXHIBIT 1 AND THEN

18  EXHIBIT 2 WORKED IS THE FIRST ONE WAS A REDLINE OF THE ORIGINAL

19  REPORT AGAINST THE FIRST PROPOSED AMENDED REPORT, AND THEN THE

20  SECOND ONE WAS A REDLINE OF THE FIRST REPORT -- AMENDED REPORT

21  AGAINST THE SECOND AMENDED REPORT.

22      SO IN OTHER WORDS, THAT FINAL EXHIBIT YOU ARE REFERENCING

23  MIGHT NOT -- MIGHT ALREADY HAVE -- MIGHT NOT REFLECT ALL THE

24  SUBSTITUTIONS THAT WERE MADE.

25      SO WHAT I PROPOSE IS WE ACTUALLY GO THROUGH BOTH OF THEM

1    AND SEND YOU A LIST ON BOTH OF THEM, YOU KNOW, TO ACHIEVE THAT

2    SAME GOAL.  THE POINT IS WE WILL SHOW YOU A FULL LIST.  AND IF

3    I COULD JUST SAY, WE WILL GET THOSE TO YOU AS QUICKLY AS YOU

4    WOULD LIKE IT.  WHAT WOULD BE THE TIME FRAME THAT YOU WOULD

5    LIKE TO SEE THIS?

6         THE COURT:  WELL, YOU ALL ARE ON A VERY SHORT LEASH

7    WITH JUDGE FREEMAN BECAUSE YOU HAVE YOUR PRETRIAL NEXT WEEK, SO

8    THE SOONER YOU CAN GET IT TO ME, THE BETTER.

9         MR. GAUDET:  WITH THAT UNDERSTANDING, WE WILL GET IT

10   TO YOU AS QUICKLY AS WE POSSIBLY CAN.  THAT'S EVERYTHING WE

11   NEED TO HEAR, YOUR HONOR.

12        MR. KAZI:  YOUR HONOR, CAN I --

13        THE COURT:  YEAH.  I'M TRYING TO BE REALISTIC GIVEN

14   EVERYONE'S -- THE SITUATION WE ARE ALL OPERATING UNDER.  BUT IN

15   A PERFECT WORLD WHERE I COULD READ IT, I WOULD WANT IT

16   TOMORROW, 24 HOURS, BUT I APPRECIATE IT'S NOT THAT SIMPLE.

17        MR. GAUDET:  YOUR HONOR, WE WILL ABSOLUTELY ENDEAVOR

18   TO GET IT TO YOU IN 24-HOURS AND IF IT'S NOT, IT WILL BE

19   48 HOURS.  BUT WE UNDERSTAND THE URGENCY UNDER THE

20   CIRCUMSTANCES.

21        THE COURT:  MR. KAZI, WAS THAT YOU ASKING TO BE

22   HEARD?

23        MR. KAZI:  NO.  NOTHING FURTHER, YOUR HONOR.

24        THE COURT:  ALL RIGHT.

25        ALL RIGHT.  OKAY.  THANK YOU ALL AGAIN VERY MUCH.

1          MADAM COURT REPORTER, THANK YOU, AND MY COURT DEPUTY FOR

2     GETTING US ORGANIZED AND ON THE LINE.  AND IF I NEED ANYTHING

3     FURTHER FROM THE PARTIES, I WILL BE IN TOUCH.

4          THANK YOU.  MATTERS SUBMITTED, AND WE ARE ADJOURNED.

5          (THE PROCEEDINGS IN THIS MATTER WERE CONCLUDED.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3

4                    **CERTIFICATE OF REPORTER**

5

6

7

8          I, THE UNDERSIGNED OFFICIAL COURT

9    REPORTER OF THE UNITED STATES DISTRICT COURT FOR

10   THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

11   FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

12   CERTIFY:

13          THAT THE FOREGOING TRANSCRIPT,

14   CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND

15   CORRECT TRANSCRIPT OF MY SHORTHAND NOTES TAKEN AS

16   SUCH OFFICIAL COURT REPORTER OF THE PROCEEDINGS

17   HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED

18   TRANSCRIPTION TO THE BEST OF MY ABILITY.

19

20

21

22

23

24   _____
     SUMMER A. FISHER, CSR, CRR
25   CERTIFICATE NUMBER 13185          DATED: 4/22/20