**DUANE MORRIS LLP**
Nicole E. Grigg (CA SBN 307733)
negrigg@duanemorris.com
D. Stuart Bartow (CA SBN 233107)
dsbartow@duanemorris.com
2475 Hanover Street
Palo Alto, CA  94304-1194
Telephone: 650.847.41500
Facsimile: 650.847.4151

**DUANE MORRIS LLP**
Joseph A. Powers (PA SBN 84590)
Admitted *Pro Hac Vice*
japowers@duanemorris.com
Jarrad M. Gunther (PA SBN 207038)
Admitted *Pro Hac Vice*
jmgunther@duanemorris.com
30 South 17th Street
Philadelphia, PA  19103
Telephone: 215.979.1000
Facsimile: 215.979.1020

Attorneys for Defendant
CISCO SYSTEMS, INC.

**DUANE MORRIS LLP**
L. Norwood Jameson
Admitted *Pro Hac Vice*
wjameson@duanemorris.com
Matthew C. Gaudet
Admitted *Pro Hac Vice*
mcgaudet@duanemorris.com
David C. Dotson
Admitted *Pro Hac Vice*
dcdotson@duanemorris.com
John R. Gibson
Admitted *Pro Hac Vice*
jrgibson@duanemorris.com
Jennifer H. Forte
Admitted *Pro Hac Vice*
jhforte@duanemorris.com
Alice E. Snedeker
Admitted *Pro Hac Vice*
aesnedeker@duanemorris.com

1075 Peachtree NE, Suite 2000
Atlanta, GA 30309
Telephone: 404.253.6900
Facsimile: 404.253.6901

**IN THE UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| FINJAN, INC., a Delaware Corporation,<br><br>Plaintiff,<br><br>v.<br><br>CISCO SYSTEMS, INC., a California Corporation,<br><br>Defendant. | Case No.: 5:17-cv-00072-BLF-SVK<br><br>**CISCO SYSTEMS, INC.'S OPPOSITION TO PLAINTIFF'S MOTION FOR RECONSIDERATION OF THE COURT'S ORDER ON CISCO'S MOTION TO STRIKE PORTIONS OF FINJAN'S AMENDED EXPERT REPORTS (DKT. NO. 582)**<br><br>Judge:       Hon. Beth Labson Freeman<br>Courtroom:  6, 4th Floor |

**REDACTED**

**TABLE OF ABBREVIATIONS**

| Excerpts from the August 14, 2019 Expert Report of Dr. Atul Prakash Regarding Non-Infringement of U.S. Patent No. 7,647,633 | Exhibit A |

**TABLE OF CONTENTS**

I. Introduction ...................................................................................................................1

II. Background ...................................................................................................................1

III. Legal Standard ..............................................................................................................3

IV. Finjan Could Have (and Should Have) Raised Its Procedural Objections to The Post-Hearing Submission During The Hearing, Or Even After Reviewing The Filing And Prior To The Court's Order—But Finjan Chose Not To. ................................................4

V. Finjan's Complaints About The Paragraph Listings Are A Subterfuge To Reargue The Motion And Even Introduce New Evidence Finjan Could Have Presented Earlier .....6

VI. Finjan's Latest Attempt to Rewrite its Arguments With Respect to the Virtual Environment Agent Should be Rejected. ........................................................................8

    A. The Replacement Language for ███████ ..................................................... 9

    B. ███████████████ ..................................................................................... 11

VII. The Procedural History Of This Case Is Highly Relevant To This Motion .....................13

# TABLE OF AUTHORITIES

**Cases**

*Carroll v. Nakatani*, 342 F.3d 934 (9th Cir. 2003) ................................................................................3

*English v. Apple Inc.*, No. 14-CV-01619-WHO, 2016 WL 1108929
   (N.D. Cal. Mar. 22, 2016) ....................................................................................................................5

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873
   (9th Cir. 2009) ....................................................................................................................................4

*NetFuel, Inc. v. Cisco Sys. Inc.*, No. 5:18-CV-02352-EJD, 2020 WL 1450570
   (N.D. Cal. Mar. 25, 2020) ..............................................................................................................3, 5

*Valley Forge Ins. Co. v. Zurich Am. Ins. Co.*, No. C 09-2007, 2011 WL 2748334
   (N.D. Cal. July 14, 2011) ....................................................................................................................4


**Rules**

Local Rule 7-9(c) ....................................................................................................................................4

