1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

|  |  |
|---|---|
| FINJAN, INC., | Case No. 17-cv-00072-BLF |
| Plaintiff, | |
| v. | **ORDER ON MOTIONS *IN LIMINE*** |
| CISCO SYSTEMS INC., | [Re: ECF 527; 528; 539; 531; 534; 535; 536; 537] |
| Defendant. | |

Plaintiff Finjan, Inc. ("Finjan") brings this patent infringement lawsuit against Defendant Cisco Systems, Inc. ("Cisco"), alleging infringement of five of Finjan's patents directed to computer and network security: U.S. Patent Nos. 6,154,844 (the '844 Patent); 6,804,780 (the '780 Patent); 7,647,633 (the '633 Patent); 8,141,154 (the '154 Patent); and 8,677,494 (the '494 Patent) (collectively, "Asserted Patents").

In preparation for trial, the parties submitted eight motions *in limine*. The Court held a final pretrial conference on April 30, 2020 (the "Conference"). With respect to each side's motions *in limine* ("MILs"), for the reasons set forth below and stated on the record at the Conference the Court rules as follows:

## I.    FINJAN'S MOTIONS *IN LIMINE*

### A.    Finjan's Motion *in Limine* No. 1 to Preclude Reference to Pending and Unrelated Litigation and PTO Proceedings (ECF 527)

In its Motion *in Limine* No. 1, Finjan seeks to exclude discussions of (1) all pending proceedings involving Finjan in other courts or before the United States Patent and Trademark Office ("PTO") and (2) lawsuits involving Finjan and patents that are not asserted in this case. Finjan's MIL No. 1, ECF 527.

### 1.  Pending Proceedings Involving Finjan

Finjan contends Cisco should be precluded from presenting any arguments or evidence regarding pending litigation or PTO proceedings because (1) there is no final decision on the merits and thus the mere existence of these proceedings has no bearing or relevance on the issues here and (2) introducing evidence of pending proceedings carries a substantial risk the jury will be confused as to the specifics of Finjan's claims against Cisco and its accused products, or that the jury will perceive Finjan negatively because it is involved in other litigations.  *See* Finjan's MIL No. 1 at 1-3.

Cisco agrees that pending proceedings before the PTO should be excluded.  *See* Cisco's Opp'n to Finjan's MIL No. 1 at 4-5, ECF 566-4 (redacted version available at ECF 607), Transcript of the Conference ("Hr'g Tr.") at 31:22-23, ECF 613.  Regarding pending court proceedings, however, Cisco argues that it should be permitted to probe Finjan's expert witnesses' bias by cross examining the experts about the compensation they receive from Finjan for their work on Finjan's lawsuits.

Per the parties' agreement, the Court GRANTS Finjan's motion to exclude evidence of pending PTO proceedings.  The Court agrees with Cisco, however, that the experts' potential bias is highly probative of their credibility.  Accordingly, The Court DENIES Finjan's motion to exclude evidence of pending litigation, but Cisco is limited to cross examination of Finjan's experts on their work and associated compensation for Finjan in other pending lawsuits.  The Court also excludes any characterization of Finjan as litigious by discussing details of Finjan's ongoing lawsuits because the limited probative value of such evidence is substantially outweighed by danger of prejudice to Finjan and "wasting time."  *See* Fed. R. Evid. 403.

### 2.  Concluded Proceedings Involving Finjan's Patents Not Asserted in this Case

Finjan argues that evidence regarding proceedings involving Finjan's patents that are not asserted against Cisco in this case – which Finjan dubs as "Irrelevant Proceedings" – should be excluded because (1) invalidity of patents not asserted in this case and (2) infringement of products not accused in this case are irrelevant.  *See* Finjan's MIL No. 1 at 3-4.  Further, Finjan argues that the introduction of these proceedings "will risk confusing the jury, requiring them to parse the

United States District Court
Northern District of California

2

differences between patent claims that are at issue in this case and patent claims that are not." *Id.* at 3.  According to Finjan, "the jury may be tempted to improperly substitute decisions made in other cases for its own judgment." *Id.* at 4.  Finjan recognizes that "license agreements that resulted from prior litigations involving patents not at issue in this case may be relevant to damages," but it nevertheless argues that "going into irrelevant details of the cases" would allow Cisco "to paint Finjan as particularly litigious." *Id.* at 1 n. 1.

Cisco responds that Finjan's prior concluded lawsuits are relevant to issues of damages and willfulness.  Cisco's Opp'n to Finjan MIL No. 1 at 1-4.  Specifically, Cisco argues that prior communications between the parties – even if in the context of other proceedings – are relevant to Cisco's state of mind. *Id.* at 1.  Cisco further argues that Finjan's damages expert, Dr. Layne-Farrar, relies on licenses executed against the backdrop of litigation to support her opinions and therefore, the jury should be able to evaluate the circumstances of those lawsuits. *Id.* at 3.

The Court finds that documents establishing the communications between Finjan and Cisco are relevant to the issue of willfulness in this case, even if those communications were exchanged in the context of – or mention – other proceedings that do not involve the Asserted Patents. Moreover, the context and circumstances of lawsuits which resulted in or precipitated settlement agreements that the parties' damages experts rely on to support their opinions are highly probative. Accordingly, the Court DENIES Finjan's motion as to evidence of concluded lawsuits involving non-asserted patents but this ruling is limited to (1) all otherwise admissible communication between Finjan and Cisco and (2) evidence of otherwise relevant circumstances of the lawsuits that led to the settlement agreements the damages experts (Finjan's or Cisco's) rely on to support their opinions. All other objections regarding the relevancy of concluded lawsuits involving Finjan's non-asserted patents are DEFERRED to trial.

