**DUANE MORRIS LLP**
Nicole E. Grigg (CA SBN 307733)
negrigg@duanemorris.com
D. Stuart Bartow (CA SBN 233107)
dsbartow@duanemorris.com
2475 Hanover Street
Palo Alto, CA 94304-1194
Telephone: 650.847.4146
Facsimile: 650.847.4151

**DUANE MORRIS LLP**
Joseph A. Powers (PA SBN 84590)
Admitted *Pro Hac Vice*
japowers@duanemorris.com
Jarrad M. Gunther (PA SBN 207038)
Admitted *Pro Hac Vice*
jmgunther@duanemorris.com
30 South 17th Street
Philadelphia, PA 19103
Telephone: 215.979.1000
Facsimile: 215.979.1020

**DUANE MORRIS LLP**
L. Norwood Jameson (GA SBN 003970)
Admitted *Pro Hac Vice*
wjameson@duanemorris.com
Matthew C. Gaudet (GA SBN 287789)
Admitted *Pro Hac Vice*
mcgaudet@duanemorris.com
David C. Dotson (GA SBN 138040)
Admitted *Pro Hac Vice*
dcdotson@duanemorris.com
John R. Gibson (GA SBN 454507)
Admitted *Pro Hac Vice*
jrgibson@duanemorris.com
Jennifer H. Forte (GA SBN 940650)
Admitted *Pro Hac Vice*
jhforte@duanemorris.com
1075 Peachtree NE, Suite 2000
Atlanta, GA 30309
Telephone: 404.253.6900
Facsimile: 404.253.6901

Attorneys for Defendant
CISCO SYSTEMS, INC.

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FINJAN, INC., a Delaware Corporation,<br><br>Plaintiff,<br><br>v.<br><br>CISCO SYSTEMS, INC., a California Corporation,<br><br>Defendant. | Case No.: 5:17-cv-00072-BLF-SVK<br><br>**CISCO SYSTEMS, INC.'S NOTICE OF MOTION AND MOTION FOR LEAVE TO SUPPLEMENT STEPHEN L. BECKER'S EXPERT REPORT ON DAMAGES**<br><br>Date:       October 29, 2020<br>Time:       9:00 a.m.<br>Courtroom: 3, 5th Floor<br>Judge:      Hon. Beth Labson Freeman |

**REDACTED**

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on October 29, 2020 at 9:00 a.m., in Courtroom 3, 5th Floor, United States District Court for the Northern District of California, San Jose Courthouse, 280 South 1st Street, San Jose, CA 95113, Defendant Cisco Systems, Inc. ("Cisco") moves for an Order granting leave to supplement Dr. Stephen L. Becker's expert report on damages to include newly discovered documents and information related to the acquisition of Finjan, Inc. ("Finjan") by Fortress Investment Group LLC ("Fortress"). Cisco requests that the Court advance the hearing date for this motion so it can be held prior to the beginning of trial, currently set for October 19, 2020. This motion is supported by the following Memorandum of Points and Authorities and the Declaration of Nicole Grigg, filed concurrently herewith, and such other written or oral argument as may be presented at or before the time this motion is heard by the Court.

**STATEMENT OF ISSUES TO BE DECIDED**

Whether Cisco should be granted leave to supplement Dr. Stephen L. Becker's expert report on damages to include newly discovered documents and information related to the acquisition of Finjan by Fortress.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Pursuant to Federal Rules of Civil Procedure 16(b)(4) and 26(a)(2)(e), Cisco respectfully submits this motion for leave to supplement Stephen L. Becker's expert report on damages to include newly created documents and information related to the acquisition of Finjan by Fortress. Ex. 1 to Grigg Decl.  Good cause exists for Cisco's requested supplement. First, the supplementation involves material highly relevant to Cisco's damages calculations that did not exist—and thus was not known to Cisco—prior to the deadline for supplementation under Rule 26(e)(2). Second, the supplementation poses no undue prejudice to Finjan, as Finjan was aware of the acquisition before Cisco obtained publicly available documents related to it; the supplementation comes nearly three months prior to the currently scheduled beginning of trial; and the supplementation comes prior to the Court's final pre-trial conference.

