**DUANE MORRIS LLP**
Nicole E. Grigg (CA SBN 307733)
negrigg@duanemorris.com
D. Stuart Bartow (CA SBN 233107)
dsbartow@duanemorris.com
2475 Hanover Street
Palo Alto, CA 94304-1194
Telephone: 650.847.4146
Facsimile: 650.847.4151

**DUANE MORRIS LLP**
Joseph A. Powers (PA SBN 84590)
Admitted *Pro Hac Vice*
japowers@duanemorris.com
Jarrad M. Gunther (PA SBN 207038)
Admitted *Pro Hac Vice*
jmgunther@duanemorris.com
30 South 17th Street
Philadelphia, PA 19103
Telephone: 215.979.1000
Facsimile: 215.979.1020

**DUANE MORRIS LLP**
L. Norwood Jameson (GA SBN 003970)
Admitted *Pro Hac Vice*
wjameson@duanemorris.com
Matthew C. Gaudet (GA SBN 287789)
Admitted *Pro Hac Vice*
mcgaudet@duanemorris.com
David C. Dotson (GA SBN 138040)
Admitted *Pro Hac Vice*
dcdotson@duanemorris.com
John R. Gibson (GA SBN 454507)
Admitted *Pro Hac Vice*
jrgibson@duanemorris.com
Jennifer H. Forte (GA SBN 940650)
Admitted *Pro Hac Vice*
jhforte@duanemorris.com
1075 Peachtree NE, Suite 2000
Atlanta, GA 30309
Telephone: 404.253.6900
Facsimile: 404.253.6901

Attorneys for Defendant
CISCO SYSTEMS, INC.

# IN THE UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| FINJAN, INC., a Delaware Corporation,<br><br>Plaintiff,<br><br>v.<br><br>CISCO SYSTEMS, INC., a California Corporation,<br><br>Defendant. | Case No.: 5:17-cv-00072-BLF-SVK<br><br>**CISCO SYSTEMS, INC.'S REPLY IN SUPPORT OF ITS MOTION FOR LEAVE TO SUPPLEMENT STEPHEN L. BECKER'S EXPERT REPORT ON DAMAGES**<br><br>Date:       September 17, 2020<br>Time:       9:00 a.m.<br>Courtroom: 3, 5th Floor<br>Judge:      Hon. Beth Labson Freeman |

Finjan does not dispute that Cisco acted diligently in seeking to supplement Dr. Becker's report with the newly created documents and information related to the Acquisition. Nor does Finjan dispute that it was aware of these facts long before they were made public and discovered by Cisco. Instead, Finjan's Opposition is based on its desire to prevent the jury from hearing facts that undermine Finjan's claim for damages. Finjan argues that the Acquisition is irrelevant and inadmissible because: (1) the "nature" of the Acquisition "as an acquisition of a patent owner and its lawsuits" and the fact that some patents expired; (2) the "financial landscape" at the time of the Acquisition due to the COVID-19 pandemic; and (3) the fact Dr. Becker does not change his affirmative opinion as a result of the Acquisition. At best, each of these arguments goes to the weight, not the admissibility, of the information in Dr. Becker's supplementation, which can be explored through cross-examination. Moreover, in its attempt to convince the Court that the Acquisition is irrelevant to damages in this case, Finjan contradicts the positions it took when advocating for the admission of the settlement agreements and post-grant proceedings that it deems helpful to its damages case. Indeed, the arguments in Finjan's Opposition would equally bar the very evidence on which Finjan's damages claim is based, which Finjan's damages expert relies on under the "book of wisdom." Dr. Becker's supplement provides the complete picture that rebuts Finjan's damages expert. Just as the jury will hear about litigation-influenced license agreements and the non-institution of IPRs as part of Finjan's damages claim – both of which occurred many years after the hypothetical negotiation – it must also hear the effective purchase price of Finjan's patents (including the patents-in-suit) that necessarily include all of the rights that would have been conveyed at the hypothetical negotiation (plus many more).