I.  **INTRODUCTION**

This Court's Order on Cisco's motion to strike fully considered the parties' arguments and evidence and the case's procedural history, and reached the correct conclusion. Finjan uses the Court's request that Cisco supply the Court a list of paragraphs without argument—a request to which Finjan did not object despite being given the explicit opportunity to do so—as a pretense to reargue the motion and provide evidence that it could have provided previously. There is nothing new in Finjan's motion that could not have been raised earlier. As Judge Freeman noted at the recent pretrial conference:

> I will get an order out in the morning that will essentially let Judge van Keulen know that a motion for reconsideration is coming to her and Finjan will prepare that motion for reconsideration, *which she can just deny because there's nothing new*, and then her order will be final and then you can appeal it to me, and of course you've preserved the grounds, and I can decide whether it's necessary or not.

Dkt. 613 at 115:11-18. If the Court does consider the merits of this motion, Finjan's arguments can (again, for now the fifth time) be dismissed. Finjan needed to show that the two specific replacement terms that it added throughout its 3,000 pages of expert reports on the '633 Patent are linked to functionality in its Operative Contentions. That is, the question was whether Finjan *disclosed* in the Operative Contentions the *functionality* now associated with the replacement language in its expert reports. Cisco's motion to strike argued that Finjan could not make this showing. Finjan's opposition brief, arguments at the hearing, and motion for reconsideration confirm that it cannot make this showing.

II.  **BACKGROUND**

Having lost four rounds of motion practice related to the infirmities in Finjan's '633 infringement contentions, Finjan re-packaged the same arguments in a fifth (and hopefully final) attempt to save its case against the '633 Patent. On November 30, 2017, Finjan served its operative infringement contentions ("Operative Contentions"). The insufficiency of those contentions to support the three remaining theories in this case has been repeatedly confirmed. This history is set forth in the briefing related to Finjan's motion for leave to amend its contentions and Cisco's first

motion to strike Finjan's first expert reports and the this Court's and Judge Freeman's orders relevant to those motions.

The Summary Judgment Order. This dispute was crystallized in the briefing related to Cisco's motion for partial summary judgment. Finjan now contends in this motion that it did not abandon any theory relying on components transmitted to the sandbox, and eschews Cisco's alleged citation to a footnote in Finjan's MSJ opposition brief. Finjan is trying to rewrite the record. Cisco moved for partial summary judgment; in its opposition thereto, Finjan disclaimed any theory where MPC is sent to the sandbox (*e.g.*, from the AMP Gateway Products); and in the MSJ Order, which is actually what Cisco cited to, Judge Freeman accepts Finjan's disclaimer, meaning the theory is out of the case. Instead, Finjan relied in its opposition only on the new theory that each of the 7 components were mobile protection code (MPC). On March 20, 2020, Judge Freeman granted Cisco summary judgment as to 4 of the items: (i) GDB stub; (ii) application launching scripts; (iii) prep; and (iv) JSON blob. This left a dispute as to only 3 components: (i) ██████; (ii) ██████; and (iii) ██████, which Judge Freeman expressly found are "████████████████ ██████" MSJ Order (Dkt. 487) at 15. The question Judge Freeman referred to this Court, in parallel, is whether Finjan disclosed the component theory in the Operative Contentions.

Cisco's Motion to Strike. On March 27, 2020, Cisco filed its motion to strike as to the remaining components (Dkt. 491-3), contending (i) there is no accusation in the Operative Contentions that a pre-existing component of a sandbox (which is how Judge Freeman described each of the three surviving components in the MSJ Order) is MPC, and (ii) there is no disclosure in the contentions corresponding to "██████", "██████" and "██████" do not appear. Cisco expressly requested that this Court also strike the replacement language relating to "the three surviving theories and also ensures that Finjan does not attempt to use DOE to revive the other four components." Dkt. 491-3 at 7. Cisco's requested relief was clear: "Cisco asks the Court to strike any MPC theory involving existing components of a sandbox, *i.e.*, any items not transmitted to a sandbox." Dkt. 491-3 at 7. As with Cisco's previous motion to strike that Judge Freeman granted, Cisco did not specify particular paragraphs in its motion (and neither did Judge Freeman in her November 12, 2019 Order). While that is an option both for a motion and an Order, it is plainly not

a requirement. Thus, Cisco focused on Finjan's theories in its motion, as opposed to specific paragraphs spread across a 3,000+ page expert report. In response, Finjan addressed only the three surviving components, and even argued that all component names were "moot." Dkt. 507-4 at 6, 10.