### B.    Finjan's Motion *in Limine* No. 2 to Preclude Derogatory and Misleading Characterization of Finjan's Business (ECF 528)

Finjan's Motion *in Limine* No. 2 seeks to exclude Cisco from "making any false, derogatory, or misleading characterizations of Finjan or its business at trial."  Finjan's MIL No. 2, ECF 530-4 (redacted version available at ECF 528).  Specifically, Finjan seeks to exclude testimony (1)

1   referring to Finjan using terms such as "patent troll," "patent assertion entity," "PAE," "non-

2   practicing entity," or "NPE" and (2) relating to "things like how many employees Finjan has and

3   whether it has used other corporate names, all in an attempt to paint Finjan as a sham company in

4   the eyes of the jury. *Id.* at 1.  Finjan argues that "Cisco's mischaracterization of Finjan as a patent

5   shell company with no business or real operations" is irrelevant and not supported by the record.

6   *Id.* at 2.  And even if true, Finjan contends that these characterizations, would result in unfair

7   prejudice and confuse the jury.  *Id.* at 3.  Further, Finjan argues that "Cisco's references to FI

8   Delaware [a corporate name Finjan used for a few years], Finjan's employee count, and arguments

9   regarding Finjan's lack of revenue from security products also lack any relevance to the present

10   infringement suit." *Id.* at 2.

11       Cisco agrees not to use the term "troll" outside the narrow context of an email – which Cisco

12   claims is relevant to describing the relationship between Cisco and Finjan – using that term.  Cisco's

13   Opp'n to Finjan's MIL No. 2 at 1; 2-3, ECF 566-6 (redacted version available at ECF 608).  Cisco

14   also agrees not to use "patent assertion entity." *Id.*  Cisco describes the term "non-practicing entity,"

15   however, as "a benign phrase specifically designed to substitute for more inflammatory language

16   and passes muster under Rule 403." *Id.* [1]  With respect to Finjan's name change and "lack of revenue

17   from Finjan's current security product," Cisco argues that "Finjan cannot state, argue, or imply that

18   the company in its current form is essentially the same company as the company that was formed in

19   1996, without Cisco being allowed to correct this fallacy." *Id.* at 3-4.

20       The Court GRANTS Finjan's motion as to the use of the terms "patent troll," "patent

21   assertion entity," "PAE," "non-practicing entity," and "NPE."  The Court recognizes that it allowed

22   the use of the term "non-practicing entity" to describe Finjan in a prior case.  *See Finjan, Inc. v.*

23   *Blue Coat Sys., Inc.*, No. 13-CV-03999-BLF, 2015 WL 4129193, at *2 n. 1 (N.D. Cal. July 8, 2015).

24   But the Court is now of the opinion that such projective labels are irrelevant, unhelpful to the jury,

25   and in some instances carry negative connotations.  That said, to the extent that any of these terms

---

[1] Although not subject to Finjan's Motion *in Limine* No. 2, Cisco notes that the primary term it intends to use for Finjan's current business model is "IP Company."  Cisco's Opp'n to Finjan's MIL No. 2 at 1.  At the Conference, Finjan noted that it does not object the use of the term "IP Company." Hr'g Tr. at 43:1-3.

United States District Court
Northern District of California

appear on the face of otherwise relevant and admissible documents, the Court rules that no redaction is necessary.  But Cisco may not ask its witnesses to read the excluded term(s) out loud or otherwise draw attention to the term(s).

The Court DENIES Finjan's motion as to neutral, factual statements concerning Finjan's business.  Finjan has a right to introduce its company the jury – but if it does so in a manner portraying itself as the "same Finjan" from its inception, then Cisco will be allowed to cross-examine that portrayal.

### C. Finjan's Motion *in Limine* No. 3 Re: Invalidity Theories Not Disclosed in Invalidity Contentions (ECF 529)

In its Motion *in Limine* No. 3, Finjan seeks to exclude "evidence, testimony, or argument" regarding invalidity theories that Finjan contends were not timely disclosed in Cisco's invalidity contentions pursuant to Patent Local Rules 3-3 and 3-4 and this Court's orders.  Specifically, Finjan seeks to exclude   Cisco's experts' use of (1) Feigenbaum-ThunderBYTE Antivirus Utilities combination; (2) three references that Cisco did not disclose in its invalidity contentions but its experts use as "background art"; and (3) theories under 35 U.S.C. §§ 101 and 112.  *See* Finjan's MIL No. 3, ECF 529.  Invalidity theories not disclosed in accordance with Patent Local Rules are "barred … from presentation at trial (whether through expert opinion testimony or otherwise)." *MediaTek Inc. v. Freescale Semiconductor, Inc.*, No. 11-CV-5341 YGR, 2014 WL 690161, at *1 (N.D. Cal. Feb. 21, 2014).  Accordingly, the Court must determine whether each of the theories Finjan seeks to exclude were properly disclosed in Cisco's invalidity contentions.  The Court examines each theory in turn:

#### 1. Feigenbaum-ThunderBYTE Combination

The invalidity theories in this case went through a few rounds of narrowing before the expert reports were served.  There is no dispute that while both Feigenbaum and ThunderBYTE references were charted separately in Cisco's First and/or Second Elections of prior art, they were ***not*** identified as an obviousness combination in those elections.  *See* Finjan's MIL No. 3 at 2; Cisco's Opp'n to Finjan's MIL No. 3 at 1, ECF 569; *see also* ECF 333-3 (First Election served on August 7, 2017) and ECF 333-6 (Second Elections served on January 18, 2019).  Per the parties' agreements in this

1    case, the obviousness combinations were not due to be disclosed until 30 days prior to the service

2    of expert reports.  *See* Hr'g Tr. at 45:25-46:5; *see also* ECF 51 (6.8.2017 Hr'g Tr.) at 19:23-20:20.