## II. BACKGROUND

Affiliates of Fortress Investment Group LLC recently completed their acquisition of Finjan Holdings, Inc. ("Finjan") (the "Acquisition"). Ex. 2. Fortress Investment Group LLC is a global investment management group that does not develop, manufacture, or sell products.  This transaction was first announced on June 10, 2020, and Finjan did not make any disclosure in the litigation of this transaction or its possibility before Cisco learned of it through public reports. According to Finjan's public reports, Fortress acquired Finjan at a purchase price equal to $1.55 per share in an all-cash tender offer, representing an aggregate equity value of approximately $43.9M. Ex. 3. On July 23, 2020, the number of shares tendered satisfied the minimum condition, all conditions to the offer were satisfied or waived, and Fortress accepted for payment, and will promptly pay for, all shares that were validly tendered. Ex. 4.

It also appears from public filings that, in return, for the $43.9M cash purchase price, Finjan has agreed to transfer to Fortress, among other things, all of Finjan's tangible assets, which are valued at approximately $35M, including approximately $32M in cash. Ex. 1, ¶ 4. Thus, the implied value of the intangible assets—including Finjan's entire Finjan intellectual property portfolio—is less than $12M.  These intangible assets include (i) all of the legacy Finjan patent portfolio,

including the five patents-in-suit; plus (ii) the rights to the claims in all existing lawsuits, including against Cisco; plus (iii) the IBM patent portfolio that Finjan had acquired for approximately ▬. *Id.*

The amount it would cost to outright acquire Finjan (and thus outright acquire all five of the patents-in-suit) is relevant to damages in this case, and a non-exclusive license to the five patents-in-suit against Cisco should be a fraction of the effective cash price to purchase all of Finjan. The acquisition is also relevant to Finjan's corporate history and its position that Finjan is more than a patent licensing entity.

Cisco learned about the acquisition of Finjan by Fortress when it was announced on or about June 10, 2020. Ex. 3. Cisco met and conferred with Finjan regarding the Fortress acquisition. Following Cisco's request that Finjan supplement its responses to the relevant discovery requests with documents and information related to the Acquisition and Finjan's objections to doing so based on relevance and privilege, Cisco agreed to rely on public information regarding the Acquisition in order to avoid a discovery dispute. Ex. 5.

Months before the public disclosure of the Fortress acquisition, the parties were required to submit pre-trial disclosures. *See* Dkt. 449 (April 16, 2020 deadline for pretrial disclosures). The parties agreed to amend their exhibit lists on or before May 1, 2020 to account for deposition transcripts and exhibits that Finjan produced to Cisco after the deadline for fact discovery, as well as Cisco's updated financial information through the second quarter of 2020, as requested by Finjan. Dkt. 547 at VII.9. At the time the parties submitted the pre-trial disclosures, trial was scheduled to begin on June 1, 2020. Dkts. 70, 547. On April 30, 2020, the Court held a pre-trial conference with the parties in which the trial date was discussed in light of the ongoing COVID-19 pandemic. Dkt. 613 pp. 116-121. On May 1, the Court determined that trial would commence on June 22, 2020. *See* Dkt 595 (Minute Entry). The Court held a case management conference on May 26, 2020 and determined that trial would be postponed until October 19, 2020 due to the COVID-19 pandemic. Dkt. 646.

### III. LEGAL STANDARD

Case deadlines may be modified for good cause and with the judge's consent. Fed. R. Civ. P.

16(b)(4). In analyzing good cause required by Rule 16, "courts primarily consider the diligence of the party seeking the modification." *Rodarte v. Alameda Cnty.*, No. 14-cv-00468-KAW, 2015 U.S. Dist. LEXIS 123900, at *4-5 (N.D. Cal. Sep. 15, 2015); *see also Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992) (same). A party must timely supplement if it learns that in some material respect a disclosure or response is incomplete and the additional information has not otherwise been made known to the other parties during the discovery process or in writing. FED. R. CIV. P. 26(e).

### IV.   GOOD CAUSE EXISTS FOR CISCO'S REQUESTED SUPPLEMENTATION

#### A.   The supplementation includes material highly relevant to Cisco's damages calculations and Finjan's corporate history that did not exist and thus was not known to Cisco prior to the deadline for supplementation

Cisco has been diligent in seeking these supplementation, having brought this motion as soon as possible after it learned of the Acquisition on June 10, 2020 and the Acquisition being completed on or about July 24, 2020; working to resolve Finjan's objections to producing relevant discovery without burdening the court; and approximately three months before trial.