## I. FINJAN'S ARGUMENTS GO ONLY TO THE WEIGHT OF THE EVIDENCE

### A. The Acquisition's Nature and Inclusion of Expired Patents Go To Weight

First, Finjan argues that the "nature" of the Acquisition "as an acquisition of a patent owner and its ongoing litigations demonstrates that it is not relevant to the hypothetical negotiation." Opp. at 3. Cisco's opening brief cited several cases finding that the sale or valuation of the plaintiff and/or the patents years after the hypothetical negotiation is relevant to the damages analysis. *See, e.g., Spectralytics, Inc. v. Cordis Corp.*, 650 F. Supp. 2d 900, 914 (D. Minn. 2009), *aff'd in part,*

*vacated in part,* 649 F.3d 1336 (Fed. Cir. 2011); *Comcast Cable Commc'ns, LLC v. Sprint Commc'ns Co., LP*, 262 F. Supp. 3d 118, 144-146 (E.D. Pa. 2017); *Pers. Audio, LLC v. Apple, Inc.*, No. 9:09CV111, 2011 U.S. Dist. LEXIS 83746, 2011 WL 3269330, at *10 (E.D. Tex. 7/29/11); *Oracle Am., Inc. v. Google Inc.*, 2012 WL 877125, at *3 (N.D. Cal. 3/15/12); (citing *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1333–34 (2009)). Finjan ignores these cases.

Instead, Finjan cites two District of Delaware cases, *United Access Techs., LLC v. AT&T Corp.*, 2020 WL 3128269 (D. Del. 6/12/20) ("UAT") and *In re ChanBond LLC*, 2020 WL 550786 (D. Del. 2/4/20). *UAT* relates to whether discovery into the funder of litigation is appropriate; it does not address the admissibility of the acquisition price of an entity or its patent portfolio. The facts of that litigation confirm the distinction between the question of litigation funding versus the relevance of an acquisition event. Some of the undersigned counsel is quite familiar with that litigation based on their representation of the CenturyLink defendants (CenturyTel and Qwest) in a consolidated *UAT* case. There actually was an acquisition event in that litigation (namely, a predecessor sold all of its patents to the plaintiff after they had expired), both the AT&T and CenturyLink defendants referenced it in their damages reports (and AT&T relied on it), but plaintiff (UAT) did not even file a damages *Daubert* motion. Gaudet Decl., ¶¶ 2, 3. In sum, the *UAT* case supports Cisco, not Finjan.

Likewise, *In re: ChanBond* (which also relates to a litigation funder) does not support Finjan. Although Finjan cites the case for the proposition that the acquisition of a patent holder can never be relevant to the hypothetical negotiation, the Court actually distinguished between (i) anything that is litigation/settlement-related (whether a specific settlement agreement or an agreement to buy a holding company whose only assets are the patents and a potential recovery from ongoing litigation) versus (ii) licensing transactions with no litigation history or settlement overtone. *ChanBond*, at *6. The Court found that a licensing transaction is preferred over the litigation/settlement-related transaction, as the latter is not as comparable to the hypothetical negotiation. *Id*. In this case, however, both damages experts are *already* relying on settlement agreements, and thus the *ChanBond* approach that litigation/settlement-related agreements are automatically out does not work. Further, this Court has already taken a broad view of relevance to the hypothetical negotiation via the "book of wisdom," including post-grant review proceedings and litigation-induced licenses.

Dkt. 640 at 15, 18.  Although Finjan argues that the Acquisition agreement "included considerations well-beyond the existence of the patents-in-suit," the same is true of the settlement agreements (which are litigation-induced portfolio-wide licenses) that both experts are relying on, and Dr. Becker's analysis takes all of these facts into account.