<u>The Hearing</u>. On April 21, 2020, this Court held a hearing on Cisco's motion for reconsideration, focusing only on the three surviving components (since Finjan did not address the other four in its opposition). At the end of the hearing, the Court stated that it would be helpful to receive from Cisco a list of the specific paragraphs in the Amended Reports with the problematic substitutions. Dkt. 560 at 66:1-6. In discussing this request, Finjan's counsel started to speak and stopped; the Court spoke briefly and then asked Finjan's counsel if he was asking to be heard; and Finjan's counsel said, "No. Nothing further, Your Honor." *Id.* at 68:12-25. Finjan's counsel never objected to the Court's proposed procedure (*i.e.*, that Cisco supply a list of paragraphs without argument), and Finjan never requested to provide any sort of response (perhaps because its response would be argument, and would open the door to argument by Cisco as well). Regardless, Finjan made a strategic decision not to object and not to request any form of response. The Court also discussed the tight timeline in light of the upcoming pretrial conference and the urgency in the Court issuing an order. *Id.* at 67:6-8. The next day, Cisco filed the list of paragraphs, as requested by this Court. Dkt. 558. In the ensuing week after that filing but before the Court issued its Order, Finjan did not raise any issues with Cisco or the Court after seeing this filing. On April 28, 2020, the Court issued its order granting Cisco's motion. Dkt. 582. Only after seeing that it had lost the motion did Finjan complain about the procedure.

## III.   LEGAL STANDARD

Reconsideration of a court order is appropriate in one of three limited circumstances, and Finjan's motion alleges only one such basis: "manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order." Op'g Br. at 1:22-24. Generally, "[r]econsideration is an 'extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources.'" *NetFuel, Inc. v. Cisco Sys. Inc.*, No. 5:18-CV-02352-EJD, 2020 WL 1450570, at *1 (N.D. Cal. Mar. 25, 2020) (quoting *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003)). Thus, "[n]o motion for leave to file a motion for

3

1  reconsideration may repeat any oral or written argument made by the applying party in support of or
2  in opposition to the interlocutory order which the party now seeks to have reconsidered." L.R. 7-
3  9(c). Further, a motion for reconsideration "may not be used to raise arguments or present evidence
4  for the first time when they could reasonably have been raised earlier in the litigation." *Marlyn*
5  *Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009). If a party
6  inadvertently or deliberately failed to raise arguments earlier in the proceedings, the arguments are
7  deemed waived. *Valley Forge Ins. Co. v. Zurich Am. Ins. Co.*, No. C 09-2007 SBA, 2011 WL
8  2748334, at *3 (N.D. Cal. July 14, 2011). The rule governing reconsideration was not meant to
9  relieve any litigant of the consequences of a strategic or tactical decision that later proves
10 improvident. *Id.*

**IV. FINJAN COULD HAVE (AND SHOULD HAVE) RAISED ITS PROCEDURAL OBJECTIONS TO THE POST-HEARING SUBMISSION DURING THE HEARING, OR EVEN AFTER REVIEWING THE FILING AND PRIOR TO THE COURT'S ORDER—BUT FINJAN CHOSE NOT TO.**

Finjan contends the Court committed a procedural error because "Finjan was never invited to submit a response" to Cisco's non-argumentative post-hearing submission. That is not how the process of preserving objections works. Finjan's ability to have timely stated its procedural objection to this Court is confirmed by the fact that Finjan instead raised it with Judge Freeman at the Pre-Trial Conference, two days after this Court issued its Order (after mischaracterizing the proceedings here), which Judge Freeman characterized as a request to file a motion for reconsideration. Dkt. 609. Finjan was ready to cite chapter and verse to Judge Freeman about its procedural objection, but inexplicably failed to do so to this Court in the six days before this Court issued its Order. Dkt. 613 at 100:33-103:30. Finjan had every opportunity to raise this issue, but decided to remain silent. Having lost the motion, Finjan now complains it was not "invited" to respond. Finjan should be deemed to have waived the issues it raises in this motion for two reasons.