3         On September 13, 2018, the Court issued an order adopting the parties' agreement on

4    narrowing of asserted claims and prior art references.  Narrowing Order, ECF 140.  Per the

5    Narrowing Order, Cisco was required to serve a Third Election of Asserted Prior Art thirty days

6    before service of its invalidity opening expert report.  *Id.* at 1.  In that Third Election, Cisco was to

7    "assert from the subset of prior art previously identified no more than 6 invalidity theories

8    (anticipatory and/or obviousness combinations) per patent and no more than a total of 20 invalidity

9    theories across all Patents-in-Suit."  *Id*.  The Narrowing Order further explained that "a single

10   obviousness 'theory' is a specific combination of references for a specific patent" that "shall not be

11   changed or revised for subsequent election of asserted prior art."  *Id.* at 1-2.  The Narrowing Order

12   even provided an example:

> For example, if the obviousness combination A, B, C and D is
> identified as a single obviousness theory in an election, it may not be
> changed or revised to the combination A, B and C in a subsequent
> election, as this would constitute a new obviousness theory.

*Id.* at 2.

16        On April 23, 2019, Cisco served its Third Election, narrowing its prior art selection per the

17   Court's Narrowing Order.  ECF 319-8.  In its Third Election, Cisco asserted an obviousness

18   combination as to the '844 Patent that included Feigenbaum, ThunderBYTE, and a third reference

19   (Zwienenberg).  *Id.* at 2.  On June 25, 2019, Cisco served an Amended Third Election, in which it

20   asserted a Feigenbaum-ThunderBYTE obviousness combination – this time without the third

21   reference.  ECF 319-11 at 2.  By revising its Feigenbaum-ThunderBYTE-Zwienenberg combination

22   to Feigenbaum-ThunderBYTE (and dropping Zwienenberg) in its tardy Amended Third Election,

23   Cisco did exactly what the Court's Narrowing Order prohibited: Cisco changed its invalidity theory.

24        Accordingly, the Court GRANTS Finjan's motion as to Cisco's invalidly theory involving

25   Feigenbaum-ThunderBYTE obviousness combination.

26        **2.  Cisco's "Background" References: Necula, Karger, and December**

27        Next, Finjan seeks to preclude Cisco from using three references in its invalidity analysis:

Karger, December, and Necula.  There is no dispute that these references were not charted in Cisco's invalidity contentions – including its Third Election.  S*ee* Cisco's Opp'n to Finjan's MIL No. 3 at 2-3.  The parties, however, characterize differently Cisco's use of these references in Cisco's expert reports.  Cisco argues that Karger, December, and Necula are "background reference" used to "explain and evidence the level of skill in the art."  *Id.* at 2 (citing ECF 333-8 (McDaniel Report) ¶¶ 161, 163, 164, 167, 192, 177; ECF 333-9 (Almeroth Report) ¶¶ 131, 280-282, 353-355).  Finjan, on the other hand, claims that these references are not "background" and instead, "are used by Cisco's experts as part of their element-by-element invalidity analyses."  Finjan's MIL No. 3 (citing ECF 318-4 (Almeroth Report) ¶¶ 240, 280, 332, 352, 376, 410; ECF 318-6 (McDaniel Report) ¶ 234).

Courts in this district permit the use of previously undisclosed prior art as "background reference" in invalidity expert reports – as long as they are not used as prior art to challenge the validity of a claim element.  *See e.g., Verinata Health, Inc. v. Sequenom, Inc.*, No. C 12-00865 SI, 2014 WL 4100638, at *5 (N.D. Cal. Aug. 20, 2014) (allowing the expert to use a reference for "foundational or background material" but striking the same reference from the expert report "to the extent that [the expert] relies on it as prior art that allegedly renders the asserted claims … obvious."); *Largan Precision Co, Ltd. v. Genius Elec. Optical Co.*, No. 13-CV-02502-JD, 2014 WL 6882275, at *6 (N.D. Cal. Dec. 5, 2014) (striking a reference used as an example that teaches a claim element and not as background).

Accordingly, the Court DENIES Finjan's motion to exclude Karger, December, and Necula to the extent that these references are used to demonstrate the background knowledge of a skilled artisan.  If Cisco offers these references as "background" at trial, the Court will allow a limiting instruction to the jury to clarify the purpose for which these references are offered.  The Court GRANTS Finjan's motion to the extent that Cisco's experts rely on Karger, December, and Necula as prior art to support the invalidity of an asserted claim element.

### 3.  Cisco's Invalidity Grounds under Sections 101 and 112

Finally, Finjan seeks to preclude Cisco from relying on its subject matter (35 U.S.C. § 101) and written description (35 U.S.C. § 112) invalidity theories.

According to Finjan, Cisco's invalidity contentions provided "conclusory, "short," and

1 | "mostly boilerplate" disclosure as to its invalidity theories under § 101.  Finjan's MIL No. 3 at 4

2 | (citing ECF 319-3 at 85-87).  Finjan thus argues that Cisco's expert's "twenty-one paragraphs of

3 | opinions that were never discussed or even summarized in Cisco's invalidity contentions" are

4 | untimely and should be excluded.  *Id.* at 4-5 (citing ECF 318-6 (McDaniel Report) ¶¶ 214, 222, 502-

5 | 20).  Cisco responds that its invalidity contentions "explained the basis of its Section 101 theories"

6 | and its expert, Dr. McDaniel, "simply expands on these disclosures and provides supporting

7 | evidence, including what was known and conventional to a person of ordinary skill in the art."

8 | Cisco's Opp'n to Finjan's MIL No. 3 at 4.