Less than a week after Cisco learned of the Acquisition, Cisco sent a letter to Finjan requesting production of all relevant documents related thereto under Rule 26(e). Ex. 6. Following Finjan's objections to these requests, which the parties discussed during a meet and confer, Cisco agreed to avoid a discovery dispute by relying on the publicly available documents related to the Acquisition on July 16, 2020. Ex. 5. Cisco now seeks leave to supplement its expert report on damages to include this new, highly relevant information.

The Acquisition necessarily includes the purchase of the patents-in-suit, as well as the very claims at issue in this litigation. Ex. 1 at ¶ 4. Thus, the Acquisition involves information relevant to damages and to the analysis by Cisco's expert, Dr. Becker. *See, e.g., Spectralytics, Inc. v. Cordis Corp.*, 650 F. Supp. 2d 900, 914 (D. Minn. 2009), *aff'd in part, vacated in part,* 649 F.3d 1336 (Fed. Cir. 2011) (sale of plaintiff in 2003 "unquestionably relevant" to hypothetical license negotiation in 1998); *Comcast Cable Commc'ns, LLC v. Sprint Commc'ns Co., LP*, 262 F. Supp. 3d 118, 144-146 (E.D. Pa. 2017) (sale of the asserted patent in 2010 was "plainly relevant to the hypothetical negotiation" in 2005 and constituted sufficient evidence to sustain jury's acceptance of defendant's

damages theory); *Pers. Audio, LLC v. Apple, Inc.*, No. 9:09CV111, 2011 U.S. Dist. LEXIS 83746, 2011 WL 3269330, at *10 (E.D. Tex. July 29, 2011) ("[T]he jury could, and should, have given substantial weight" to the patentee's "2008 offer to sell, not merely to license, the actual patents-in-suit, not merely comparable technology" when evaluating the 2001 hypothetical negotiation.). Although this post-dates the hypothetical negotiation, "[p]ost-infringement information can be helpful in assessing whether a royalty is reasonable." *Oracle Am., Inc. v. Google Inc.*, 2012 WL 877125, at *3 (N.D. Cal. Mar. 15, 2012) (permitting expert opinion based on company valuation four years after hypothetical negotiation) (citing *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1333–34 (2009)).

Further, a damages analysis "may also consider the panoply of events and facts that occurred thereafter and that could not have been known to or predicted by the hypothesized negotiators." *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 872 (Fed. Cir. 2010) (quotation omitted). Indeed, Finjan's own damages expert acknowledges this theory in her opening report, and Finjan used this "book of wisdom" principle during the Pre-Trial Conference to argue to the Court the jury should be allowed to hear testimony about IPR institution decisions many years after the hypothetical negotiation, despite their admitted prejudice. *See* Dkt. 564 Ex. G at 171, n.701; Dkt. 613 at 72:4-12 (". . . Here's what Cisco is going to know sitting at that hypothetical negotiation table: they are going to know that these patents that are looking to license to Finjan have been battle tested, that they have been subjected to challenge after challenge and that they have come through each time… and that is something that is going to be in the mind of a reasonable licensee . . ."). By the same token, Cisco would have known—under the same "book of wisdom"—the effective cash purchase price of Finjan, including its entire patent portfolio, and would have concluded that a mere non-exclusive license to the five patents-in-suit is necessarily less valuable. Dr. Becker's proposed supplement succinctly sets forth what Cisco would have known and considered using the public documents supporting that knowledge.

Cisco could have sought discovery beyond the publicly available information related to the Acquisition, and courts have reopened discovery where post-discovery—but pre-trial—a corporate acquisition required the supplementation of discovery responses under Rule 26(e) and the pursuit of

limited third party discovery. *See Zest IP Holdings, LLC v. Implant Direct Mfg.*, 2013 WL 5211940, at *2 (S.D. Cal. Sept. 13, 2013) (reopening discovery for patentee's sale to third party because "information sought by Defendants is relevant to the issues of damages in this action and may affect the opinions of Plaintiffs' and Defendants' expert witnesses on damages."); *Llewellyn v. N. Am. Trading,* 1997 U.S. Dist. LEXIS 4621, at *15-16 (S.D.N.Y April 9, 1997) (requiring defendants to supplement discovery responses regarding corporate documents when it merged with another company); *Ortiz v. Cybex Int'l, Inc.,* 2018 U.S. Dist. LEXIS 92447, at *19-23 (D.P.R. May 30, 2018) (extending fact discovery because defendant failed to update discovery responses regarding post-suit acquisition). Cisco thus seeks even less relief than could be justified by these circumstances: Cisco seeks only the limited supplementation of its expert report on damages to account for this new, highly relevant information. This focused request should be granted. *See Walker v. Life Ins. Co. of the Sw.*, No. CV 10-09198-JVS (RNBx), 2018 U.S. Dist. LEXIS 223874, at *12-13 (C.D. Cal. Nov. 9, 2018) (finding good cause existed where the plaintiff delayed in providing necessary information for the defendant's expert report and granting the defendant leave to supplement its expert report).