Moreover, there is a supposition in the *ChanBond* Court's analysis that is untrue in this case. Namely, that the transaction "is an agreement between two parties who want to be on one side of that transaction, that of the licensor." *ChanBond*, at *6.  Here, the Acquisition was a market auction in which *anyone* could participate – entities that wanted to be a licensor and had no intention of practicing the patent *or* entities whose primary motivation was to be a licensee (as they would have something equivalent to an exclusive license).  Dkt. 683-9 at Item 4.  Among that entire pool, the maximum value was a reflection of what anyone – including potential licensee entities – would pay.

Second, Finjan argues that the Acquisition is irrelevant to a reasonable royalty because "four out of five of the patents-in-suit expired between the date of the hypothetical negotiation and the [Acquisition]." Opp. at 3.  This is a red-herring.  It is evident from the public documents that the Acquisition conveyed the rights to enforce all of Finjan's patents (including the expired patents) and to collect past and future damages, and the Acquisition price reflects the value attributed to those rights.  In other words, the Acquisition included all rights that Finjan is asserting against Cisco, and these are the same rights the jury will be asked to value at trial.  Moreover, if the expiration of patents extinguished their relevance, then there would be no trial in this case on 4 of the 5 patents.  Of course, expiration does not mean irrelevance; rights still exist, including the possibility of recovering past damages going back in time prior to expiration if the patent holder has not sacrificed those rights.  This is because, as the Federal Circuit confirmed, a license is just an agreement not to sue; it is not the conveyance of an affirmative right to practice.  *TransCore, LP v. Elec. Trans. Consultants Corp.*, 563 F.3d 1271, 1275 (Fed. Cir. 2009) ("It follows, therefore, that a patentee, by license or otherwise, cannot convey an affirmative right to practice a patented invention by way of making, using, selling, etc.; the patentee can only convey freedom from suit."). Expired patents still have value in the market transaction.  But, if Finjan is correct that expiration means irrelevance, then the same could be said about the non-institution IPR decisions in the '844 and '494 Patents.  Those

3

patents expired three weeks after the Complaint was filed, and the IPR decisions were not until a year-and-half later; yet, Finjan persuaded the Court to allow them under the "book of wisdom."

### B. COVID-19 Does Not Render the Acquisition Irrelevant

Finjan argues that the Acquisition is irrelevant because the "financial landscape of the [Acquisition] agreement is vastly different from that of a hypothetical negotiation in 2012 and 2014 …." Opp. at 3. As an initial matter, Finjan's reliance on *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F. 3d 51 (Fed. Cir. 2012), and *Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259 (Fed. Cir. 1999) – and its suggestion that the mere passage of time between the hypothetical negotiation and a later-executed agreement automatically renders that agreement irrelevant – is belied by Finjan's reliance on settlement agreements executed as recently as 2018 and 2019 (i.e., four to seven years after the hypothetical negotiation). As for the pandemic, Finjan's arguments are unsupported by evidence or logic and, at best, they go to weight, not admissibility. Finjan never explains exactly why COVID-19 would have a significant impact on the value of its business. For example, Finjan is not a retail business whose revenue is impacted by a pandemic. Likewise, the postponement of two trial dates by several months within litigations whose tracks (including appeals) can take many years could not change the price substantially. This is why Finjan's SEC filings make clear the pandemic was *not* an impetus for Finjan's decision to sell its company and patent portfolio. Dkt. 683-9 at 13-24. In 2018, long before the pandemic, Finjan began meeting with "potential transaction partners" and entities regarding acquiring Finjan, including Fortress. *Id.* Indeed, in 2019, Fortress repeatedly reduced its offer price to acquire Finjan based on its diligence in 2018 and 2019. *Id.* at 13-20. Nevertheless, if Finjan wants to make this excuse to the jury, Finjan can cross-examine Dr. Becker and present its own evidence to establish any alleged financial impact of COVID-19. *See* Dkt. 640 at 18 ("it is true that the lump sum amount agreed upon in this agreement reflects the parties' desire to settle multiple lawsuits – but Cisco can address the litigation history behind the … agreement during cross examination and ensure that the jury is presented with the proper context.").