First, at the end of the hearing on Cisco's motion to strike, Finjan had the opportunity to, but did not, raise its concerns with the Court's request for Cisco's non-argumentative post-hearing submission. After an extended hearing regarding Finjan's thousands of pages of Amended Reports,

4

the Court requested that Cisco "identify by paragraph number, which paragraph you [Cisco] view the substitutions are problematic." Dkt. 560 at 66:5-6. Finjan started to speak, but then paused. The Court discussed the timing of Cisco's submission with Cisco, and then returned back to Finjan's counsel and asked if Finjan's counsel was "asking to be heard." Finjan said unequivocally, "No. Nothing further, your Honor":

> THE COURT: WELL, YOU ALL ARE ON A VERY SHORT LEASH WITH JUDGE FREEMAN BECAUSE YOU HAVE YOUR PRETRIAL NEXT WEEK, SO THE SOONER YOU CAN GET IT TO ME, THE BETTER.
>
> MR. GAUDET: WITH THAT UNDERSTANDING, WE WILL GET IT TO YOU AS QUICKLY AS WE POSSIBLY CAN. THAT'S EVERYTHING WE NEED TO HEAR, YOUR HONOR.
>
> MR. KAZI: YOUR HONOR, CAN I --
>
> THE COURT: YEAH. I'M TRYING TO BE REALISTIC GIVEN EVERYONE'S -- THE SITUATION WE ARE ALL OPERATING UNDER. BUT IN A PERFECT WORLD WHERE I COULD READ IT, I WOULD WANT IT TOMORROW, 24 HOURS, BUT I APPRECIATE IT'S NOT THAT SIMPLE.
>
> MR. GAUDET: YOUR HONOR, WE WILL ABSOLUTELY ENDEAVOR TO GET IT TO YOU IN 24-HOURS AND IF IT'S NOT, IT WILL BE 48 HOURS. BUT WE UNDERSTAND THE URGENCY UNDER THE CIRCUMSTANCES.
>
> THE COURT: MR. KAZI, WAS THAT YOU ASKING TO BE HEARD?
>
> MR. KAZI: NO. NOTHING FURTHER, YOUR HONOR.
>
> THE COURT: ALL RIGHT. ALL RIGHT. OKAY. THANK YOU ALL AGAIN VERY MUCH.

Dkt. 560 at 67:6-67:25. That Finjan declined to raise any concerns arising from Cisco's anticipated submission "is not grounds to permit the Court to review its earlier ruling." *NetFuel*, 2020 WL 1450570, at *2.

Second, Finjan also remained silent for the six days between when it saw Cisco's filing and

when this Court issued its Order. "The basic principle that a motion for reconsideration may not be used to present evidence for the first time that could reasonably have been raised earlier in the litigation is fatal to [its] bid for reconsideration on this ground." *See English v. Apple Inc.*, No. 14-CV-01619-WHO, 2016 WL 1108929, at *2 (N.D. Cal. Mar. 22, 2016) (internal quotation marks omitted)). Thus, Cisco contends that the Court should not consider Finjan's arguments in response to Cisco's list of paragraphs. In the event the Court does consider them, Cisco addresses them below.

## V.  FINJAN'S COMPLAINTS ABOUT THE PARAGRAPH LISTINGS ARE A SUBTERFUGE TO REARGUE THE MOTION AND EVEN INTRODUCE NEW EVIDENCE FINJAN COULD HAVE PRESENTED EARLIER

For all of Finjan's complaints about the Court's procedure, the vast majority of its motion presents evidence Finjan knew of already and that would have been responsive before the paragraphs were submitted. Finjan's actual complaints about the paragraph listing—which, again, Finjan waived—can be easily dismissed on the merits as well.

Finjan first complains that Cisco cannot satisfy its burden on a motion to strike through a "post-hearing submission listing more than 100 paragraphs, with no explanation as to why those specific paragraphs should be struck." But, Finjan ignores that the listing was the culmination of an extended procedural history, of which it was undoubtedly a participant, and Cisco's list of paragraphs simply tracks through the thousands of pages of Finjan's two amended reports and focuses the Court on the amendments to paragraphs that originally contained the 3 components not transmitted to a sandbox that remain at issue: "███████," "███████," and "███████." The number of paragraphs identified is because *Finjan* mechanically cut and pasted changes to the original terminology across the reports. Finjan also analogizes Cisco's **3-page** submission (only one page of which is directed to the 3 components at issue)—to Finjan's **100-page** exhibit submission responding to Cisco's first motion to strike Finjan's expert reports. Dkt. 322-4. Clearly the two submission are not comparable. In reality, this is another attempt by Finjan to overwhelm the process through the sheer volume of its expert report. Because there is no way to address 100 paragraphs with specific argument in the 10-page motion to which Cisco was limited, Finjan points to that absence as some sort of procedural defect. But this was exactly the same posture as the prior motion to strike that

6

Judge Freeman granted; there is no need to present separate argument on each paragraph.