9 | The Court has reviewed Cisco's invalidity contentions and is satisfied that Cisco's invalidly

10 | theories under 35 U.S.C. § 101 were sufficiently disclosed.  For example, as to the '494 Patent Cisco

11 | identifies the claim elements it contends are "abstract concept":

12 |
13 | > The Asserted Claims of the '494 Patent are directed to non-statutory subject matter, under 35 U.S.C. § 101, because the claims are directed to merely "receiving an incoming Downloadable", "deriving security profile data for the Downloadable", and "storing the Downloadable security profile data," which is an abstract concept.
14 |

15 | ECF 319-3 at 87.  Cisco then explains:

16 |
17 | > [T]he Asserted Claims are merely directed to receiving incoming Downloadable and manipulating existing information, e.g., the incoming Downloadable, to derive the security profile data without any limitation on the use of the security profile data.
18 |

19 | *Id.* Cisco goes on to assert that "[t]he remainder of the Asserted Claims recite generic computer

20 | limitations, such that the claims do not amount to significantly more than the abstract idea itself."

21 | *Id.*

22 | Cisco's disclosures are sufficiently detailed and provide a level of specificity that was

23 | lacking in the cases Finjan cites.  For example, in *Karl Storz*, defendant's disclosure in its invalidity

24 | contentions "consist[ed] of legal conclusions in violation of Local Rule 3-3(d)" because defendant

25 | merely stated "[a]ll asserted claims ... are invalid under 35 U.S.C. § 101 because they are not directed

26 | to patentable subject matter."  *Karl Storz Endoscopy-Am., Inc. v. Stryker Corp.*, No. 14-CV-00876-

27 | RS(JSC), 2017 WL 5257001, at *4 (N.D. Cal. Nov. 13, 2017).  And the court in *Proofpoint*, rejected

28 | defendant's statement "generally reserve[ing] its right to assert claims as invalid under Section 101"

1     in invalidity contentions because "[s]uch a general disclaimer would be contrary to the local rule's

2     requirement that parties crystallize their theories early in the litigation." *Finjan, Inc. v. Proofpoint,*

3     *Inc.*, No. 13-CV-05808-HSG, 2015 WL 9460295, at *3 (N.D. Cal. Dec. 23, 2015). Here, Cisco

4     disclosed its specific theories in its invalidity contentions – and later provided evidence (in the form

5     of expert reports) per the case schedule. Accordingly, the Court DENIES Finjan's motion to

6     preclude Cisco's invalidity theories based on 35 U.S.C. § 101.

7         Finjan makes similar arguments as to Cisco's disclosures regarding its invalidity theories for

8     lack of written description under 35 U.S.C. § 112. According to Finjan, "Cisco's contentions recite

9     a laundry list of potential claim terms that allegedly lack written description/enablement, without

10    providing any explanation for any of those particular terms" and therefore Cisco has failed to

11    provide notice of which specific claim terms are allegedly deficient and why. Finjan's MIL No. 3

12    at 5 (citing ECF 319-3 at 74-80). Finjan argues that "Cisco's experts identify particular claim terms

13    and offer new theories and explanations as to how the specifications are supposedly deficient under

14    Section 112." *Id.* (citing ECF 318-4 (Almeroth Rpt.) ¶¶ 619-83; ECF 318-6 (McDaniel Rpt.) ¶¶

15    213, 221, 479-501; ECF 319-15 (Prakash Rpt.) ¶¶ 166, 475–489). Cisco disagrees and responds

16    that its contentions "identified the aspects of the asserted claims that were not supported by the

17    written description[.]" Cisco's Opp'n to Finjan MIL No. 3 at 5.

18        The Court finds that Cisco's contentions sufficiently disclosed its theories based on its

19    understanding of Finjan's infringement theories at the time. For example, with respect to the '844

20    Patent, Cisco asserted: "Finjan's apparent interpretation of the Asserted Claims of the '844 Patent

21    is that they are broad enough to encompass linking a Downloadable security profile to a

22    Downloadable after a web client has requested the Downloadable from the web server." ECF 319-

23    3 at 75. Accordingly, Cisco explained, "[u]nder this overly broad interpretation of the Asserted

24    Claims, each Asserted Claim of the '844 Patent is invalid for lack of written description and is not

25    enabled." *Id.* at 75-76. Similarly, for the '780 Patent, Cisco explained why it contends that the

26    asserted claims lack written description and are not enabled:

27            Finjan's apparent interpretation of the asserted claims of the '780

28            Patent is that they are broad enough to encompass any computing
               device that receives any file over a network and performs a hashing

United States District Court
Northern District of California

function on the received file.

*Id.* at 76.  Cisco then lists the claim terms it contends are invalid under 35 U.S.C. § 112.  *Id.*

Cisco's disclosure can again be contrasted against the cases Finjan cites.  For example, in *MediaTek*, defendant did "nothing more than state that a theory of 'indefiniteness, written description/enablement' is asserted" and failed to "explain in even the most basic terms" the written specification did not disclose the claim term.  2014 WL 690161, at *6.  Because the Court finds that Cisco's invalidity theories under 35 U.S.C. § 112 were disclosed in its invalidity contentions, the Court DENIES Finjan's motion as to those theories.

### D.  Finjan's Motion *in Limine* No. 4 to Preclude Reliance on Undisclosed Non-Infringement Theories (ECF 531)

In its Motion *in Limine* No. 4, Finjan seeks to exclude Cisco from relying on non-infringement theories in Cisco's expert reports that Finjan contends were not disclosed during discovery – and specifically, in Cisco's response to Finjan's non-infringement interrogatory No. 6 ("Rog. 6").  *See* Finjan's MIL No. 4, ECF 540-22 (redacted version available at 531).  Finjan's motion is limited to the non-infringement theories related to the '844 Patent. [2]

### 1.  "rule set" Limitation (Claim 15)

Claim 15 of the '844 Patent requires using a "rule set" to "generate a first Downloadable security profile that identifies suspicious code in a Downloadable."  '844 Patent, 11:64-66.  Cisco's technical expert, Dr. Almeroth opines that the accused products do not meet the "rule set" limitation because the rule sets identified by Finjan's technical expert (Dr. Cole) "are not used to derive a [Downloadable security profile], but are just general rules concerning passing and blocking a file by an accused product."  ECF 540-6 at ¶ 413.  Finjan argues that Cisco's response to Rog. 6 failed to disclose the theory Dr. Almeroth presented in his report "or any other theory regarding 'rule set.'"  Finjan's MIL No. 4 at 2.