**B.     Finjan will not Suffer Undue Prejudice as a Result of the Supplementation**

Finjan has been aware of the pending acquisition by Fortress well before the June 2020 press release, Ex. 7 pp. 12-24, and Dr. Becker and Cisco are relying upon press releases issued and SEC filings filed by Finjan. Thus, Finjan cannot allege that it is prejudiced or surprised by the information in the publicly available documents or Dr. Becker's supplementation based upon that information. *See Lanard Toys, Ltd. v. Novelty, Inc.*, 375 Fed. Appx. 705, 713 (9th Cir. 2010) ("Not only was [the expert's] anticipated testimony not a 'surprise' to appellants, they were obviously able to take steps they thought necessary to contend with his testimony at trial."); *Walker*, 2018 U.S. Dist. LEXIS 223874, at *17-18 (finding no prejudice to the plaintiffs in granting the defendant leave to file a supplemental expert report, which was untimely due to the plaintiffs' own delays in production).

Further, pre-trial disclosures and supplementation of expert reports are due "at least 30 days before trial" "[u]nless the court orders otherwise." FED. R. CIV. P. 26(a)(3). While the Court required pre-trial disclosures to be submitted by April 16, 2020, this requirement was set when trial was to

5

begin on June 1, 2020. Since then, trial has been postponed until the latter half of October 2020, so supplementation of Cisco's expert report on damages almost three months before trial should be considered, at the very least, non-prejudicial to Finjan. *See* Ex. 8 at 6-7, 10; *Enplas Display Device Corp. v. Seoul Semiconductor Co.*, No. 13-cv-05038 NC, 2015 U.S. Dist. LEXIS 189098, at *5 (N.D. Cal. Dec. 21, 2015) ("Because the expert reports were supplemented more than 30 days before trial, the reports were timely.") Likewise, the timing of the supplementation should not be considered unduly prejudicial to Finjan, as it comes prior to the Court's final pre-trial conference. Further, Cisco does not object to Finjan's damages expert supplementing her report, which would address any prejudice that Finjan may contend it will suffer if this motion were granted.

## IV.    CONCLUSION

Because good cause exists for Cisco's requested supplementation to address newly discovered, highly relevant information regarding Fortress's acquisition of Finjan, Cisco respectfully requests that the Court grant its motion for leave to supplement its expert report on damages.

Dated: July 31, 2020                                Respectfully submitted,

*/s/ Nicole E. Grigg*
Nicole E. Grigg (CA SBN 307733)
negrigg@duanemorris.com
2475 Hanover Street
Palo Alto, CA 94304-1194
Telephone: 650.847.4150
Facsimile: 650.847.4151

L. Norwood Jameson (admitted *pro hac vice*)
Email: wjameson@duanemorris.com
Matthew C. Gaudet (admitted *pro hac vice*)
Email: mcgaudet@duanemorris.com
David C. Dotson (admitted *pro hac vice*)
Email: dcdotson@duanemorris.com
John R. Gibson (admitted *pro hac vice*)
Email: jrgibson@duanemorris.com
Jennifer H. Forte (admitted *pro hac vice*)
Email: jhforte@duanemorris.com
1075 Peachtree Street, Ste. 2000
Atlanta, GA 30309
Telephone: 404.253.6900
Facsimile: 404.253.6901

Joseph A. Powers (admitted *pro hac vice*)
Email: japowers@duanemorris.com

Jarrad M. Gunther (admitted *pro hac vice*)
Email: jmgunther@duanemorris.com
30 South 17th Street
Philadelphia, PA 19103
Telephone: 215.979.1000
Facsimile: 215.979.1020

*Attorneys for Defendant*
CISCO SYSTEMS, INC.