### C. The Acquisition Both Rebuts Finjan's Damages Claim and Supports Dr. Becker's Affirmative Opinion, Making the Acquisition Highly Relevant

Finjan incorrectly argues that Dr. Becker's supplement is irrelevant because he did not

change his opinion as a result of the Acquisition.  Data points consistent with an expert's opinion do not become irrelevant simply because they support (instead of change) the expert's number; they are additional evidence as to why the expert's opinion should be accepted. Unless Finjan stipulates that the evidence is already so strong that no reasonable person could dispute Dr. Becker's conclusion, then Cisco is entitled to put forth the strongest case available based on the evidence. Thus, while Dr. Becker's opinion on the value of a license to Cisco for the patents-in-suit remains the same, the new information of the Acquisition provides substantial additional support for this opinion.  This alone is a sufficient basis for this Court to allow Dr. Becker's proposed supplement.  In *City of Pomona v. SQM N. AM. Corp.*, 866 F.3d 1060 (9th Cir. 2010) (which Finjan cited), the Ninth Circuit found that the district court abused its discretion by denying the plaintiff's request to submit a supplemental expert report that reflected new information developed after the close of expert discovery.  *Id.* at 1066-69.  The Ninth Circuit found that, although the expert's opinion did not change, the level of support for his opinion increased based on the new information, which was "critical," and expert testimony must "reflect the current state of knowledge." *Id.* at 1067.  The new information further proves that the opinions of Finjan's expert are misguided and incorrect by orders of magnitude.

## II.     FINJAN'S REMAINING OBJECTIONS FAIL

Finjan's claim that Dr. Becker's supplementation "serves only to further Cisco's attempts to disparage Finjan" is unfounded.  Finjan was acquired.  The acquirer paid a specific price.  These are facts, not misrepresentations or disparagements.  That these facts cause Finjan to be so embarrassed about its outsized damages claim that it would now label these facts as "disparagements" speaks volumes.  Nor will Dr. Becker's supplementation mislead the jury, confuse the actual issue, waste time, or result in undue delay.  Two months remain before trial.  The supplement is short and based on information uniquely known to Finjan, reflecting the culmination of a process that began in 2018.  Finjan's expert has ample time to prepare a rebuttal to this two-page supplement, and if depositions are necessary, they can be done efficiently via videoconference.  If Finjan believes it needs to examine witnesses regarding the purported financial impact of the pandemic in order to provide context for the Acquisition, it can do so, but that does not render Cisco's discussion of the Acquisition and Dr. Becker's proposed supplement unduly prejudicial.

Dated: August 21, 2020

Respectfully submitted,

*/s/ Matthew C. Gaudet*
Nicole E. Grigg (CA SBN 307733)
negrigg@duanemorris.com
2475 Hanover Street
Palo Alto, CA 94304-1194
Telephone: 650.847.4150
Facsimile: 650.847.4151

L. Norwood Jameson (admitted *pro hac vice*)
Email: wjameson@duanemorris.com
Matthew C. Gaudet (admitted *pro hac vice*)
Email: mcgaudet@duanemorris.com
David C. Dotson (admitted *pro hac vice*)
Email: dcdotson@duanemorris.com
John R. Gibson (admitted *pro hac vice*)
Email: jrgibson@duanemorris.com
Jennifer H. Forte (admitted *pro hac vice*)
Email: jhforte@duanemorris.com
1075 Peachtree Street, Ste. 2000
Atlanta, GA 30309
Telephone: 404.253.6900
Facsimile: 404.253.6901

Joseph A. Powers (admitted *pro hac vice*)
Email: japowers@duanemorris.com
Jarrad M. Gunther (admitted *pro hac vice*)
Email: jmgunther@duanemorris.com
30 South 17th Street
Philadelphia, PA 19103
Telephone: 215.979.1000
Facsimile: 215.979.1020

*Attorneys for Defendant*
CISCO SYSTEMS, INC.