Next, Finjan points to Paragraph 656, which includes deposition testimony of Mr. De Beer about the "▓▓▓▓▓" and asserts that it could not have included this testimony in its infringement contentions but "did disclose the underlying theory as best it could without discovery." Remarkably, Cisco raised the 600-series paragraphs (as grouped by Finjan and characterized by this Court) at the hearing, and Finjan had every opportunity to respond. Dkt. 560 at 52:3-55:6.

Finjan's argument on the merits of Paragraph 656 simply recasts arguments already considered by this Court regarding whether the Operative Contentions' disclosure of a "virtual environment agent" disclosed a theory where MPC is already resident at the sandbox or the functionality of the ▓▓▓▓▓. The Operative Contentions do not. Further, looking at the language in paragraph 656 in the March 2020 Report, Finjan had a quote from Mr. De Beer about the ▓▓▓▓▓ in the December 2019 Report; then in the March 2020 Report, Finjan amended this paragraph to take out "▓▓▓▓▓"—Mr. De Beer's actual testimony—and broke up the testimony to substitute in Finjan's words "virtual environment agent." From this, Finjan argues that De Beer likewise testified as to this revised statement. However, Finjan cannot put words into a witness's mouth and claim it supports its position. This is exactly the "sleight of hand" the Court identified in its Order at pages 9 – 10.

Finjan also argues the struck paragraphs are "relevant for reasons *other* than supporting Finjan's sandbox-only theory," and specifically relate to its "transmission-based theories." But no such "transmission-based theories" survived summary judgment. There are three—and only three—components that could be MPC. Judge Freeman made clear (as did Finjan) that these three surviving theories are "▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓." Nor can there be any other DOE theories. When something is struck from a report, it is struck for all purposes. Finjan reduced its case to seven items at summary judgment, for both literal infringement and DOE. MSJ Order (Dkt. 487) at 14-15 & n.6. Cisco moved to strike the three surviving theories, but also moved to strike the other four: "Cisco asks the Court to strike any MPC theory involving existing components of a sandbox, *i.e.*, any items not transmitted to a sandbox. This covers the three surviving theories and also ensures that Finjan does not attempt to use DOE to revive the other four components." Dkt. 491-

7

3 at 7. Finjan did not address the other four, and the Court noted the "parties agree that Finjan's proposed amendments to the Medvidovic report that relate to the other [four] terms relied on by Finjan in opposition to summary judgment are now moot." Dkt. 582 at 8.

Finjan nonetheless argues that if the Court finds that the replacement language "is not supported in its infringement contentions on the basis of a sandbox-only theory, the Court should still consider that replacement language is supported in Finjan's contentions in support of another theory." Finjan submits that the proper remedy would be "a limiting instruction at trial." Again, Finjan's suggestion completely ignores the summary judgment background relevant to the present motion. No transmission-based theory survived summary judgment. Dkt. 378, Dkt. 401, Dkt. 487 at 14-15, n.6.

Finally, Finjan requests clarification regarding the precise contours of what the Court's order struck. The Court's Order is clear that it "STRIKES the replacement language" in the four ▮ paragraphs and for " ▮ " and " ▮ " in the enumerated paragraphs. Dkt. 582 at 15-16. The impact of this Order on the case is an issue for Judge Freeman and is the subject of a motion in limine.

In summary, Finjan has not carried its burden of showing the Court should reconsider its order on the basis that Finjan did not request and thus did not provide a response to Cisco's list of paragraphs.

## VI. FINJAN'S LATEST ATTEMPT TO REWRITE ITS ARGUMENTS WITH RESPECT TO THE VIRTUAL ENVIRONMENT AGENT SHOULD BE REJECTED.

Finjan's arguments as to the virtual environment agent rehashes well-trodden ground. Indeed, Finjan's motion reads as if there were no context for what determined the scope of the present dispute. The framework of Cisco's motion to strike is what is left after the MSJ Order: there are three 3 components: (i) ▮ ; (ii) ▮ ; and (iii) ▮ . The question is whether *Finjan disclosed* the specific functionality of these components in the Operative Contentions. This Court properly found that it did not; neither these three components nor their corresponding functionality are properly disclosed in the expert reports. A motion for reconsideration cannot be used to raise arguments or present evidence for the first time when they could reasonably have been

8

1  raised earlier in the litigation.