Cisco responds that it did, in fact, identify "rule set" in its response to Rog. 6 and Dr. Almeroth discussed the same limitation and identified "the factual errors in Dr. Cole's infringement

---

[2] For the purposes of deciding Finjan's Motion *in Limine* No. 4, Finjan withdrew its arguments as to the '154 Patent and the '780 Patent at the Conference.  *See* Hr'g Tr. at 54:7-55:3.

United States District Court
Northern District of California

1   report."  Cisco's Opp'n to Finjan's MIL No. 4 at 1-2, ECF 566-8.  At the Conference, Cisco

2   expanded its argument and explained that its response to Rog. 6 details Cisco's contentions as to

3   why the accused products do not "generate a first Downloadable security profile."  *See* Hr'g Tr. at

4   56:17-18; *see also* ECF 540-10 at 7-9.  And because the "rule set" is used to "generate a first

5   Downloadable security profile" – if the accused products do not "generate a first Downloadable

6   security profile," it follows that the accused products do not use a "rule set." *See* Hr'g Tr. at 56: 14-

7   21.

8       The Court agrees with Cisco.  First, the "rule set" limitation is identified in Cisco's response

9   to Rog. 6 in the context of the claim language.  *See* ECF 540-10 at 7.  Second, even though the claim

10  term "rule set" is not used in Cisco's explanation of its infringement theory – the theory itself is

11  consistent across Cisco's response to Rog. 6 and Dr. Almeroth's report: the accused products do not

12  generate a "Downloadable security profile" and thus do not use a "rule set" in the manner required

13  by the language of claim 15.  Accordingly, the Court DENIES Finjan's motion as to the "rule set"

14  limitation of claim 15 of the '844 Patent.

15      **2.  "generating" / "generate" Limitations (Claims 1, 15, and 43)**

16      Claims 1, 15 and 43 of the '844 Patent require the generation of a "first Downloadable

17  security profile" to identify suspicious code.  *See* '844 Patent at 11:15-18; 11:65-66; 14:36-38.

18  Finjan seeks to exclude two non-infringement theories in Dr. Almeroth's report.

19      ***First***, Finjan argues that Dr. Almeroth contends the accused products do not meet the

20  "generating" / "generate" claim limitation because they do not include a "code scanner" – and this

21  theory should be excluded because the claims do not require a "code scanner."  Finjan's MIL No. 4

22  at 2 (citing 540-6 (Almeroth Report) ¶ 195).  In Finjan's view, "[i]t is improper for Cisco's experts

23  to add [the code scanner] limitation and to make an argument Cisco did not disclose during

24  discovery."  Finjan's MIL No. 4 at 2.  Cisco responds that the cited paragraph is "plucked out of

25  context from Dr. Almeroth's larger analysis of the '844 Patent."  Cisco's Opp'n to Finjan's MIL

26  No. 4 at 2.

27      The Court is not persuaded that Dr. Almeroth has presented a non-infringement theory in

28  the single paragraph (¶ 195) Finjan cites.  Dr. Almeroth states: "[n]either the '844 Patent nor the

United States District Court
Northern District of California

11

'194 Patent disclose any other method or tool, aside from the code scanner, for deriving a [Downloadable security profile]."  ECF 540-6 (Almeroth Report) ¶ 195.  Dr. Almeroth then goes on to opine that "[n]one of the Accused Products infringe claims 1, 15, and 43 of the '844 Patent because they do not meet the requirements of the [Downloadable security profile] Terms."  ECF 540-6 ¶ 196.  Dr. Almeroth's opinion appears consistent with Cisco's response to Rog. 6 that "[t]he accused versions of AMP, and ThreatGRID, do not generate a first Downloadable security profile that identifies suspicious code in a received Downloadable."  ECF 540-10 at 7.  Without context, the Court declines to exclude Dr. Almeroth's short statement mentioning "code scanner" as a new non-infringement theory.

*Second*, Finjan seeks to exclude Dr. Almeroth's opinion that "ThreatGrid must always perform dynamic analysis on a file … to reach the conclusion that the file is malicious" because, according to Finjan, Cisco did not disclose this "dynamic analysis" theory in its response to Rog. 6.  Finjan's MIL No. 4 at 2-3.  Cisco responds that its response to Rog. 6 "explained why the accused products (i.e., AMP and ThreatGrid) do not meet the generating/generate limitations because they do not identify suspicious code in a Downloadable."  Cisco's Opp'n to Finjan's MIL No. 4 at 2 (citing ECF 540-10 at 8-9).

The Court is persuaded that Cisco's theory was properly disclosed in Cisco's response to Rog. 6.  Although Cisco's response does not use the term "dynamic analysis," it does explain that ThreatGRID analyzes files for malicious content by first running the files and then observing their behavior – this explanation is consistent with "dynamic analysis."  Specifically, Cisco explained:

> ThreatGRID analysis includes executing a file in a secure environment and recording when certain behaviors are observed.  ThreatGRID then analyzes the observed behaviors, calculates a threat score, and determines whether the file is malicious based on the threat score.

ECF 540-10 at 8-9.

Accordingly the Court DENIES Finjan's motion as to the "generate" / "generating" limitation of claims 1, 15, and 43 of the '844 Patent.