2      **A.**    **The Replacement Language for ▆▆▆▆▆**

3  <u>First</u>, Finjan complains that the Court did not consider the evidence Finjan provided when analyzing Finjan's new use of the term "virtual environment agent" as a replacement for the term "▆▆▆▆▆" in paragraphs 632, 656, 657, and 690 of the March 2020 Report. However, the Court's Order methodically evaluates the parties' arguments and evidence, including Finjan's citation to the Court of which paragraphs to compare in the March 2020 Report, July 2019 Report, and Operative Infringement Contentions. The paragraphs *cited by Finjan* included the above "600-series" paragraphs.

More fundamentally, Finjan cannot rely upon the Cisco engineers' deposition testimony. As Cisco explained when Finjan sought leave to amend its infringement contentions, Finjan waited too long to depose Cisco's witnesses, and this Court and Judge Freeman denied Finjan leave to amend its contentions to accuse this functionality. Dkt. 274, 304. Finjan cannot now use Mr. De Beer's deposition testimony or the Declarations of Mr. Watchinski and Mr. Brozefsky to imply that *Finjan* adequately disclosed in the Operative Infringement Contentions the functionality of the virtual environment agent such that Finjan can substitute that phrase for ▆▆▆▆▆. Finjan could have timely taken those depositions and then sought leave to amend its contentions. It fought and lost that battle already.

<u>Second</u>, the Operative Contentions do not describe the "virtual environment agent" functionality, as Finjan contends, in any meaningful way to give Cisco notice of its infringement theories. Crucially—and as Cisco has consistently argued—the phrase "virtual environment agent" is a meaningless generic phrase (the equivalent of "component relating to a virtual computer environment"), such that there must be additional statements to understand what it is referring to. The Court need look no further than Finjan's inconsistent uses of the term in its Operative Contentions. In one, Finjan references "virtual environment agent (e.g., sandboxing)." Op'g Br. at 7 (citing Dkt. No. 491-5 (Finjan Infringement Contentions) at 5). In other words, one *example* of this term—according to the Operative Contentions—swallows all of Threat Grid. The idea that the mere uttering of the word automatically corresponds to a particular component is absurd on its face.

Finjan quotes a single sentence from the Operative Contentions, but the sentence itself does not say that the "virtual environment agent" (whatever it is that Finjan is referencing in that context) resides at the sandbox. Dkt. 626-4 at 2. "To be executed" only means that the "virtual environment agent" (whatever it is) must eventually be in the sandbox.  Then, two paragraphs later, the Operative Contentions confirm that the "virtual environment agent" is in fact transmitted to the sandbox: "Cisco AMP for Networks contain a scheduler which retrieves, from an virtual environment component pool, a virtual environment agent . . . and sends it to the virtual environment, thereby causing mobile protection code to be communicated . . . ."  Dkt. 491-5 at 35. This both confirms that the "virtual environment agent" (whatever it is) is not already at the sandbox, and also confirms the meaningless generality of the term by itself, as this use is irreconcilable with the prior example that a "virtual environment agent" can be all of "sandboxing."

Cisco's reply brief likewise responded to Finjan's shifting positions. Finjan had the phrase "███████" in the December 2019 Reports, and Finjan substituted in virtual environment agent in the March 2020 Report. As Finjan's expert reports evolved, so too did Finjan's theories. But the substitution of virtual environment agent for ███████ is meaningless because the kernel monitor is not a virtual environment agent. Dkt. 523-3 at 3. The Operative Contentions do not show otherwise. The Operative Contentions affirmatively states the virtual environment agent (1) is something that is transmitted, which excludes the ███████, and (2) inside and watching the execution, which again is not the ███████. Thus, the functionality Finjan ascribes to the virtual environment agent excludes the ███████. *See, e.g.,* Dkt. 523-3 at 3.  All of this evidence was before the Court and properly evaluated in granting Cisco's motion to strike.

Third, Finjan attempts to present new evidence in the form of the Declarations of Mr. Watchinski and Mr. Brozefsky—evidence that Finjan could have presented in its opposition brief to Cisco's motion to strike brief and did not do—confirms Cisco's point.  As a threshold matter, this purported new evidence is not a unique response to Cisco's identification of paragraph numbers that Finjan was allegedly prevented from providing. This is confirmed by Finjan's attempt to present this very evidence at the hearing (despite not including it in its brief) *before* Cisco submitted its list of paragraphs.  Dkt. 560 at 42-43.