## II.   CISCO'S MOTIONS *IN LIMINE*

### A.   Cisco's Motion *in Limine* No. 1 to Exclude Phil Hartstein's Testimony Regarding Finjan's Corporate History as Hearsay (ECF 534, Corrected Brief at ECF 604)

In its Motion *in Limine* No. 1, Cisco seeks to exclude testimony from Finjan's current president and CEO, Phil Hartstein, regarding Finjan's corporate history, including Finjan's interactions with Cisco, related to the time before Mr. Hartstein began his employment with Finjan in April 2013.  Cisco's MIL No. 1, ECF 532-4 (redacted version available at ECF 604).  Cisco contends that Mr. Hartstein lacks personal knowledge of events prior to his employment and thus his testimony would be inadmissible hearsay under Federal Rules of Evidence 801 and 802.

Finjan responds that Cisco's motion is broad and premature, because Mr. Hartstein should be permitted to offer non-hearsay testimony and "testimony that falls within one of the exceptions to the hearsay prohibition, including testimony that is based upon personal knowledge acquired through his review of business records and in his role as President and CEO of Finjan."  Finjan's Opp'n to Cisco's MIL No. 1, ECF 576-4 (redacted version available at ECF 573).

While the Court acknowledges and appreciates that Mr. Hartstein's testimony may veer into hearsay territory, "exclusion based on potential hearsay is premature."  *Newmark Realty Capital, Inc. v. BGC Partners, Inc.*, No. 16-CV-01702-BLF, 2018 WL 6439133, at *2 (N.D. Cal. Dec. 7, 2018).  Whether Mr. Hartstein's testimony is inadmissible hearsay will depend on the precise testimony offered at trial, the context and purpose for which it is offered, and the foundation laid for it.  Accordingly, the Court DEFERS Cisco's motion to trial.  Evidentiary objections to Mr. Hartstein's testimony, should it be offered, may be raised during trial.

### B.   Cisco's Motion *in Limine* No. 2 Re Evidence or Arguments about Post-Grant Proceedings (ECF 535)

The five Asserted Patents have been the subject of numerous post-grant proceedings before the PTO.  In its Motion *in Limine* No. 2, Cisco seeks to preclude Finjan from presenting any evidence or argument about *inter partes review* ("IPR") and other post-grant proceedings before the PTO related to Finjan's patents – whether involving Cisco or other parties.  Cisco contends that any relevance these proceedings might have is outweighed by the "significant potential to mislead the jury."  Cisco's MIL No. 2 at 1, ECF 535.  As for the post-grant proceedings where Cisco was not a

United States District Court
Northern District of California

13

party, Cisco argues that it would suffer "unfair prejudice" if evidence of those proceedings is presented. *Id.* at 2. Cisco also seeks to exclude evidence of the IPR proceedings to which Cisco was a party because (1) Cisco's '844 and '494 Patent IPRs were not instituted and thus there was no decision on the merits and (2) Cisco '633 Patent IPR is irrelevant because the validity of the '633 Patent is not at issue in this case and those proceedings are "unsettled and complex." *Id.* at 2-4.

Evidence of post-grant proceedings are generally of marginal relevance and their probative value is greatly outweighed by likely confusion to the jury and time that would be required to instruct the jury on the full context necessary to understand the "relevance and limitations" of those proceedings. *See Finjan, Inc. v. Sophos, Inc.*, No. 14-CV-01197-WHO, 2016 WL 4560071, at *14 (N.D. Cal. Aug. 22, 2016). Importantly, admitting evidence of post-grant proceedings before the PTO is likely to mislead the jury into believing that because the Asserted Patents have survived many attacks, they must be valid against the attacks presented in this case. Moreover, explaining the process applicable in PTO proceedings, the relevant legal standards, the evidence the PTO considered in each proceeding, and the outcome of each proceeding will be a waste of time that will confuse the jury as to the standards applicable in this case and mislead them into improperly deferring to the PTO on validity matters. That said, the Court considers Finjan's arguments as to why such evidence is relevant in this case.

### 1. Post-Grant Proceedings Involving Non-Asserted Patents

With regard to post-grant proceedings involving Finjan's patents non-asserted in this case, Finjan argues that because Cisco's experts rely on discussions about a non-asserted patent that has since been found invalid (U.S. Patent No. 6,092,194) to explain the parties' pre-suit relationship, Finjan must be able to present evidence of affirmation of validity of other non-asserted patents. Finjan's Opp'n to Cisco's MIL No. 2 at 2, ECF 564. Finjan further points to Cisco's trial exhibits "referring to post grant activity filed by third parties." *Id.* at 2.

The Court notes that in its Motion *in Limine* No. 1, Finjan moves to preclude Cisco from discussing PTO proceedings for patents and claims not at issue in this case. *See* Finjan's MIL No. 1 at 3-4. Thus, the Court presumes that Finjan does not oppose Cisco's motion as to the post-grant proceedings involving non-asserted patents – unless Cisco presents such evidence, necessitating a

14

1   response from Finjan.  Accordingly, the Court GRANTS Cicso's motion with regard to post-grant

2   proceedings involving non-asserted patents.  But if Cisco raises the issue at trial (by presenting

3   evidence of non-asserted patents being found invalid in post-grant proceedings), the Court will

4   consider allowing Finjan to present evidence of validity affirmances – depending on the nature and

5   context of the evidence Cisco presents, if any.

### 2.   Post-Grant Proceedings Involving the Asserted Patents (Other Than Cisco's '633 Patent IPR)

8           As for the post-grant proceedings involving the Asserted Patents, Finjan presents the

9   following arguments (1) Cisco's experts "liberally" rely upon third party post-grant activity for their

10  invalidity opinions on the Asserted Patents and thus Finjan should be permitted to reply on PTO

11  decisions upholding the Asserted Patents[3]; (2) the proceedings are relevant to the issue of willfulness

12  because "they make it more probable that Cisco did not have a good faith belief in the invalidity of

13  either the '494, '844, or '633 Patents"; (3) there is overlap in the prior art asserted in the PTO

14  proceedings and in this case; and (4) the strength of Finjan's patents is relevant to the issue of

15  damages as a fact that a reasonable licensor would have considered during hypothetical negotiations.