On the merits, these declarations confirm Cisco's point.  To respond to Finjan and to rebut its experts, Cisco's fact witnesses and Dr. Prakash repeated the same terminology that Finjan's expert used in his report—which was *not* what was in the Operative Contentions.  First Cisco's Dr. Prakash stated that "Dr. Medvidovic does not identify what he means by this "virtual environment agent". Ex. A at ¶ 527.  Then, at summary judgment (years after the Operative Contentions were served), Cisco's fact declarations likewise attempted to track the accusations of Finjan's expert—in other words, accepting all facts as Finjan alleged (through its expert), Cisco was entitled to summary judgment.  While this history alone is enough to reject Finjan's new-found reliance on this evidence, the final nail is in the substance of the declarations themselves.  It is not the use of the term "virtual environment agent" in the paragraph Finjan quotes in its motion for reconsideration that carried the weight of explaining the functionality; it was the remaining sixty-plus words of text.  The only reason that the generic term "virtual environment agent" was inserted was because Finjan's experts had associated it with the accused functionality, years after the Operative Contentions.  In sum, Cisco's responsive use of this terminology in the expert and summary judgment record says nothing about what was in the Operative Contentions.

Finjan still has not shown that it disclosed in the Operative Contentions the theory that a virtual environment agent is MPC, nor has it shown that functionality now described as the virtual environment agent resident at the sandbox corresponds to the functionality of the ▆▆▆▆▆ that survived summary judgment.  Thus, Finjan's motion should be denied on this issue.

**B.**   ▆▆▆▆▆ **and** ▆▆▆▆▆

Finjan's arguments for reconsideration of the Court's order with respect to the ▆▆▆ and ▆▆▆ also fail to show that the Court did not consider material facts or dispositive legal arguments presented before issuance of the order. The three rationales the Court discussed for this issue are accurate and reflect consideration of the appropriate evidence.

<u>First</u>, Finjan claims that Cisco's evolving arguments have somehow impacted Finjan's ability to fully respond to Cisco's motion to strike, *i.e.*, for Finjan to carry its burden of identifying the relevant functionality in the Operative Infringement Contentions to support its expert reports, as Judge Freeman instructed. Dkt. 582 at 4 (quoting Dkt. 419 at 120:6-11). But, any "evolution" of this

issue is of Finjan's making, as Finjan tries to game the process. Cisco had ten pages to address the thousands of pages constituting Finjan's original and amended expert reports, and Judge Freeman clearly informed Finjan that it had to show this Court the support for the redlines in the expert reports. Thus, Cisco filed its ten-page motion to strike and tried to anticipate what Finjan might point to in thousands of pages of infringement contentions and expert reports. Finjan responded, and Cisco responded to Finjan's arguments. Finjan had every opportunity to ask for additional briefing *before* this Court issued its Order. Sitting on its hands until after the Court rules is unacceptable.

Further, it is unclear how the fact that Cisco's list of paragraphs allegedly pointed to claims that are no longer at issue supports reconsideration or undermines the basis for Cisco's motion to strike. If that is the case, then they are moot. Likewise, Cisco appropriately identified paragraphs with deposition testimony from Cisco's engineers; Finjan's effort to newly apply generic terms to that specific functionality is precisely the sleight of hand this Court already identified. Finjan cannot rely on Cisco engineer's deposition testimony in its expert reports for the same reasons it could not amend its Operative Contentions to include functionality described by that testimony. As described above, in at least some paragraphs, Finjan has improperly attributed its replacement language to the Cisco engineers, e.g., ¶ 656 in the March 2020 Report, which further supports the paragraphs being listed.

Second, Cisco's complaints do stand up substantively, as this Court's Order explains. Finjan bears the burden of setting forth its infringement theories in the Operative Contentions, and accordingly, the scope of its expert reports are cabined by the Operative Contentions. Thus, Finjan's substituted language for ▮▮▮ and ▮▮▮ in the March 2020 Report, "parameters to run the sample file or URL," must be linked to the functionality associated with ▮▮▮ and ▮▮▮ in the contentions. Finjan contends that ¶ 4331 identifies the "parameters" as MPC, but in that part of ¶ 4331, the MPC is transferred to the sandbox. This theory is out of the case though. Finjan contends that it did not abandon any theory relying on components transmitted to the sandbox, and eschews Cisco's alleged citation to a footnote in Finjan's MSJ opposition brief. Again, Finjan is trying to rewrite the record. Cisco moved for partial summary judgment; in response, Finjan disclaimed any theory where MPC is sent to the sandbox (*e.g.*, from the AMP Gateway Products);

and the MSJ Order, which is actually what Cisco cited to, accepts Finjan's disclaimer, meaning the theory is out of the case.