16  *See* Finjan's Opp'n to Cisco's MIL No. 4 at 2-5; *see also* Hr'g Tr. at 72:4-9.

17          The Court finds that any probative value that evidence of post-grant proceedings might have

18  on the *validity* of the Asserted Patents is outweighed by the complexity involved in giving the jury

19  the full context of PTO proceedings and would pose a significant risk of confusion of the issues and

20  waste of time.   Even if there is overlap in the prior art references asserted in the PTO proceedings

21  and in this case, the choice of references and combination of those references involve highly

22  strategic decisions – and explaining the intricacies of the differences between the arguments and

23  selections presented to the PTO and what is at issue in this case would be too complicated and time-

24  consuming.

25          That said, the strength of the Asserted Patents would be relevant to what Cisco would have

26  considered during its hypothetical negotiations with Finjan – and is therefore relevant to *damages*.

---

[3] At the Conference, Cisco conceded that if this motion is granted, it would not rely on post-grant invalidity decisions.  *See* Hr'g Tr. 74:21-24.

United States District Court
Northern District of California

The Court is also persuaded that the strength of the Asserted Patents is relevant to Cisco's good faith belief as to the validity of the Asserted Patents – and is therefore relevant to *willfulness*.  Thus, the Court DENIES Cicso's motion with regard to post-grant proceedings involving the Asserted Patents (other than the '633 Patent addressed below) but Finjan's presentation of evidence is limited to the issues of damages and willfulness.  The Court also invites a limiting instruction on this issue.

### 3.  Cisco's '633 Patent IPR

As for Cisco's '633 Patent IPR, Finjan admittedly fails to articulate any objections.  *See generally* Finjan's Opp'n to Cisco's MIL No. 4; *see also* Hr'g Tr. at 74:11-16.  Accordingly, the Court GRANTS Cisco's motion as to the Cisco's '633 Patent IPR as unopposed.

### 4.  Pending IPRs

Finally, the parties agree that all evidence of non-final or pending IPRs should be excluded.  *See* Hr'g Tr. at 71:11-17.  Accordingly, the Court GRANTS Cisco's motion as to all pending IPRs.

### C.  Cisco's Motion *in Limine* No. 3 Re Prejudicial Litigation Settlement Amounts (████████ and ████████████) (ECF 536, Corrected Brief at ECF 605)

In its Motion *in Limine* No. 3, Cisco moves to exclude Finjan from referencing: (1) the lump sum payments made in accordance with two specific settlement agreements Finjan entered into with (a) ████████████ and (b) ████████████ and (2) the total amount Finjan has earned pursuant to its licensing and litigation settlement efforts.  *See* Cisco's MIL No. 3, ECF 532-6 (redacted version available at ECF 605).

Both parties' damages experts rely on a selection of Finjan's license agreements to support their opinions.  Finjan's Dr. Layne-Farrar opines that Finjan's license agreements – including the two licenses at issue in this motion – are "not directly comparable to the circumstances relevant for the current matter" but "aspects of many of the Finjan license agreements are informative for the hypothetical negotiation between Finjan and Cisco."  Layne-Farrar Report ¶ 284, ECF 532-15.  Cisco contends that ████████████ and ████████████ agreements are "outliers" and should be excluded.  *See* Cisco's MIL No. 3 at 1.

The Court addresses each agreement bearing in mind that these agreements must be viewed critically because they may be tainted due to external factors such as threatened or actual litigation.

United States District Court
Northern District of California

*LaserDynamics, Inc. v. Quanta Computer*, Inc., 694 F.3d 51, 77 (Fed. Cir. 2012) ("The notion that license fees that are tainted by the coercive environment of patent litigation are unsuitable to prove a reasonable royalty is a logical extension of *Georgia–Pacific*. . . .").

       1.       █████████████████**Agreement**

      In 2012, Finjan entered into a settlement, release, and patent license agreement with █████. Layne-Farrar Report ¶ 204, ECF 532-15.  This agreement followed two patent infringement lawsuits brought by Finjan against ████████████.  *Id.*  ████████ was bought by █████ and █████ was later bought by ████.  *Id.*  In the lawsuit against █████████, the jury awarded Finjan $9.18 million in damages.  *Id.* ¶ 205.  The jury also found willful infringement.  *Id.*  Based on the jury's finding of willful infringement the court in the █████████ case increased the damages award to approximately $37.3 million.  *Id.* ¶¶ 205-206.  Later in 2011, █████ and Finjan negotiated an additional ████████████████████.  *Id.* ¶ 207.  Dr. Layne-Farrar states that she does not "have the details of how █████ and Finjan negotiated the additional █████████ payment that █████ paid to finally settle with Finjan[.]"  *Id.* ¶ 291.

      Cisco seeks to exclude the $9.18 million jury award, the $37 million judgment (which reflects an increase for willful infringement), and the follow-on payment of █████ because Dr. Layne-Farrar does not rely upon any of these amounts and she concedes that she is unaware of how the figures were calculated.  *See* Cisco's MIL No. 3 at 2-3.  Finjan responds that the amount in the █████████████ Agreement is relevant to damages and non-obviousness.  According to Finjan, "[t]his settlement amount (and related litigation history) is relevant evidence of licensing, copying by others, and commercial success."  Finjan's Opp'n to Cisco's MIL No. 3 at 2 (citing Bims Report ¶¶ 135, 152, 162, ECF 576-18), ECF 576-6 (redacted version available at ECF 574).  Finjan further argues that "the █████████ is 'sufficiently comparable' to the case at bar because it relates to U.S. Patent No. 6,804,780 ('the '780 Patent') also at issue in this case."  *Id.* at 2.

      The Court GRANTS Cisco's motion as to the █████████ settlement payment because that amount is an outlier and more importantly, because it is unclear from the record – and from Dr.