Third, Finjan's statement suggesting that it just now understands the issue to be "whether the replacement language from Finjan's infringement contentions (in this case, 'parameters to run the sample file or URL') provides sufficient notice of the '█████ and █████ functionalities" is baffling given the motion practice and meet and confers surrounding Finjan's contentions and expert reports. As this Court and Judge Freeman have repeatedly made clear, what controls are the Operative Contentions, and Finjan has not shown these contentions in fact disclose Finjan's new theory that something already at the sandbox is the MPC. Moreover, how Finjan uses the replacement language, "parameters to run the sample file or URL," results in the parameters being anything. That is, the replacement language is overbroad and does not actually identify what is accused; this is proven by the fact that the replacement language might include █████ or █████, the theory abandoned by Finjan, or the terms excluded by the MSJ Order. Dkt. 582 at 13:15-20. Because the replacement language could include █████, █████, or anything else means that Finjan cannot carry its burden of linking the functionality of the replaced and replacement terms in the expert reports through the Operative Contentions.

Fourth, the fact that Cisco's experts used Finjan's terminology to rebut Finjan's experts is irrelevant to the present inquiry, and Finjan again misapprehends what *it* must show. As this Court held in its order, it is not enough that Finjan used certain phrases in the Operative Contentions (much less that Cisco's experts have repeated these phrases); Finjan has to show how the Operative Contentions link the functionality associated with the terms █████ or █████ in the earlier expert reports to the replacement terms in the March 2020 Report. Dkt. 582 at 13:9-13. For this inquiry, Cisco's expert's understanding of "█████" in his rebuttal report is irrelevant. As discussed above, Finjan has not made this showing.

## VII. THE PROCEDURAL HISTORY OF THIS CASE IS HIGHLY RELEVANT TO THIS MOTION

The procedural history of the case is relevant to the Court's evaluation of whether █████, █████, and their associated functionalities were disclosed in the Operative Contentions such that

13
CISCO'S OPPOSITION TO FINJAN'S MOTION FOR RECONSIDERATION
CASE NO. 5:17-CV-00072-BLF

Finjan can properly include them within the expert reports. The precise issue decided by the June 11 and July 17, 2019, Orders was whether the Operative Contentions disclosed functionality that corresponded to the names "▇▇▇▇" and "▇▇▇▇," and Finjan lost that motion. That is—again—the precise issue in this motion. The other four components that were dismissed at summary judgment (and which Cisco also moved to strike in this motion and then Finjan waived) were *also* the subject of Finjan's effort to amend their contentions—and again, it was exactly the same issue here (whether the Operative Contentions disclose functionality corresponding to those terms), and again Finjan lost.

Finjan is well aware its infringement theories associated ▇▇▇▇ and ▇▇▇▇ were at issue in its motion for leave to amend its infringement contentions and that the motion was denied because ▇▇▇, ▇▇▇▇, and the explanatory definitions were not in the Operative Contentions. Simply put, the standard for a motion to strike focuses on the same question as Finjan's motion for leave to amend: whether the Operative Contentions disclosed ▇▇▇, ▇▇▇▇, and the explanatory definitions, and Finjan already lost this point.

Accordingly, Finjan's motion as to the replacement language for ▇▇▇▇ and ▇▇▇▇ should likewise be denied.

Dated: May 22, 2020                                   Respectfully submitted,

/s/ Nicole E. Grigg
D. Stuart Bartow
Nicole E. Grigg
Duane Morris LLP
2475 Hanover Street
Palo Alto, CA 94304-1194
Email:  dsbartow@duanemorris.com
Telephone:  650.847.4150
Facsimile:  650.847.4151

L. Norwood Jameson (admitted *pro hac vice*)
Email:  wjameson@duanemorris.com
Matthew C. Gaudet (admitted *pro hac vice*)
Email:  mcgaudet@duanemorris.com
David C. Dotson (admitted *pro hac vice*)
Email:  dcdotson@duanemorris.com
Jennifer H. Forte (admitted *pro hac vice*)
Email:  jhforte@duanemorris.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1075 Peachtree Street, Ste. 2000
Atlanta, GA  30309
Telephone: 404.253.6900
Facsimile: 404.253.6901

Joseph A. Powers (admitted *pro hac vice*)
Email:  japowers@duanemorris.com
Jarrad M. Gunther (admitted *pro hac vice*)
jmgunther@duanemorris.com
30 South 17th Street
Philadelphia, PA  19103
Telephone: 215.979.1000
Facsimile: 215.979.1020

*Attorneys for Defendant*
CISCO SYSTEMS, INC.