Layne-Farrar's report – ██████████ agreed to make that payment.  The Court also GRANTS

Cisco's motion as to the $37.3 million award in the ██████████ litigation, because that award

was enhanced after the jury's finding of willful infringement.  It is up to the Court, not the jury, to

determine the enhanced damages if willful infringement if found – and presenting the jury with the

enhanced damages in ██████████ would cause confusion and prejudice.  The Court DENIES

Cisco's motion as to the $9.18 million jury award because that award is relevant to damages and

non-obviousness as it relates to the '780 Patent.

### 2.  ██████████ Agreement

In 2018, Finjan entered into a patent license agreement and settlement with ██████████

and its subsidiary ██████████.  Layne-Farrar Report ¶ 251.  The agreement was part

of a settlement agreement resolving numerous patent infringement suits.  *Id.*  The agreement

provided for a lump sum payment of $65 million.  *Id.*  Cisco argues that this agreement is "tainted

by litigation" because at the time the license agreement was executed, the parties had already tried

four cases to different juries (one of which ended in a mistrial) and there were three more upcoming

trials.  Cisco's MIL No. 3 at 4 (citing ECF 532-16).  Finjan responds that the ██████████

agreement involved two patents at issue in this case and is therefore admissible because it is relevant

to both objective indicia of non-obviousness and damages.

The Court finds that the ██████████ license agreement is relevant to the issues of

damages and non-obviousness.  It is true that the lump sum amount agreed upon in this agreement

reflects the parties' desire to settle multiple lawsuits – but Cisco can address the litigation history

behind the ██████████ agreement during cross examination and ensure that the jury is

presented with the proper context.  Accordingly, the Court DENIES Cisco's motion as to the lump

sum amount Finjan received pursuant to its agreement with ██████████.

### 3.  Aggregate Amount

Finally, Cisco seeks to exclude "[a]ny discussion by Finjan of the aggregate amount of

money it has received in connection with its patent portfolio" because that amount is "irrelevant to

the hypothetical negotiation and highly prejudicial."  Cisco's MIL No. 3 at 4-5.  Finjan responds

that "[t]he aggregate amount of Finjan's licensing revenue for the asserted patents is relevant to both

18

1    objective indicia of non-obviousness and damages." Finjan's Opp'n to Cisco's MIL No. 3.

2           Because the Court has excluded the ███████████ and $37.3 million judgment in the

3    ██████████████████████ agreement, the aggregate amount Finjan has received in

4    connection with its patent portfolio must also be excluded as it would necessarily include those

5    excluded amounts. And any revised amount (*e.g.*, by deducting the excluded amounts) would not

6    be an inaccurate representation of Finjan's licensing revenues. Accordingly, the Court GRANTS

7    Cisco's motion as to the aggregate amount of revenue Finjan has received from licensing its patent

8    portfolio.

9           **D.    Cisco's Motion *in Limine* No. 4 Re Evidence and Arguments Pertaining to Certain
            '633 Patent Infringement Theories (ECF 537, 611)**

10
11          When Cisco filed its Motion *in Limine* No. 4, it had a pending motion to strike before Judge

12   van Keulen relating to Finjan's infringement theories as to the '633 Patent. Specifically, Cisco filed

13   its Motion *in Limine* No. 4 "to enforce Judge van Keulen's forthcoming ruling on Cisco's '633

14   Motion, to the extent that motion is granted." Cisco's MIL No. 4, ECF 532-8. Two days before the

15   Conference, on April 28, 2020, Judge van Keulen issued her order and granted Cisco's Motion to

16   Strike Portions of Finjan's Expert Report on Infringement of the '633 Patent. SVK Order, ECF 582.

17   At the Conference, counsel for Finjan indicated that Finjan intends to appeal from the SVK Order

18   on two grounds: (1) a procedural issue – because Finjan did not have an opportunity to oppose

19   Cisco's post-hearing submission at ECF 558 and (2) Judge van Keulen's substantive ruling. The

20   Court construed the procedural dispute as a request to file a motion for reconsideration of the SVK

21   Order and referred the dispute to Judge van Keulen. ECF 609. Once the parties' procedural dispute

22   is resolved, Finjan is expected to file its substantive appeal from the SVK Order with this Court. On

23   May 15, 2020, Finjan filed its motion for reconsideration before Judge van Keulen. ECF 623.

24          Because the SVK Order is not final at this time, the Court cannot consider the merits of

25   Cisco's Motion *in Limine* No. 4. Accordingly, the Court TERMINATES this motion WITH LEAVE

26   TO REFILE based on a final order from Judge van Keulen. Cisco may refile its Motion *in Limine*

27   No. 4 no later than seven (7) days after Judge van Keulen's order becomes final. Finjan may file an

28   opposition seven (7) days after the motion is filed.

### III. ORDER

For the reasons stated on the record at the Conference and discussed above, the Court orders as follows:

Finjan's Motion *in Limine* No. 1 (ECF 527): GRANTED IN PART; DENIED IN PART; and DEFERRED IN PART.

Finjan's Motion *in Limine* No. 2 (ECF 528): GRANTED IN PART and DENIED IN PART.

Finjan's Motion *in Limine* No. 3 (ECF 529): GRANTED IN PART and DENIED IN PART.

Finjan's Motion *in Limine* No. 4 (ECF 531): DENIED (limited to the '844 Patent).

Cisco's Motion *in Limine* No. 1 (ECF 534): DEFERRED.

Cisco's Motion *in Limine* No. 2 (ECF 535): GRANTED IN PART and DENIED IN PART.

Cisco's Motion *in Limine* No. 3 (ECF 536): GRANTED IN PART and DENIED IN PART.

Cisco's Motion *in Limine* No. 4 (ECF 537): TERMINATED with leave to refile.

**IT IS SO ORDERED.**

Dated: May 22, 2020

BETH LABSON FREEMAN
United States District Judge